JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Patrick McDermid, individually and on behalf of all others similarly situated | Inovio Pharmaceuticals, Inc. and J. Joseph Kim |

**(b)** County of Residence of First Listed Plaintiff: Manitoba, Canada
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Dell'Angelo, Berger Montague PC, 1818 Market Street, Suite 3600, Philadelphia, PA 19103, Tel: 215-875-3000, mdellangelo@bm.net

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 850 Securities/Commodities/Exchange |
| | | | ☐ 864 SSID Title XVI | |
| | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC §§ 78j(b), 78t(a); 17 CFR § 240.10b-5; 28 USC §§ 1331; 17 CFR § 78aa
Brief description of cause:
False and misleading statements

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 100,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: 
DOCKET NUMBER:

DATE: 03/12/2020
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __Manitoba, Canada__

Address of Defendant: __Inovio Pharmaceuticals, Inc., 660 W. Germantown Pike, Suite 110, Plymouth Meeting, PA 19462__

Place of Accident, Incident or Transaction: __False statements took place at corporate headquaters in Plymouth Meeting, PA, among others__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __03/12/2020__  *(signature)*  PA Bar No. 80910
   *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☑ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Michael C. Dell'Angelo__, counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __03/12/2020__  *(signature)*  PA Bar No. 80910
   *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Patrick McDermid | : | CIVIL ACTION |
| v. | : | |
| Inovio Pharmaceuticals, Inc., and J. Joseph Kim. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     (x)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| 03/12/2020 | Michael C. Dell'Angelo | Pltf. Patrick McDermid |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-875-3000 | 215-875-4604 | mdellangelo@bm.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# PLAINTIFF'S CERTIFICATION OF SECURITIES
# FRAUD CLASS ACTION COMPLAINT

I, Patrick McDermid, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the complaint regarding **Inovio Pharmaceuticals, Inc.** (the "Company") and authorize its filing on my behalf.

2. I did not purchase the securities which are the subject of the complaint at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

3. My transactions in the Company's securities during the Class Period are as follows:

| Date | Transaction Type (Buy/Sell) | Quantity of Shares | Price Per Share |
|---|---|---|---|
| 03/06/2020 | Buy | 100 | $11.73 |
| 03/09/2020 | Buy | 150 | $18.70 |

4. I am willing to serve as a representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.

5. During the three-year period preceding the date of my signing this Certification, I have never sought to be appointed nor have I ever been appointed as lead plaintiff or class representative in any class action arising under the securities laws of the United States.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Exected on  Mar 11, 2020 .


*Patrick McDermid*
Patrick McDermid (Mar 11, 2020)

Patrick McDermid

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK MCDERMID, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>INOVIO PHARMACEUTICALS, INC., and J. JOSEPH KIM,<br><br>　　Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Patrick McDermid, ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters based upon the investigation conducted by his attorneys, which included, among other things, a review and analysis of public filings by Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company") with the United States Securities and Exchange Commission ("SEC"), public reports and news articles, research reports by securities and financial analysts, economic analysis of securities movement and pricing data, press releases issued by Inovio, and other publicly available material and data identified herein, as follows:

I.  **NATURE AND SUMMARY OF THE ACTION**

1. This is a class action for violations of the federal securities laws brought on behalf of all persons who purchased or otherwise acquired Inovio common stock (NASDAQ: INO) between February 14, 2020 and March 9, 2020, inclusive (the "Class Period"). Plaintiff alleges that Inovio and its Chief Executive Officer, J. Joseph Kim ("Kim" and, together with Inovio, "Defendants"), made false and misleading statements in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

2. According to the World Health Organization ("WHO"), the worldwide outbreak of the novel coronavirus, COVID-19 ("COVID-19"), has become a global "pandemic" due to its extraordinary "speed and scale of transmission."[1] The WHO Director-General has stated the organization is "deeply concerned by both the alarming levels of spread and severity, and by the alarming levels of inaction." *Id*. "We have never before seen a pandemic sparked by a coronavirus . . . . We have rung the alarm bell loud and clear." *Id*.

---

[1] WHO Director-General's opening remarks at the Mission briefing on COVID19 (March 12, 2020).

3. As of the date of this Complaint, COVID-19 has infected more than 120,000 people and caused approximately 4,300 deaths worldwide.[2] Epidemiologists estimate that the number of COVID-19 cases in the world doubles every six days. *Id*. In the U.S., fears over the new coronavirus have had devasting economic and social consequences. Large public gatherings and major events have been canceled. Employees have been told to work from home, universities have moved all classes online and elementary schools have closed for sanitizing. Declarations of emergency are being proclaimed, and New York has deployed the National Guard to the hard-hit city of New Rochelle, north of New York City. Currently, there is no vaccine available to prevent the spread of COVID-19.

