UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK MCDERMID, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Action No. 2:20-cv-01402-GJP<br><br>CLASS ACTION<br><br>MANUEL S. WILLIAMS' OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS |

4820-2000-8637.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................................1

II.   ARGUMENT .......................................................................................................................2

    A.    The Groups Are Unable to Satisfy *Cendant* ............................................................2

        1.    The Stefko Group and the Cui Group's Multiple Inconsistent
           Motions Evidence the Groups' Lack of Cohesion and Lawyer-
           Driven Formation .........................................................................................4

        2.    While the Stefko Group's Required Evidentiary Showing Confirms
           Its Lack of Cohesion, the Cui Group and the Inovio Investor Group
           Failed to Make *Any* Timely Showing ........................................................7

        3.    The Inconsistencies in the Cui Group's Certifications Further
           Expose Its Inadequacy ...............................................................................14

        4.    The Court Should Decline Any Post Hoc Invitation by Counsel to
           Break Up the Groups and Appoint Its Members Individually ...................15

    B.    The Stefko Group and the Inovio Investor Group Are Subject to Unique
        Defenses as a Result of Their March 9, 2020 Purchases ......................................16

    C.    The Presumption of "Most Adequate Plaintiff" Which Lies in Favor of
        Mr. Williams Cannot Be Rebutted ........................................................................19

    D.    The Remaining Movants Do Not Qualify for the PSLRA's Presumption .............21

III.  CONCLUSION ...................................................................................................................21

4820-2000-8637.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abouzied v. Applied Optoelectronics, Inc.*,
2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ...............................................................3, 15, 16

*Apple v. LJ Int'l Inc.*,
2008 WL 11343371 (C.D. Cal. Feb. 8, 2008)..........................................................................16

*Arciaga v. Barrett Bus. Servs., Inc.*,
2015 WL 791768 (W.D. Wash. Feb. 25, 2015) .........................................................................3

*Beheshti v. Kim*,
No. 2:20-CV-01962-GJP (E.D. Pa. Apr. 20, 2020) ................................................................17

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ............................................................................................16

*Chao Sun v. Han*,
2015 WL 2364937 (D.N.J. May 14, 2015) ...............................................................3, 8, 10, 11

*Clair v. DeLuca*,
232 F.R.D. 219 (W.D. Pa. 2005) .............................................................................................10

*Crihfield v. CytRx Corp.*,
2016 WL 10587938 (C.D. Cal. Oct. 26, 2016).........................................................................10

*DeSmet v. Intercept Pharm. Grp., Inc.*,
No. 1:17-cv-07371-LAK (S.D.N.Y. June 1, 2018)....................................................................6

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011)...............................................................................10

*Garbowski v. Tokai Pharm., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018) ........................................................................................6

*Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990), *abrogated on other grounds*
*by Microsoft Corp. v. Baker*,
_U.S. _, 137 S. Ct. 1702 (2017)..............................................................................................16

*George v. China Auto. Sys., Inc.*,
2013 WL 3357170 (S.D.N.Y. July 3, 2013) ............................................................................16

*In re Atlas Mining Co. Sec. Litig.*,
2008 WL 821756 (D. Idaho Mar. 25, 2008).............................................................................5

4820-2000-8637.v1

**Page**

*In re Baan Co. Sec. Litig.*,
  186 F.R.D. 214 (D.D.C. 1999).....................................................................................12

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .........................................................................................2

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................ *passim*

*In re Cloudera, Inc. Sec. Litig.*,
  2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ...............................................................3

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008)....................................................................................16

*In re Enron Corp. Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)..............................................................................17, 20

*In re Level 3 Commcn's, Inc. Sec. Litig.*,
  2009 WL 10684924 (D. Colo. May 4, 2009)..............................................................4, 13, 15

*In re Netflix, Inc.*, *Sec. Litig.*,
  2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ................................................................6

*In re: Omega Healthcare Investors, Inc. Sec. Litig.*,
  No. 1:17-cv-08983 (S.D.N.Y. Jan. 30, 2018) ................................................................5

*In re Opnext, Inc. Sec. Litig.*,
  2008 WL 11383411 (D.N.J. June 30, 2008) ..................................................................8

*In re Opnext, Inc. Sec. Litig.*,
  2008 WL 3285732 (D.N.J. Aug. 7, 2008) ......................................................................3

*In re Snap Inc. Sec. Litig.*,
  2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ................................................................18

*In re Spectrum Pharm., Inc.*,
  2014 WL 1394162 (D. Nev. Mar. 20, 2014) ..................................................................3

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) .....................................................................3, 9, 20

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999)........................................................................11, 12

4820-2000-8637.v1

**Page**

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
  2007 WL 2683636 (D.N.J. Sept. 7, 2007) ................................................................5

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ...................................................................13

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
  2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)..........................................................10

*Isaacs v. Musk*,
  2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) .....................................................3, 16

*Jonathan Tan v. NIO Inc.*,
  2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020).........................................................3, 9

*Kinney v. Capstone Turbine Corp.*,
  2016 WL 5341948 (C.D. Cal. Feb. 29, 2016)........................................................9, 15

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
  2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...........................................................14

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ......................................................15

*Markette v. XOMA Corp.*,
  2016 WL 2902286 (N.D. Cal. May 13, 2016).....................................................8, 9, 10

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .......................................................3, 7

*Montesano v. Eros Int'l PLC*,
  No. 2:19-cv-14125-JMV-JAD (D.N.J. Sept. 3. 2019)...............................................13

*Nakamura v. BRF S.A.*,
  2018 WL 3217412 (S.D.N.Y. July 2, 2018) ...........................................................7, 9

*Parnes v. Digital Lightwave, Inc.*,
  1999 WL 33733551 (11th Cir. Aug. 25, 1999)........................................................13

*Pelletier v. Endo Int'l PLC*,
  316 F. Supp. 3d 846 (E.D. Pa. 2018) .......................................................................2

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)..........................................................15

4820-2000-8637.v1

**Page**

*Rocco v. Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007) ...................................................................................17

*Ross v. Abercrombie & Fitch Co.*,
    2007 WL 895073 (S.D. Ohio Mar. 22, 2007).......................................................................15

*Singer v. Nicor, Inc.*,
    2002 WL 31356419 (N.D. Ill. Oct. 17, 2002)
    (N.D. Ill. Oct. 16, 2002)...........................................................................................5

