**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK MCDERMID, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INOVIO PHARMACEUTICALS, INC., and J. JOSEPH KIM, <br><br> Defendants. | Case No. 2:20-cv-01402-GJP |

**THE INOVIO GROUP'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF THE INOVIO GROUP'S MOTION FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND SELECTION OF COUNSEL**
**AND IN OPPOSING THE MOTION OF MANUEL S. WILLIAMS**

**INTRODUCTION**

Recognizing that the Inovio Group has the largest financial interest, and is otherwise typical and adequate, all other competing movants have either withdrawn their motions or filed a non-opposition to the Inovio Group's Motion, except for Manuel Williams.

Williams, whose losses are dwarfed by those of the Inovio Group[1] – both as a group and by four of its members *individually* – submits an opposition that is long on speculation, innuendo, and rhetoric, but lacks the necessary "***proof***" to rebut the presumption of the Inovio Group's adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Instead, he offers allegations, and "[a]llegations are not proof . . . . If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations." *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3d Cir. 2001).

Plus, Williams disingenuously claims that purchases made by the Inovio Group's members on March 9, 2020 should not be considered as part of their losses even though: (1) the operative *McDermid* complaint defines the class period to include purchases made on March 9; (2) Williams' own counsel issued *three* notices to the class advising it that the class period includes purchases made on March 9[2]; (3) Williams' own lead plaintiff motion recognizes that the period includes purchases made on March 9; and (4) courts uniformly refuse to shorten a class period at the lead plaintiff stage. Williams' argument is an artifice and utterly baseless.  Tellingly, Williams himself

---

[1] Collectively, the Inovio Group lost almost $1.3 million compared to Williams' loss of under $200,000. Four of the five members of the Inovio Group lost more than did Williams: Dr. Brockway ($405,000); Lerna ($305,000); Dahlstrom ($241,000) and Stefko ($213,000).

[2] *See*, *e.g.*, *Notice of Plaintiff Deadline for Shareholders in the Inovio Pharms. Inc. Securities Class Action Lawsuit*, Yahoo, https://finance.yahoo.com/news/notice-lead-plaintiff-deadline-shareholders-130000094.html (March 26, 2020); *Notice of Lead Plaintiff Deadline for Shareholders in the Inovio Pharms., Inc. Securities Class Action Lawsuit*, MarketWatch, https://www.marketwatch.com/press-release/notice-of-lead-plaintiff-deadline-for-shareholders-in-the-inovio-pharmaceuticals-inc-securities-class-action-lawsuit-2020-04-15 (April 15, 2020); *Notice of Lead Plaintiff Deadline for Shareholders in the Inovio Pharms., Inc. Securities Class Action Lawsuit*, https://finance.yahoo.com/news/notice-lead-plaintiff-deadline-shareholders-130000637.html (May 4, 2020).

even concedes that purchases made on March 9, 2020 are properly included in the class period. *See* Williams' Opp. at 17 n.17 (ECF No. 31) (hereinafter, "Opp.").

## ARGUMENT

## I.    The Inovio Group Is A Proper Group Under Third Circuit Law

Williams disingenuously asserts that the lack of a "pre-existing relationship" disqualifies the Inovio Group. Opp. at 8-10. He relies on *The EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 444-45 (W.D. Pa. 2001), to argue that lead plaintiff group movants are "strongly disfavored" under the PSLRA (Opp. at 3), but misleadingly ignores that ***after*** the *Rent-Way* decision, the Third Circuit issued its decisive ruling in *Cendant* in which it expressly "disagree[d] with those courts that have held that the statute invariably precludes a group of 'unrelated individuals' from serving as lead plaintiff." *Cendant* at 266-67.[3]

### A.    The Pre-Filing Call Meets The Requirements to be a Proper Group

Williams erroneously claims that the Inovio Group is not a proper group despite conducting a joint pre-filing call, because the it did not engage in what Williams' calls "***informed communication***." Opp. at 9 (emphasis in original). He wrongly claims that the group merely engaged in "vague discussions of general communication protocols and status reports." *Id.* That is precisely the difference between proof – which is required – and allegations. To the contrary, the group "thoroughly discussed the respective responsibilities of counsel and lead plaintiff, asked questions regarding the case and its possible resolution, incorporated a method of decision-making during the course of litigation, exchanged contact information with each other, and ultimately committed themselves to the zealous prosecution and oversight of the case." *Tomaszewski*

---

[3] Annexed to Declaration of Michael C. Dell'Angelo as Ex. A is a chart identifying the over 40 times Williams' own counsel, as of 2018, advocated that a group of investors be appointed as lead plaintiff under the PSLRA.

