# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x

PIPEFITTERS LOCAL 537 ANNUITY FUND, :
On Behalf of Themselves and All Others :    Civil Action No. 1:10-cv-990-LPS
Similarly Situated, :
                           :
            Plaintiff, :
    vs. :
                           :
WILMINGTON TRUST CORPORATION, TED :
T. CECALA, DONALD E. FOLEY, DAVID R. :
GIBSON, ROBERT V.A. HARRA JR., and :
KEVYN N. RAKOWSKI, :
                           :
            Defendants. :

-------------------------------------------------------------- x

*(Additional Captions on Following Page)*

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC PENSION FUNDS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL

Christine S. Azar (DE Bar ID #4170)
**LABATON SUCHAROW LLP**
One Commerce Center
1201 Orange Street, Suite 801
Wilmington, Delaware  19801
Telephone: (302) 573-2540
Facsimile: (302) 573-2529
Email: cazar@labaton.com

*Counsel for the Public Pension Funds and Proposed Co-Lead Counsel for the Class*

*(Additional Counsel on Signature Page)*

Dated:  January 18, 2011

```
----------------------------------------------------------- x
TIMOTHY ROONEY, Individually and                            :
On Behalf of All Others Similarly Situated,                 :   Civil Action No. 1:10-cv-995-LPS
                                                            :
                    Plaintiff,                              :
                                                            :
        vs.                                                 :
                                                            :
WILMINGTON TRUST CORPORATION, TED                           :
T. CECALA, DONALD E. FOLEY, DAVID                           :
REED GIBSON, and ROBERT V.A. HARRA                          :
JR.,                                                        :
                                                            :
                    Defendants.                             :
----------------------------------------------------------- x
MOHAMMED ELZAGHA, Individually and On                       :
Behalf of All Others Similarly Situated,                    :   Civil Action No. 1:10-cv-1020-LPS
                                                            :
                    Plaintiff,                              :
                                                            :
        vs.                                                 :
                                                            :
WILMINGTON TRUST CORPORATION, TED                           :
T. CECALA, ROBERT V.A. HARRA, JR.,                          :
DAVID R. GIBSON, KEVYN N. RAKOWSKI,                         :
DAVID E. FOLEY, CAROLYN S. BURGER, R.                       :
KEITH ELLIOTT, LOUIS J. FREEH, GAILEN                       :
KRUG, REX L. MEARS, STACEY J.                               :
MOBLEY, MICHELE M. ROLLINS, OLIVER                          :
R. SOCKWELL, ROBERT W. TUNNELL, JR.,                        :
SUSAN D. WHITING, J.P. MORGAN                               :
SECURITIES and KEEFE, BRUYETTE &                            :
WOODS, INC.,                                                :
                                                            :
                    Defendants.                             :
----------------------------------------------------------- x
VINCENT LYNCH, On Behalf of Himself and                     :
All Others Similarly Situated,                              :   Civil Action No. 1:10-cv-1086-LPS
                                                            :
                    Plaintiff,                              :
                                                            :
        vs.                                                 :
                                                            :
WILMINGTON TRUST CORPORATION, TED                           :
T. CECALA, DONALD E. FOLEY, DAVID R.                        :
GIBSON, KEVYN N. RAKOWSKI, and                              :
ROBERT V.A. HARRA JR.,                                      :
                                                            :
                    Defendants.                             :
----------------------------------------------------------- x
```

- ii -

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 4

ARGUMENT ......................................................................................................................... 7

    I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED .................................. 7

    II.    THE PUBLIC PENSION FUNDS
        SHOULD BE APPOINTED LEAD PLAINTIFF ....................................................... 8

        A.  The PSLRA Standard for Appointing Lead Plaintiff ................................................ 8

        B.  The Public Pension Funds Are the "Most Adequate Plaintiff" ................................ 9

        C.  The Public Pension Funds Are Precisely the
            Type of Lead Plaintiff Envisioned by the PSLRA ................................................. 13

    III.   THE COURT SHOULD APPROVE THE
         PUBLIC PENSION FUNDS' CHOICE OF COUNSEL ........................................... 14

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Able Labs. Sec. Litig.*,
   425 F. Supp. 2d 562 (D.N.J. 2006) ...................................................................................11

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) .....................................................................16

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).................................................................................... *passim*

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
   Civ. A. No. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009)......................................11

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006)..................................................................................1

