UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| PATRICK McDERMID, individually | ) | 20-1402 |
| and on behalf of all others | ) | |
| similarly situated | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| INOVIO PHARMACEUTICALS, INC. | ) | |
| and J. JOSEPH KIM | ) | |
| | ) | |
| | ) | Philadelphia, PA |
| | ) | June 11, 2020 |
| Defendants | ) | 9:59 a.m. |


MOTION TO APPOINT LEAD PLAINTIFF VIA TELECONFERENCE
BEFORE THE HONORABLE GERALD J. PAPPERT
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For Movant                    JACOB A. WALKER, ESQUIRE
Inovio Group:                 BLOCK & LEVITON, LLP
                              155 Federal Street, Suite 400
                              Boston, MA  02110
                              617-398-5600


For Movant                    DANIELLE S. MYERS, ESQUIRE
Manuel S. Williams:           ROBBINS GELLER RUDMAN & DOWD, LLP
                              655 West Broadway, Suite 1900
                              San Diego, CA  92101
                              danim@rgrdlaw.com

Also Present:                    MICHAEL C. DELL'ANGELO, ESQUIRE
                                 ANDREW D. ABRAMOWITZ, ESQUIRE
                                 SHANON J. CARSON, ESQUIRE
                                 STEPHEN J. TETI, ESQUIRE
                                 JEFFREY C. BLOCK, ESQUIRE
                                 LAWRENCE F. STENGEL, ESQUIRE
                                 DARREN J. ROBBINS, ESQUIRE
                                 MICHAEL ALBERT, ESQUIRE
                                 PATRICK J. LOFTUS, ESQUIRE
                                 CRAIG E. TENBROECK, ESQUIRE
                                 PETER M. ADAMS, ESQUIRE
                                 MANUEL S. WILLIAMS

SHANNAN GAGLIARDI, RDR, CRR
OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, EASTERN DISTRICT OF PA
601 Market Street, Room 2609
Philadelphia, PA  19106
(267)299-7254

(Clerk opens court at 9:59 a.m.)

THE COURT:  Okay.  Let's take the roll.  For Mr. Williams, why don't we go ahead.

I know Judge Stengel and Ms. Myers, correct?

MR. STENGEL:  Mike Albert I believe is on.

THE COURT:  I'm sorry?

MR. STENGEL:  Is Mike Albert on?

MR. ALBERT:  Yes, Your Honor.

MR. STENGEL:  And Darren Robbins and Mr. Williams. That's everyone for Mr. Williams.

MR. ROBBINS:  This is Darren Robbins, Your Honor, and Mr. Williams is here with us on the call as well.

THE COURT:  Good morning, Mr. Williams.

PLAINTIFF WILLIAMS:  Good morning, Your Honor.

THE COURT:  Now for the Inovio Group.

MR. DELL'ANGELO:  Good morning, Your Honor.  This is Michael Dell'Angelo from Berger Montague.  You heard the introduction of my colleague, Andy Abramowitz, and from the Block & Leviton firm, Jeff Block, Stephen Teti, and Jacob Walker.  Mr. Walker will be arguing.  All of whom are on the line with us today.

MR. CARSON:  Your Honor, this is Shanon Carson from Berger Montague as well, Your Honor.

THE COURT:  Okay.  And there were two others whose names I got.

Mr. Block, who else was with you?

MR. BLOCK:  Stephen Teti and Jacob Walker.

THE COURT:  Okay.  Mr. Walker and I still didn't hear the other name.

MR. BLOCK:  Stephen Teti and Jeffrey Block.

THE COURT:  Okay.  All right.  How many lawyers do we need to change the lightbulb today?  All right.  We got enough.  Good.

Well, if everyone is ready, I'm prepared.  On the line with me is Ms. Rolon from my chambers as well as Mr. Notter, one of my clerks this term who has been working on this case with me.

Katie, is there anyone else from our side on?

THE JUDICIAL ASSISTANT:  No, just us.

THE COURT:  All right.  Okay.

MR. LOFTUS:  Judge, before you start, I just wanted to let you know this is Pat Loftus on behalf of the defendant, and I believe my colleagues of the Cooley firm have called in or should be calling in momentarily.

THE COURT:  All right, Mr. Loftus, thank you.

MR. ADAMS:  This is Pete Adams from Cooley.  My colleague, Craig Tenbroeck, is also on the line.

THE COURT:  Let's get going.  If all of you could keep, please, your phones on mute, obviously unless you're speaking, that would help.  Sounds like we might have a cell

phone or two on the call, so that would help reduce the background noise.  So if everybody could mute their phones, and then, obviously, when you want to weigh in or when I ask you to weigh in, please remember to unmute the lines.

Who would like to begin?  We reviewed all the papers, and down obviously from the original cast of proposed lead plaintiffs and attorneys, we are down to Mr. Williams and the Inovio Group.  We have focused on those filings relevant to the contest between the two, ECF 12, 13, 30, 31, 33, and 34.  I have read all of those filings, and I'm ready to hear argument now.

Who would like to begin?

MR. WALKER:  Your Honor, this is Jake Walker on behalf of the Inovio Group.  I'm happy to begin if you like.

THE COURT:  Go ahead, Mr. Walker, happy to hear from you.

MR. WALKER:  Great.  Thanks again, Your Honor, for hosting the call.  I know you read the papers, so I don't want to belabor the points we've made in them.  But I think a few points are in order and clear.

The law is very straightforward in this circuit and under the PSLRA about the process that the Court uses to determine who is appointed lead plaintiff.  Under both the PSLRA and Cendant, the Court determines who has the largest financial interest and who has made a prima facie showing of

typicality and adequacy, and the Court does that without taking into account the arguments of other movants.  So under that rubric, there's no question that the Inovio Group has presumption, and so I'd like to talk about why that's the case.

First of all, in the Third Circuit, it's unique in that there is this Cendant decision that lays out precisely how courts in the Third Circuit are to make this determination and the rules under which groups can be appointed as the lead plaintiff, and our group has met the requirements of Cendant.

We pointed to Judge Rufe's decision in Trevena, among others, that show that when a group gets together, you know, before making a lead plaintiff filing and makes the individual decision to work as a group and the individual decision to retain a law firm, that satisfies the requirements under Cendant and even the PSLRA.

Our group all agreed to be part of the group before they filed their lead plaintiff motion.  We held a long substantive conference call with the group where we answered questions, described the duties.  That conference call is described in a declaration that we put in.  Each of our group members knows how to talk to each other both in the presence of counsel and outside the presence of counsel.  They exchange correspondence with us and without us.  We did what's required by Cendant.  It's precisely what Judge Rufe found appropriate in Trevena, and Block & Leviton is lead counsel in Trevena as

well.

THE COURT:  Well, a couple things.  Let me jump in. While she can be rough at times, I think it's Judge Rufe.

MR. WALKER:  I apologize.

THE COURT:  A couple questions on the group.  Let's talk about the number of the group.  I mean, doesn't the group really have six members since Ms. Goya and Mr. Lerma both suffered losses?

MR. WALKER:  So what we did in the declarations there is that we had a married couple, they had accounts, both individually and joint accounts, and Mr. Lerma has agreed to represent that married couple in the group.  And we did that explicitly in the PSLRA declarations that we filed, I think, as a matter of those kind of marital affairs being handed off to be managed by Mr. Lerma.

THE COURT:  Why did Ms. Goya grant Mr. Lerma power of attorney to act on her behalf?

MR. WALKER:  So some of the transactions were in individual accounts, including one of her individual accounts. Some of the transactions were in a joint account.  They consider their money and their investments together.  They're joint marital assets.  But she was content to have her husband, you know, manage this litigation and act on her behalf in this group.

THE COURT:  I hear you, but is it really absurd

quote/unquote to think that her grant to Mr. Lerma of power of attorney might be a convenient way to evade the Third Circuit's view that groups of more than five should ordinarily not be appointed lead plaintiffs?  Is that really an absurd contention?  Why isn't that a reasonable inquiry and a reasonable issue for me to be concerned about?

MR. WALKER:  Well, I just think it's different than what you see when courts are concerned about groups larger than five and often unrelated groups larger than five.  So you've got six or seven or nine or ten people, you know, none of whom are related.  And I think that number of five comes from some SEC guidance as well, and the concern is having too many people to bounce ideas off of.  You sort of no longer have a critical mass, and it becomes difficult to have a group work together and cohesively.

And here, by assigning all of those rights to her husband, you know, you remove that as an issue because it's he who is going to participate in the group calls, who is going to make the decisions, that is making the decision not only on his own behalf but on behalf of the married couple.

THE COURT:  Okay.  How do the individuals in this group come together?  Talk to me about that process.

MR. WALKER:  Sure.  So as you know, Block & Leviton filed, I think, the only, you know, 10(b) case on file in this action.  There's not a request to consolidate cases.  There's

just one case on file that was filed by Block & Leviton.

We had also issued notices to the class, so we received inquiries from members of the class as a result of those notices.  And we also had been referred clients from two other law firms, as is kind of natural.  I think both law firms were not interested in pursuing a litigation but had clients who were interested.  The Hagens Berman firm, who we worked with a number of times, reached out to us and introduced their clients to us.  The same is true of the Bronstein Gewirtz firm.

THE COURT:  Why shouldn't I look at that and think that maybe this was all lawyer-driven as opposed to plaintiff-driven?

MR. WALKER:  Well, it was plaintiff-driven because each individual plaintiff made the decision to retain us, to have us, you know, at their request, serve as lead counsel.  And it was not the kind of lawyer-driven litigation that you see rejected where, you know, you've got certifications that are put in with no declaration, it's unclear whether the individual members of the group have actually, you know, communicated with each other at all or made an individual decision, if law firms kind of cobbling together individual plaintiffs, sometimes without even their notice, to try to get to a large number.

Here, you know, each individual plaintiff had this call.  They were introduced to us.  They had substantive

discussions with us about the case and about our capabilities and abilities, and each made an independent decision both to move as a group and also to retain us.

THE COURT:  Well, you know, obviously, this conference call to which you refer is a very important part of the process for you, but what distinguishes the Inovio Group from other groups that have held a conference call but the courts have later deemed insufficiently cohesive?

MR. WALKER:  I don't know that in the Third Circuit that Mr. Williams points to a case where a conference call of the type that we held was held amongst the group and then the group was nonetheless rejected.  I think the groups that are rejected under Cendant and under the Third Circuit are those groups where there's no evidence of a conference call, importantly, before the first motion is filed.

Sometimes what you see is, and this is part of that lawyer-driven litigation that's not what happened here, but sometimes you see a law firm, you know, submit a group of five and just throw in five of the individual PSLRA certifications and then in opposition file a joint certification and sort of post hoc say, oh, we all got together.  And that's insufficient because it comes too late.  But here what's critical is the call happened before the individual decision was made to file and to move for lead plaintiff.

THE COURT:  Well, what, if anything else, can you

point to for me besides this lone conference call to suggest that the Inovio Group will work well together, will function as a cohesive group?

MR. WALKER: Sure. Well, there's a few things. Two of the members, as I think we point out in the declaration, actually have a pre-existing relationship. They're friends, you know, independent of litigation. They went to the University of Minnesota together.

Separate from that, in addition to the conference call, as this process has gone on, I can just tell you that we have had, you know, substantive communications with the group. We continue to work together and speak with each other both, you know, in our presence and, I believe, outside our presence, at least is my understanding. Obviously, we're not present.

It so far has worked perfectly. The group has worked well together. I think the phone call is the best evidence we have of that, but we continue to do that with the group, you know, as this process has gone on.

THE COURT: In your joint declaration, you assert that the Inovio Group are sophisticated investors.

What, in your view, qualifies the Inovio Group? Why should I label them sophisticated investors?

MR. WALKER: Sure. I mean, I think each has a history of investing. I think the best evidence of it is the significant amount of their losses.

THE COURT:  So an investor can be deemed significant if he or she loses enough money?

MR. WALKER:  Well, no, I don't think that it alone --

THE COURT:  It's good to know.  I'm thinking here I may have qualified as sophisticated.

MR. WALKER:  Look, by sophisticated, I think what we mean is, you know, for none of these individuals is this the first stock they purchased.  They are people who are interested in the market and who understand the market and have a lot of money at stake.

So I don't want to oversell their sophistication. They're not employed by brokers or anything like that, but they are people who understand the market, understand what they were getting into, understand the dynamics.  And I can just tell you from the call, you know, the call we had with them and other discussions I've had with them, they're people who understand the issues in this case.

THE COURT:  Let's talk a little bit about the March 9 purchases.

MR. WALKER:  Sure.

THE COURT:  And you're aware of the points that Mr. Williams makes in his briefing.  Why shouldn't I be concerned that those March 9 purchases subject the Inovio Group to unique defenses?  And, B, if they do, why don't those defenses render the group incapable of adequately representing

the class?

MR. WALKER:  I think there's three points on this, Your Honor.  First, the actual facts, and I think we made this point in our reply, we put in a chart that shows the prices at which the individuals traded on on that March 9 day, you know, and the actual allegation in the complaint, which is that the class period runs through and including March 9.

We cite the BP case and I think we cite to other cases at Footnote 9 in the reply, but the BP case is right on point.  Courts generally don't get into the parsing of class period at this stage of litigation.  There's good reason for that.  It's a fact-intensive inquiry, you know, when corrective disclosure was released, when it was incorporated by the market, when the market came to understood it and those losses were suffered is all a complicated question that will come up in class certification in this case.  It will come up in summary judgment after class certification.

But at this preliminary stage, if you look at BP, it makes this point quite clear.  Absent very strong evidence that there's some kind of game playing happening, courts generally look at the alleged class period.

THE COURT:  I think your point, look, March 9 is the class period.  I agree.  I wouldn't conclude otherwise.  And I realize I don't have to, you know, resolve this issue at this early stage, but why shouldn't I be concerned about this and

why shouldn't that inure to Mr. Williams' benefit?  I mean, why worry about getting down the road and finding out that, yeah, in fact, a lot of these purchases were made after the investors reasonably should have been aware that something was amiss?

MR. WALKER:  I think the most key point is -- well, I'll make two points.  One is I think even Mr. Williams in his brief concedes that some of the group has losses even if you exclude March 9.  So if defendants were successful in completely knocking out March 9, it doesn't mean the death of the entire group.

THE COURT:  No, but it would undercut one of your stronger selling points, which is the volume of the losses.  At that point, if we're down to comparing the smaller losses against Mr. Williams, why isn't Mr. Williams the better lead plaintiff?

MR. WALKER:  I guess I just then return to the framework that we're operating under, which is, you know, how do you determine who has the largest financial interest.  And at this stage, you know, engaging in that kind of parsing is not how Cendant lays out the process.

Again, another point is that our clients are uniquely situated to aggressively fight for losses that occurred on March 9 and what is clearly going to be an interesting situation.  The trading on March 9 is wild.  It swings up and then swings down.  It's going to be an important issue in the

case, and our clients are motivated to make sure that as many losses as possible are accounted for and to hire experts who are going to argue for March 9 and to make the point that those losses on March 9, you know, are valid and that the purchases up to a certain point were not affected by information in the market.

Mr. Williams has none of those motivations because his losses came, you know, his purchases all came before March 9.  So in some ways, you know, the pundit wouldn't knock them out completely.  It actually makes them even better candidates because not only can they fight for the losses that occurred before March 9, but they can also fight for those March 9 losses.