4. Headquartered in Plymouth Meeting, Pennsylvania, Inovio purports to be a "biotechnology company focused on rapidly bringing to market precisely designed DNA medicines to treat, cure and/or protect people from . . . infectious diseases." During the Class Period, Defendants capitalized on widespread COVID-19 fears by falsely claiming that Invovio had developed a vaccine for COVID-19. First, on February 14, 2020, Inovio CEO Kim appeared on Fox Business News with Neal Cavuto and stated that Inovio had developed a COVID-19 vaccine "***in a matter of about three hours once we had the DNA sequence from the virus***" and "our goal is to start phase one human testing in the U.S. early this summer." In response, Inovio's stock price rose more than 10% over the next few trading days, on enormous trading volume.

5. Two weeks later, following a well-publicized March 2, 2020 meeting with President Trump to discuss the COVID-19 outbreak, Defendant Kim again claimed that Inovio had developed a COVID-19 vaccine, stating "***we were able to fully construct our vaccine within***

---

[2] "Coranavirus Has Become A Pandemic, W.H.O. Says," by Donald G. McNeil, Jr., New York Times, Mar. 12, 2020.

*three hours* . . . . Our plan is to start [U.S. based COVID-19 trials] in April of this year." The market responded favorably to Kim's statement and Inovio's stock price ***more than quadrupled*** from $4.28 per share on February 28, 2020, and continued to increase in the following weeks, reaching an intra-day high of $19.36 on March 9, 2020.

6. However, in truth, Inovio had not developed a COVID-19 vaccine. On March 9, 2020, before trading commenced, Citron Research ("Citron") exposed Defendants' misstatements, calling for an SEC investigation into the Company's "ludicrous and dangerous claim that they designed a [COVID-19] vaccine in 3 hours." In response to the news, Inovio's stock price plummeted from its March 9 opening price of $18.72 per share to close at $9.83. The following day, March 10, 2020, Inovio's stock price fell from its $9.30 per share opening price to close at $5.70 per share. The two-day drop wiped out approximately $643 million in market capitalization for the Company, marking a ***71%*** decline from its Class Period high. In a message to shareholders that same day, Inovio attempted to blunt the Citron revelations but only highlighted its own misstatements, admitting that it had ***not*** developed a COVID-19 vaccine but rather had merely "***designed a vaccine construct***" – i.e., a precursor for a vaccine – and that it believed it had a "viable approach to address the COVID-19 outbreak."

## II. JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8. This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

9. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District

so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and the Company has its principal executive offices located and conducts substantial business in this District.

11. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## III. PARTIES

12. Plaintiff Patrick McDermid is an individual investor who purchased Inovio common stock, as set forth in the certification attached hereto as Exhibit A, at artificially inflated prices during the Class Period, and suffered damages as a result of the misconduct alleged herein.

13. Defendant Inovio is a Delaware corporation with its principal executive offices at 660 W. Germantown Pike, Suite 110, Plymouth Meeting, PA 19462. Inovio common stock trades on the Nasdaq stock exchange under the symbol "INO."

14. Defendant Kim is the President and Chief Executive Officer of Inovio and has served in that capacity since 2009.

## IV. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

15. Inovio and Kim made false and misleading statements to the market, claiming unequivocally that the Company had successfully developed a vaccine against the spread of

COVID-19 and that it anticipated rapidly bringing that vaccine to market. Given the heightened anxiety surrounding this pandemic and the desperate demand for an effective COVID-19 vaccine, Defendants knew and were deliberately reckless as to the falsity of their claims.

16. First, on February 14, 2020, Defendant Kim appeared on Fox Business News with Neal Cavuto, where he claimed that Inovio had developed a COVID-19 vaccine and was "able to ***rapidly construct our vaccine in a matter of about three hours*** once we had the DNA sequence from the virus available because of the power of our DNA medicine platform." He continued that "our goal is to start phase one human testing in the U.S. early this summer," claiming "we've done this many, many times before. We're planning to beat our own record."

17. Analysts raised consensus price targets to $9.43 per share on strong "Buy" recommendations.

18. Second, on March 2, 2020, Defendant Kim attended a televised meeting with President Trump at the White House where he repeated his prior February 14, 2020 claim that Inovio had developed a COVID-19 vaccine, stating the Company had "applied our very innovative, 21st century platform . . . to COVID-19 . . . by getting the DNA sequence of the virus, ***we were able to fully construct our vaccine within three hours***. And we've been working on preclinical and preparation work with the help of FDA . . . Our plan is to start [U.S. based COVID-19 trials] in April of this year." News outlets and securities analysts repeated and commented favorably on Kim's statements.