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................................3, 7, 8, 13

*Stires v. Eco Sci. Sols., Inc.*,
    2018 WL 5784817 (D.N.J. Feb. 14, 2018) .....................................................................3, 13

*Strougo v. Lannett Co., Inc.*,
    2018 WL 6271802 (E.D. Pa. Nov. 30, 2018) .........................................................................9

*Takata v. Riot Blockchain, Inc.*,
    2018 WL 5801379 (D.N.J. Nov. 6, 2018) ...................................................................... *passim*

*The Ezra Charitable Tr. v. Rent-Way, Inc.*,
    136 F. Supp. 2d 435 (W.D. Pa. 2001)..................................................................................3

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) ..............................................................................9, 17

*Tsirekidze v. Syntax-Brillian Corp.*,
    2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................... *passim*

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)(iii)(I)...........................................................................................1, 7
    §78u-4(a)(3)(B)(iii)(cc)............................................................................................20

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................1, 2, 7, 20

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.................................................7

4820-2000-8637.v1

Pursuant to the Court's May 20, 2020 Order (ECF No. 22), Manuel S. Williams respectfully submits this memorandum of law in opposition to the motions filed by: (i) Stephen Brockway, M.D., Dwayne Lerma, Joseph Stefko, Jo Anne Emi Goya, Scott E. Dahlstrom, and Kenneth C. Ness (the "Stefko Group"); (ii) Sal Isabella, The Sal Isabella Retirement Plan, and Hao Cui (the "Cui Group"); (iii) Gerard Candeloro, Arian Eskandari, Mark Ramkishun, Jerry Qu, and Shahzad Riasat (the "Inovio Investor Group"); (iv) Joshua Farazdel; (v) Thahn Vo; and (vi) Jeffrey Castro.

## I.    INTRODUCTION

Ten lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  The PSLRA provides that courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Only Mr. Williams satisfies both of these elements.

While three groups of investors – the Stefko Group, the Cui Group, and the Inovio Investor Group – claim to have suffered larger losses than Mr. Williams, each group suffers from multiple, independently-disqualifying deficiencies.  The Third Circuit has directed that courts are to make a "determination" as to the adequacy of any group of persons that seeks to be appointed lead plaintiff and, refrain from appointing any group "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," as any such "'group' could not be counted on to monitor counsel in a sufficient manner."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).[2]

---

[1]    Three movants have withdrawn their motions.  *See* ECF Nos. 14 (Joseph Stefko); 15 (Hao Cui, David Fields, and Dmitry Kuznetsov); 21 (Michael Baumeister).  Additionally, the Cui Group, Thanh Vo, and Jeffrey Castro filed notices of non-opposition to the competing motions.  *See* ECF Nos. 16, 17, 25.

[2]    Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 1 -

Here, the submissions of all three groups confirm that these amalgamations of disparate class members are unable to survive even the most forgiving interpretation of *Cendant*.

In contrast, Manuel S. Williams possesses the largest loss of any qualified movant and satisfies the adequacy and typicality requirements of Rule 23. Unlike the lawyer-created groups, Mr. Williams has demonstrated both his ability and willingness to serve in a fiduciary position of trust to absent class members, and has assembled an efficient, cohesive, and highly competent prosecution team. Because none of the movants claiming a larger financial interest than Mr. Williams satisfy Rule 23, their motions should be denied. Similarly, the movants with a smaller financial interest than Mr. Williams cannot trigger the presumption, or prove that Mr. Williams should not be appointed, and their motions should likewise be denied.

## II.   ARGUMENT

### A.   The Groups Are Unable to Satisfy *Cendant*

The PSLRA was enacted to end perceived abuses in federal securities fraud class actions by eliminating the "race to the courthouse" as the method for selecting lead plaintiffs. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). To that end, the PSLRA instructs courts to "appoint a lead plaintiff whom it 'determines to be most capable of adequately representing the interests of class members.'" *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 848 (E.D. Pa. 2018). That is because "the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class" and "actively supervise the conduct of the litigation" of class actions alleging securities fraud. *Cendant*, 264 F.3d at 266-67.

In this regard, the Third Circuit has held that if a "court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that

- 2 -

movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id*. Specifically, if "a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id*. at 267; *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *4-*6 (D.N.J. Nov. 6, 2018) (denying motion by two groups of individuals with larger losses and appointing single movant as lead plaintiff); *Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at *5-*6 (D.N.J. Feb. 14, 2018) (same); *Chao Sun v. Han*, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015) (same); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 636-37 (D.N.J. 2002) (same); *In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (same). "The aggregation of disparate investors solely for the purpose of establishing a plaintiff group is contrary to the purposes of the PSLRA, and has been strongly disfavored by the courts." *The Ezra Charitable Tr. v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 444-45 (W.D. Pa. 2001) (citing cases).[3]

---

[3]   Courts around the country are also in accord.  *See, e.g.*, *Jonathan Tan v. NIO Inc.*, 2020 WL 1031489, at *4 & n.5 (E.D.N.Y. Mar. 3, 2020) (denying motion by group of individuals represented by Inovio Investor Group's proposed lead counsel because group failed to show "that they will be able to work cohesively for the benefit of the class," finding the fact that counsel "introduced the members to one another . . . does not work in [the group's] favor," and appointing single movant as lead plaintiff); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) (rejecting group when "nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application. . . . To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions."); *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019) (citing *Cendant* and holding that group was "comprised of 'unrelated individuals'" and that the "cursory details" in the group's joint declaration "do nothing to move the needle toward establishing the Boston Group's adequacy to serve as a lead plaintiff group"); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (declining to appoint group of four individuals because "[b]ased on the evidence . . . it appears that legal counsel for the group cobbled the movants together"); *Isaacs v. Musk*, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) (same); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *8-*9 (S.D.N.Y. Mar. 13, 2018) (same); *Arciaga v. Barrett Bus. Servs., Inc.*, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015) (same); *In re Spectrum Pharm., Inc.*, 2014 WL

- 3 -

### 1.    The Stefko Group and the Cui Group's Multiple Inconsistent Motions Evidence the Groups' Lack of Cohesion and Lawyer-Driven Formation

A telltale indication of the Stefko Group and the Cui Group's inability to satisfy the *Cendant* threshold became apparent on the day these motions were filed, when Joseph Stefko and Hao Cui, the groups' respective namesakes, each filed two completely separate and self-contradictory lead plaintiff motions.  *See* ECF Nos. 5 (Mr. Stefko filing an individual motion with ***Kahn Swick & Foti, LLC***); 8 (Mr. Cui filing a group motion with ***Wolf Haldenstein Adler Freeman & Herz LLP***); 9 (Mr. Cui filing a motion as part of a group assembled by ***The Rosen Law Firm, P.A.***, ***Schall Law Firm***, and ***Kaskela Law LLC***); 13-5 at ¶9 (Mr. Stefko filing a motion as part of a group assembled by ***Block & Leviton LLP***, ***Hagens Berman Sobol & Shapiro LLP***, and ***Bronstein, Gerwitz & Grossman, LLC***).  That is, Mr. Stefko filed a competing lead plaintiff motion against ***himself***.  Mr. Cui did the same.