*v. Trevena, Inc.*, 383 F. Supp. 3d 409, 416 (E.D. Pa. 2019) (joint call supported a finding that a group was a proper lead plaintiff). *See also West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-67631, 2014 WL 1395059, at *7-8 (E.D. Pa. Apr. 10, 2014) (appointing a group and aggregating their losses when the group submitted a joint declaration following a joint conference call laying out the "duties and obligations" of the group (citing *Cendant*, 264 F.3d at 262)); *Aguilar v. Vitamin Shoppe, Inc.*, No. 17-cv-6454, 2018 WL 1960444, at *10 (D.N.J. Apr. 25, 2018) (appointing a group, aggregating their losses, and citing numerous cases that did the same).

The joint declaration and discussions found sufficient in *Tomaszewski* are virtually identical to those of the Inovio Group. (*Compare* ECF No. 13-5, *with* Joint Declaration in *Tomaszewski* attached hereto as Exhibit A.) Here, the group members discussed:

- Working with their specific lawyers from Block & Leviton;

- that they "carefully considered the merits of this action and [their] respective losses, [that they] reviewed the filed complaint and discussed the merits of the case and our losses with our counsel."

- "their primary responsibilities will be overseeing Lead Counsel to ensure that the litigation is handled efficiently, *and that the resulting fees and expenses are fair and reasonable*, relative to the size, complexity, and risk of the litigation;"

- "exercis[ing] joint decision making and to work together if appointed in this action to fairly and adequately protect the interests of the Class [and to] have at least quarterly calls with counsel to discuss the status of the litigation and ensure its proper prosecution. [They] will have additional calls as events and circumstances in the litigation may warrant. [They] have selected Lead Counsel in this action based upon their experience and resources, and [they] are confident in [their] ability to work with [their] counsel to protect the interest of the Class";

- They each have their respective contact information so that they can meet and discuss outside the presence of counsel;

- They discussed their specific roles in overseeing the case and counsel's role. ECF No. 13-5.

3

The Inovio Group is therefore a proper group and its losses may be aggregated. *Tomaszewski*, 383 F. Supp. 3d at 416-17.

Finally, and importantly, each group member separately and independently decided to be a lead plaintiff and join a group *before* the Lead Plaintiff motion was filed. This is a far cry from the cases relied on by Williams, where the clients did not meet and agree to act together *before* the lead plaintiff motion was filed. In *Takata v. Riot Blockchain, Inc.*, No, 18-2293, 2018 WL 5801379, at *4-6 (D.N.J. Nov. 6, 2018), and *Stires v. Eco Science Solutions, Inc.*, No. 13-3707, 2018 WL 5784817, at *5-6 (D.N.J. Feb. 14, 2018), the group movants failed to submit a joint declaration with their lead plaintiff motion, belatedly filed a joint declaration with supplemental briefing, ***and failed to have any pre-filing communication with each other***. *See Takata*, 2018 WL 5801379, at *5 ("the members of the group had never communicated before their counsel submitted the joint motion on their behalf"); *Stires*, 2018 WL 5784817, at *5 (focusing on the absence of pre-filing communication, and that the first apparent joint call was held *after* lead plaintiff motions were filed).[4]

### B.     The Group Is a Proper Size

Williams' claim that the group is "too large" is baseless. Again, as this Court found in *Tomaszewski* the fact that the Group is at the quantitative limit "does not rebut the presumption" of adequacy. 383 F. Supp. 3d at 415. Williams stretches mightily to claim the group is really six

---

[4] *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002) is inapt. There the group movant did "not assert all of the claims or legal theories of the purported class," having only alleged violations of the Securities Exchange Act of 1934 and none under the Securities Act of 1933, because its members did not have standing to pursue such claims. *Id.* at 637-38. The court focused on this issue, noting that "[i]t may well be that [the group movant] does not have the same qualitative incentive to pursue the Securities Act claims as those who were directly injured in the Secondary Offering because only the secondary purchasers will benefit from any recovery from the underwriters." *Id.* This is obviously not an issue here, where only Exchange Act claims are present. *In re Opnext, Inc. Sec. Litig.*, No. 08-cv-920, 2008 WL 3285732 (D.N.J. Aug. 7, 2008), is similarly unavailing. There, the group movant's "losses are mostly attributable to [one of its member's] day trading of Opnext stock, buying and selling those shares within a short period of time. . . . Day trading is not commensurate with the manner in which the typical class member sustained alleged losses." *Id.* at *3. No such issue exists with the Inovio Group.

because Mr. Lerma's wife, Ms. Goya, granted him the authority to bring this case involving their joint investment account so the group is really six and not five. This contention is absurd.