*Dutton v. Harris Stratex Networks, Inc.*,
   Civ. A. No. 08-755, 2009 WL 1598408 (D. Del. June 5, 2009).........................................7

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) ..............................................................................16

*Fields v. Biomatrix, Inc.*,
   198 F.R.D. 451 (D.N.J. 2000)............................................................................................11

*Garcia v. Intelligroup, Inc.*,
   Civ. A. No. 04-4980, 2005 WL 6074922 (D.N.J. Aug. 10, 2005).......................................7

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...............................................................................................7

*Miller v. Dyadic Int'l, Inc.*,
   No. 07-cv-80948, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)..........................................1

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ..........................................................................................11

*In re Sterling Fin. Corp. Sec. Litig.*,
   Civ. A. No. 07-2171, 2007 WL 4570729 (E.D. Pa. Dec. 21, 2007)......................................7

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   Civ. A. No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ..............................11

*In re Waste Mgmt., Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ..................................................................15

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ...........................................................................7

**DOCKETED CASES**

*In re Am. Int'l Group, Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.).....................................................................................14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-cv-61542, Trial Tr. (S.D. Fla. Nov. 18, 2010).........................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
No. 07-cv-5295 (C.D. Cal.) ....................................................................................15

*In re Monster Worldwide, Inc. Sec. Litig.*,
No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007).............................................15

*In re UnitedHealth Group Inc. Sec. Litig.*,
Case No. 0:06-cv-01691 (D. Minn.) ......................................................................16

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) *et seq.* ...............................................................................10, 12

15 U.S.C. § 78u-(4) *et seq.*................................................................................ *passim*

15 U.S.C. § 77z-1(a)(3)(B) .....................................................................................1

**MISCELLANEOUS**

H.R. Rep. No. 104-369 (1995),
*reprinted in* 1995 U.S.C.A.A.N. 730 ...................................................................3

S. Rep. No. 104-98 (1995),
*reprinted in* 1995 U.S.C.A.A.N. 679 .....................................................................3

State-Boston Retirement System ("Boston"), Norfolk County Retirement System ("Norfolk County"), and Oklahoma Police Pension & Retirement System ("Oklahoma Police") (collectively, the "Public Pension Funds") respectfully submit this Memorandum of Law pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B),[1] as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for the entry of an order: (1) consolidating the above-captioned, related actions (the "Action"); (2) appointing the Public Pension Funds as Lead Plaintiff for a Class of purchasers and acquirers of Wilmington Trust Corp. ("Wilmington" or the "Company") securities from April 18, 2008 through October 29, 2010,[2] inclusive (the "Class Period"); (3) approving the Public Pension Funds' selection of Labaton Sucharow LLP ("Labaton Sucharow") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Co-Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

---

[1] The Lead Plaintiff provisions of the Exchange Act and the Securities Act are identical. For the purpose of convenience, all citations to these provisions herein will be to the Exchange Act.

[2] The complaints against Wilmington assert different class periods. When faced with multiple varying class periods, numerous courts have held that the class period spanning the longer time frame should be used for the purpose of calculating the largest financial interest under the PSLRA's lead plaintiff framework. *See, e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) (it is appropriate to use the more inclusive period for present lead plaintiff appointment purposes); *see also Miller v. Dyadic Int'l, Inc.*, No. 07-cv-80948, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("The Court agrees with the reasoning of the court in *In re Doral*, that the longest, most inclusive class period is appropriate at this stage of the litigation because 'it encompasses more potential class members.'"). After it is appointed, the Lead Plaintiff will reconcile the different class periods upon filing a consolidated complaint. Although two of the complaints plead a class period ending on November 1, 2010, the final corrective disclosure alleged in the Action was revealed prior to the opening of the markets on that day, and the Class Period must accordingly end on October 29, 2010, the previous trading day.

## PRELIMINARY STATEMENT

Pending before the Court is a securities class action brought against Wilmington, a prominent, Delaware-based financial services holding company, certain of its officers and directors, and certain underwriters of the Company's February 23, 2010 public offering (collectively, "Defendants"). The Action alleges violations of Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5") promulgated thereunder.

During the Class Period, Wilmington is alleged to have repeatedly failed to disclose the grave condition of its construction loan portfolio. Specifically, the Action alleges that throughout the Class Period, Wilmington failed to timely recognize impairments and accounting charge-offs with respect to this loan portfolio, which caused Wilmington's financial statements to materially overstate the Company's assets and caused the Company's stock to be artificially inflated. When the Company finally made the state of its loan portfolio known to the public, its stock dropped in response, causing the Class to incur millions of dollars in damages.