THE COURT:  Okay.  Interesting.  All right. Interesting argument.

Let's talk about Mr. Stefko.  There's a lot in the papers with respect to Mr. Stefko's, first of all, multiple motions.  I'd like you to address the issue of those multiple, and what Mr. Williams and his team would say, inherently contradictory motions first.

And then second, if I were to deem Mr. Stefko's multiple motions to render him incapable of adequately representing the class, would it be your position that I remove him from the group and appoint the reconstituted Inovio Group as lead plaintiff?

MR. WALKER:  It would, Your Honor.  And we've spoken with the entire group, and our group is willing to move forward with or without Mr. Stefko.  And we've had those conversations.

THE COURT:  Okay.  Let's talk then about whether you would need to.

Why don't his multiple motions render him incapable of adequately representing the class?

MR. WALKER:  I think there's two responses to that. First, you know, the factors the Court looks to at this stage, those sort of adequacy and typicality factors, here we're talking particularly about the adequacy factor, the key questions are, when you're analyzing that, you know, who did the individual hire as counsel, you know, in what way are they kind of working with zeal for the class.  Here I think we put it in our papers, but there's no question that Mr. Stefko has zeal to represent the class and to fight for the highest recovery.

You know, it's challenging to get into all the details while keeping in mind our obligations to all of our clients and our attorney-client privilege obligations, among other things, our duty to advocate for everybody.  You know, I will say that I think it's fair to say that the group was surprised by the multiple motions.

And I think the evidence is that Mr. Stefko immediately withdrew his individual motion.  He did it, you

know, directly the evening of the filing.  I think the paper itself came through the next day.  But it was a surprise to the group and to us, and as I said, you know, we are prepared to move forward in either event with or without Mr. Stefko.

THE COURT:  I remain a little unclear.  Are you throwing him under the bus now or are you fighting for his inclusion in the group?  It sounds like you're acknowledging some, you know, issues that he presents.  Are you asking me to just look at the Inovio Group without Mr. Stefko now?  Or are you still fighting for Mr. Stefko's inclusion in the group, and only if I find that he shouldn't be included, you're going to go forward without him?

MR. WALKER:  I think it is fair and reasonable for the Court to look at the Inovio Group without Mr. Stefko.  It doesn't change anything else about the group.  The group still has substantially higher losses.  The group can still work together cohesively.

And I understand completely if the Court were concerned about Mr. Stefko's adequacy given the fact that, if developed, it would be unfair, I think, to the rest of the members of the group to allow, you know, his decision to taint the rest of the group.

THE COURT:  Okay.  You also fault in your reply Mr. Williams for not discussing attorneys' fees or expenses.

Did your joint declaration specify how lead counsel

is going to be compensated in this case?

MR. WALKER:  I don't think we had specific numbers or information.  What we did have is, you know, this paragraph 16, which speaks to the group's understanding that it is their job to ensure that the fees and expenses are both fair and reasonable, in other words, to keep an eye on expenses and to be mindful of attorneys' fees, which was something that I don't think was present in Mr. Williams' motion, or his declaration rather.

THE COURT:  Okay.  You've done a very fine job, Mr. Walker, and that reminds me to compliment all counsel on excellent briefing, I mean, excellent briefing, well-written, concise, very informative, very helpful.  I'm grateful to all counsel on both sides, all sides of these issues.

But were there any other points you wished to make, Mr. Walker, before I turn it over to the Williams group?

MR. WALKER:  Unsurprisingly, Your Honor, your questions went right in order with my outline, so I think I've made the presentation I was prepared to make to you.  Thank you.

THE COURT:  Great.  Thank you and great job again.

Now is it going to be Ms. Myers?

MS. MYERS:  Yes, Your Honor.

THE COURT:  All right, ma'am, go right ahead.

MS. MYERS:  Before I begin, I did just want to remind

the Court that Mr. Williams is with us.  We're actually in San Diego, and he's with us today.  We did put in the declaration with our motion by Mr. Williams noting his background, that he resides in San Diego, he's a facility supervisor here at UCSD, a big university in San Diego, and we've extensively talked with him about the case, his losses, working with us.

He actually has some familiarity with our law firm or the lawyers of our law firm, Robbins Geller, because of the Enron case.  Mr. Williams used to live in Houston, so he did have some familiarity with that.

And with that, before I begin with my outline, is there a part of the argument that the Court wanted me to begin with?

THE COURT:  Well, sure.  I'll start you with a big picture question.  I mean, are you contending that the Inovio Group is not presumptively the most adequate plaintiff, or are you claiming that you have rebutted that presumption, or is it a little bit of both?  What's your big picture argument?

MS. MYERS:  Sure, Your Honor, thank you.  And I will note that of all of the issues on the table today, thankfully, we all at least agree that Cendant is the seminal decision in controlling these issues.  As I said, we obviously interpret it slightly differently.

Our contention, Your Honor, is that there's a difference between triggering the presumption and rebutting the

presumption, and Cendant actually goes through this very carefully. And it says the first inquiry as part of the threshold determination by the Court itself, and it's the movant's burden to make that showing to trigger the presumption. Once that showing has been made and it's triggered, then it shifts to the challenger -- here that would be us -- to rebut that presumption with proof.

And our contention, Your Honor, is that their own submissions at every stage are the evidence that you need under Cendant to conclude independently that they have not triggered the presumption, so we do not believe that they are the presumptive lead plaintiff.

We contend that their motion shows and evidences, again, under the Cendant criteria, in that first inquiry to trigger the presumption, Cendant says that in making that first adequacy assessment, only if there's a group that moves, the Court has to look at the way that the group was formed or the manner in which it's constituted would preclude it from fulfilling the task assigned to the lead plaintiff. And, again, the PSLRA was enacted to make sure that the lead plaintiff will function as an active agent for the class, and that's the Cendant language.

I think the Court's already, you know, asked my colleague, Mr. Walker, about how the way that the group was constituted. And we just learned for the first time today on

the call that the other law firms that were in the group's joint declaration, the Hagens Berman firm and the Bronstein Gewirtz firm, referred some of the group members -- we don't know which ones -- but referred some of them to the Block & Leviton firm, and that's how they came together.  So we would submit, Your Honor, that that fits what Cendant was concerned about with how the group was created and how it's constituted.

There's that second level that the Court must also inquire as to whether the group was too large, and the Cendant court said we agree with the SEC that the courts should generally presume that groups of more than five members are too large.  This group does, in fact, have six members, even if one of the married couples is going to be acting, supposedly, with just the husband's input.

And Cendant is clear.  If the group doesn't make that initial showing of adequacy, Your Honor, the Court disqualifies the movant and then moves to the next movant with the next largest loss.  And here, Your Honor, their motion is on behalf of the group.  I'm looking at Document No. 13 and it says: Proposed lead plaintiff, the Inovio Group, hereby moves the Court for an order appointing the Inovio Group as lead plaintiff.

But, Your Honor, the individuals did not actually, in fact, move for appointment.  In their joint declaration, Your Honor, Document No. 13-5, paragraph 17 of that joint

declaration actually says that they considered the option of moving for appointment as lead plaintiff individually, but we affirmatively decided that it would be a benefit to ourselves and the class we seek to represent if we sought appointment as lead plaintiff in a cohesive group.

So, Your Honor, we respectfully submit that they have themselves precluded the ability to, in their reply brief or even as late as today on the call, jettison the group and invite the Court to pluck members from within willy-nilly. They decided, as they represented under penalty of perjury in their declaration, that they are a group, and, therefore, they should rise and fall as a group.

And Cendant says that when you look at the movant, and the movant here is the group, and the group does not make the required adequacy showing, we then move to the next movant. You don't look within that group and disband them.

So we submit that that proffer as late as today, Your Honor, is not actually -- it doesn't comply with their motions, their joint declaration, or, in fact, Cendant.

THE COURT:  I take your point.  Your papers talk a lot about the lawyer-created group here, and I know you made one point there that we learned about the Hagens firm and Gewirtz firms referring to Block & Leviton.

What other proof or allegations do you have that the lawyers themselves created the Inovio Group?  Or is that your

main point?

MS. MYERS: Well, that is one of the main points, Your Honor. The group is six members. Your Honor asked, you know, was this kind of, I don't want to put words into your mouth, but was this kind of a way to get around the Cendant limit by having the wife delegate power of attorney to the husband. You know, that shows an awareness that six is too many, but they still wanted the benefit of, you know, her losses because they were her losses. Mr. Stefko himself moved against himself.

And, Your Honor, you asked a hard question, but I think it's a question that our briefing raised, which is, you know, what's the explanation for that. And we still have not heard from Mr. Stefko himself how that happened. If you are the sophisticated responsible fiduciary that wants to be the lead plaintiff, one would assume that even if you were talking to multiple law firms to vet them, that you would ensure, as a responsible fiduciary, that only one motion would be filed on your behalf. And not only did that not happen, but still as of today we have not heard from Mr. Stefko himself as to how that happened.

And, Your Honor, the one case that the group cites, the Cullinan versus Cemtrex case before Judge Bianco in the Eastern District of New York, where an individual moves as a member of, oddly enough, two different groups, the Court noted

that in allowing that, that there was a declaration by the group member explaining how that happened, and that assuaged the Court's concerns as to what happened. Here we don't even have that. We've never heard from Mr. Stefko as to what happened, how it happened, how that could have possibly occurred.

The other evidence we have, Your Honor, that this is a lawyer-driven group is we've now gotten three alternative configurations of the group that all contradict their motion and, in fact, their joint declaration, and all of those three alternative formulations of the group, Your Honor, have come from counsel. They have not come from the group members themselves.

So the first one was in the opposition brief, which is ECF 30 at page 5, Footnote 4. Counsel offered that Mr. Dahlstrom and Mr. Ness, who are longtime friends, you know, would be a reasonable pairing to have, if the Court didn't want the group. On page 6 of that same brief, the opposition, they offered Dr. Brockway. And then in their reply brief and here today, they have now offered to jettison Mr. Stefko altogether.

And the case law that we've cited, Your Honor, including the Syntax-Brillian case out of the District of Arizona, notes that this willingness to kind of play a shell game with the members of the group to reconstitute it constantly as the briefing evolved in a manner that might be

appealing to the Court, that that shows how loosely the group was put together, Your Honor, and that is, in fact, what Cendant is concerned about.

So, Your Honor, we submit that their own motion, their opposition, their reply, and their offer today to jettison Mr. Stefko, that is the evidence.  They themselves have provided the evidence that doesn't meet the initial Cendant test, Your Honor.

THE COURT:  I understand.  I understand.  Has the Third Circuit held that a class member who files multiple inconsistent motions to be appointed a lead plaintiff can't adequately represent the class?

MS. MYERS:  No, Your Honor.  The only decision I'm aware of by the Third Circuit is Cendant itself, which was one of the first and is arguably the seminal decision on lead plaintiff jurisprudence.

However, the Cendant court does talk about how the PSLRA was enacted, and I'm quoting Cendant directly at page 266 and 267:  The reform act lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class.

So, Your Honor, the concern is that if you don't even know who your counsel is and what they're doing, does that comply with the PSLRA and Cendant?  And we submit it doesn't,

Your Honor. And, in fact, their own case, the Trevena case before Judge Rufe that they cite as supporting their motion, because oddly enough the declaration here checks all the boxes and is almost verbatim with that one, which we show is kind of a boilerplate declaration then, it doesn't actually show that this group is typical and adequate and has made the showing, but the Trevena decision, Your Honor, it actually disqualifies the movant with the largest financial interest in that case because of errors out of the gate.

And Judge Rufe was very concerned about errors in a certification, a declaration. The errors there were as to the pricing and dates on which transactions occurred. And Judge Rufe held that those kinds of errors in sworn statements out of the gate amounted to, and I'm quoting the decision here, a substantial degree of carelessness and raised doubt as to whether he will fairly and adequately represent the best interest of the class.

And, again, in that case, while Judge Rufe did appoint a group, Judge Rufe noted expressly in appointing that group that there was no evidence that the group would not be able to function as a cohesive and independent group. And, Your Honor, here the group themselves have supplied that evidence showing, as late as today of reconfiguring the group three or four different ways, that they are not able to act cohesively and uniformly to do what the PSLRA wanted lead

plaintiff to do, which is kind of ride herd on counsel.

I'd also like to just touch on briefly the March 9 issue, which Your Honor noted.

THE COURT:  Yes, please, and actually I was going to go to that next.  That was my next question.

May I?

MS. MYERS:  Of course.

THE COURT:  So, you know, you claim that the March 9 purchase has subject the Inovio Group to unique defenses, but how would those defenses render the Inovio Group incapable of adequately representing the class?

MS. MYERS:  Yes.  So I think the Inovio Group misapprehends our argument a little bit, so I do want to clarify this.  Our point is here that this issue, this March 9 issue, is a sideshow at this point and is why the group is subject to unique defenses.

The group's counsel, as Mr. Walker noted, filed the initial complaint in this case, and that complaint, which is the only complaint on file, alleged at paragraph 6 that before the trading commenced on that day, March 9, the Citron report was issued to investors.  And what that means as a practical matter is that, according to the allegation of that complaint that they filed, the truth was on the market.  So anyone who purchased after that tweet, defendants would contend based on those allegations, and I don't want to put words into

Mr. Adams' mouth, but we believe defendants would contend that anyone who purchased after that tweet would not have a claim under the federal security laws.  The group's brief, ECF 13-1 at page 2, repeated that same allegation, that before the trading commenced on March 9, the tweet was issued to investors.

So if the allegation is accepted as true at this point, Your Honor, the vast majority of the group's losses wouldn't count because, again, they said that that tweet happened before the market opened.

THE COURT:  Excuse me.  Is it that they wouldn't count or that they would count because they are technically within the class period but they could be undermined?

MS. MYERS:  The latter, Your Honor.

THE COURT:  Okay.

MS. MYERS:  They would be subject to challenge by defendants because they surfaced after the truth was revealed. If the allegation is not true, Your Honor -- and, again, this allegation was in their complaint and in their brief.  If the allegation is not true, that's even more problematic for us, Your Honor, because they've been on notice of that mistake then since May 29 when our opposition brief was filed, and they've made no effort to correct either their brief or the complaint, Your Honor.

And the complaint is what Your Honor has to make this

lead plaintiff determination on.  You can't look at a hypothetical complaint in the future as to what the contours of the case and the allegations might someday say.  You are directed by Cendant to look at the record before you.  The record before you as they themselves pled it is that they said, you know, it's not us, they said it, that the tweet happened before the market opened.

So it's kind of one of those things, if it's true, then a unique defense.  If it's not true, then we have concerns because the record is not corrected for the Court to make the decision that the Court needs to make at this juncture as to the group.

If Mr. Williams did not purchase on the 9th, Mr. Williams, you know, we discussed this issue with him, he intends to vigorously protect all class members who were harmed by defendant's allegedly false and misleading statements, whatever that class period reveals itself to be and the facts lead us to.  So we're not going to jettison anybody.  We're going to vigorously advocate on behalf of everyone who was harmed, Your Honor.

The problem is, again, that they defined the case a certain way, and now they're trying to run from it because we pointed out the tension between the allegations and their purchasing that gives rise to a challenge from defendants that only they are subject to.  Mr. Williams is not subject to that.