19. In response to the claim, the market responded favorably. Inovio common stock jumped from $4.39 per share on March 2, 2020 to $7.45 per share on March 3, 2020. Inovio shares and continued to increase until they were trading as high as $14.09 per share on March 6, 2020.

20. In an interview with *The Scientist*, on February 21, 2020, Dr. David Weiner of the Wistar Institute discussed the steps being taken to develop a vaccine for COVID-19. Dr. Weiner mentioned that Wistar was working with Inovio and that as soon as they learned of the COVID-19 outbreak in China, they began to work on a vaccine. Dr. Weiner discussed the approaches they were taking in attempting to develop a vaccine. Tellingly, Dr. Weiner is not reported to have stated that Inovio had already developed a vaccine.

21. In the midst of the hype surrounding Inovio, the Company entered into an agreement to sell an aggregate $50 million of its shares of common stock on the open market beginning on March 9, 2020.

22. In its March 9, 2020 Form 8-K announcing its sale of stock, Inovio stated that "on March 3, 2020, the Company announced that it plans to pursue an accelerated timeline for developing its DNA vaccine INO-4800 to address COVID-19, also known as coronavirus. The Company believes it may be in a position to begin human clinical trials in the United States in April 2020 and soon thereafter in China and South Korea, subject to approval by the U.S. Food and Drug Administration and China and South Korea regulatory authorities, respectively, and aims to produce up to one million doses by the end of 2020, with its existing capacity and contract resources, for further clinical trials or emergency use."

23. The statements described in paragraphs 15, 16, and 20 *supra* were materially false and misleading and omitted to disclose material information. Specifically, Defendants falsely described their product as a fully completed vaccine when it was nothing of the sort. Defendants falsely claimed they had developed the vaccine in a matter of hours, which is a scientific impossibility. And Defendants falsely stated that they would be able to begin human trials in

April 2020 when they had no reason to believe that they would have the necessary regulatory approvals to do so.

24. Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements described in paragraphs 15, 16, and 20 *supra* were made, Inovio had not developed a vaccine for COVID-19, that such a vaccine could not be developed in a matter of hours, and that trials were not likely to begin in April 2020.

**The Truth Emerges**

25. On March 9, 2020, Citron Research, a short-seller best known for exposing accounting fraud at Valeant Pharmaceuticals, the "Pharmaceutical Enron," published the following statement on Twitter:



26. Following the publication of this message, shares of Inovio fell precipitously. Shares traded at a high of $19.36 per share on March 9, 2020, but by March 10, 2020 closed at $5.70 per share, a fall of 71%.

## Class Action Allegations

27. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Inovio common stock between February 14, 2020 and March 9, 2020, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

28. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

29. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e. Whether the price of the Company's stock was artificially inflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

30. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

31. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**Fraud on the Market**

33. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

    c. The Company's common stock traded in efficient markets;

    d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

34. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services, and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services.

Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## No Safe Harbor

35. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

36. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## Loss Causation

37. On March 9, 2020, following the publication of a Tweet by Citron Research challenging the veracity of Inovio's claims about its COVID-19 vaccine, shares of Inovio fell from a high of $19.36 per share on March 9, 2020, to close at $5.70 on March 10, 2020.

38. The Citron disclosure contradicted statements made by Defendants during the Class Period and was a causal element of the concurrent decline in the Company's share price.

## Causes of Action

### Count One
### Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

39. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

40. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading.

41. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

42. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## Count Two
### Violations of § 20(a) of the Exchange Act
### (Against Defendant Kim)

43. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44. Defendant Kim acted as a controlling person of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions at the Company, Defendant Kim had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. Defendant Kim was provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had

the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) determining that this action is a proper class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post- judgment interest thereon.

c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

March 12, 2020                               Respectfully submitted,

*/s/ Michael Dell'Angelo*

**BERGER MONTAGUE PC**
Shanon J. Carson (PA Bar No. 85957)
Michael C. Dell'Angelo (PA Bar No. 80910)
Andrew D. Abramowitz (*pro hac vice* to be filed)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000 phone
(215) 875-4604 fax
scarson@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

**BLOCK & LEVITON LLP**
Jeffrey C. Block (*pro hac vice* to be filed)
Jacob A. Walker (*pro hac vice* to be filed)
Mark A. Delaney (*pro hac vice* to be filed)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com
mdelaney@blockesq.com