This confounding reality confirms that both Mr. Stefko and Mr. Cui either: (1) knowingly allowed two different sets of lawyers to file competing motions; or (2) are completely unaware of who their counsel is, who their co-movants are, and essentially lent their name to a lawsuit.  *See generally Cendant*, 264 F.3d at 267 (noting that one of PSLRA's goals is to have "an ***engaged*** lead plaintiff actively supervise the conduct of the litigation").  Neither set of circumstances satisfies the threshold showing required by *Cendant*.  *Id.* at 266-67.  It also confirms that Messrs. Stefko and Cui's fellow group members as well as their combined ***eight law firms*** were not aware (or were unable to agree) on how Mr. Stefko and Mr. Cui's motions would ultimately be lodged with the Court.  Most relevant here,  these facts expose the lack of cohesion of either "group," and undermine

---

1394162, at \*3 (D. Nev. Mar. 20, 2014) (same); *In re Level 3 Commcn's, Inc. Sec. Litig.*, 2009 WL 10684924, at \*3 (D. Colo. May 4, 2009) (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*3 (D. Ariz. Apr. 7, 2008) ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

4820-2000-8637.v1

the *bona fides* of both the so-called Stefko Group and Cui Group, seemingly none of whom undertook the diligence required to discern or prevent this "blatant gaffe." *Syntax-Brillian Corp.*, 2008 WL 942273, at \*4-\*5 (groups' "lack of cohesion is **clearly evidenced** by the fact, mentioned above, that its initial motion included [a class member] as a member, even though [that same class member] had retained separate counsel and was soon filing competing motions of his own"); *Singer v. Nicor, Inc.*, 2002 WL 31356419, at \*2 (N.D. Ill. Oct. 17, 2002) (N.D. Ill. Oct. 16, 2002) (viewing movant's proclaimed "mis-communication" as a "more serious problem" because the movant's "unknowing retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts . . . that make it unsuitable to make decisions on behalf of the class"). If counsel and members of these groups cannot even keep proper track of their roster – which is not a particularly heavy lift at this early juncture in the case – how can they be relied upon to "function as an active agent for the class?" They cannot, which does "not bode well" for the Stefko Group or the Cui Group's ability to "lead this litigation." *Syntax-Brillian Corp.*, 2008 WL 942273, at \*4.

Furthermore, the oddity of filing competing motions against oneself confirms the "lawyer-driven" nature of the Stefko Group and the Cui Group.[4] These double motions are exactly the sort of red flags that have led courts presiding over recent PSLRA cases to discover a practice of shareholder plaintiffs being moved between and amongst different law firms, with clients never even being aware of the contours of their own lead plaintiff motions until after-the-fact.[5]

---

[4]   *See In re Atlas Mining Co. Sec. Litig.*, 2008 WL 821756, at \*5 (D. Idaho Mar. 25, 2008) ("The Atlas Investors appear to be purely lawyer-driven. Two of the members were members of another group, with different counsel, four hours prior to the filing of the Atlas Investors' motion."); *see also In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at \*9 (D.N.J. Sept. 7, 2007) ("In light of the course of events, the Court is unconvinced that Mr. Guzhagin was fully aware of the situation prior to selecting counsel or that he is sophisticated enough to lead the litigation as Mr. Berman has suggested to the Court. Accordingly, guided by *In re Cendant*, the Court finds that . . . *it was counsel who selected him*.").

[5]   *See, e.g.*, *In re: Omega Healthcare Investors, Inc. Sec. Litig.*, No. 1:17-cv-08983, ECF Nos. 28, 29, 29-2 (S.D.N.Y. Jan. 30, 2018) (revealing that a movant who filed two lead plaintiff motions, one

- 5 -

In sum, by filing competing motions against themselves, Mr. Stefko and Mr. Cui have provided *prima facie* evidence that the Stefko Group and the Cui Group are both "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," **and** that their members cannot "be counted on to monitor counsel in a sufficient manner." *Cendant*, 264 F.3d at 267.[6]  Their motions should be denied on that basis alone.

---

individually with one law firm and a second motion as part of a group with two other law firms, "never selected [the two other law firms] as his lawyers," and "did not know [that the two law firms] were filing a lead plaintiff motion on his behalf, let alone as part of any group"); *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 448-56 (D. Mass. 2018) (finding that "[n]o one at [law firm] ever spoke to [movant]," "or communicated with him directly . . . until" one year after motion was filed, when "the court expressed its intent to question [movant]" and detailing process by which lead plaintiff candidate submitted certification on referring law firm's website, which certification was then retrieved by a lawyer with a different law firm altogether, and then provided the certification to firm seeking status as lead counsel); *DeSmet v. Intercept Pharm. Grp., Inc.*, No. 1:17-cv-07371-LAK, ECF No. 51 (S.D.N.Y. June 1, 2018) (finding that the "litigation of these [lead plaintiff] motions has revealed behavior by some of the counsel that is unseemly if not worse and that clearly suggests to the undersigned that the counsel involved should not serve as lead counsel"); *see also In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012) (noting that "all signs point to the Fish Group having been recruited by one law firm, . . . and then transferred for reasons unknown to their present counsel").