### C.      The Group is Adequate

Williams further claims that because two Lead Plaintiff motions – one individual and one as a member of the Inovio Group – were filed on behalf of a member of the Inovio Group, Joe Stefko, not only is Stefko inadequate, but so too are all the other members of the Inovio Group.[5] That is not a recognized basis to disqualify the entire Inovio Group, as Williams' telling lack of authority confirms. As soon as he learned his individual motion for lead plaintiff appointment was filed, Stefko immediately requested that it be withdrawn, which it promptly was. ECF No. 14. Even if this Court were to find that Stefko's filing two lead plaintiff motions due to his zeal to be a lead plaintiff and recoup losses on behalf of himself and the class somehow disables *him*, that should not punish (nor does it disable) the other members of Inovio Group. As discussed in the Inovio Group's opposition brief, courts do not hold the finding of one group member's inadequacy against the rest of the group; instead, courts simply remove the member found to be inadequate. ECF No. 13-1 at 7 n.9. Indeed, this Court can *sua sponte* strike members from a group and appoint the remaining group members as Lead Plaintiff, just as the District of New Jersey did in *In re Nice Systems Securities Litigation*, 188 F.R.D. 206, 221 (D.N.J. 1999), the only in Circuit decision cited by any movant on point.[6]

---

[5] Williams' criticism that the other members of the Group should have "ferreted this out" is baseless as no other member had any reason to expect that, after expressing his desire to work together with the other group members and retain Block & Leviton as Lead Counsel, that another firm would file a motion on Stefko's behalf. That that motion was promptly withdrawn is itself telling.

[6] Williams overstates *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *3-4 (D. Ariz. Apr. 7, 2008). There, the principle reasons the court denied the lead plaintiff motion were (1) the individual was "a high-volume day trader;" and (2) the then-existing law in the Ninth Circuit disfavoring aggregation of individuals as lead plaintiffs under the PSLRA. Williams' reliance on *In re Vonage Initial Public Offering (IPO) Securities Litigation*, No. 07-cv-177, 2007 WL 2683636, at *9 (D.N.J. Sep. 7, 2007), is similarly misplaced. There, the individual at issue, who did not move as part of a group, had not spoken to counsel before receiving a solicitation from them, his PSLRA

Ironically, Williams himself provides scant information about how *he* will oversee his counsel and act as a proper lead plaintiff. First, Williams does not even identify which lawyer, among the more than 200 lawyers at his counsel's firm, Robbins Geller Rudman & Dowd, with whom he spoke. This Court has no basis upon which to conclude that Williams spoke with any of the lawyers who will be working on this case. And if Williams has not spoken with them, how could he possibly represent to the Court that he can work with them and oversee them? Second, he generically claims he will "review and comment on important documents," without ever offering a hint that he even knows what those important documents are. ECF 12-6 ¶ 7.

Critically, Williams provides not a scintilla of information as to how he will fulfill his fiduciary obligations to the Class. He does not articulate how frequently he will be in contact with his counsel or even how his counsel will keep him abreast of litigation events. Tellingly, he says nothing about attorneys' fees or expenses, whether he even inquired about them, or how he will oversee this issue that impacts not only him but the entire Class of investors. The *Cendant* court found that "one of the best ways for a court to ensure that [the presumptive lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and *to negotiate a reasonable retainer agreement with counsel*." *Cendant*, 264 F.3d at 265 (emphasis added). Williams, it appears, has not even attempted to negotiate a retainer agreement and appears to have just acquiesced to his lawyers' dictates as to the terms thereof.

---

certification was not fully signed and contained incorrect trading data and loss calculations, and that individual refused to produce brokerage statements. *Id.* at \*7. *Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441, 448-56 (D. Mass. 2018), is also wide of the mark. There the Court found that no one at the proposed lead counsel firm ever spoke to the lead plaintiff movant "or communicated with him directly, until" one year after the lead plaintiff motion was filed.

Accordingly, with or without Stefko, the Inovio Group is proper under the PSLRA[7].