Pursuant to the Exchange Act, as amended by the PSLRA, and for the reasons set forth below, the Public Pension Funds respectfully submit that they should be appointed Lead Plaintiff on behalf of purchasers and acquirers of Wilmington securities during the Class Period who incurred damages as a result of the Defendants' alleged violations of the federal securities laws.

As set forth in detail below, the Public Pension Funds lost $1,095,799, as calculated under the last-in-first-out ("LIFO") loss calculation methodology on their investments in Wilmington common stock during the Class Period.[3] Copies of the PSLRA-required

---

[3] Under the first-in-first-out ("FIFO") loss calculation methodology, the Public Pension Funds lost $1,125,363 on their investments in Wilmington common stock during the Class Period.

Certifications submitted by the Public Pension Funds are attached as Exhibit A to the accompanying Declaration of Christine S. Azar ("Azar Decl."). These Certifications set forth all of the Public Pension Funds' transactions in Wilmington common stock during the Class Period. In addition, a chart reflecting the calculation of the Public Pension Funds' financial losses on Wilmington common stock purchased during the Class Period is attached as Exhibit B to the Azar Declaration. In light of the significant transactions and losses reflected in these exhibits, the Public Pension Funds have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant. The Public Pension Funds also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of the absent Class, and they will fairly and adequately represent the interests of the Class.

Furthermore, because they are sophisticated institutional investors and suffered losses on Wilmington securities like the other Class members, the Public Pension Funds are well-suited to pursue litigation that is in the best interests of the Class. Indeed, the PSLRA's legislative history shows that large, sophisticated institutional investors like the Public Pension Funds are precisely the type of investors whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Rep. No. 104-369 at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. In short, the Public Pension Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, the Public Pension Funds request the Court appoint their choice of Labaton Sucharow and Robbins Geller as Co-Lead Counsel on behalf of the Class.

- 3 -

Both firms are eminently qualified and have extensive experience in the prosecution of securities fraud claims such as those asserted in the Action.

## FACTUAL BACKGROUND

Four complaints were filed against Wilmington in this Court that variously assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. Specifically, the Complaints allege that during the Class Period, Defendants failed to disclose that: (1) Wilmington was failing to take timely, adequate, and required impairments and accounting write-downs, particularly in its construction-loan portfolio; (2) as a result, Wilmington's financial statements materially overstated the Company's assets; (3) the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial statements and public statements regarding the Company's financial results were materially false and misleading at all relevant times.

Wilmington is a financial services holding company with more than $10 billion in assets.[4] Founded by T. Coleman duPont, President of E.I. duPont de Nemours and Company, and several prominent Delaware business leaders, Wilmington opened for business on July 8, 1903. Wilmington has three core businesses: regional banking, corporate client services, and wealth advisory services. The Company's loan practice involves mostly commercial loans, nearly half of which are extended to construction and real estate clientele. In general, the projects

---

[4] Wilmington is incorporated in Delaware and headquartered in Wilmington, Delaware. The Company's stock has traded on the New York Stock Exchange since 1999 under the ticker symbol "WL."

- 4 -

Wilmington funds are close to its headquarters—variously described by the Company in its SEC filings as "within a two-hour drive from [its] headquarters in Wilmington, Delaware" or "within approximately 150 miles of [its] Wilmington headquarters."[5]

Wilmington took advantage of its high stock price during the Class Period by completing a secondary offering of approximately 18.8 million shares of common stock for $13.25 per share on or around February 23, 2010 (the "2010 Offering"); the Company raised approximately $273.9 million (net of commissions and expenses) to be used for general corporate purposes. The documents accompanying the 2010 Offering incorporate by reference the Company's 2009 Annual Report on Form 10-K.

On June 3, 2010, Wilmington announced that effective immediately its Chairman and Chief Executive Officer ("CEO"), Defendant Ted. T. Cecala, had decided to retire after 31 years with the Company. Wilmington's board of directors elected Defendant Donald E. Foley to the post of CEO. Cecala remained Chairman of the Board of Directors until July 19, 2010, when Foley was appointed to serve as Company Chairman.