And our concern is that it turns into a sideshow, either a motion to dismiss or a class certification, and you'll start going down a rabbit hole as to the timing of the purchases, which, again, if Mr. Williams is appointed, you won't have to do.

THE COURT:  Let's talk about then adequate representation of the class.  It's a question I neglected to ask Mr. Walker and, of course, would give him a chance to weigh in when you're done, Ms. Myers.

But, you know, as you know, there are movants who have not formally withdrawn but who have filed non-opposition notices.  You know, arguably, those movants are out, if only because they haven't followed up either by responding to the oppositions or participating in the argument, but they haven't formally withdrawn.

And if I were to conclude, for example, that the Inovio Group can't adequately represent the class, wouldn't one of the others such as, I don't know how to pronounce it, Cui, that group, then be presumptively the most adequate plaintiff? How do I treat these people who have not withdrawn but don't oppose what we're doing here today?

MS. MYERS:  Your Honor, so the next group, assuming Your Honor did not appoint the Inovio Group, the next group below them with the next largest loss is also called the Inovio Investor Group.  That includes Mr. Cui, if I'm saying that

correctly. That was filed by the Rosen and the Shaw firm. It's Motion No. 9. That motion was actually formally withdrawn. That was withdrawn at Docket No. 15.

So then moving down the list to the next largest loss, you have another group that included Mr. Cui. He also moved twice, like Mr. Stefko did, and that was with the Wolf Haldenstein firm. That motion is No. 8. That motion was not withdrawn. As Your Honor noted, a non-opposition was filed, Number 16, that basically said, you know, we're ready, willing, and able to serve.

Your Honor, we would submit that the fact that Mr. Cui, also like Mr. Stefko, moved on multiple motions with no explanation, that group, the Motion No. 8, the second Mr. Cui motion, they also did not file any joint declaration at all, Your Honor. So we know nothing about the group, their numbers, their ability to serve as lead plaintiff. We don't know where they live. We know nothing about them. And if the Court is disinclined to appoint the Inovio Group, we would respectfully submit that the same reasons apply to the second Mr. Cui group, Motion No. 8.

The next group below them, Your Honor, is --

THE COURT: If I may, if I may, and I want you to continue, so your position isn't that the non-opposition as compared to a formal withdrawal knocks them out. They're still within my discretion to consider. You're now arguing as to why

they wouldn't be adequate.

MS. MYERS:  I would suggest, Your Honor, and we noted, I think, in our opposition or reply brief, that filing this type of a non-opposition essentially is an abandonment of your motion.  The fact that this was noticed for a hearing today and their motion is still technically live, they have not filed pro hac vice applications and they did not appear today, Your Honor, we would suggest means that they have, in fact, abandoned their motion.  But as a technical matter, the motion is live on the Court's docket, so we did want to respond in that sense that we understand it has not been formally withdrawn.

THE COURT:  Understood.  Understood.

MS. MYERS:  But it appears to have been abandoned.

THE COURT:  Okay.  Does the PSLRA prohibit individual class members from filing multiple motions to be named lead plaintiff, or is it just something that I should look at as not having their house in order?

MS. MYERS:  Your Honor, it does not prohibit it.  It says that any putative class member may file a motion.  It doesn't say that you're limited to one motion.  But I think Your Honor hit it on the head that it does go to the adequacy.  When the PSLRA was enacted to kind of make sure that this is not lawyer-driven litigation, you know, you don't want a motion by the same individual multiple times with different law firms.

You know, it's kind of like a who's on first episode, you know. You don't really know what's happening and how it's happening. And certainly when you're moving with groups, you know, who is really driving the bus and who is a member of which group, it gets very messy, and that's not what the PSLRA was intended to do.

But, Your Honor, no, the PSLRA does not expressly prohibit an individual from moving more than once. I just don't know why Mr. Williams, let's say, would have moved with our law firm and then also moved with another law firm. I mean, his loss is the same by himself, so he would not increase his chances by filing multiple motions. So I guess it's only when it's an amalgamation by the law firm with whoever else has retained them does the loss number then change. That's the only explanation I think I can give on that.

THE COURT: Okay. No, that's fair. Now, you do intimate in your papers the lack of affirmative evidence suggesting that the Inovio Group is sufficiently sophisticated or cohesive, and that undermines the Inovio Group's motion.

But isn't it your burden to prove that the group cannot adequately represent the class, and is there anything else you'd like to say other than what you've said already as to why you believe the group cannot adequately represent the class?

MS. MYERS: Your Honor, I guess I go back to how I

opened the presentation with your question about triggering the presumption and rebutting the presumption, and our submission, Your Honor, is that Cendant itself says that, in a situation like is before the Court, when a group moves as part of the initial adequacy determination that the Court makes themselves, the Court has to look at the way that the group was formed and the way that it's constituted and assess whether the group is lawyer-driven.

And that is the Court's independent inquiry and that is also the group's burden to show that it is not lawyer-driven.  It is not our burden to prove that it is lawyer-driven.  It's their burden to prove that it's not. Cendant makes that clear, Your Honor.

So I do submit on behalf of Mr. Williams that it's not our burden to rebut the presumption.  Our argument is that the presumption does not attach based on the clear Cendant language that the group has to make the showing as part of that first triggering event.

And, Your Honor, there was one other point that Mr. Walker made.  He said that we didn't cite a Third Circuit case where a group that had a joint declaration was rejected, and we did, in fact, cite a Third Circuit case.  Sorry, to be clear, when I say Third Circuit, a district court decision within the Third Circuit.  We cited the Takata versus Riot Blockchain case, which is out of the District of New Jersey.

It's Judge Wolfson.

And there were two groups there that moved, and there was also an individual investor.  The two groups had larger losses.  One group submitted a declaration with an opposition brief.  The other group submitted a declaration with an opening brief.  And in both instances, Judge Wolfson looked at the submissions and said that they don't allay the Court's concerns that were identified in Cendant about appointing a loose attorney-driven group of investors as lead plaintiff.

The Court noted that the members of the group never communicated before their counsel put them together.  The group was comprised of seemingly unconnected strangers from across the country.  They didn't explain how they found one another, and the Court had concerns about how those plaintiffs would monitor the proposed counsel.  They also noted that some of the statements in the declaration were fairly conclusory.

And in that case, one of the groups offered, like the Inovio Group does here, to jettison a member and appoint just one member from within the group in the event that the Court was disinclined to consider the group.  And Judge Wolfson rejected that noting that it was a belated offer to break apart the group.  That did not assuage the Court's concerns that the attorneys and not the plaintiff had initiated their efforts and that it was lawyer-driven.

So we submit, Your Honor, that there is authority

within the Third Circuit following Cendant, as Judge Wolfson is bound to do, not appointing either group and appointing the individual with the next largest loss and also declining to disband the group, Your Honor.

I'd just like to end, you know, I want to circle back to Mr. Williams.  We talked a lot about the group.  You know, he made the time today before he starts his workday to come down here and be here to participate in this hearing with Your Honor.  He did suffer a substantial 187,000-dollar loss.  He purchased over 33,000 shares of the stock.

There are no substantive arguments against his candidacy and his motion other than he did not, in fact, suffer the greatest loss.  But we respectfully submit, Your Honor, that Mr. Williams out of the gate has done everything right. He filed a substantive declaration.  You know who he is.  There are no arguments as to unique defenses, atypicalities, or inadequacies as to Mr. Williams.  He also retained counsel that are well-qualified, both in Judge Stengel and in Robbins Geller.

And by contrast, Your Honor, the Inovio Group has stumbled at every turn, and we still haven't heard from the group itself or even Mr. Stefko as to whether these are their choices or their counsel's choices and even how his two motions got filed.  You know, having that unanswered as late as today, Your Honor, that does not satisfy the Cendant test, and we

respectfully request that you deny the group's motion and appoint Mr. Williams as lead plaintiff.

THE COURT:  I appreciate that, Ms. Myers.  Very well argued, and, again, kudos to you and Judge Stengel as well on the briefing, very well done.

Mr. Walker, any final thoughts you might have with respect to Ms. Myers' presentation?  Let me start by do you disagree with her assessment of how I should treat those who have filed non-oppositions but have not formally withdrawn?

MR. WALKER:  No, we don't disagree with that point.  We're in agreement there.  I think that they've abandoned their motions, and obviously we want you to appoint us.  If you decide not to, the right thing to do would be to appoint Mr. Williams, who is here, and not the people who have abandoned their motions.

THE COURT:  Okay.  Fine.  Any thoughts now on any of Ms. Myers' points?

MR. WALKER:  Sure.  And just very briefly, this notion that we've offered numerous ways to reconstitute the group, I think they're making more out of what are some rhetorical points, which is that we've got a group that has significant losses, and we make this point a number of ways.  Four of the five members of our group have losses that are larger than Mr. Williams'.  Two of our group members are friends, that's true.  We pointed out that, you know, the one

individual would dwarf Mr. Williams' losses. But I don't think we're offering ten different ways for you to appoint our group. It's more of a rhetorical point that our group has significant losses here.

On the point about Mr. Lerma, again, this is just a joint asset. It's an asset that's part of the marital estate. He's acting on behalf of both of them, and that's why we, you know, did that power of attorney and filed the declaration the way we did. There's no game playing that's happening there where we're trying to crowbar in a sixth person.

On the notion that the declaration that we filed is boilerplate because it's similar to the one that was approved in Trevena, that declaration was the agenda for our call. The reason it's similar is because it's what works. We walked through the important points with the clients and discussed them and had a substantive conversation. The declaration makes those points on an agenda, but I can promise you it was a very different conversation because there were different people involved.

I think, finally, on the Riot Blockchain point that we were just discussing, the key point there in that declaration is there were no prefiling communications. Either of the declarations of the groups that filed in Riot, there were no communications, you know, evidence in the declarations before filing the initial motion. That's just different than

what we have here when you go back and look at that Trevena declaration.  So that's my brief response.  I'm happy to answer any other questions you have.

THE COURT:  No.  I'm good.  Ms. Myers, you get to close it out if you have any final comments other than where you've already left it off.

MS. MYERS:  No, Your Honor.  I just wanted to thank the Court and its staff for the time today.  We know that the Court probably has a very busy docket, and especially under these challenging times where we're kind of open but not in COVID-19 era, we greatly appreciate the Court and its staff's attention to this matter.

THE COURT:  I appreciate that.  Thank you for -- I know we've been issuing a flurry of orders trying to get responses, and everybody has been great in getting us the filings in a timely way.  And, again, very well-done filings and excellent advocacy on the part of all lawyers.  And thank you for being able to join the call on comparatively short notice.

I'll confess that one of the reasons why Mr. Notter and I thought that maybe a shorter time frame on gathering you together was candidly because of your experience and your ability to pull together your arguments today as opposed to needing another week or so to do it.  We're obviously trying very hard to work through this and get you an answer as soon as

we can, and the sooner we could have this discussion today, the sooner we can finalize the decision.  So thank you for everything you've done to meet all the deadlines in the case and for helping Mr. Notter and I to work through these issues. We really appreciate it.

With that, any final thoughts from anyone before we conclude?

MR. WALKER:  No, thank you, Your Honor.

MS. MYERS:  Thank you.

THE COURT:  Great.  Thank you to everyone who was on the call.  We will work through these issues to get you our decision as soon as we're able, and everybody stay well, stay safe, and thank you again for all your hard work on the case.

(Proceedings adjourned at 10:59 a.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

S. Gagliardi    6/3/20

Shannan Gagliardi, RDR, CRR

MR. ADAMS: [1]  4/21
MR. ALBERT: [1]  3/8
MR. BLOCK: [2]  4/2 4/5
MR. CARSON: [1]  3/22
MR. DELL'ANGELO: [1]  3/16
MR. LOFTUS: [1]  4/16
MR. ROBBINS: [1]  3/11
MR. STENGEL: [3]  3/5 3/7 3/9
MR. WALKER: [25]  5/13 5/17 7/4 7/9
7/18 8/7 8/23 9/13 10/9 11/4 11/23 12/3 12/6
12/20 13/2 14/5 14/16 16/1 16/8 17/13 18/2
18/17 37/10 37/18 40/8
MS. MYERS: [16]  18/23 18/25 19/19 23/2
25/13 27/7 27/12 28/14 28/16 30/22 32/2
32/14 32/19 33/25 39/7 40/9
PLAINTIFF WILLIAMS: [1]  3/14
THE COURT: [50]
THE JUDICIAL ASSISTANT: [1]  4/14

**0**

02110 [1]  1/16

**1**

10 [1]  8/24
10:59 [1]  40/14
11 [1]  1/8
12 [1]  5/9
13 [2]  5/9 21/19
13-1 [1]  28/3
1402 [1]  1/3
15 [1]  31/3
155 [1]  1/16
16 [2]  18/3 31/9
17 [1]  21/25
187,000-dollar [1]  36/9
19 [1]  39/11
1900 [1]  1/20
19106 [1]  2/21

**2**

20-1402 [1]  1/3
2020 [1]  1/8
2609 [1]  2/20
266 [1]  25/18
267 [2]  2/21 25/19
29 [1]  28/22
299-7254 [1]  2/21

**3**

30 [2]  5/9 24/15
31 [1]  5/9
33 [1]  5/9
33,000 [1]  36/10
34 [1]  5/9

**4**

400 [1]  1/16

**5**

5600 [1]  1/17

**6**

601 [1]  2/20
617-398-5600 [1]  1/17
655 [1]  1/20

**7**

7254 [1]  2/21

92101 [1]  1/20
9:59 [2]  1/9 3/1
9th [1]  29/13

**A**

a.m [3]  1/9 3/1 40/14
abandoned [4]  32/9 32/14 37/11 37/15
abandonment [1]  32/4
abilities [1]  10/2
ability [3]  22/7 31/16 39/23
able [5]  26/21 26/24 31/10 39/18 40/12
about [32]  5/22 6/4 7/6 8/6 8/8 8/22 10/1
10/1 12/18 13/25 14/2 15/16 16/4 16/11
17/15 17/19 19/6 20/24 21/7 22/21 22/22
25/3 25/17 26/10 30/6 31/15 31/17 34/1 35/8
35/14 36/6 38/5
above [1]  40/19
above-entitled [1]  40/19
ABRAMOWITZ [2]  2/1 3/18
Absent [1]  13/19
absurd [2]  7/25 8/4
accepted [1]  28/7
according [1]  27/22
account [2]  6/2 7/20
accounted [1]  15/2
accounts [4]  7/10 7/11 7/19 7/19
acknowledging [1]  17/7
across [1]  35/12
act [4]  7/17 7/23 25/19 26/24
acting [2]  21/13 38/7
action [1]  8/25
active [2]  20/21 25/22
actual [2]  13/3 13/6
actually [13]  9/19 11/6 15/10 19/1 19/7 20/1
21/23 22/1 22/18 26/5 26/7 27/4 31/2
ADAMS [2]  2/6 4/21
Adams' [1]  28/1
addition [1]  11/9
address [1]  15/18
adequacy [9]  6/1 16/10 16/11 17/19 20/16
21/16 22/15 32/22 34/5
adequate [5]  19/16 26/6 30/6 30/19 32/1
adequately [9]  12/25 15/22 16/7 25/12 26/16
27/11 30/17 33/21 33/23
adjourned [1]  40/14
advocacy [1]  39/17
advocate [2]  16/21 29/19
affairs [1]  7/14
affected [1]  15/5
affirmative [1]  33/17
affirmatively [1]  22/3
after [5]  13/17 14/3 27/24 28/2 28/17
again [14]  5/17 14/21 18/21 20/14 20/20
26/18 28/9 28/18 29/21 30/4 37/4 38/5 39/16
40/13
against [3]  14/14 23/10 36/11
agenda [2]  38/13 38/17
agent [2]  20/21 25/22
aggressively [1]  14/22
agree [3]  13/23 19/21 21/10
agreed [2]  6/16 7/11
agreement [1]  37/11
ahead [3]  3/3 5/15 18/24
ALBERT [3]  2/4 3/5 3/7
all [35]  1/3 3/20 4/6 4/7 4/15 4/20 4/23 5/5
5/10 6/5 6/16 8/16 9/11 9/20 10/21 13/15
15/8 15/14 15/17 16/18 16/19 18/11 18/13