[6]   The timing of both individuals' involvement with their namesake provides further indicia of the groups' fluid and lawyer-driven nature.  Mr. Stefko, who first executed a Certification and declared on May 5, 2020 under penalty of perjury that he "retains the firm of Kahn Swick and Foti, LLC" (ECF No. 5-3 at ¶1), went on to execute another Certification three days later on May 8, 2020, seemingly after speaking to one or more of the three firms that represent the Stefko Group.  *See* ECF Nos. 13-8, 13-5 at ¶15.  Then, the next business day, on May 11, 2020, Mr. Stefko again changed course – after a joint conference call with **all three law firms** – and decided that he would move in a group with the other members and counsel of the Stefko Group.  *See* ECF No 13-5 at ¶¶8, 12.  Mr. Cui's involvement with the Cui Group is no less troubling as it took him just four days from May 7, 2020, when he joined with the Wolf Haldenstein firm, to abandon the Cui Group without their knowledge (or the knowledge of the Cui Group's counsel) and to declare on May 11, 2020 that "I authorize the Rosen Law Firm, PA to file a lead plaintiff motion on my behalf." *Compare* ECF Nos. 8-4 at 6 *with* 9-4 at 5, ¶1.  What, if anything, did Mr. Cui learn about the Cui Group that made him choose to abandon it in favor of his now-withdrawn later-in-time motion (ECF No. 15)?

- 6 -

### 2. While the Stefko Group's Required Evidentiary Showing Confirms Its Lack of Cohesion, the Cui Group and the Inovio Investor Group Failed to Make *Any* Timely Showing

In enacting the PSLRA, Congress sought "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683. Thus, while the statute expressly permits a "group of persons" to serve as lead plaintiff (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), the Third Circuit held that, a "group is not entitled to presumptive lead plaintiff status *unless* it 'otherwise satisfies' Rule 23, which in turn requires that it be able to 'fairly and adequately protect the interests of the class.'" *Cendant*, 264 F.3d at 266.

As such, "when evaluating group plaintiffs, *movants must show their cohesiveness and independence from proposed counsel*, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'" *Takata*, 2018 WL 5801379, at *5; s*ee also Smith*, 206 F. Supp. 2d at 635 ("[T]o sustain a group of proposed lead plaintiffs, courts have established protocols to [e]nsure that the group will be effective . . . includ[ing] requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group."); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (holding "a proposed group must proffer an *evidentiary showing* that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs"); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) ("A proposed plaintiff group has the burden of showing that aggregation is appropriate."); *Micholle*, 2018 WL 1307285, at *5 ("Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class.").

"Among the factors to consider in determining whether [a group] will 'fairly and adequately' represent the interests of the class are: (i) whether the individuals in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." *Chao Sun*, 2015 WL 2364937, at *4 (citing *Cendant*, 264 F.3d at 266-67).

### (1)   Stefko Group

Recognizing its burden to satisfy its showing of the group's cohesion and ability to "'fairly and adequately represent the interests of the class," the Stefko Group submitted a joint declaration with its motion. *See* ECF No. 13-5. However, the Stefko Group's joint declaration confirms the group's lack of cohesion and unwieldiness:

***Cendant Factors 1 & 2 (No Pre-Existing Relationship)***. The Stefko Group does not have a meaningful pre-existing relationship among all of its members. To be clear, while "'the statute contains no requirement mandating that the members of a proper group be "related" in some manner,'" relatedness is nonetheless a factor that courts "'properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class."'" *Smith*, 206 F. Supp. 2d at 636 (quoting *Cendant*, 264 F.3d at 267-77). Here, the presence of a married couple (Mr. Lerma and Ms. Goya) or two friends (Mr. Ness and Mr. Dahlstrom) among their ranks does nothing to vitiate the lack of any pre-existing relationship between these pairs and the group's other four members. Accordingly, there is no basis for this Court to determine that the Stefko Group members have a pre-existing relationship that will enable all of them to collectively function cohesively.[7]

---

[7]   *See In re Opnext, Inc. Sec. Litig*., 2008 WL 11383411, at *2 (D.N.J. June 30, 2008) ("A 'cohesive group of two married couples' is insufficient . . . to establish cohesiveness – a meaningful relationship preceding the litigation that is capable of fairly and adequately representing the purported class's interests.") (citing *Cendant*, 264 F.3d at 266-67); *Markette v. XOMA Corp*., 2016 WL 2902286, at *8 (N.D. Cal. May 13, 2016) (declining to appoint a group where "there is no

- 8 -

Even courts that have taken a more permissive view on unrelated groups (in the absence of *prima facie* evidence of inadequacy such as the filing of a competing motion against oneself) have nonetheless required evidence of "***informed communication*** among the members as to forming a group [that] need only predate the motions for appointment as lead plaintiff." *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 416 (E.D. Pa. 2019).[8]  The Stefko Group claims that it has satisfied this burden by citing to a single conference call among most - but not all - of its six members that was held the day before its motion was filed.  *See* ECF No. 13-5 at ¶¶8-10.  The Stefko Group's description of its conference call, much like the rest of the joint declaration, reflects the "'vague discussions of general communication protocols and status reports hashed out over preliminary conference calls . . . [and] boilerplate plans for cooperation'" that numerous courts have held are insufficient to "establish that proposed group would work effectively and cohesively as lead plaintiff." *NIO*, 2020 WL 1031489, at *4 (collecting cases); *Stitch Fix*, 393 F. Supp. 3d at 836 ("The declaration allegations are conclusory and cursory, and indicate only that the group members . . . have exchanged a few calls and emails with each other since being introduced by their common lawyer.").[9]  Moreover, the Stefko Group's perfunctory reference to the one conference call (on

---

dispute that Xoma Group is composed of a married couple and two other unrelated individuals who have no pre-existing litigation relationship with the couple . . . if the Xoma Group were composed only of the married couple, the Court would aggregate their claims without concern"); *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *3 (C.D. Cal. Feb. 29, 2016) ("the Capstone Investor Group presents no evidence, other than the Ouellet brothers, that the four individuals – whose residence spans multiple states – should be presumed cohesive").

[8]   *See* also *Strougo v. Lannett Co., Inc.*, 2018 WL 6271802, at *6 (E.D. Pa. Nov. 30, 2018) ("They spoke on the phone ***before*** moving for lead plaintiff and discussed the lawsuit, their interest in serving jointly as lead plaintiffs, and their willingness to monitor proposed counsel.") (emphasis in original).