**II.    The Court Must Consider All Class Period Purchases for Purposes of Determining Losses at this Stage of the Proceedings**

Williams contends that because the *McDermid* complaint alleges that the Citron Research report was issued before the market opened on March 9, 2020, the Inovio Group cannot count its losses from trading on March 9, 2020. Apparently, recognizing that he can win only by arbitrarily limiting the Inovio Group's losses, Williams attempts – without any factual or legal support – to rewrite the class period. Opp. at 16-19. Williams' argument about the Inovio Group's March 9, 2020 purchases is spurious. The class period alleged in the operative *McDermid* complaint is for those who purchased common stock "between February 14, 2020 and March 9, 2020, *inclusive*." ECF No. 1 ¶ 1 (emphasis added).

Indeed, Williams' own lawyers published *three* notices to Inovio investors advising them that the class period includes those who purchased common stock through March 9, 2020,[8] and Williams references that date in his motion. ECF No. 12-1. It is disingenuous for Williams to now claim that purchases made on March 9, 2020 do not count. As acknowledged by Williams, the complaint pleads that it took two days for the market to incorporate any corrective disclosures. Opp. at 17 n.16.

The law on this point is clear: "it [is] generally inappropriate to narrow the class period at this [lead plaintiff selection] stage of the litigation. Narrowing the class period is more appropriate at a later stage of the litigation, with participation from the Defendant[s]." *In re BP, PLC Sec.*

---

[7] The Inovio Group's losses without Stefko are approximately $1.1 million, almost six times larger than Williams' losses.

[8] Williams' takes a cheap shot claiming that the Inovio Group's counsel is inadequate for alleging that the Citron Report was issued before the opening of trading on March 9. Williams' counsel made the same error in each of the three press releases they issued to the class, advising class members that the Citron Report was issued before trading commenced on March 9, 2020.

*Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010).[9] Under this well-established rule, the Court is to use the class period as alleged in the *McDermid* complaint, and noticed to the class, which runs through and includes purchases made on March 9, 2020. ECF No. 1 ¶ 1. The Inovio Group's purchases on March 9, 2020 are therefore not "post-disclosure purchases," and appropriately included in the calculation of losses for purposes of lead plaintiff selection. [10]

Illustrating this point is the fact that trading in Inovio stock on March 9, 2020 swung wildly: shares opened at an all-time high of $18.90 per share after closing at $14.09 per share on Friday, March 6. Shares sold for as high as $19.36 each before falling to a low of $8.53 per share during

---

[9] *See also In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2019 WL 6052399, at *3 (N.D. Ill. Nov. 15, 2019) (same); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (lead plaintiff analysis should utilize the most inclusive class period because "it encompasses more potential class members" and noting that narrowing the class period, if appropriate at all, should be done at a later stage in the litigation); *Miller v. Dyadic Int'l, Inc.*, No. 07-cv-80948, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) (finding that "the longest, most-inclusive class period is appropriate at this stage in the litigation because 'it encompasses more potential class members'" (quoting *Doral*); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (applying the longest class period and noting that courts usually "use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period" (citing *Miller*, 2008 WL 2465286, at *4; *Doral*, 414 F. Supp. 2d at 402-03)); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants.") Notably, Williams' counsel, Robbins Geller, has recognized this exact point in other lead plaintiff briefs they have filed within the Third Circuit. *See*, *e.g.*, *Roby v. Ocean Power Techs., Inc.*, No. 14-cv-3799, ECF No. 13 at 4 n.1 (D.N.J. Aug. 13, 2014) (Dell'Angelo Decl. Ex. B); *In re Wilmington Trust Sec. Litig.*, No. 10-cv-990, ECF No. 6, at 1 n.2 (D. Del. Jan. 18, 2011) (Dell'Angelo Decl. Ex. C).

[10] The post-class period purchases in *In re Snap Securities Litigation*, No. 17-cv-3679, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) post-dated the end of the class period by many days, and thus are inapt (noting May 10, 2017 disclosure); *See also Erickson v. Snap, Inc.*, ECF No. 25-4 at 2 (C.D. Cal. July 17, 2017) (noting large purchases by movant on May 15 and 16, 2017).

The *Snap* litigation also provides a strong reason in favor of appointing a group over a lone individual. In *Snap*, the sole appointed lead plaintiff withdrew from the case on the eve of his deposition, causing the court to reopen the lead plaintiff process. Case No. 2:17-cv-03679, ECF No. 208 (C.D. Cal. Jan. 10, 2019). Because the new lead plaintiff came into the case after the expiration of the statute of limitations, Defendants argued that the newly appointed plaintiff could not lead the case under *China Agritech v. Resh*, 138 S.Ct. 1800 (2018). *See* Petition for Permission to Appeal Under Rule 23(f), *Snap Inc. v. Erickson*, No. 19-80157 (9th Cir.) (Dec. 3, 2019). The case settled before the Ninth Circuit could rule on the issue. No. 2:17-cv-03679, ECF No. 375 (C.D. Cal. Apr. 27, 2020). Appointing multiple lead plaintiffs from the Inovio Group, rather than just Williams individually, avoids any risk that the departure of a single plaintiff could prejudice the class.