The true state of the Company's finances began to be revealed when, on June 23, 2010, following a visit to the Company, analyst SunTrust Robinson Humphrey ("SunTrust") published a report announcing that the Company had hired a third party to review its loan portfolio. Because SunTrust thought it was likely that the review would "result in deteriorating credit metrics as the [C]ompany attempts to more aggressively deal with its credit challenges," the analyst lowered the Company's rating from "buy" to "neutral" and lowered earnings estimates.

---

[5]  Most recently, the Company has stated that this distance encompasses the State of Delaware and parts of Maryland, New Jersey, and Pennsylvania.

In reaction to this news, the Company's stock fell $1.43 per share, or 11 percent, to close at $11.56.

On July 23, 2010, the Company announced its second quarter 2010 results and disclosed that it had raised its loan loss provisions to $205.2 million following increases in non-performing loans, loan charge-offs, and loans with unfavorable risk ratings.  In the second quarter of 2010, the Company took a $131.2 million net charge-off, more than four times higher than its first quarter of 2010 charge-off; approximately two-thirds of this increase was related to commercial real estate construction loans, a majority of which were for projects concentrated in southern Delaware.  Wilmington also added $74 million to its loan-loss reserve, bringing it to 4.46 percent of its total loans outstanding.  As a result of this news, Wilmington's stock fell $1.00 per share, or 9.1 percent, to close at $9.88.

Any remaining confidence in Wilmington was shattered when the Company shocked the market with two disclosures on November 1, 2010: (1) a $365.1 million loss in the third quarter of 2010; and (2) a take-under merger with M&T that offered shareholders $3.84 per share (the "Merger Price") when Wilmington's shares had closed at $7.11 per share the previous day. According to the Company, the $365.1 million loss was driven in large part by a $281.5 million charge to reflect increased risk in its loan portfolio.  Notably, the Merger Price was surprisingly close to the fair value of Wilmington's underlying assets at fair value.  The market swiftly reacted and Wilmington's stock dropped immediately, falling $2.90 per share, or 40.7 percent, to close at $4.21.

The Company's conduct and the revelations thereof have caused Wilmington's shareholders to lose millions of dollars.

**ARGUMENT**

**I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA requires the Court to consider a motion to consolidate prior to deciding a motion for appointment of lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(ii); *In re Sterling Fin. Corp. Sec. Litig.*, Civ. A. No. 07-2171, 2007 WL 4570729, at *1 (E.D. Pa. Dec. 21, 2007). Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") is proper when the related actions "arise from the same set of facts and allege substantially similar factual and legal issues[, have] been filed pursuant to various provisions of the federal securities laws, and name[] the same or similar defendants."  *Garcia v. Intelligroup, Inc.*, Civ. A. No. 04-4980, 2005 WL 6074922, at *2 (D.N.J. Aug. 10, 2005); *see also Dutton v. Harris Stratex Networks, Inc.*, Civ. A. No. 08-755, 2009 WL 1598408, at *1 (D. Del. June 5, 2009) (consolidation is appropriate where the related actions involve common questions of law and fact); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (same).  The Court has broad discretion under this Rule to consolidate cases pending within the District.  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Courts recognize that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned.  *See id.* at 1285; *see also Garcia*, 2005 WL 6074922, at *2 ("Consolidation . . . promote[s] efficiency and avoid[s] unnecessary costs or delay.")

Four related securities class actions have been filed in this Court against Defendants. These actions present substantially similar factual and legal issues, stem from the same alleged scheme by Defendants, name the same or similar defendants, and allege violations of federal securities laws.  Because these actions are based on the same facts and involve the same subject

matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others and similar class certification issues will be relevant to all the related actions.  Accordingly, consolidation of the actions is appropriate under Rule 42(a) and the PSLRA, and the Public Pension Funds respectfully submit that these actions should be consolidated.

## II.    THE PUBLIC PENSION FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

- 8 -

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cendant*, 264 F.3d at 222.

### B. The Public Pension Funds Are the "Most Adequate Plaintiff"

The Public Pension Funds respectfully submit that they are the presumptively "most adequate plaintiff" because they have complied with PSLRA procedural requirements, hold the largest financial interest of any movant, and satisfy Rule 23's typicality and adequacy requirements.

#### 1. The Public Pension Funds Have Satisfied the PSLRA's Procedural Requirements

The Public Pension Funds have filed this motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on November 18, 2010, Robbins Geller, counsel for the first plaintiff to file a complaint in the Action, caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news reporting service, on November 18, 2010. *See* Notice, Azar Decl. Ex. C. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or

- 9 -

Case 2:20-cv-01402-GJR Document 23-4 Filed 06/05/20 Page 16 of 23

before January 18, 2011. The Public Pension Funds have filed their motion within the required period.