2014 18/14 18/21 19/14 19/9 24/10 26/3
29/15 31/15 39/17 40/3 40/13
allay [1]  35/7
allegation [7]  13/6 27/22 28/4 28/7 28/18
28/19 28/20
allegations [4]  22/24 27/25 29/3 29/23
alleged [2]  13/21 27/19
allegedly [1]  29/16
allow [1]  17/21
allowing [1]  24/1
almost [1]  26/4
alone [1]  12/3
already [3]  20/23 33/22 39/6
also [19]  1/23 4/22 9/2 9/4 10/3 15/12 17/23
21/8 27/2 30/24 31/5 31/12 31/14 33/10
34/10 35/3 35/15 36/3 36/17
alternative [2]  24/8 24/11
altogether [1]  24/20
amalgamation [1]  33/13
amiss [1]  14/4
among [2]  6/10 16/20
amongst [1]  10/11
amount [1]  11/25
amounted [1]  26/14
analyzing [1]  16/12
ANDREW [1]  2/1
Andy [1]  3/18
another [5]  14/21 31/5 33/10 35/13 39/24
answer [2]  39/2 39/25
answered [1]  6/18
any [9]  18/15 31/14 32/20 37/6 37/16 37/16
39/3 39/5 40/6
anybody [1]  29/18
anyone [4]  4/13 27/23 28/2 40/6
anything [4]  10/25 12/12 17/15 33/21
apart [1]  35/21
apologize [1]  7/4
appealing [1]  25/1
appear [1]  32/7
APPEARANCES [1]  1/13
appears [1]  32/14
applications [1]  32/7
apply [1]  31/19
appoint [10]  1/10 15/24 26/19 30/23 31/18
35/18 37/2 37/12 37/13 38/2
appointed [5]  5/23 6/8 8/4 25/11 30/4
appointing [5]  21/21 26/19 35/8 36/2 36/2
appointment [3]  21/24 22/2 22/4
appreciate [4]  37/3 39/11 39/13 40/5
appropriate [1]  6/24
approved [1]  38/12
are [48]
arguably [2]  25/15 30/12
argue [1]  15/3
argued [1]  37/4
arguing [2]  3/20 31/25
argument [7]  5/10 15/15 19/12 19/18 27/13
30/14 34/15
arguments [4]  6/2 36/11 36/16 39/23
Arizona [1]  24/23
around [1]  23/5
as [85]
ask [2]  5/3 30/8
asked [3]  20/23 23/3 23/11
asking [1]  17/8
assert [1]  11/19
assess [1]  34/7
assessment [2]  20/16 37/8
asset [2]  38/6 38/6

## A

**assets [1]** 7/22
**assigned [1]** 20/19
**assigning [1]** 8/16
**assuage [1]** 35/22
**assuaged [1]** 24/2
**assume [1]** 23/16
**assuming [1]** 30/22
**attach [1]** 34/16
**attention [1]** 39/12
**attorney [6]** 7/17 8/2 16/20 23/6 35/9 38/8
**attorney-client [1]** 16/20
**attorney-driven [1]** 35/9
**attorneys [2]** 5/7 35/23
**attorneys' [2]** 17/24 18/7
**atypicalities [1]** 36/16
**authority [1]** 35/25
**aware [3]** 12/21 14/4 25/14
**awareness [1]** 23/7

## B

**back [3]** 33/25 36/5 39/1
**background [2]** 5/2 19/3
**based [2]** 27/24 34/16
**basically [1]** 31/9
**be [38]** 3/20 4/19 6/8 6/16 7/3 7/15 8/2 8/3
 8/6 12/1 12/22 13/25 14/23 14/25 15/23
 17/11 17/20 18/1 18/7 18/22 20/7 21/13 22/3
 23/15 23/18 24/17 24/25 25/11 26/20 28/13
 28/16 29/17 30/19 32/1 32/16 34/22 36/8
 37/13
**because [20]** 8/17 9/13 10/22 15/7 15/11
 19/8 23/9 26/3 26/9 28/9 28/12 28/17 28/21
 29/10 29/22 30/13 38/12 38/14 38/18 39/22
**becomes [1]** 8/14
**been [9]** 4/11 9/4 14/4 20/5 28/21 32/11
 32/14 39/14 39/15
**before [24]** 1/11 4/16 6/12 6/16 10/15 10/23
 15/8 15/12 18/16 18/25 19/11 23/23 26/2
 27/19 28/4 28/10 29/4 29/5 29/7 34/4 35/11
 36/7 38/25 40/6
**begin [6]** 5/5 5/12 5/14 18/25 19/11 19/12
**behalf [12]** 1/3 4/17 5/14 7/17 7/23 8/20
 8/20 21/18 23/19 29/19 34/14 38/7
**being [2]** 7/14 39/18
**belabor [1]** 5/19
**belated [1]** 35/21
**believe [6]** 3/5 4/18 11/13 20/11 28/1 33/23
**below [2]** 30/24 31/21
**benefit [3]** 14/1 22/3 23/8
**Berger [2]** 3/17 3/23
**Berman [2]** 9/7 21/2
**besides [1]** 11/1
**best [3]** 11/16 11/24 26/16
**better [2]** 14/14 15/10
**between [3]** 5/9 19/25 29/23
**Bianco [1]** 23/23
**big [3]** 19/5 19/14 19/18
**bit [3]** 12/18 19/18 27/13
**BLOCK [11]** 1/15 2/3 3/19 3/19 4/1 4/5 6/25
 8/23 9/1 21/4 22/23
**Blockchain [2]** 34/25 38/20
**boilerplate [2]** 26/5 38/12
**Boston [1]** 1/16
**both [13]** 5/23 6/21 7/7 7/10 9/5 10/2 11/12
 18/5 18/14 19/18 35/6 36/18 38/7
**bounce [1]** 8/13
**bound [1]** 36/2

**BP [3]** 13/8 13/9 13/18
**break [1]** 35/21
**brief [13]** 14/7 22/7 24/14 24/18 24/19 28/3
 28/19 28/22 28/23 32/3 35/5 35/6 39/2
**briefing [6]** 12/22 18/12 18/12 23/12 24/25
 37/5
**briefly [2]** 27/2 37/18
**Brillian [1]** 24/22
**Broadway [1]** 1/20
**Brockway [1]** 24/19
**brokers [1]** 12/12
**Bronstein [2]** 9/9 21/2
**burden [6]** 20/4 33/20 34/10 34/11 34/12
 34/15
**bus [2]** 17/6 33/4
**busy [1]** 39/9

## C

**CA [1]** 1/20
**call [21]** 3/12 5/1 5/18 6/18 6/19 9/25 10/5
 10/7 10/10 10/14 10/23 11/1 11/10 11/16
 12/15 12/15 21/1 22/8 38/13 39/18 40/11
**called [2]** 4/18 30/24
**calling [1]** 4/19
**calls [1]** 8/18
**came [5]** 13/14 15/8 15/8 17/2 21/5
**can [13]** 6/8 7/3 10/25 11/10 12/1 12/14
 15/11 15/12 17/16 33/15 38/17 40/1 40/2
**can't [3]** 25/11 29/1 30/17
**candidacy [1]** 36/12
**candidates [1]** 15/11
**candidly [1]** 39/22
**cannot [2]** 33/21 33/23
**capabilities [1]** 10/1
**carefully [1]** 20/2
**carelessness [1]** 26/15
**CARSON [2]** 2/2 3/22
**case [31]** 4/12 6/4 8/24 9/1 10/1 10/10 12/17
 13/8 13/9 13/16 15/1 18/1 19/6 19/9 23/22
 23/23 24/21 24/22 26/1 26/1 26/8 26/18
 27/18 29/3 29/21 34/21 34/22 34/25 35/17
 40/3 40/13
**cases [2]** 8/25 13/9
**cast [1]** 5/6
**cell [1]** 4/25
**Cemtrex [1]** 23/23
**Cendant [32]** 5/24 6/6 6/9 6/15 6/24 10/13
 14/20 19/21 20/1 20/10 20/14 20/15 20/22
 21/6 21/9 21/15 22/13 22/19 23/5 25/3 25/8
 25/14 25/17 25/18 25/25 29/4 34/3 34/13
 34/16 35/8 36/1 36/25
**certain [2]** 15/5 29/22
**certainly [1]** 33/3
**CERTIFICATE [1]** 40/16
**certification [5]** 10/20 13/16 13/17 26/11
 30/2
**certifications [2]** 9/17 10/19
**certify [1]** 40/18
**challenge [2]** 28/16 29/24
**challenger [1]** 20/6
**challenging [2]** 16/18 39/10
**chambers [1]** 4/10
**chance [1]** 30/8
**chances [1]** 33/12
**change [3]** 4/7 17/15 33/14
**chart [1]** 13/4
**checks [1]** 26/3
**choices [2]** 36/23 36/23

**circuit [12]** 5/21 6/5 6/7 10/9 10/13 25/10
 25/14 34/20 34/22 34/23 34/24 36/1
**Circuit's [1]** 8/2
**cite [5]** 13/8 13/8 26/2 34/20 34/22
**cited [2]** 24/21 34/24
**cites [1]** 23/22
**Citron [1]** 27/20
**claim [2]** 27/8 28/2
**claiming [1]** 19/17
**clarify [1]** 27/14
**class [30]** 9/2 9/3 13/1 13/7 13/10 13/16
 13/17 13/21 13/23 15/23 16/7 16/14 16/16
 20/21 22/4 25/10 25/12 25/22 26/17 27/11
 28/13 29/15 29/17 30/2 30/7 30/17 32/16
 32/20 33/21 33/24
**clear [6]** 5/20 13/19 21/15 34/13 34/16 34/23
**clearly [1]** 14/23
**Clerk [1]** 3/1
**clerks [1]** 4/11
**client [1]** 16/20
**clients [7]** 9/4 9/6 9/9 14/21 15/1 16/20
 38/15
**close [1]** 39/5
**cobbling [1]** 9/21
**cohesive [5]** 10/8 11/3 22/5 26/21 33/19
**cohesively [3]** 8/15 17/17 26/25
**colleague [3]** 3/18 4/22 20/24
**colleagues [1]** 4/18
**come [6]** 8/22 13/15 13/16 24/11 24/12 36/7
**comes [2]** 8/11 10/22
**commenced [2]** 27/20 28/5
**comments [1]** 39/5
**communicated [2]** 9/20 35/11
**communications [3]** 11/11 38/22 38/24
**comparatively [1]** 39/18
**compared [1]** 31/24
**comparing [1]** 14/13
**compensated [1]** 18/1
**complaint [9]** 13/6 27/18 27/18 27/19 27/22
 28/19 28/23 28/25 29/2
**completely [3]** 14/9 15/10 17/18
**complicated [1]** 13/15
**compliment [1]** 18/11
**comply [2]** 22/18 25/25
**comprised [1]** 35/12
**concedes [1]** 14/7
**concern [3]** 8/12 25/23 30/1
**concerned [8]** 8/6 8/8 12/23 13/25 17/19
 21/6 25/3 26/10
**concerns [5]** 24/3 29/9 35/7 35/14 35/22
**concise [1]** 18/13
**conclude [4]** 13/23 20/10 30/16 40/7
**conclusory [1]** 35/16
**conference [8]** 6/18 6/19 10/5 10/7 10/10
 10/14 11/1 11/9
**confess [1]** 39/20
**configurations [1]** 24/9
**consider [3]** 7/21 31/25 35/20
**considered [1]** 22/1
**consolidate [1]** 8/25
**constantly [1]** 24/25
**constituted [4]** 20/18 20/25 21/7 34/7
**contend [3]** 20/13 27/24 28/1
**contending [1]** 19/15
**content [1]** 7/22
**contention [3]** 8/5 19/24 20/8
**contest [1]** 5/9
**continue [3]** 11/12 11/17 31/23

**C**

**contours [1]** 29/2
**contradict [1]** 24/9
**contradictory [1]** 15/20
**contrast [1]** 36/20
**controlling [1]** 19/22
**convenient [1]** 8/2
**conversation [2]** 38/16 38/18
**conversations [1]** 16/3
**Cooley [2]** 4/18 4/21
**correct [3]** 3/4 28/23 40/18
**corrected [1]** 29/10
**corrective [1]** 13/12
**correctly [1]** 31/1
**correspondence [1]** 6/23
**could [5]** 4/23 5/2 24/5 28/13 40/1
**counsel [16]** 6/22 6/22 6/25 9/15 16/13 17/25
 18/11 18/14 24/12 24/15 25/24 27/1 27/17
 35/11 35/15 36/17
**counsel's [1]** 36/23
**count [3]** 28/9 28/12 28/12
**country [1]** 35/13
**couple [5]** 7/2 7/5 7/10 7/12 8/20
**couples [1]** 21/13
**course [2]** 27/7 30/8
**court [36]** 1/1 2/19 2/20 3/1 5/22 5/24 6/1
 16/9 17/14 17/18 19/1 19/12 20/3 20/17 21/8
 21/10 21/16 21/21 22/9 23/25 24/17 25/1
 25/17 29/10 29/11 31/18 34/4 34/5 34/6
 34/23 35/10 35/14 35/19 39/8 39/9 39/11
**Court's [6]** 20/23 24/3 32/10 34/9 35/7
 35/22
**courts [6]** 6/7 8/8 10/8 13/10 13/20 21/10
**COVID [1]** 39/11
**COVID-19 [1]** 39/11
**CRAIG [2]** 2/5 4/22
**created [3]** 21/7 22/21 22/25
**criteria [1]** 20/14
**critical [2]** 8/13 10/22
**crowbar [1]** 38/10
**CRR [2]** 2/19 40/23
**Cui [6]** 30/18 30/25 31/5 31/12 31/14 31/20
**Cullinan [1]** 23/23

**D**

**Dahlstrom [1]** 24/16
**DANIELLE [1]** 1/19
**danim [1]** 1/21
**DARREN [3]** 2/4 3/9 3/11
**dates [1]** 26/12
**day [3]** 13/5 17/2 27/20
**deadlines [1]** 40/3
**death [1]** 14/9
**decide [1]** 37/13
**decided [2]** 22/3 22/10
**decision [19]** 6/6 6/10 6/13 6/13 8/19 9/14
 9/21 10/2 10/23 17/21 19/21 25/13 25/15
 26/7 26/14 29/11 34/23 40/2 40/12
**decisions [1]** 8/19
**declaration [29]** 6/20 9/18 11/5 11/19 17/25
 18/8 19/2 21/2 21/24 22/1 22/11 22/19 24/1
 24/10 26/3 26/5 26/11 31/14 34/21 35/4 35/5
 35/16 36/15 38/8 38/11 38/13 38/16 38/22
 39/2
**declarations [4]** 7/9 7/13 38/23 38/24
**declining [1]** 36/3
**deem [1]** 15/21
**deemed [2]** 10/8 12/1