[9]   *See Nakamura*, 2018 WL 3217412, at *3 (denying motion by two brothers' investment vehicles because "[c]ourts have generally rejected such vague assurances as 'insufficient proof that a group of unrelated investors will be able to effectively manage the litigation'"); *Markette*, 2016 WL 2902286, at *7 (finding group's statements, like "their collective commitment to take an 'active role' in the case and to 'communicate regularly with counsel and each other regarding major litigation events,'"

- 9 -

4820-2000-8637.v1

which lawyers outnumbered non-lawyers) does little to establish that its members engaged in "informed" pre-motion communications.  A cohesive unit would have ferreted out any disabling conflicts among its members (*i.e.*, Joseph Stefko's decision to file competing motions with himself) if meaningful pre-motion communication had occurred.[10]

*Cendant Factor 3 (Created by Four Law Firms to Amass the Largest Loss)*.  The Stefko Group's lack of a pre-existing relationship coupled with the four law firms involved in its members' motions (the Stefko Group's three current law firms, and the separate counsel that Mr. Stefko retained on May 5, 2020), leaves little doubt as to how the group was formed or who cobbled them together.  *See generally Chao Sun*, 2015 WL 2364937, at *3-*4 (noting that the declarations "fail to indicate a pre-existing relationship" or that the individuals "even know each other" and stating that the court "takes issue with" whether "the group was created by the efforts of lawyers for the purpose

---

to be inadequate generalities); *Crihfield v. CytRx Corp.*, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) (denying group's motion because record did not "'contain any credible explanation for the group's creation'"); *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (finding statement that group would "'confer via phone and/or email as necessary'" to be "conclusory assurances" that "are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation"); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074-75 (W.D. Wash. 2011) (finding that declaration's "myriad conclusory statements and generalizations," such as group "'intend[s] to work closely together'" and will "'communicat[e], individually or as a group, with each other and with counsel,'" "have little or no substance and do not further the position of this otherwise unrelated group")

10    Although Mr. Williams' independent research suggests that Mr. Lerma is an attorney, the Stefko Group's members have not provided the Court with sufficient information about their backgrounds or sophistication to lead this case, which provides an independent basis to reject their motion. Indeed, while the Stefko Group acknowledges "the duty to represent the class, there is no evidence to suggest that they have the background or investment experience to effectively monitor the litigation." *See Chao Sun,* 2015 WL 2364937, at *4; *Clair v. DeLuca*, 232 F.R.D. 219, 226 (W.D. Pa. 2005) ("without disparaging the Glovers personally, there is no evidence that they are the type of sophisticated investor who can control a multi-million dollar class action"); *Markette*, 2016 WL 2902286, at *9 ("Apart from these generalities, the declaration says nothing about their level of sophistication, the structure of decision-making in their group, or whether the investors are the true movants as opposed to their counsel.  This kind of barebones declaration has been found insufficient in the past.").

- 10 -

of obtaining lead plaintiff status"). Moreover, it is equally clear that counsel created this amalgamation "'for the obvious purpose of creating a large enough grouping of investors to qualify as "lead plaintiff."'" *Cendant*, 264 F.3d at 267. After all, just three business days before signing with one of three firms that now represent the "Stefko Group," Mr. Stefko was concurrently proceeding as a sole lead plaintiff with a sole lead counsel. *Compare* ECF No. 5-3 (Mr. Stefko's Certification for his individual motion executed on May 5, 2020) *with* 13-8 at 2 (Mr. Stefko's other Certification executed on May 8, 2020). One business day later, he agreed to join with five other members brought together by the three separate law firms. ECF No. 13-5 at ¶8.12. As Judge Linares noted, it is clear "the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement." *Chao Sun*, 2015 WL 2364937, at *3. And that is why the Stefko Group exists, which means this third factor too militates against its adequacy.

Not only does the Stefko Group's joint declaration fail to explain why its six investors came together as a group, or what each member's unique qualifications are, there is no explanation what role two of its three law firms – Hagens Berman Sobol & Shapiro LLP or Bronstein, Gerwitz & Grossman, LLC – played in the formation of the group to date, nor does it mention the role these firms – which have not been disclosed in the signature block of the Stefko Group's papers – will play in the litigation going forward. The Stefko Group's silence on this point is deafening, leaving but one reasonable conclusion – the group was "brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff" and is "unlikely to 'fairly and adequately represent the class' because it is unlikely to engage in the litigation in a meaningful way at all." *Tsirekidze*, 2008 WL 942273, at *3. "[T]he clear implication is that [the Stefko Group members' four law firms], rather than the [group's members], are steering the litigation" and that the Stefko Group is exactly the lawyer-driven group "unbound by any allegiance to one another" that the PSLRA sought to prevent. *Id*. at *3-*4; *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 811

- 11 -

(N.D. Ohio 1999). And that is the reason why courts recognize that it would be inconsistent with the PSLRA "to allow a mélange of unrelated persons to serve as the lead plaintiff, especially if multiple law firms are to represent their interests" because "[s]uch a 'group' would be a 'lead plaintiff' in name only; in substance, those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole" and the "Court would be left with little assurance that the 'group' speaks with a collective voice." *Telxon*, 67 F. Supp. 2d at 811.

*Cendant Factor 4 (the Stefko Group Has Already Shown It is Too Large to Represent the Class)*. The PSLRA was enacted to encourage "party-driven – as opposed to lawyer-driven – litigation." *Takata*, 2018 WL 5801379, at *4. To that end, "a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999). The Third Circuit as well as the SEC recognize that any group that has more than five members is presumptively unwieldy and therefore inadequate. *Id.*; *Cendant*, 264 F.3d at 267 (holding that "[c]ourts must also inquire whether a movant group is too large to represent the class in an adequate manner" and "agree[ing] with the Securities and Exchange Commission that courts should generally presume that groups with more than five members are too large to work effectively"). Already at the outer limit, the Stefko Group has bootstrapped Ms. Goya with Mr. Lerma. Indeed, Ms. Goya purports to have "granted" Mr. Lerma, "full power and authority to take legal action" on her behalf, thereby allowing the Stefko Group's lawyers to claim that the Stefko Group falls within the presumptive limit. ECF No 13-7 at ¶3. However, as Ms. Goya and Mr. Lerma make clear in their "Joint Certification," the lead plaintiff motion is made "on *our* behalf" *Id*. at ¶1. This machination does nothing to bring the Stefko Group into compliance with the Third Circuit's presumptive limit. Rather, it only further confirms the lawyer-driven nature of the Stefko Group's lead plaintiff application.