the trading day (and ultimately closed at $9.80 per share). *See* Inovio Historical Pricing Data for March 9, 2020 (attached as Dell'Angelo Decl. Ex. D.[11]

The Inovio Group members' shares were not purchased at those intraday lows (*i.e.*, after the market incorporated any corrective disclosures). Instead, they were purchased near the top of the market (which explains the Group's significant March 9 losses):

| Group Member | Number of Shares Purchased on March 9, 2020 | Average Price Per Share Paid for March 9, 2020 Purchases |
|---|---|---|
| Brockway (ECF No. 13-6) | 43,000 | $16.25 |
| Lerma (ECF No. 13-7) | 137,976 | $14.12 |
| Dahlstrom (ECF No. 13-9) | 25,000 | $17.00 |
| Stefko (ECF No. 13-8) | 33,380 | $16.90 |
| Ness (ECF No. 13-10) | 15,500 | $15.51 |
| Total | 254,856 | $15.21 |

It is frivolous to argue that these Class Period purchases – clearly unaffected by the correction in Inovio share price that occurred later in the trading day on March 9 – should somehow be excluded from the Inovio Group's loss calculations, particularly in contravention of the class period alleged in the complaint and noticed to the class.[12]

Williams' willingness to make this argument raises questions about his own adequacy as a class representative: Williams is quick to sell out the class and argue for a shortened class period

---

[11] This fact specific, in-depth analysis of intraday trading shows precisely why courts generally do not second-guess the class period alleged in complaints on file when determining a lead plaintiff. Such a process is more appropriate at class certification, after a fully developed factual record is available.

[12] Williams' cases, *In re DVI Inc. Securities Litigation*, 249 F.R.D. 196 (E.D. Pa. 2008), and *George v. China Automotive Systems, Inc.*, No. 11-cv-7533, 2013 WL 3357170 (S.D.N.Y. July 3, 2013), are procedurally inapposite as they concerned class certification and not lead plaintiff motions. In *DVI*, the Court certified the class and found that post-disclosure purchases did ***not*** defeat the investor's reliance on the fraud on the market presumption. *DVI*, 249 F.R.D. at 204 n.13. In *George*, the proposed class representatives continued to make purchases *for two years* after the fraud was allegedly revealed, and one of those individuals testified that she had made a profit. *George*, 2013 WL 3357170, at *3.

that excludes victims of Inovio's fraud so as to enhance his individual losses regardless of when the fraud is alleged to have occurred. Perhaps recognizing this disparity, Williams acknowledges the true facts about the events of March 9 in his opposition. Opp. Br. at 17-18 ( "On March 9, 2020, following the publication of a Tweet by Citron Research challenging the veracity of Inovio's claims about its COVID-19 vaccine, shares of Inovio fell from a high of $19.36 per share on March 9, 2020, to close at $5.70 on March 10, 2020) (quoting complaint). The Amended Complaint to be filed by the Lead Plaintiffs will address the intraday trading occurring on March 9, 2020 and may include additional false statements or corrective disclosures. There is no reason to short-circuit this process now to the exclusive benefit of Williams.

## CONCLUSION

The Inovio Group has the largest financial interest in the relief sought by the class, has made a *prima facie* showing of its adequacy and typicality, and is the presumptive Lead Plaintiff. Mr. Williams has offered no "proof" to rebut this presumption. The Court should therefore appoint the Inovio Group as Lead Plaintiff, Block & Leviton LLP as Lead Counsel, and Berger Montague PC as Local Counsel.

10

Date: June 5, 2020

Respectfully submitted,

 /s/ Michael C. Dell'Angelo
Shanon J. Carson (PA Bar No. 85957)
Michael C. Dell'Angelo (PA Bar No. 80910)
**BERGER MONTAGUE P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000 phone
(215) 875-4604 fax
scarson@bm.net
mdellangelo@bm.net

*Attorneys for the Inovio Group and*
*Proposed Local Counsel*

Jeffrey C. Block, *pro hac vice* to be filed
Jacob A. Walker, *pro hac vice* to be filed
Stephen J. Teti, *pro hac vice* to be filed
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com
steti@blockesq.com

*Attorneys for the Inovio Group and*
*Proposed Lead Counsel*

11