### 2.      The Public Pension Funds Have the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, the Public Pension Funds suffered substantial losses of $1,095,799 calculated under the LIFO method of accounting for purchases and sales. *See* Loss Analysis, Azar Decl. Ex. B. Notably, Boston and Norfolk County respectively purchased 10,080 and 2,950 shares on the 2010 Offering, described above. The Public Pension Funds are presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because they also satisfy Rule 23's typicality and adequacy requirements, the Public Pension Funds are entitled to the legal presumption that they are the most adequate plaintiff.

### 3.      The Public Pension Funds Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead

- 10 -

plaintiff's claims are typical and adequate.  *See, e.g., City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, Civ. A. No. 08-969, 2009 WL 1811067, at *2 (D. Del. June 18, 2009) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA) (citing *Cendant*, 264 F.3d at 263-65).

**(a)      The Public Pension Funds'
Claims Are Typical of Those of the Class**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists if the circumstances of the movant with the largest financial loss are not "markedly different" from those of the Class and the legal theory upon which that movant's claims are based do not "'differ[] from that upon which the claims of other class members will perforce be based.'"  *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006) (quoting *Cendant*, 264 F.3d at 265).  Notably, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality.  *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 (D. Del. 2005) ("typicality . . . does not require that all putative class members share identical claims") (internal quotations and citations omitted); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000) ("Typical . . . does not mean identical.").

The typicality requirement is plainly satisfied here because the Public Pension Funds, which are not subject to any unique or special defenses, seek the same relief and advance the same legal theories as other Class members.  Like all members of the Class, the Public Pension Funds: (1) purchased or acquired Wilmington securities during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result.  *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, Civ. A. No. 07-177, 2007 WL 2683636, at *6 (D.N.J. Sept. 7, 2007) (discussing the typicality requirement).  These shared

- 11 -

claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

### (b)    The Public Pension Funds Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when: (1) the movant "has the ability and incentive to represent the claims of the class vigorously," (2) there is no "conflict between [the movant's] claims and those asserted on behalf of the class," and (3) the movant has "obtained adequate counsel . . . ." *Cendant*, 264 F.3d at 265.

The Public Pension Funds will fairly and adequately represent the interests of the proposed Class. No antagonism exists between the Public Pension Funds' interests and those of the absent Class members; rather, the interests the Public Pension Funds and Class members are squarely aligned. In addition, the Public Pension Funds have retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). The Public Pension Funds suffered substantial losses due to Defendants' alleged fraud and, therefore, have a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, the Public Pension Funds satisfy the adequacy requirement.

Furthermore, in addition to satisfying the adequacy and typicality requirements of Rule 23, the Public Pension Funds are a cohesive group of investors that participated in a conference call prior to the filing of the instant motion and have executed a joint declaration emphasizing their commitment to serve the interests of the Class and to oversee their counsel's prosecution of

- 12 -

the Action.  *See* Joint Decl. of the Public Pension Funds in Supp. of Their Mot. for Appointment

as Lead Pl. & Approval of Selection of Co-Lead Counsel, Azar Decl. Ex. D.  Specifically,

Boston, Norfolk County, and Oklahoma Police have created mechanisms for cooperation,

communication, and decision-making.  *See id.* ¶ 7.  Accordingly, the Court can be assured that

the Public Pension Funds and their selected counsel will more than adequately protect the

interests of absent Class members.

**C.      The Public Pension Funds Are Precisely the
Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, the Public Pension Funds, as large,

sophisticated institutional investors, are the type of investors Congress sought to encourage to

assume a more prominent role in securities litigation with the enactment of the PSLRA's lead

plaintiff provisions.  Congress noted in its PSLRA Statement of Managers Report that the

PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead

plaintiff[]," in part, because "[i]nstitutional investors and other class members with large

amounts at stake will represent the interests of the plaintiff class more effectively than class

members with small amounts at stake."  *Cendant*, 264 F.3d at 244, 264 (quoting H.R. Rep. No.

104-369 at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733).