**defendant [1]** 14/15
**defendant's [1]** 29/16
**defendants [6]** 1/9 14/8 27/24 28/1 28/17
 29/24
**defense [1]** 29/9
**defenses [6]** 12/24 12/25 27/9 27/10 27/16
 36/16
**defined [1]** 29/21
**degree [1]** 26/15
**delegate [1]** 23/6
**DELL'ANGELO [2]** 2/1 3/17
**deny [1]** 37/1
**described [2]** 6/19 6/20
**details [1]** 16/19
**determination [4]** 6/7 20/3 29/1 34/5
**determine [2]** 5/23 14/18
**determines [1]** 5/24
**developed [1]** 17/20
**did [26]** 6/23 7/9 7/12 7/16 16/12 16/25
 17/25 18/3 18/25 19/2 19/9 21/23 23/19
 26/18 29/13 30/23 31/6 31/14 32/7 32/10
 34/22 35/22 36/9 36/12 38/8 38/9
**didn't [4]** 4/3 24/17 34/20 35/13
**Diego [4]** 1/20 19/2 19/4 19/5
**difference [1]** 19/25
**different [8]** 8/7 23/25 26/24 32/25 38/2
 38/18 38/18 38/25
**differently [1]** 19/23
**difficult [1]** 8/14
**directed [1]** 29/4
**directly [2]** 17/1 25/18
**disagree [2]** 37/8 37/10
**disband [2]** 22/16 36/4
**disclosure [1]** 13/13
**discretion [1]** 31/25
**discussed [2]** 29/14 38/15
**discussing [2]** 17/24 38/21
**discussion [1]** 40/1
**discussions [2]** 10/1 12/16
**disinclined [2]** 31/18 35/20
**dismiss [1]** 30/2
**disqualifies [2]** 21/16 26/7
**distinguishes [1]** 10/6
**district [9]** 1/1 1/1 1/11 2/20 2/20 23/24
 24/22 34/23 34/25
**do [19]** 4/6 8/21 11/17 12/24 14/18 20/11
 22/24 26/25 27/1 27/13 30/5 30/20 33/6
 33/16 34/14 36/2 37/7 37/13 39/24
**docket [3]** 31/3 32/10 39/9
**Document [2]** 21/19 21/25
**does [13]** 6/1 21/12 22/14 25/17 25/24 32/15
 32/19 32/22 33/7 33/14 34/16 35/18 36/25
**doesn't [9]** 7/6 14/9 17/15 21/15 22/18 25/7
 25/25 26/5 32/21
**doing [2]** 25/24 30/21
**dollar [1]** 36/9
**don't [26]** 3/3 5/18 10/9 12/3 12/11 12/24
 13/10 13/24 16/6 18/2 18/7 21/3 22/16 23/4
 24/3 25/23 27/25 30/18 30/20 31/16 32/24
 33/2 33/9 35/7 37/10 38/1
**done [6]** 18/10 30/9 36/14 37/5 39/16 40/3
**doubt [1]** 26/15
**DOWD [1]** 1/19
**down [8]** 5/6 5/7 14/2 14/13 14/25 30/3 31/4
 36/8
**Dr. [1]** 24/19
**Dr. Brockway [1]** 24/19
**driven [12]** 9/11 9/12 9/13 9/16 10/17 24/8
 32/24 34/8 34/11 34/12 35/9 35/24

**duties [1]** 6/19
**duty [1]** 16/21
**dwarf [1]** 38/1
**dynamics [1]** 12/14

**E**

**each [8]** 6/20 6/21 9/14 9/20 9/24 10/2 11/12
 11/23
**early [1]** 13/25
**EASTERN [3]** 1/1 2/20 23/24
**ECF [3]** 5/9 24/15 28/3
**effort [1]** 28/23
**efforts [1]** 35/23
**either [6]** 17/4 28/23 30/1 30/13 36/2 38/22
**else [6]** 4/1 4/13 10/25 17/15 33/13 33/22
**employed [1]** 12/12
**enacted [3]** 20/20 25/18 32/23
**end [1]** 36/5
**engaging [1]** 14/19
**enough [4]** 4/7 12/2 23/25 26/3
**Enron [1]** 19/9
**ensure [2]** 18/5 23/17
**entire [2]** 14/10 16/2
**entitled [1]** 40/19
**entity [2]** 25/20 25/21
**episode [1]** 33/1
**era [1]** 39/11
**errors [4]** 26/9 26/10 26/11 26/13
**especially [1]** 39/9
**ESQUIRE [13]** 1/15 1/19 2/1 2/1 2/2 2/2 2/3
 2/3 2/4 2/4 2/5 2/5 2/6
**essentially [1]** 32/4
**estate [1]** 38/6
**evade [1]** 8/2
**even [13]** 6/15 9/22 14/6 14/7 15/10 21/12
 22/8 23/16 24/3 25/23 28/20 36/22 36/23
**evening [1]** 17/1
**event [3]** 17/4 34/18 35/19
**every [2]** 20/9 36/21
**everybody [4]** 5/2 16/21 39/15 40/12
**everyone [4]** 3/10 4/9 29/19 40/10
**everything [2]** 36/14 40/3
**evidence [13]** 10/14 11/16 11/24 13/19 16/24
 20/9 24/7 25/6 25/7 26/20 26/23 33/17 38/24
**evidences [1]** 20/13
**evolved [1]** 24/25
**example [1]** 30/16
**excellent [3]** 18/12 18/12 39/17
**exchange [1]** 6/22
**exclude [1]** 14/8
**Excuse [1]** 28/11
**existing [1]** 11/6
**expenses [3]** 17/24 18/5 18/6
**experience [1]** 39/22
**experts [1]** 15/2
**explain [1]** 35/13
**explaining [1]** 24/2
**explanation [3]** 23/13 31/13 33/15
**explicitly [1]** 7/13
**expressly [2]** 26/19 33/7
**extensively [1]** 19/5
**eye [1]** 18/6

**F**

**facie [1]** 5/25
**facility [1]** 19/4
**fact [14]** 13/12 14/3 17/19 21/12 21/24 22/19
 24/10 25/2 26/1 31/11 32/5 32/8 34/22 36/12

**F**

**fact-intensive [1]** 13/12
**factor [1]** 16/11
**factors [2]** 16/9 16/10
**facts [2]** 13/3 29/17
**fair [4]** 16/22 17/13 18/5 33/16
**fairly [2]** 26/16 35/16
**fall [1]** 22/12
**false [1]** 29/16
**familiarity [2]** 19/7 19/10
**far [1]** 11/15
**fault [1]** 17/23
**federal [2]** 1/16 28/3
**fees [3]** 17/24 18/5 18/7
**few [2]** 5/19 11/4
**fiduciary [2]** 23/15 23/18
**fight [4]** 14/22 15/11 15/12 16/16
**fighting [2]** 17/6 17/10
**file [7]** 8/24 9/1 10/20 10/23 27/19 31/14 32/20
**filed [19]** 6/17 7/13 8/24 9/1 10/15 23/18 27/17 27/23 28/22 30/11 31/1 31/8 32/7 36/15 36/24 37/9 38/8 38/11 38/23
**files [1]** 25/10
**filing [6]** 6/12 17/1 32/3 32/16 33/12 38/25
**filings [4]** 5/8 5/10 39/16 39/16
**final [3]** 37/6 39/5 40/6
**finalize [1]** 40/2
**finally [1]** 38/20
**financial [3]** 5/25 14/18 26/8
**find [1]** 17/11
**finding [1]** 14/2
**fine [2]** 18/10 37/16
**firm [17]** 3/19 4/18 6/14 9/7 9/9 10/18 19/7 19/8 21/2 21/3 21/5 22/22 31/1 31/7 33/10 33/10 33/13
**firms [7]** 9/5 9/5 9/21 21/1 22/23 23/17 32/25
**first [15]** 6/5 10/15 12/8 13/3 15/17 15/20 16/9 20/2 20/14 20/15 20/25 24/14 25/15 33/1 34/18
**fits [1]** 21/6
**five [8]** 8/3 8/9 8/9 8/11 10/18 10/19 21/11 37/23
**flurry [1]** 39/14
**focused [1]** 5/8
**followed [1]** 30/13
**following [1]** 36/1
**Footnote [2]** 13/9 24/15
**foregoing [1]** 40/18
**formal [1]** 31/24
**formally [5]** 30/11 30/15 31/2 32/11 37/9
**formed [2]** 20/17 34/6
**formulations [1]** 24/11
**forward [3]** 16/2 17/4 17/12
**found [2]** 6/24 35/13
**four [2]** 26/24 37/23
**frame [1]** 39/21
**framework [1]** 14/17
**friends [3]** 11/6 24/16 37/25
**fulfilling [1]** 20/19
**function [4]** 11/2 20/21 25/22 26/21
**future [1]** 29/2

**G**

**GAGLIARDI [2]** 2/19 40/23
**game [3]** 13/20 24/24 38/9
**gate [3]** 26/9 26/14 36/14

**gathering [1]** 39/21
**GELLER [3]** 1/19 19/8 36/19
**generally [3]** 13/10 13/20 21/11
**GERALD [1]** 1/11
**get [9]** 4/23 9/22 13/10 16/18 23/5 39/4 39/14 39/25 40/11
**gets [2]** 6/11 33/5
**getting [3]** 12/14 14/2 39/15
**Gewirtz [3]** 9/9 21/3 22/23
**give [2]** 30/8 33/15
**given [1]** 17/19
**gives [1]** 29/24
**go [8]** 3/3 5/15 17/12 18/24 27/5 32/22 33/25 39/1
**goes [1]** 20/1
**going [14]** 4/23 8/18 8/18 14/23 14/25 15/3 17/11 18/1 18/22 21/13 27/4 29/18 29/19 30/3
**gone [2]** 11/10 11/18
**good [7]** 3/13 3/14 3/16 4/8 12/4 13/11 39/4
**got [7]** 3/25 4/7 8/10 9/17 10/21 36/24 37/21
**gotten [1]** 24/8
**Goya [2]** 7/7 7/16
**grant [2]** 7/16 8/1
**grateful [1]** 18/13
**great [5]** 5/17 18/21 18/21 39/15 40/10
**greatest [1]** 36/13
**greatly [1]** 39/11
**group [137]**
**group's [8]** 18/4 21/1 27/17 28/3 28/8 33/19 34/10 37/1
**groups [14]** 6/8 8/3 8/8 8/9 10/7 10/12 10/14 21/11 23/25 33/3 35/2 35/3 35/17 38/23
**guess [3]** 14/16 33/12 33/25
**guidance [1]** 8/12

**H**

**hac [1]** 32/7
**had [17]** 7/10 7/10 9/2 9/4 9/6 9/24 9/25 11/11 12/15 12/16 16/3 18/2 34/21 35/3 35/14 35/23 38/16
**Hagens [3]** 9/7 21/2 22/22
**Haldenstein [1]** 31/7
**handed [1]** 7/14
**happen [1]** 23/19
**happened [10]** 10/17 10/23 23/14 23/21 24/2 24/3 24/5 24/5 28/10 29/6
**happening [4]** 13/20 33/2 33/2 38/9
**happy [3]** 5/14 5/15 39/2
**hard [3]** 23/11 39/25 40/13
**harmed [2]** 29/15 29/20
**has [33]** 4/11 5/24 5/25 6/3 6/9 7/11 11/10 11/15 11/15 11/18 11/23 14/7 14/18 15/7 16/15 17/16 19/7 20/5 20/17 25/9 26/6 27/9 28/25 32/11 33/13 34/6 34/17 36/14 36/20 37/21 38/3 39/9 39/15
**have [57]**
**haven't [3]** 30/13 30/14 36/21
**having [4]** 8/12 23/6 32/18 36/24
**he [21]** 8/17 12/2 16/25 17/8 17/11 19/3 19/7 19/9 26/16 29/14 31/5 33/11 34/20 36/7 36/7 36/9 36/9 36/12 36/15 36/15 36/17
**he's [3]** 19/2 19/4 38/7
**head [1]** 32/22
**hear [4]** 4/3 5/10 5/15 7/25
**heard [5]** 3/17 23/14 23/20 24/4 36/21
**hearing [2]** 32/5 36/8
**held [6]** 6/17 10/7 10/11 10/11 25/10 26/13
**help [2]** 4/25 5/1

**helpful [1]** 40/4
**helping [1]** 40/4
**her [9]** 7/17 7/19 7/22 7/23 8/1 8/16 23/8 23/9 37/8
**herd [1]** 27/1
**here [26]** 3/12 8/16 9/24 10/17 10/22 12/4 16/10 16/14 19/4 20/6 21/18 22/14 22/21 24/3 24/19 26/3 26/14 26/22 27/14 30/21 35/18 36/8 36/8 37/14 38/4 39/1
**hereby [1]** 21/20
**higher [1]** 17/16
**highest [1]** 16/16
**him [8]** 15/22 15/24 16/6 17/6 17/12 19/6 29/14 30/8
**himself [5]** 23/9 23/10 23/14 23/20 33/11
**hire [2]** 15/2 16/13
**his [19]** 8/19 12/22 14/6 15/8 15/8 15/19 16/6 16/25 17/6 17/21 18/8 19/3 19/6 33/11 33/12 36/7 36/11 36/12 36/23
**history [1]** 11/24
**hit [1]** 32/22
**hoc [1]** 10/21
**hole [1]** 30/3
**Honor [68]**
**HONORABLE [1]** 1/11
**hosting [1]** 5/18
**house [1]** 32/18
**Houston [1]** 19/9
**how [27]** 4/6 6/6 6/21 8/21 14/17 14/20 17/25 20/24 21/5 21/7 21/7 23/14 23/20 24/2 24/5 24/5 25/1 25/17 27/10 30/18 30/20 33/2 33/25 35/13 35/14 36/23 37/8
**However [1]** 25/17
**husband [3]** 7/22 8/17 23/7
**husband's [1]** 21/14
**hypothetical [1]** 29/2

**I**

**I'd [4]** 6/4 15/18 27/2 36/5
**I'll [3]** 14/6 19/14 39/20
**I'm [13]** 3/6 4/9 5/10 5/14 12/4 18/13 21/19 25/13 25/18 26/14 30/25 39/2 39/4
**I've [2]** 12/16 18/18
**ideas [1]** 8/13
**identified [1]** 35/8
**immediately [1]** 16/25
**important [3]** 10/5 14/25 38/15
**importantly [1]** 10/15
**inadequacies [1]** 36/17
**INC [1]** 1/6
**incapable [4]** 12/25 15/22 16/6 27/10
**included [2]** 17/11 31/5
**includes [1]** 30/25
**including [3]** 7/19 13/7 24/22
**inclusion [2]** 17/7 17/10
**inconsistent [1]** 25/11
**incorporated [1]** 13/13
**increase [1]** 33/11
**independent [4]** 10/2 11/7 26/21 34/9
**independently [1]** 20/10
**individual [20]** 6/12 6/13 7/19 7/19 9/14 9/19 9/20 9/21 9/24 10/19 10/23 16/13 16/25 23/24 32/15 32/25 33/8 35/3 36/3 38/1
**individually [3]** 1/3 7/11 22/2
**individuals [4]** 8/21 12/7 13/5 21/23
**information [2]** 15/5 18/3
**informative [1]** 18/13
**inherently [1]** 15/19
**initial [5]** 21/16 25/7 27/18 34/5 38/25