- 12 -

### (2)   The Inovio Investor Group

The lead plaintiff application of the self-described Inovio Investor Group – comprised of a gemologist from Beverly Hills, a day-trader from Brooklyn, an IT security specialist from Texas, an engineer from Connecticut, and a bedding-store employee from Long Island  – fares little better. The artificial construct dubbed the "Inovio Investor Group" does not even attempt to meet its burden of providing an evidentiary showing that its members are jointly capable "'fairly and adequately protect the interests of the class.'" *Cendant*, 264 F.3d at 266.  While courts within this Circuit vary on exactly what is required to "make a threshold showing of typicality or adequacy," (*id.* at 267), it is beyond cavil that the members of the Inovio Investor Group have not made *any* showing demonstrating their ability or willingness to work together. [11]  Not only does the group fail to claim any pre-existing relationship between its members or plans for cooperation, it is unclear whether the group's members even spoke to each other at all before the filing of their lead plaintiff motion.[12] And, as the Inovio Investor Group's counsel themselves recently recognized, "'[f]ail[ure] to include any facts in  [a group's] *moving brief* detailing the relationship between the plaintiffs that comprise

---

[11]   *See In re Level 3 Commc'ns, Inc. Sec. Litig*., 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) (finding proposed lead plaintiff group "ha[d] not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel"); *Parnes v. Digital Lightwave, Inc*., 1999 WL 33733551, at *15 (11th Cir. Aug. 25, 1999) ("To enable the court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning.") (SEC amicus curiae brief); *In re Waste Mgmt., Inc. Sec. Litig*., 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) ("[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff")

[12]   From what little can be gleamed from the group's lead plaintiff papers, for example the fact that two of its members executed their PSLRA Certifications on May 11 and May 12 (the date of the lead plaintiff deadline) while the three others executed theirs between April 17 and April 20, it appears that this is the exact type of fluid and makeshift group that the Third Circuit warns against. *Takata*, 2018 WL 5801379, at *4-*6; *Smith*, 206 F. Supp. 2d at 636-37; *Stires*, 2018 WL 5784817, at *5-*6.

- 13 -

4820-2000-8637.v1

the group . . . could, by itself, be a basis for denying lead plaintiff status.'" *Montesano v. Eros Int'l PLC*, No. 2:19-cv-14125-JMV-JAD, ECF No. 13 at 7 (D.N.J. Sept. 3. 2019) (quoting *Takata*, 2018 WL 5801379, at *5). Given its failure to make a timely evidentiary showing, the Court is unable to determine that the Inovio Investor Group is able to fairly and adequately protect the class.

### 3.   The Inconsistencies in the Cui Group's Certifications Further Expose Its Inadequacy

Like the Inovio Investor Group, the Cui Group has failed to satisfy the showing required of it under *Cendant* that its members are capable of fairly and adequately protect the class. But even if they had, inconsistencies in their members' Certifications would call any such showing into question.

For one, Hao Cui's sworn PSLRA Certification filed with the Cui Group (*see* ECF No. 8-4 at 7) states – under penalty of perjury – that he purchased 13,000 shares, while the loss chart filed with his second motion (*see* ECF 9-5 at 8) indicates he purchased 21,000 shares. Mr. Cui's sworn statements – like his two motions – are self-contradicting and obviously cannot both be true. Assuming there was a basis for including the additional 8,000 shares in Mr. Cui's later-in-time motion, the Certification that he filed with the Cui Group is incomplete.

Mr. Cui's co-movant, The Sal Isabella Retirement Plan, also appears to have a defect in its Certification. The Plan's sworn PSLRA certification represents that the entity sold 7,000 shares of Inovio common stock on March 6, 2020 at a price of $6.18 per share. *See* ECF No. 8-4 at 5. That representation to the Court is called into question by the fact that the price for this claimed transaction falls outside of the daily trading range for Inovio's common stock on March 6, 2020, which traded at a daily low price of $10.68 and a daily high price of $16.00. *See* Exhibit 1, attached hereto. Assuming these are in fact errors in the Cui Group's sworn Certifications filed under penalty of perjury, the group's inability to even file a basic certification that accurately reflects its transactions in the securities at issue is – at best – indicia it lacks the requisite sophistication and care

- 14 -

to be placed in a position of trust as a fiduciary to absent class members. *See Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) ("Even if [movant] had the largest financial interest in this action, I find that '[t]he certification errors in [movant's] submissions "militate against appointment and render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement."'"); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant, finding that "[a]lthough Meitav submits that this clerical error was a 'minor defect[ ],' . . . this error 'nonetheless speak[s] to a level of carelessness,' and causes me 'to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff'").

### 4. The Court Should Decline Any Post Hoc Invitation by Counsel to Break Up the Groups and Appoint Its Members Individually

If the Stefko Group, Cui Group, or any of their members are determined to be inadequate or atypical, this Court should decline any invitation to realign the group or to consider appointing group members in an individual capacity. *See Syntax-Brillian Corp.*, 2008 WL 942273, at *4 ("At one point, the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff. . . . We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such.").[13] Rather, counsel's and/or competing movants' "willingness to abandon the group only suggests how loosely it was put together," would provide yet

---

[13]   *See Kinney*, 2016 WL 5341948, at *3 ("under the plain text of the statute, the Court can only consider the individual that has filed the complaint or made the motion. Here, that entity is the Capstone Investor Group, not Van Fossen."); *Level 3*, 2009 WL 10684924, at *5 ("courts confronted by a request to appoint only one individual out of an otherwise inadequate group in order to salvage lead plaintiff status have declined to do so and, instead, considered the qualifications of the movant with the next largest financial interest"); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of representation."); *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) ("Because Mr. Webb did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Abouzied*, 2018 WL 539362, at *5 ("Neither Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff. Therefore, the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.").

another independent basis to find that the group is lawyer-driven and lacks cohesion. *Id. See also Takata*, 2018 WL 5801379, at *5 n.5 (noting that group asserted in a reply brief that one individual "has the largest loss of any individual movant" and finding that "[t]his belated offer to break apart the group and request Lee as lead plaintiff does not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated Lee Movants' efforts").[14]

### B. The Stefko Group and the Inovio Investor Group Are Subject to Unique Defenses as a Result of Their March 9, 2020 Purchases

Another barrier that precludes the Stefko Group and the Inovio Investor Group from leading this case is that they are subject to serious unique defenses as a result of purchasing a disproportionately large amount of their Inovio shares on March 9, 2020, after *they* maintain that the full truth was revealed to the market (but before the market had time to absorb the news).