Boston manages more than $4.1 billion in assets for more than 34,000 active and retired

members throughout the City of Boston, Massachusetts.  Established in 1937, Norfolk County

provides retirement benefits to 8,200 active and retired government employees of forty

governmental units and has more than $600 million in assets.  As of June 30, 2010, Oklahoma

Police had more than $1.5 billion in assets and provided retirement benefits to more than 8,000

members, including active members, retirees, beneficiaries, disabled members, deferred option

members, and vested members.

The Public Pension Funds are sophisticated institutional investors with sufficient resources to adequately litigate the Action and supervise Class counsel.  The Public Pension Funds understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary."  *See* Certifications, Azar Decl. Ex. A.  Moreover, because each member of the Public Pension Funds has served as a lead plaintiff in other securities actions, *see id.*, their experience will benefit the Class.  Importantly, Boston actively represented a shareholder class in the recent securities class action against BankAtlantic Bancorp, Inc., *In re BankAtlantic Bancorp, Inc. Securities Litigation*, No. 07-cv-61542 (S.D. Fla.), and is only the second public pension to successfully try a securities fraud class action.  Thus, as demonstrated herein, the Public Pension Funds are the very personification of the lead plaintiff contemplated by the PSLRA.

### III.   THE COURT SHOULD APPROVE THE PUBLIC PENSION FUNDS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."  *Cendant*, 264 F.3d at 274.  The Public Pension Funds have selected Labaton Sucharow and Robbins Geller to serve as Co-Lead Counsel for the Class.

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors.  In November 2010, Labaton Sucharow, as class counsel for a certified class of investors, secured a favorable jury verdict in a securities fraud suit brought against BankAtlantic and several of its officers.  *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-cv-61542, Trial Tr. at 4350:8-4364:10 (S.D. Fla. Nov. 18, 2010).  Labaton Sucharow is also lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141

- 14 -

Case 2:20-cv-01402-GJP Document 23-4 Filed 06/05/20 Page 21 of 23

(S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"); *see also* Labaton Sucharow Firm Resume, Azar Decl. Ex. E. Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against HealthSouth Corp., The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and others. In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

Robbins Geller, a 180-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Robbins Geller Firm Resume, Azar Decl. Ex. F. Robbins Geller's reputation for excellence has been repeatedly noted by district courts throughout the country and has resulted in the appointment of Robbins Geller attorneys to

lead roles in hundreds of complex class action securities cases.[6]  In addition, Robbins Geller

attorneys are responsible for attaining the largest securities fraud class action recovery ever, as

well as the largest recoveries in the Fifth, Sixth, and Eighth Circuits.  *See In re Enron Corp. Sec.*,

Case No. H-01-3624 (S.D. Tex.) ($7.3 billion recovery for the class is largest in U.S. history and

in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (S.D. Ohio)

($600 million recovery for the class was, at the time, the 10th largest in U.S. history and is still

the largest recovery ever in the 6th Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, Case No.

0:06-cv-01691 (D. Minn.) ($925 million recovery for the class and the 10th largest recovery in

U.S. history).

## CONCLUSION

For the foregoing reasons, the Public Pension Funds respectfully request that the Court:

(1) consolidate the above-captioned, related actions; (2) appoint State-Boston Retirement

System, Norfolk County Retirement System, and Oklahoma Police Pension & Retirement

System as Lead Plaintiff; (3) approve their selection of Labaton Sucharow LLP and Robbins

Geller Rudman & Dowd LLP as Co-Lead Counsel for the Class; and (4) grant such other and

further relief as the Court may deem just and proper.

---

[6] Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country."  *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).  Similarly, Judge Algenon Marbley, in approving the $600 million recovery by Robbins Geller lawyers in Cardinal Health, noted that the "quality of representation in this case was superb."  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Robbins Geller lawyers are "nationally recognized leaders in complex securities class actions.  The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

Dated: January 18, 2011

Respectfully submitted,

By: _s/ Christine S. Azar_
Christine S. Azar (DE Bar ID #4170)
**LABATON SUCHAROW LLP**
One Commerce Center
1201 Orange Street, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 573-2540
Facsimile: (302) 573-2529
Email: cazar@labaton.com

Christopher J. Keller
Michael W. Stocker
Rachel A. Avan
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
      mstocker@labaton.com
      ravan@labaton.com

Samuel H. Rudman
David A. Rosenfeld
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
58 South Service Road, Suite 200
Melville, New York 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
Emails: srudman@rgrdlaw.com
      drosenfeld@rgrdlaw.com

*Counsel for the Public Pension Funds and
Proposed Co-Lead Counsel for the Class*

- 17 -