**I**

**initiated [1]** 35/23
**INOVIO [29]** 1/6 1/15 3/15 5/8 5/14 6/3 10/6 11/2 11/20 11/21 12/23 15/24 17/9 17/14 19/15 21/20 21/21 22/25 27/9 27/10 27/12 30/17 30/23 30/24 31/18 33/18 33/19 35/18 36/20
**input [1]** 21/14
**inquire [1]** 21/9
**inquiries [1]** 9/3
**inquiry [5]** 8/5 13/12 20/2 20/14 34/9
**instances [1]** 35/6
**insufficient [1]** 10/21
**insufficiently [1]** 10/8
**intended [1]** 33/5
**intends [1]** 29/15
**intensive [1]** 13/12
**interest [5]** 5/25 14/18 25/20 26/8 26/17
**interested [3]** 9/6 9/7 12/8
**interesting [3]** 14/23 15/14 15/15
**interpret [1]** 19/22
**intimate [1]** 33/17
**introduced [2]** 9/8 9/25
**introduction [1]** 3/18
**inure [1]** 14/1
**investing [1]** 11/24
**investments [1]** 7/21
**investor [3]** 12/1 30/25 35/3
**investors [6]** 11/20 11/22 14/3 27/21 28/6 35/9
**invite [1]** 22/9
**involved [1]** 38/19
**is [139]**
**isn't [4]** 8/5 14/14 31/23 33/20
**issue [9]** 8/6 8/17 13/24 14/25 15/18 27/3 27/14 27/15 29/14
**issued [3]** 9/2 27/21 28/5
**issues [7]** 12/17 17/8 18/14 19/20 19/22 40/4 40/11
**issuing [1]** 39/14
**it [68]**
**it's [36]** 6/5 6/24 7/3 8/7 8/17 9/18 12/4 13/12 14/25 16/18 16/22 20/3 20/5 20/18 21/7 23/12 29/6 29/8 29/8 29/9 30/7 31/2 33/1 33/2 33/12 33/13 34/7 34/12 34/12 34/14 35/1 38/3 38/6 38/12 38/14 38/14
**its [2]** 39/8 39/11
**itself [6]** 17/2 20/3 25/14 29/17 34/3 36/22

**J**

**JACOB [3]** 1/15 3/19 4/2
**Jake [1]** 5/13
**Jeff [1]** 3/19
**JEFFREY [2]** 2/3 4/5
**Jersey [1]** 34/25
**jettison [5]** 22/8 24/20 25/6 29/18 35/18
**job [3]** 18/4 18/10 18/21
**join [1]** 39/18
**joint [14]** 7/11 7/20 7/22 10/20 11/19 17/25 21/2 21/24 21/25 22/19 24/10 31/14 34/21 38/6
**JOSEPH [1]** 1/7
**JUDGE [18]** 1/11 3/4 4/16 6/10 6/24 7/3 23/23 26/2 26/10 26/12 26/18 26/19 35/1 35/6 35/20 36/1 36/18 37/4
**judgment [1]** 13/17
**jump [1]** 7/2
**juncture [1]** 29/11

**June [1]** 1/8
**jurisprudence [1]** 25/16
**just [22]** 4/14 4/16 8/7 9/1 10/19 11/10 12/14 14/16 17/9 18/25 20/25 21/14 27/2 32/17 33/8 35/18 36/5 37/18 38/5 38/21 38/25 39/7

**K**

**Katie [1]** 4/13
**keep [2]** 4/24 18/6
**keeping [1]** 16/19
**key [3]** 14/5 16/11 38/21
**KIM [1]** 1/7
**kind [16]** 7/14 9/5 9/16 9/21 13/20 14/19 16/14 23/4 23/5 24/23 26/4 27/1 29/8 32/23 33/1 39/10
**kinds [1]** 26/13
**knock [1]** 15/9
**knocking [1]** 14/9
**knocks [1]** 31/24
**know [76]**
**knows [1]** 6/21
**kudos [1]** 37/4

**L**

**label [1]** 11/22
**lack [1]** 33/17
**language [2]** 20/22 34/17
**large [3]** 9/23 21/9 21/12
**larger [4]** 8/8 8/9 35/3 37/24
**largest [7]** 5/24 14/18 21/18 26/8 30/24 31/4 36/3
**late [5]** 10/22 22/8 22/17 26/23 36/24
**later [1]** 10/8
**latter [1]** 28/14
**law [15]** 5/21 6/14 9/5 9/5 9/21 10/18 19/7 19/8 21/1 23/17 24/21 32/25 33/10 33/10 33/13
**LAWRENCE [1]** 2/3
**laws [1]** 28/3
**lawyer [10]** 9/11 9/16 10/17 22/21 24/8 32/24 34/8 34/11 34/12 35/24
**lawyer-created [1]** 22/21
**lawyer-driven [9]** 9/11 9/16 10/17 24/8 32/24 34/8 34/11 34/12 35/24
**lawyers [4]** 4/6 19/8 22/25 39/17
**lays [2]** 6/6 14/20
**lead [31]** 1/10 5/6 5/23 6/8 6/12 6/17 6/25 8/4 9/15 10/24 14/14 15/25 17/25 20/12 20/19 20/20 21/20 21/21 22/2 22/5 23/16 25/11 25/15 25/19 26/25 29/1 29/18 31/16 32/16 35/9 37/2
**learned [2]** 20/25 22/22
**least [2]** 11/14 19/21
**left [1]** 39/6
**Lerma [6]** 7/7 7/11 7/15 7/16 8/1 38/5
**let [3]** 4/17 7/2 37/7
**let's [8]** 3/2 4/23 7/5 12/18 15/16 16/4 30/6 33/9
**level [1]** 21/8
**LEVITON [7]** 1/15 3/19 6/25 8/23 9/1 21/5 22/23
**lightbulb [1]** 4/7
**like [16]** 4/25 5/5 5/12 5/14 6/4 12/12 15/18 17/7 27/2 31/6 31/12 33/1 33/22 34/4 35/17 36/5
**limit [1]** 23/6
**limited [1]** 32/21
**line [3]** 3/21 4/10 4/22
**lines [1]** 5/4

**litigation [8]** 7/23 9/6 9/16 10/17 11/7 13/11 25/21 32/24
**little [4]** 12/18 17/5 19/18 27/13
**live [4]** 19/9 31/17 32/6 32/10
**LLP [2]** 1/15 1/19
**locate [1]** 25/19
**LOFTUS [3]** 2/5 4/17 4/20
**lone [1]** 11/1
**long [1]** 6/17
**longer [1]** 8/13
**longtime [1]** 24/16
**look [15]** 9/10 12/6 13/18 13/21 13/22 17/9 17/14 20/17 22/13 22/16 29/1 29/4 32/17 34/6 39/1
**looked [1]** 35/6
**looking [1]** 21/19
**looks [1]** 16/9
**loose [1]** 35/8
**loosely [1]** 25/1
**loses [1]** 12/2
**loss [8]** 21/18 30/24 31/5 33/11 33/14 36/3 36/9 36/13
**losses [22]** 7/8 11/25 13/14 14/7 14/12 14/13 14/22 15/2 15/4 15/8 15/11 15/13 17/16 19/6 23/9 23/9 28/8 35/4 37/22 37/23 38/1 38/4
**lot [5]** 12/9 14/3 15/16 22/21 36/6

**M**

**MA [1]** 1/16
**ma'am [1]** 18/24
**made [15]** 5/19 5/25 9/14 9/20 10/2 10/23 13/3 14/3 18/19 20/5 22/21 26/6 28/23 34/20 36/7
**main [2]** 23/1 23/2
**majority [1]** 28/8
**make [17]** 6/7 8/19 14/6 15/1 15/3 18/15 18/19 20/4 20/20 21/15 22/14 28/25 29/10 29/11 32/23 34/17 37/22
**makes [7]** 6/12 12/22 13/19 15/10 34/5 34/13 38/16
**making [4]** 6/12 8/19 20/15 37/20
**manage [1]** 7/23
**managed [1]** 7/15
**manner [2]** 20/18 24/25
**Manuel [2]** 1/19 2/6
**many [4]** 4/6 8/12 15/1 23/8
**March [19]** 12/18 12/23 13/5 13/7 13/22 14/8 14/9 14/23 14/24 15/3 15/4 15/9 15/12 15/13 27/2 27/8 27/14 27/20 28/5
**March 9 [18]** 12/18 12/23 13/5 13/7 13/22 14/8 14/9 14/23 14/24 15/3 15/4 15/9 15/12 15/13 27/2 27/8 27/14 27/20
**marital [3]** 7/14 7/22 38/6
**market [10]** 2/20 12/9 12/9 12/13 13/14 13/14 15/6 27/23 28/10 29/7
**married [4]** 7/10 7/12 8/20 21/13
**mass [1]** 8/14
**matter [5]** 7/14 27/22 32/9 39/12 40/19
**may [6]** 12/5 27/6 28/22 31/22 31/22 32/20
**May 29 [1]** 28/22
**maybe [2]** 9/11 39/21
**McDERMID [1]** 1/3
**me [11]** 4/10 4/12 7/2 8/6 8/22 11/1 17/8 18/11 19/12 28/11 37/7
**mean [8]** 7/6 11/23 12/7 14/1 14/9 18/12 19/15 33/11
**means [2]** 27/21 32/8
**meet [2]** 25/7 40/3

**M**

**member [7]** 23/25 24/2 25/10 32/20 33/4 35/18 35/19
**members [18]** 6/21 7/7 9/3 9/19 11/5 17/21 21/3 21/11 21/12 22/9 23/3 24/12 24/24 29/15 32/16 35/10 37/23 37/24
**messy [1]** 33/5
**met [1]** 6/9
**MICHAEL [3]** 2/1 2/4 3/17
**might [5]** 4/25 8/2 24/25 29/3 37/6
**Mike [2]** 3/5 3/7
**mind [1]** 16/19
**mindful [1]** 18/7
**Minnesota [1]** 11/8
**misapprehends [1]** 27/13
**misleading [1]** 29/16
**mistake [1]** 28/21
**momentarily [1]** 4/19
**money [3]** 7/21 12/2 12/10
**monitor [1]** 35/15
**Montague [2]** 3/17 3/23
**more [6]** 8/3 21/11 28/20 33/8 37/20 38/3
**morning [3]** 3/13 3/14 3/16
**most [3]** 14/5 19/16 30/19
**motion [31]** 1/10 6/17 10/15 16/25 18/8 19/3 20/13 21/18 23/18 24/9 25/4 26/2 30/2 31/2 31/2 31/7 31/7 31/13 31/14 31/20 32/5 32/6 32/9 32/9 32/20 32/21 32/24 33/19 36/12 37/1 38/25
**motions [13]** 15/18 15/20 15/22 16/6 16/23 22/18 25/11 31/12 32/16 33/12 36/23 37/12 37/15
**motivated [1]** 15/1
**motivations [1]** 15/7
**mouth [2]** 23/5 28/1
**movant [8]** 1/15 1/19 21/17 21/17 22/13 22/14 22/15 26/8
**movant's [1]** 20/4
**movants [3]** 6/2 30/10 30/12
**move [6]** 10/3 10/24 16/2 17/4 21/24 22/15
**moved [6]** 23/9 31/6 31/12 33/9 33/10 35/2
**moves [5]** 20/16 21/17 21/20 23/24 34/4
**moving [4]** 22/2 31/4 33/3 33/8
**Mr [1]** 24/16
**Mr. [80]**
**Mr. Adams' [1]** 28/1
**Mr. Block [1]** 4/1
**Mr. Cui [5]** 30/25 31/5 31/12 31/14 31/20
**Mr. Dahlstrom [1]** 24/16
**Mr. Lerma [6]** 7/7 7/11 7/15 7/16 8/1 38/5
**Mr. Loftus [1]** 4/20
**Mr. Notter [3]** 4/11 39/20 40/4
**Mr. Stefko [16]** 15/16 16/3 16/15 16/24 17/4 17/9 17/14 23/9 23/14 23/20 24/4 24/20 25/6 31/6 31/12 36/22
**Mr. Stefko's [4]** 15/17 15/21 17/10 17/19
**Mr. Walker [10]** 3/20 4/3 5/15 18/11 18/16 20/24 27/17 30/8 34/20 37/6
**Mr. Williams [28]** 3/3 3/9 3/10 3/12 3/13 5/7 10/10 12/22 14/6 14/14 14/14 15/7 15/19 17/24 19/1 19/3 19/9 29/13 29/14 29/25 30/4 33/9 34/14 36/6 36/14 36/17 37/2 37/14
**Mr. Williams' [4]** 14/1 18/8 37/24 38/1
**Ms. [10]** 3/4 4/10 7/7 7/16 18/22 30/9 37/3 37/7 37/17 39/4
**Ms. Goya [2]** 7/7 7/16
**Ms. Myers [5]** 3/4 18/22 30/9 37/3 39/4
**Ms. Myers' [2]** 37/7 37/17

**multiple [11]** 15/17 15/18 15/22 16/6 16/23 23/17 25/10 31/12 32/16 32/25 33/12
**must [1]** 21/8
**mute [2]** 4/24 5/2
**my [12]** 3/18 4/10 4/11 4/18 4/21 11/14 18/18 19/11 20/23 27/5 31/25 39/2
**MYERS [6]** 1/19 3/4 18/22 30/9 37/3 39/4
**Myers' [2]** 37/7 37/17

**N**

**name [1]** 4/4
**named [1]** 32/16
**names [1]** 3/25
**natural [1]** 9/5
**need [3]** 4/7 16/5 20/9
**needing [1]** 39/24
**needs [1]** 29/11
**neglected [1]** 30/7
**Ness [1]** 24/16
**never [2]** 24/4 35/10
**New [2]** 23/24 34/25
**next [12]** 17/2 21/17 21/17 22/15 27/5 27/5 30/22 30/23 30/24 31/4 31/21 36/3
**nilly [1]** 22/9
**nine [1]** 8/10
**no [24]** 4/14 6/3 8/13 9/18 10/14 12/3 14/11 16/15 25/13 26/20 28/23 31/3 31/13 33/7 33/16 36/11 36/16 37/10 38/9 38/22 38/24 39/4 39/7 40/8
**No. [6]** 21/19 21/25 31/2 31/7 31/13 31/20
**No. 13 [1]** 21/19
**No. 13-5 [1]** 21/25
**No. 8 [3]** 31/7 31/13 31/20
**No. 9 [1]** 31/2
**noise [1]** 5/2
**non [5]** 30/11 31/8 31/23 32/4 37/9
**non-opposition [4]** 30/11 31/8 31/23 32/4
**non-oppositions [1]** 37/9
**none [3]** 8/10 12/7 15/7
**nonetheless [1]** 10/12
**not [62]**
**note [1]** 19/20
**noted [8]** 23/25 26/19 27/3 27/17 31/8 32/3 35/10 35/15
**notes [1]** 24/23
**nothing [2]** 31/15 31/17
**notice [3]** 9/22 28/21 39/19
**noticed [1]** 32/5
**notices [3]** 9/2 9/4 30/12
**noting [2]** 19/3 35/21
**notion [2]** 37/19 38/11
**Notter [3]** 4/11 39/20 40/4
**now [11]** 3/15 5/11 17/6 17/9 18/22 24/8 24/20 29/22 31/25 33/16 37/16
**number [7]** 7/6 8/11 9/8 9/23 31/9 33/14 37/22
**numbers [2]** 18/2 31/16
**numerous [1]** 37/19