As many courts have held, "post-disclosure purchases may defeat an investor's attempt to utilize the fraud on the market presumption, such as when a disproportionately large percentage of the investor's purchases are made *after* a curative disclosure." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204 n.13 (E.D. Pa. 2008) (emphasis in original).[15]   And, "where unique defenses are asserted . .

---

[14]   *See Isaacs v. Musk*, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) ("The Court acknowledges TIG's suggestion that the group may be broken apart if the Court has concerns about any specific member. But that suggests that the group is artificial and should not have been brought in the first place."); *Abouzied*, 2018 WL 539362, at *5 ("courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff"); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) ("[T]he Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate."); *Apple v. LJ Int'l Inc.*, 2008 WL 11343371, at *4 (C.D. Cal. Feb. 8, 2008) (noting that two individuals within a larger group were "'willing to serve as a lead plaintiff either individually or as part of a group'" but that such "assertions hardly persuade the Court that they, as opposed to counsel, would be directing this litigation" and considering movant with next largest financial interest).

[15]   *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) ("[a] named plaintiff who has engaged in a post-disclosure purchase is subject to the defense that the alleged misstatements or omissions were really not a factor in the purchasing decision but rather that other investment considerations drove the decision"); *Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (affirming decision that plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its

- 16 -

. 'whether these defenses will be successful is of no matter.  The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.'" *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 456 (S.D. Tex. 2002).

Here, the Stefko Group's proposed lead counsel alleged in the initial complaint filed in this action (while it was representing a different individual) that defendants' misstatements were exposed by Citron Research "[o]n March 9, 2020, ***before trading commenced***."  ECF No. 1 at ¶6.[16]  The Citron statement is the only loss causation event alleged in the complaint or referenced in the Stefko Group or the Inovio Investor Group's lead plaintiff papers.[17]  Both the Stefko Group and the Inovio

---

continued purchases of [securities] through [defendant] despite having notice of, and having investigated, the alleged fraud"), *abrogated on other grounds by Microsoft Corp. v. Baker*, _U.S. _, 137 S. Ct. 1702 (2017); *Rocco v. Nam Tai Elecs., Inc*., 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("[T]his Court has consistently held that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative.'").

[16]   *See also id*. at ¶¶25-26 ("The Truth Emerges" section alleging the Citron Research tweet as the sole corrective disclosure in the case); *id.* at ¶¶37-38 ("Loss Causation" section alleging that "On March 9, 2020, following the publication of a Tweet by Citron Research challenging the veracity of Inovio's claims about its COVID-19 vaccine, shares of Inovio fell from a high of $19.36 per share on March 9, 2020, to close at $5.70 on March 10, 2020.").

[17]   Despite considerable inquiry, Mr. Williams' prosecution team has been unable to verify the accuracy of: (1) the allegation in the complaint that the Citron Research news was first published "***before trading commenced***" on March 9, 2020 (as opposed to ***after*** trading had commenced on March 9); and (2) the assertion in the Stefko Group's opening brief, which, citing the complaint, states that Inovio's statement about designing "a vaccine construct" was made on March 10, 2020 (as opposed to on March 9).  *See* ECF No. 13-1 at 2 ("In a message to shareholders on March 10, 2020 . . . .").  Notably, a derivative case presently before this Court mimics a large subset of the language of the initial complaint here with the exception of the two above-mentioned allegations, which are pled in a manner that accords with Mr. Williams' investigation.  *Beheshti v. Kim*, No. 2:20-CV-01962-GJP, ECF No. 1 at ¶9 (E.D. Pa. Apr. 20, 2020) ("The truth emerged ***during the day*** on March 9, 2020, when Citron Research . . . .); *id.* at ¶10 ("***That same day***, the Company posted a statement on its own Twitter account attempting to downplay Citron's claims.")

Mr. Williams, of course, accepts these allegations – which do not affect his financial interest or his typicality – as true while reserving his rights to modify them in an amended complaint.  If, however, these allegations were errors by the Stefko Group's proposed lead counsel – which Mr. Williams assumes would immediately be brought to the Court's attention and rectified by the filing of an amended complaint – that should serve as another basis to question the adequacy of the Stefko

- 17 -

Investor Group purchased the majority of their shares on March 9, 2020, after the time that *they themselves asserted (or accepted) that the sole curative statement was already published*.

| Movant | Total Shares Purchased | Shares Purchased on 3/9/2020 | Percentage Purchased on 3/9/2020 |
|---|---|---|---|
| Stephen Brockway, M.D. | 143,000 | 43,000 | 30.07% |
| Dwayne Lerma | 45,301 | 29,800 | 65.78% |
| Jo Anne Emi Goya | 55,177 | 41,176 | 74.63% |
| Mr. Lerma & Ms. Goya Joint | 101,712 | 67,000 | 65.87% |
| Scott E. Dahlstrom | 31,000 | 25,000 | 80.65% |
| Joseph Stefko | 33,380 | 33,380 | 100.00% |
| Kenneth C. Ness | 15,500 | 15,500 | 100.00% |
| **Stefko Group Total** | **425,070** | **254,856** | **59.96%** |
| Gerard Candeloro 1 | 28,500 | 22,500 | 78.95% |
| Gerard Candeloro 2 | 30,500 | 15,000 | 49.18% |
| Arian Eskandari | 4,607 | 4,607 | 100.00% |
| Jerry Qu | 4,000 | 4,000 | 100.00% |
| Shahzad Riasat | 54,781 | 23,118 | 42.20% |
| Mark Ramkishun | 3,230 | 2,865 | 88.70% |
| **Cui Group Total** | **125,618** | **72,090** | **57.39%** |

Both groups' post-disclosure purchases subject them (and therefore any class that they are appointed to represent) to a unique reliance defense which threatens to sidetrack the litigation and deflect the focus of the litigation to the timing of each member's post-disclosure purchase to determine whether each putative class representative was aware of the Citron statement at the time the purchase was made. *See In re Snap Inc. Sec. Litig*., 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (disqualifying two lead plaintiff movants who made post-disclosure purchases, holding that 60% constitutes "a disproportionately large percentage of [first movant's] stock" and holding that "whether 15% is a disproportionately large percentage of the [second movant's] stock could be the focus of litigation were the [second movant] to be appointed lead plaintiff").