**O**

**obligations [2]** 16/19 16/20
**obviously [8]** 4/24 5/3 5/6 10/4 11/14 19/22 37/12 39/24
**occurred [4]** 14/22 15/12 24/6 26/12
**oddly [2]** 23/25 26/3
**off [3]** 7/14 8/13 39/6
**offer [2]** 25/5 35/21
**offered [5]** 24/15 24/19 24/20 35/17 37/19

**OFFICIAL [1]** 2/19
**often [1]** 8/9
**oh [1]** 10/21
**Okay [14]** 3/2 3/24 4/3 4/6 4/15 8/21 15/14 16/4 17/23 18/10 28/15 32/15 33/16 37/16
**once [2]** 20/5 33/8
**one [25]** 4/11 7/19 9/1 14/6 14/11 21/12 22/22 23/2 23/16 23/18 23/22 24/14 25/14 26/4 29/8 30/17 32/21 34/19 35/4 35/13 35/17 35/19 37/25 38/12 39/20
**ones [1]** 21/4
**only [13]** 8/19 8/24 15/11 17/11 20/16 23/18 23/19 25/13 27/19 29/25 30/12 33/12 33/15
**open [1]** 39/10
**opened [3]** 28/10 29/7 34/1
**opening [1]** 35/5
**opens [1]** 3/1
**operating [1]** 14/17
**oppose [1]** 30/21
**opposed [2]** 9/11 39/23
**opposition [11]** 10/20 24/14 24/18 25/5 28/22 30/11 31/8 31/23 32/3 32/4 35/4
**oppositions [2]** 30/14 37/9
**option [1]** 22/1
**order [4]** 5/20 18/18 21/21 32/18
**orders [1]** 39/14
**ordinarily [1]** 8/3
**original [1]** 5/6
**other [21]** 4/4 6/2 6/21 9/5 9/20 10/7 11/12 12/15 13/8 16/21 18/6 18/15 21/1 22/24 24/7 33/22 34/19 35/5 36/12 39/3 39/5
**others [4]** 1/3 3/24 6/11 30/18
**otherwise [1]** 13/23
**our [38]** 4/13 6/9 6/16 6/20 10/1 11/13 11/13 13/4 14/21 15/1 16/2 16/15 16/19 16/19 16/20 16/21 19/3 19/7 19/8 19/24 20/8 23/12 27/13 27/14 28/22 30/1 32/3 33/10 34/2 34/11 34/15 34/15 37/23 37/24 38/2 38/3 38/13 40/11
**ourselves [1]** 22/3
**out [18]** 6/6 9/8 11/5 14/2 14/9 14/20 15/10 24/22 26/9 26/13 29/23 30/12 31/24 34/25 36/14 37/20 37/25 39/5
**outline [2]** 18/18 19/11
**outside [2]** 6/22 11/13
**over [2]** 18/16 36/10
**oversell [1]** 12/11
**own [4]** 8/20 20/8 25/4 26/1

**P**

**PA [3]** 1/8 2/20 2/21
**page [4]** 24/15 24/18 25/18 28/4
**page 2 [1]** 28/4
**page 266 [1]** 25/18
**page 5 [1]** 24/15
**page 6 [1]** 24/18
**pairing [1]** 24/17
**paper [1]** 17/1
**papers [6]** 5/5 5/18 15/17 16/15 22/20 33/17
**PAPPERT [1]** 1/11
**paragraph [3]** 18/3 21/25 27/19
**paragraph 16 [1]** 18/3
**paragraph 17 [1]** 21/25
**paragraph 6 [1]** 27/19
**parsing [2]** 13/10 14/19
**part [9]** 6/16 10/5 10/16 19/12 20/2 34/4 34/17 38/6 39/17
**participate [2]** 8/18 36/8

**P**

**participating [1]** 30/14
**particularly [1]** 16/11
**Pat [1]** 4/17
**PATRICK [2]** 1/3 2/5
**penalty [1]** 22/10
**PENNSYLVANIA [1]** 1/1
**people [8]** 8/10 8/12 12/8 12/13 12/16 30/20 37/14 38/18
**perfectly [1]** 11/15
**period [6]** 13/7 13/11 13/21 13/23 28/13 29/17
**perjury [1]** 22/10
**permit [1]** 25/21
**person [3]** 25/20 25/21 38/10
**Pete [1]** 4/21
**PETER [1]** 2/6
**PHARMACEUTICALS [1]** 1/6
**Philadelphia [2]** 1/8 2/21
**phone [2]** 5/1 11/16
**phones [2]** 4/24 5/2
**picture [2]** 19/15 19/18
**plaintiff [33]** 1/5 1/10 5/23 6/9 6/12 6/17 9/12 9/13 9/14 9/24 10/24 14/15 15/25 19/16 20/12 20/19 20/21 21/20 21/22 22/2 22/5 23/16 25/11 25/16 25/19 27/1 29/1 30/19 31/16 32/17 35/9 35/23 37/2
**plaintiff-driven [2]** 9/12 9/13
**plaintiffs [4]** 5/7 8/4 9/22 35/14
**play [1]** 24/23
**playing [2]** 13/20 38/9
**please [3]** 4/24 5/4 27/4
**pled [1]** 29/5
**pluck [1]** 22/9
**point [24]** 11/1 11/5 13/4 13/10 13/19 13/22 14/5 14/13 14/21 15/3 15/5 22/20 22/22 23/1 27/14 27/15 28/8 34/19 37/10 37/22 38/3 38/5 38/20 38/21
**pointed [3]** 6/10 29/23 37/25
**points [13]** 5/19 5/20 10/10 12/21 13/2 14/6 14/12 18/15 23/2 37/17 37/21 38/15 38/17
**points to [1]** 10/10
**position [2]** 15/23 31/23
**possible [1]** 15/2
**possibly [1]** 24/5
**post [1]** 10/21
**power [4]** 7/16 8/1 23/6 38/8
**practical [1]** 27/21
**pre [1]** 11/6
**pre-existing [1]** 11/6
**precisely [2]** 6/6 6/24
**preclude [1]** 20/18
**precluded [1]** 22/7
**prefiling [1]** 38/22
**preliminary [1]** 13/18
**prepared [3]** 4/9 17/3 18/19
**presence [4]** 6/21 6/22 11/13 11/13
**present [3]** 2/1 11/14 18/8
**presentation [3]** 18/19 34/1 37/7
**presents [1]** 17/8
**presume [1]** 21/11
**presumption [12]** 6/4 19/17 19/25 20/1 20/5 20/7 20/11 20/15 34/2 34/2 34/15 34/16
**presumptive [1]** 20/12
**presumptively [2]** 19/16 30/19
**prices [1]** 13/4
**pricing [1]** 26/12
**prima [1]** 5/25

**privilege [1]** 16/20
**pro [1]** 32/7
**probably [1]** 39/9
**problem [1]** 29/21
**problematic [1]** 28/20
**proceedings [2]** 40/14 40/19
**process [6]** 5/22 8/22 10/6 11/10 11/18 14/20
**proffer [1]** 22/17
**prohibit [3]** 32/15 32/19 33/8
**promise [1]** 38/17
**pronounce [1]** 30/18
**proof [2]** 20/7 22/24
**proposed [3]** 5/6 21/20 35/15
**protect [1]** 29/15
**prove [3]** 33/20 34/11 34/12
**provided [1]** 25/7
**provision [1]** 25/19
**PSLRA [13]** 5/22 5/24 6/15 7/13 10/19 20/20 25/18 25/25 26/25 32/15 32/23 33/5 33/7
**pull [1]** 39/23
**pundit [1]** 15/9
**purchase [2]** 27/9 29/13
**purchased [4]** 12/8 27/24 28/2 36/10
**purchases [6]** 12/19 12/23 14/3 15/4 15/8 30/3
**purchasing [1]** 29/24
**pursuing [1]** 9/6
**put [9]** 6/20 9/18 13/4 16/14 19/2 23/4 25/2 27/25 35/11
**putative [1]** 32/20

**Q**

**qualified [2]** 12/5 36/18
**qualifies [1]** 11/21
**question [9]** 6/3 13/15 16/15 19/15 23/11 23/12 27/5 30/7 34/1
**questions [5]** 6/19 7/5 16/12 18/18 39/3
**quite [1]** 13/19
**quote [1]** 8/1
**quote/unquote [1]** 8/1
**quoting [2]** 25/18 26/14

**R**

**rabbit [1]** 30/3
**raised [2]** 23/12 26/15
**rather [1]** 18/9
**RDR [2]** 2/19 40/23
**reached [1]** 9/8
**read [2]** 5/10 5/18
**ready [3]** 4/9 5/10 31/9
**realize [1]** 13/24
**really [6]** 7/7 7/25 8/4 33/2 33/4 40/5
**reason [2]** 13/11 38/14
**reasonable [5]** 8/5 8/6 17/13 18/6 24/17
**reasonably [1]** 14/4
**reasons [2]** 31/19 39/20
**rebut [2]** 20/7 34/15
**rebutted [1]** 19/17
**rebutting [2]** 19/25 34/2
**received [1]** 9/3
**reconfiguring [1]** 26/23
**reconstitute [2]** 24/24 37/19
**reconstituted [1]** 15/24
**record [4]** 29/4 29/5 29/10 40/19
**recovery [1]** 16/17
**reduce [1]** 5/1
**refer [1]** 10/5
**referred [3]** 9/4 21/3 21/4

**reform [1]** 25/19
**rejected [5]** 9/17 10/12 10/13 34/21 35/21
**related [1]** 8/11
**relationship [1]** 11/6
**released [1]** 13/13
**relevant [1]** 5/8
**remain [1]** 17/5
**remember [1]** 5/4
**remind [1]** 18/25
**reminds [1]** 18/11
**remove [2]** 8/17 15/23
**render [4]** 12/25 15/22 16/6 27/10
**repeated [1]** 28/4
**reply [7]** 13/4 13/9 17/23 22/7 24/19 25/5 32/3
**report [1]** 27/20
**REPORTER [1]** 2/19
**represent [8]** 7/12 16/16 22/4 25/12 26/16 30/17 33/21 33/23
**representation [1]** 30/7
**represented [1]** 22/10
**representing [4]** 12/25 15/23 16/7 27/11
**request [3]** 8/25 9/15 37/1
**required [2]** 6/23 22/15
**requirements [2]** 6/9 6/14
**resides [1]** 19/4
**resolve [1]** 13/24
**respect [2]** 15/17 37/7
**respectfully [4]** 22/6 31/19 36/13 37/1
**respond [1]** 32/10
**responding [1]** 30/13
**response [1]** 39/2
**responses [2]** 16/8 39/15
**responsible [2]** 23/15 23/18
**rest [2]** 17/20 17/22
**result [1]** 9/3
**retain [3]** 6/14 9/14 10/3
**retained [2]** 33/14 36/17
**return [1]** 14/16
**revealed [1]** 28/17
**reveals [1]** 29/17
**reviewed [1]** 5/5
**rgrdlaw.com [1]** 1/21
**rhetorical [2]** 37/21 38/3
**ride [1]** 27/1
**right [11]** 4/6 4/7 4/15 4/20 13/9 15/14 18/18 18/24 18/24 36/14 37/13
**rights [1]** 8/16
**Riot [3]** 34/24 38/20 38/23
**rise [2]** 22/12 29/24
**road [1]** 14/2
**ROBBINS [6]** 1/19 2/4 3/9 3/11 19/8 36/18
**roll [1]** 3/2
**Rolon [1]** 4/10
**Room [1]** 2/20
**Rosen [1]** 31/1
**rough [1]** 7/3
**rubric [1]** 6/3
**RUDMAN [1]** 1/19
**Rufe [7]** 6/24 7/3 26/2 26/10 26/13 26/18 26/19
**Rufe's [1]** 6/10
**rules [1]** 6/8
**run [1]** 29/22
**runs [1]** 13/7

**S**

**safe [1]** 40/13

**S**

**said [10]** 17/3 19/22 21/10 28/9 29/5 29/6 31/9 33/22 34/20 35/7
**same [6]** 9/9 24/18 28/4 31/19 32/25 33/11
**San [4]** 1/20 19/1 19/4 19/5
**satisfies [1]** 6/14
**satisfy [1]** 36/25
**say [9]** 10/21 15/19 16/22 16/22 29/3 32/21 33/9 33/22 34/23
**saying [1]** 30/25
**says [7]** 20/2 20/15 21/19 22/1 22/13 32/20 34/3
**SEC [2]** 8/12 21/10
**second [4]** 15/21 21/8 31/13 31/19
**security [1]** 28/3
**see [4]** 8/8 9/17 10/16 10/18
**seek [1]** 22/4
**seemingly [1]** 35/12
**selling [1]** 14/12
**seminal [2]** 19/21 25/15
**sense [1]** 32/11
**Separate [1]** 11/9
**serve [3]** 9/15 31/10 31/16
**seven [1]** 8/10
**SHANNAN [2]** 2/19 40/23
**SHANON [2]** 2/2 3/22
**shares [1]** 36/10
**Shaw [1]** 31/1
**she [3]** 7/3 7/22 12/2
**shell [1]** 24/23
**shifts [1]** 20/6
**short [1]** 39/18
**shorter [1]** 39/21
**should [8]** 4/19 8/3 11/22 14/4 21/10 22/12 32/17 37/8
**shouldn't [5]** 9/10 12/22 13/25 14/1 17/11
**show [4]** 6/11 26/4 26/5 34/10
**showing [8]** 5/25 20/4 20/5 21/16 22/15 26/6 26/23 34/17
**shows [4]** 13/4 20/13 23/7 25/1
**side [1]** 4/13
**sides [2]** 18/14 18/14
**sideshow [2]** 27/15 30/1
**significant [4]** 11/25 12/1 37/22 38/3
**similar [2]** 38/12 38/14
**similarly [1]** 1/4
**since [2]** 7/7 28/22
**situated [2]** 1/4 14/22
**situation [2]** 14/24 34/3
**six [5]** 7/7 8/10 21/12 23/3 23/7
**sixth [1]** 38/10
**slightly [1]** 19/23
**smaller [1]** 14/13
**so [43]**
**some [13]** 7/18 7/20 8/11 13/20 14/7 15/9 17/8 19/7 19/10 21/3 21/4 35/15 37/20
**someday [1]** 29/3
**something [3]** 14/4 18/7 32/17
**sometimes [3]** 9/22 10/16 10/18
**soon [2]** 39/25 40/12
**sooner [2]** 40/1 40/2
**sophisticated [6]** 11/20 11/22 12/5 12/6 23/15 33/18
**sophistication [2]** 12/11 25/20
**sorry [2]** 3/6 34/22
**sort [3]** 8/13 10/20 16/10
**sought [1]** 22/4
**sounds [2]** 4/25 17/7