---

Group, whose members' typicality and financial interest may hinge on the timing of the March 9, 2020 corrective disclosure at issue. *See* n.18, *infra*; *Tomaszewski*, 383 F. Supp. 3d at 414-15 (agreeing with the Stefko Group's proposed lead counsel and finding that "the errors in [a competing movant's] sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class" "[p]articularly given that these errors were made at the outset of the case").

- 18 -

4820-2000-8637.v1

It makes little sense to expose class members to the costs and risks associated with this unique defense, where, as here, Manuel S. Williams – who did not purchase any shares on March 9, 2020 and would thus insulate the class from such diversions – stands ready and willing to faithfully serve as Court-appointed PSLRA lead plaintiff.[18]

### C.   The Presumption of "Most Adequate Plaintiff" Which Lies in Favor of Mr. Williams Cannot Be Rebutted

Because the movants who claim a larger financial interest do not satisfy the PSLRA's requirements, the Court must "repeat this process until a presumptive lead plaintiff is identified."

---

[18]   If these March 9, 2020 purchases are removed from movants' financial interest calculations, Mr. Williams has, by far, the largest financial interest of any movant.  Doing so would be consistent with the nearly 25 years of PSLRA jurisprudence during which time Mr. Williams' counsel is unaware of any courts counting purchases made after the final corrective disclosure alleged in a complaint (or, at a minimum, a movant's lead plaintiff papers), when determining movants' respective financial interests.

| Movant | LIFO Gain/(Losses) |
|---|---|
| **Manuel Williams** | **($187,154.63)** |
| Joseph Stefko | $0.00 |
| Stephen Brockway, M.D. | ($78,206.82) |
| Kenneth C. Ness | $0.00 |
| Jo Anne Emi Goya | $6,797.96 |
| Dwayne Lerma | $10,226.20 |
| Mr. Lerma & Ms. Goya Joint | $11,809.33 |
| Scott E. Dahlstrom | ($4,012.12) |
| **Stefko Group Total** | **($53,385.45)** |
| | |
| Gerard Candeloro 2 | ($29,667.00) |
| Gerard Candeloro 1 | ($14,089.00) |
| Arian Eskandari | $0.00 |
| Jerry Qu | $0.00 |
| Mark Ramkishun | ($465.56) |
| Shahzad Riasat | $15,874.79 |
| **Inovio Investor Group Total** | **($28,346.77)** |
| | |
| The Sal Isabella Retirement Plan | $29,470.00 |
| Sal Isabella | $30,101.95 |
| Hao Cui | ($99,950.00) |
| **Cui Group Total** | **($40,378.05)** |

- 19 -

*Cendant*, 264 F.3d at 267. With losses over $187,000, Mr. Williams, who is represented by a single lead counsel, James E. Barz of Robbins Geller Rudman & Dowd LLP and a single local counsel, Lawrence F. Stengel of Saxton & Stump, is that movant.

Aside from having the largest financial interest of any remaining movant, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, Mr. Williams must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). There is no question that Mr. Williams satisfies these requirements. *See* ECF No. 12-1 at 4-7. Indeed, "[o]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against Mr. Williams' appointment. *Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (disqualifying three artificial groups with combined financial interests between $155,000 and $300,000 and appointing single movant with $28,800 loss despite the fact that it did not suffer the greatest financial interest because it "is the first [movant] to meet [the PSLRA's] standards").[19]

Moreover, Mr. Williams has provided the Court with a Declaration setting forth his ability and willingness to serve as a lead plaintiff, setting forth his 15 plus years of investing experience, his prior experience in hiring and overseeing counsel, his understanding of lead plaintiff duties, and his diligence in selecting counsel, particularly his renewed assessment of Robbins Geller's qualifications despite his long-standing familiarity with the Firm based upon its $7.2 billion recovery in *Enron*. *See* ECF 12-6. Mr. Williams is the exact type of judicious and diligent lead plaintiff envisioned by the PSLRA.

---

[19]   *See Stitch Fix*, 393 F. Supp. 3d at 836 *(*disqualifying three movants, including two artificial groups claiming losses up to $755,721.23, declining to disaggregate groups, and instead appointing fourth place individual investor with $115,380 claimed loss, agreeing that "he is essentially the last man standing" and "'the only movant that meets all of the PSLRA's requirements'").

4820-2000-8637.v1

**D.    The Remaining Movants Do Not Qualify for the PSLRA's Presumption**

The remaining movants claim smaller losses than Mr. Williams.  Consequently, the Court cannot consider their motions unless the presumption in favor of appointment of Mr. Williams as lead plaintiff is rebutted.  *See Cendant*, 264 F.3d at 268.  Accordingly, because Mr. Williams is willing to serve and satisfies Rule 23's requirements, the competing motions should be denied.

## III.    CONCLUSION

None of the competing movants satisfy *all* of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, their motions should be denied.

Respectfully submitted,

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL

280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for [Proposed] Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
WILLIAM J. EDELMAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
wedelman@rgrdlaw.com

4820-2000-8637.v1

- 22 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
MICHAEL ALBERT
West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

4820-2000-8637.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 29, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LAWRENCE F. STENGEL
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)

E-mail:  lfs@saxtonstump.com

4820-2000-8637.v1

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **LEE ALBERT**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **SHANON J. CARSON**
  scarson@bm.net,ECF@bm.net,crmariney@bm.net

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,tstires@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com

- **MARK C. RIFKIN**
  rifkin@whafh.com

- **BRETT DAVID STECKER**
  brett@shumanlawfirm.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,gas@saxtonstump.com

- **JOHN K. WESTON**
  jweston@sackslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
PETER           M. ADAMS
COOLEY LLP
4401 EASTGATE MALL
SAN DIEGO, CA 92121

CRAIG           E. TENBROECK
```

COOLEY LLP
4401 EASTGATE MALL
SAN DIEGO, CA 92121