**speaking [1]** 4/25
**speaks [1]** 18/4
**specific [1]** 18/2
**specify [1]** 17/25
**spoken [1]** 16/1
**staff [1]** 39/8
**staff's [1]** 39/11
**stage [6]** 13/11 13/18 13/25 14/19 16/9 20/9
**stake [1]** 12/10
**start [4]** 4/16 19/14 30/2 37/7
**starts [1]** 36/7
**statements [3]** 26/13 29/16 35/16
**STATES [2]** 1/1 1/11
**stay [2]** 40/12 40/12
**Stefko [16]** 15/16 16/3 16/15 16/24 17/4 17/9 17/14 23/9 23/14 23/20 24/4 24/20 25/6 31/6 31/12 36/22
**Stefko's [4]** 15/17 15/21 17/10 17/19
**STENGEL [4]** 2/3 3/4 36/18 37/4
**STEPHEN [4]** 2/2 3/19 4/2 4/5
**still [10]** 4/3 17/10 17/15 17/16 23/8 23/13 23/19 31/24 32/6 36/21
**stock [2]** 12/8 36/10
**straightforward [1]** 5/21
**strangers [1]** 35/12
**Street [2]** 1/16 2/20
**strong [1]** 13/19
**stronger [1]** 14/12
**stumbled [1]** 36/21
**subject [6]** 12/23 27/9 27/16 28/16 29/25 29/25
**submission [1]** 34/2
**submissions [2]** 20/9 35/7
**submit [11]** 10/18 21/6 22/6 22/17 25/4 25/25 31/11 31/19 34/14 35/25 36/13
**submitted [2]** 35/4 35/5
**substantial [2]** 26/15 36/9
**substantially [1]** 17/16
**substantive [6]** 6/18 9/25 11/11 36/11 36/15 38/16
**successful [1]** 14/8
**such [1]** 30/18
**suffer [2]** 36/9 36/12
**suffered [2]** 7/8 13/15
**sufficient [1]** 25/21
**sufficiently [1]** 33/18
**suggest [3]** 11/1 32/2 32/8
**suggesting [1]** 33/18
**Suite [2]** 1/16 1/20
**summary [1]** 13/17
**supervisor [1]** 19/4
**supplied [1]** 26/22
**supporting [1]** 26/2
**supposedly [1]** 21/13
**sure [10]** 8/23 11/4 11/23 12/20 15/1 19/14 19/19 20/20 32/23 37/18
**surfaced [1]** 28/17
**surprise [1]** 17/2
**surprised [1]** 16/23
**swings [2]** 14/24 14/25
**sworn [1]** 26/13
**Syntax [1]** 24/22
**Syntax-Brillian [1]** 24/22

**T**

**table [1]** 19/20
**taint [1]** 17/21
**Takata [1]** 34/24

**taking [1]** 6/1
**talk [10]** 6/4 6/21 7/6 8/22 12/18 15/16 16/4 22/20 25/17 30/6
**talked [2]** 19/5 36/6
**talking [2]** 16/11 23/16
**task [1]** 20/19
**team [1]** 15/19
**technical [1]** 32/9
**technically [2]** 28/12 32/6
**TELECONFERENCE [1]** 1/10
**tell [2]** 11/10 12/14
**ten [2]** 8/10 38/2
**TENBROECK [2]** 2/5 4/22
**tension [1]** 29/23
**term [1]** 4/11
**test [2]** 25/8 36/25
**TETI [4]** 2/2 3/19 4/2 4/5
**than [11]** 8/3 8/7 8/8 8/9 21/11 33/8 33/22 36/12 37/24 38/25 39/5
**thank [12]** 4/20 18/19 18/21 19/19 39/7 39/13 39/17 40/2 40/8 40/9 40/10 40/13
**thankfully [1]** 19/20
**Thanks [1]** 5/17
**that [296]**
**that's [16]** 3/10 6/4 10/17 10/21 20/22 21/5 28/20 33/5 33/14 33/16 37/25 38/6 38/7 38/9 38/25 39/2
**their [43]**
**them [17]** 5/19 11/22 12/15 12/16 15/10 15/10 21/4 22/16 23/17 30/24 31/17 31/21 31/24 33/14 35/11 38/7 38/16
**themselves [7]** 22/7 22/25 24/13 25/6 26/22 29/5 34/5
**then [20]** 5/3 10/11 10/20 14/16 14/25 15/21 16/4 20/6 21/17 22/15 24/19 26/5 28/21 29/9 29/9 30/6 30/19 31/4 33/10 33/14
**there [25]** 3/24 4/13 6/6 7/9 18/15 19/12 22/22 24/1 26/11 26/20 30/10 33/21 34/19 35/2 35/2 35/2 35/25 36/11 36/15 37/11 38/9 38/18 38/21 38/22 38/23
**there's [15]** 6/3 8/25 8/25 10/14 11/4 13/2 13/11 13/20 15/16 16/8 16/15 19/24 20/16 21/8 38/9
**therefore [1]** 22/11
**these [9]** 12/7 14/3 18/14 19/22 30/20 36/22 39/10 40/4 40/11
**they [57]**
**they're [8]** 7/21 11/6 12/12 12/16 25/24 29/22 31/24 37/20
**they've [3]** 28/21 28/22 37/11
**thing [1]** 37/13
**things [4]** 7/2 11/4 16/21 29/8
**think [42]**
**thinking [1]** 12/4
**Third [12]** 6/5 6/7 8/2 10/9 10/13 25/10 25/14 34/20 34/22 34/23 34/24 36/1
**this [64]**
**those [24]** 5/8 5/10 7/14 8/16 9/4 10/13 12/23 12/24 13/14 15/3 15/7 15/12 15/18 16/3 16/10 24/10 26/13 27/10 27/25 29/8 30/12 35/14 37/8 38/17
**thought [1]** 39/21
**thoughts [3]** 37/6 37/16 40/6
**three [4]** 13/2 24/8 24/10 26/24
**threshold [1]** 20/3
**through [7]** 13/7 17/2 20/1 38/15 39/25 40/4 40/11
**throw [1]** 10/19

**T**

**throwing [1]** 17/6
**time [4]** 20/25 36/7 39/8 39/21
**timely [1]** 39/16
**times [4]** 7/3 9/8 32/25 39/10
**timing [1]** 30/3
**today [19]** 3/21 4/7 19/2 19/20 20/25 22/8 22/17 23/20 24/20 25/5 26/23 30/21 32/6 32/7 36/7 36/24 39/8 39/23 40/1
**together [16]** 6/11 7/21 8/14 8/22 9/21 10/21 11/2 11/8 11/12 11/16 17/17 21/5 25/2 35/11 39/22 39/23
**too [5]** 8/12 10/22 21/9 21/11 23/7
**touch [1]** 27/2
**traded [1]** 13/5
**trading [3]** 14/24 27/20 28/5
**transactions [3]** 7/18 7/20 26/12
**transcript [1]** 40/18
**treat [2]** 30/20 37/8
**Trevena [7]** 6/10 6/25 6/25 26/1 26/7 38/13 39/1
**trigger [2]** 20/4 20/15
**triggered [2]** 20/6 20/10
**triggering [3]** 19/25 34/1 34/18
**true [7]** 9/9 28/7 28/18 28/20 29/8 29/9 37/25
**truth [2]** 27/23 28/17
**try [1]** 9/22
**trying [4]** 29/22 38/10 39/14 39/24
**turn [2]** 18/16 36/21
**turns [1]** 30/1
**tweet [5]** 27/24 28/2 28/5 28/9 29/6
**twice [1]** 31/6
**two [12]** 3/24 5/1 5/9 9/4 11/4 14/6 16/8 23/25 35/2 35/3 36/23 37/24
**type [2]** 10/11 32/4
**typical [1]** 26/6
**typicality [2]** 6/1 16/10

**U**

**U.S [1]** 2/20
**UCSD [1]** 19/4
**unanswered [1]** 36/24
**unclear [2]** 9/18 17/5
**unconnected [1]** 35/12
**under [14]** 5/22 5/23 6/2 6/8 6/14 10/13 10/13 14/17 17/6 20/9 20/14 22/10 28/3 39/9
**undercut [1]** 14/11
**undermined [1]** 28/13
**undermines [1]** 33/19
**understand [9]** 12/9 12/13 12/13 12/14 12/16 17/18 25/9 25/9 32/11
**understanding [2]** 11/14 18/4
**understood [3]** 13/14 32/13 32/13
**unfair [1]** 17/20
**uniformly [1]** 26/25
**unique [6]** 6/5 12/24 27/9 27/16 29/9 36/16
**uniquely [1]** 14/21
**UNITED [2]** 1/1 1/11
**university [2]** 11/8 19/5
**unless [1]** 4/24
**unmute [1]** 5/4
**unquote [1]** 8/1
**unrelated [1]** 8/9
**Unsurprisingly [1]** 18/17
**up [5]** 13/15 13/16 14/24 15/5 30/13
**us [22]** 3/12 3/21 4/14 6/23 6/23 9/8 9/9 9/14 9/15 9/25 10/1 10/3 17/3 19/1 19/2 19/6 20/7

**used [1]** 19/9
**uses [1]** 5/22

**V**

**valid [1]** 15/4
**vast [1]** 28/8
**verbatim [1]** 26/4
**versus [2]** 23/23 34/24
**very [16]** 5/21 10/5 13/19 18/10 18/13 18/13 20/1 26/10 33/5 37/3 37/5 37/18 38/17 39/9 39/16 39/25
**vet [1]** 23/17
**VIA [1]** 1/10
**vice [1]** 32/7
**view [2]** 8/3 11/21
**vigorously [2]** 29/15 29/19
**volume [1]** 14/12
**vs [1]** 1/5

**W**

**walked [1]** 38/14
**WALKER [14]** 1/15 3/20 3/20 4/2 4/3 5/13 5/15 18/11 18/16 20/24 27/17 30/8 34/20 37/6
**want [13]** 5/3 5/18 12/11 18/25 23/4 24/17 27/13 27/25 31/22 32/10 32/24 36/5 37/12
**wanted [5]** 4/16 19/12 23/8 26/25 39/7
**wants [1]** 23/15
**was [63]**
**way [10]** 8/2 16/13 20/17 20/24 23/5 29/22 34/6 34/7 38/9 39/16
**ways [5]** 15/9 26/24 37/19 37/22 38/2
**we [99]**
**we're [15]** 11/14 14/13 14/17 16/10 19/1 29/18 29/18 30/21 31/9 37/11 38/2 38/10 39/10 39/24 40/12
**we've [10]** 5/19 16/1 16/3 19/5 24/4 24/8 24/21 37/19 37/21 39/14
**week [1]** 39/24
**weigh [3]** 5/3 5/4 30/8
**well [25]** 3/12 3/23 4/9 4/10 7/1 7/2 8/7 8/12 9/13 10/4 10/25 11/2 11/4 11/16 12/3 14/5 18/12 19/14 23/2 36/18 37/3 37/4 37/5 39/16 40/12
**well-done [1]** 39/16
**well-qualified [1]** 36/18
**well-written [1]** 18/12
**went [2]** 11/7 18/18
**were [27]** 3/24 7/18 7/20 9/6 9/7 9/25 12/13 13/15 14/3 14/8 15/5 15/21 17/18 18/15 21/1 23/9 23/16 26/11 29/15 30/16 35/2 35/8 35/16 38/18 38/21 38/22 38/24
**West [1]** 1/20
**what [30]** 6/24 7/9 8/8 10/6 10/16 10/17 10/25 11/21 12/6 12/13 14/23 15/19 16/13 18/3 21/6 22/24 24/3 24/4 25/2 25/24 26/25 27/21 28/25 29/2 30/21 33/5 33/22 37/20 38/14 39/1
**what's [5]** 6/23 10/22 19/18 23/13 33/2
**whatever [1]** 29/17
**when [17]** 5/3 5/3 6/11 8/8 13/12 13/13 13/14 16/12 22/13 28/22 30/9 32/23 33/3 33/13 34/4 34/23 39/1
**where [10]** 6/18 9/17 10/10 10/14 23/24 31/17 34/21 38/10 39/5 39/10
**whether [6]** 9/18 16/4 21/9 26/16 34/7 36/22
**which [22]** 6/8 10/5 13/5 13/6 14/12 14/17 18/4 18/7 20/18 21/4 23/12 24/14 25/14 26/4

**while [3]** 7/3 16/19 26/18
**who [35]** 4/1 4/11 5/5 5/12 5/23 5/24 5/25 8/18 8/18 9/7 9/7 12/8 12/9 12/13 12/16 14/18 15/2 16/12 24/16 25/10 25/24 27/23 28/2 29/15 29/19 30/10 30/11 30/20 33/3 33/4 36/15 37/8 37/14 37/14 40/10
**who's [1]** 33/1
**whoever [1]** 33/13
**whom [2]** 3/20 8/10
**whose [2]** 3/24 25/20
**why [19]** 3/3 6/4 7/16 8/5 9/10 11/21 12/22 12/24 13/25 14/1 14/1 14/14 16/6 27/15 31/25 33/9 33/23 38/7 39/20
**wife [1]** 23/6
**wild [1]** 14/24
**will [10]** 3/20 11/2 11/2 13/15 13/16 16/22 19/19 20/21 26/16 40/11
**Williams [31]** 1/19 2/6 3/3 3/9 3/10 3/12 3/13 5/7 10/10 12/22 14/6 14/14 14/14 15/7 15/19 17/24 18/16 19/1 19/3 19/9 29/13 29/14 29/25 30/4 33/9 34/14 36/6 36/14 36/17 37/2 37/14
**Williams' [4]** 14/1 18/8 37/24 38/1
**willing [2]** 16/2 31/9
**willingness [1]** 24/23
**willy [1]** 22/9
**willy-nilly [1]** 22/9
**wished [1]** 18/15
**withdrawal [1]** 31/24
**withdrawn [8]** 30/11 30/15 30/20 31/3 31/3 31/8 32/12 37/9
**withdrew [1]** 16/25
**within [7]** 22/9 22/16 28/13 31/25 34/24 35/19 36/1
**without [8]** 6/1 6/23 9/22 16/3 17/4 17/9 17/12 17/14
**Wolf [1]** 31/6
**Wolfson [4]** 35/1 35/6 35/20 36/1
**won't [1]** 30/4
**words [3]** 18/6 23/4 27/25
**work [9]** 6/13 8/14 11/2 11/12 17/16 39/25 40/4 40/11 40/13
**workday [1]** 36/7
**worked [3]** 9/7 11/15 11/15
**working [3]** 4/11 16/14 19/6
**works [1]** 38/14
**worry [1]** 14/2
**would [35]** 4/25 5/1 5/5 5/12 14/11 15/19 15/23 16/1 16/5 17/20 20/6 20/18 21/5 22/3 23/16 23/17 23/18 24/17 26/20 27/10 27/24 28/1 28/2 28/12 28/16 30/8 31/11 31/18 32/2 32/8 33/9 33/11 35/14 37/13 38/1
**wouldn't [6]** 13/23 15/9 28/9 28/11 30/17 32/1
**written [1]** 18/12

**Y**

**yeah [1]** 14/2
**Yes [4]** 3/8 18/23 27/4 27/12
**York [1]** 23/24
**you [147]**
**you'd [1]** 33/22
**you'll [1]** 30/2
**you're [9]** 4/24 12/21 16/12 17/7 17/11 30/9 31/25 32/21 33/3
**you've [6]** 8/9 9/17 18/10 33/22 39/6 40/3
**your [93]**