UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>     Defendants. | Civ. Action No. 2:20-cv-01402-GJP<br><br><u>CLASS ACTION</u><br><br>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ..........................................................................................3

III.    LEGAL STANDARDS GOVERNING MOTION TO DISMISS.......................................5

IV.     PLAINTIFFS STATE A VALID CLAIM UNDER SECTION 10(b) ..............................5

      A.      The Complaint Adequately Alleges Falsity..............................................5

            1.      Defendants' Statements Regarding "Constructing" a Vaccine
                Within Three Hours Were Misleading............................................5

            2.      Defendants' Statements Regarding the Company's Manufacturing
                Capabilities Were Misleading.........................................................7

                    a.      Plaintiffs' Theory of Falsity Is Not Speculative ..............................8

                    b.      Defendants' Manufacturing Statements Are Not Protected
                        by the PSLRA's Safe Harbor...........................................9

                          (1)      Defendants' Manufacturing Statements Are Not
                              Forward-Looking ...................................................9

                        (2)      Defendants' Cautionary Language Is Not
                              Meaningful...........................................................10

                        (3)      Defendants Had Direct Knowledge of the Falsity of
                              Their Manufacturing Statements.........................10

                      c.      The Alleged Omitted Facts Rendered Defendants'
                        Manufacturing Statements Materially Misleading........................11

                      d.      The Remainder of Defendants' Arguments Concerning
                        Falsity Are Improper on a Motion to Dismiss ..............................12

             3.      Defendants' June 30, 2020 Statement that INO-4800 Had Been
                "Selected for the U.S. Government's Operation Warp Speed" Is
                Misleading...................................................................................14

      B.      The Complaint Raises a Strong Inference of Defendants' Intent to
           Deceive, or Scienter..............................................................................15

             1.      The Complaint Adequately Alleges Kim's Intent to Deceive
                Investors About the "Three Hour" Construction Statements....................16

- i -

4828-6661-2692.v1

**Page**

2.    The Complaint Adequately Alleges Defendants' Intent to Deceive Investors When They Made Their Vaccine Manufacturing Statements ...................................................................................................17

3.    The Complaint Adequately Alleges Defendants' Intent to Deceive Investors Regarding the OWS Statement ...................................................18

4.    Kim and Kies' Suspicious Stock Sales Contribute to a Strong Inference of Scienter ..............................................................................20

5.    Inovio's Sale of $320 Million in Stock Contributes to a Strong Inference of Scienter ..............................................................................22

6.    The Individual Defendants' Class Period Compensation Contributes to a Strong Inference of Scienter ...........................................23

7.    Viewed Holistically, Plaintiffs' Allegations Support a Cogent and Compelling Inference of Scienter ................................................................23

C.    The Complaint Adequately Alleges Loss Causation ..............................................24

1.    Plaintiffs Adequately Alleges Loss Causation for Statements Regarding the Vaccine Construct ..............................................................24

2.    Plaintiffs Adequately Alleges Loss Causation for Statements Regarding OWS ...........................................................................................25

V.    PLAINTIFFS STATE A VALID CLAIM UNDER SECTION 20(a).............................25

VI.    CONCLUSION..................................................................................................................25

4828-6661-2692.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
554 F.3d 342 (3d Cir. 2009), *cert. denied*, 559 U.S. 1116 (2010)..................................7, 8, 15

*Alvarez v. Ins. Co. of N. Am.*,
313 F. App'x 465 (3d Cir. 2008) ......................................................................................8

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
105 F. Supp. 3d 1246 (D. Kan. 2015),
*aff'd*, 827 F.3d 1229 (10th Cir. 2016)...........................................................................20

*Anderson v. StoneMor Partners, L.P.*,
296 F. Supp. 3d 693 (E.D. Pa. 2017),
*aff'd sub. nom. Fan v. StoneMor Partners LP*,
927 F.3d 710 (3d Cir. 2019)...........................................................................................17

*City of Philadelphia v. Fleming Cos.*,
264 F.3d 1245 (10th Cir. 2001) ......................................................................................17

*Curran v. Freshpet, Inc.*,
2018 WL 394878 (D.N.J. Jan. 12, 2018).............................................................5, 9, 11, 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................1, 24, 25

*Greebel v. FTP Software, Inc.*,
194 F.3d 185 (1st Cir. 1999)...........................................................................................21

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)............................................................................................17

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019)............................................................6, 19, 24

*Hoey v. Insmed Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) .......................................................................21

*In re Able Labs. Sec. Litig.*,
2008 WL 1967509 (D.N.J. Mar. 24, 2008).....................................................................21

*In re Alpharma Sec. Litig.*,
372 F.3d 137 (3d Cir. 2004)..........................................................................................5, 7

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013).................................................................22

- iii -

**Page**

*In re Bos. Sci. Corp. Sec. Litig.*,
    686 F.3d 21 (1st Cir. 2012)..................................................................................24

*In re Celgene Corp. Sec. Litig.*,
    2019 WL 6909463 (D.N.J. Dec. 19, 2019)............................................................9, 11

*In re Elec. for Imaging, Inc. Sec. Litig.*,
    2019 WL 397981 (D.N.J. Jan. 31, 2019)...............................................................8, 15

*In re HomeBanc Corp. Sec. Litig.*,
    706 F. Supp. 2d 1336 (N.D. Ga. 2010)..................................................................21

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) ...................................................................22

*In re Merck & Co., Inc. Sec. Derivative, & ERISA Litig.*,
    2011 WL 3444199 ................................................................................................25

*In re Molycorp, Inc. Sec. Litig.*,
    2015 WL 1540523 (D. Colo. Mar. 31, 2015) .........................................................8

*In re Novo Nordisk Sec. Litig.*,
    2018 WL 3913912 (D.N.J. Aug. 16, 2018) ............................................................9

*In re Res. Am. Sec. Litig.*,
    2000 WL 1053861 (E.D. Pa. July 26, 2000)..........................................................22

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2017 WL 1658822 (D.N.J. Apr. 28, 2017)......................................................23, 24

*Inst. Inv. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).............................................................15, 16, 19, 23

*Jones v. Morris Cnty. Corr. Facility*,
    2007 WL 1118342 (D.N.J. Apr. 13, 2007) .............................................................6

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) ...........................................................................23

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................................................11

*No. 84 Emp.-Teamster Joint Council Pension
    Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) .................................................................................23

- iv -

4828-6661-2692.v1

**Page**

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016)...................................................................................9, 10

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)........................................................................................5

*SEC v. Capital Gains Rsch. Bureau, Inc.*,
   375 U.S. 180 (1963)....................................................................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................15, 16, 20

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
   2018 WL 4524107 (D. Or. May 29, 2018) ...............................................................24

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
   2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ....................................................16, 19

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997)......................................................................................15

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017)................................................................................10, 11

*Wilson v. Bernstock*,
   195 F. Supp. 2d 619 (D.N.J. 2002) ...........................................................................17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)................................................................................................ *passim*
   §78u-4(b)(1)...........................................................................................................5, 7

Federal Rules of Civil Procedure
   Rule 8(a)....................................................................................................................24
   Rule 9(b) .....................................................................................................................5
   Rule 12(b)(6)...............................................................................................................5

17 C.F.R.
   §240.10b-5...........................................................................................................20, 21

4828-6661-2692.v1

Lead Plaintiff Manuel S. Williams and plaintiff Andrew Zenoff ("Plaintiffs"), submit this opposition to Defendants' Motion to Dismiss the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF Nos. 72, 72-1) ("Motion" or "Mtn.").[1]

## I.    INTRODUCTION

During the Class Period, Defendants made false and misleading statements concerning Inovio's COVID-19 vaccine candidate ("INO-4800"). In February and March 2020, Defendants lied to investors about constructing a COVID-19 vaccine in three hours. This lie was quickly exposed, but Defendants made misleading statements again, boasting of Inovio's manufacturing capabilities for INO-4800. These misleading statements too were exposed, and Defendants lied once again, falsely stating that Inovio had been selected for participation in Operation Warp Speed ("OWS"). That was exposed as a lie. Inovio's stock price swelled with inflation in response to Defendants' misstatements, and each time the truth was disclosed, Inovio's investors were punished.

The fundamental purpose of the federal securities laws is "to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry."[2]  *SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963). When, as here, corporate officers fail to provide full and accurate disclosure and violate §10(b) of the Securities Exchange Act of 1934, a plaintiff must plead: (1) a material misrepresentation or omission (falsity); (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) relied upon by plaintiffs; (5) a loss causally connected to the alleged fraud; and (6) economic loss or damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

---

[1]    "Defendants" are Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company"), J. Joseph Kim ("Kim"), Peter D. Kies ("Kies") and Robert J. Juba, Jr. ("Juba").

[2]    All citations and footnotes are omitted and emphasis is added unless otherwise noted.

- 1 -

4828-6661-2692.v1

Defendants do not dispute that Plaintiffs have adequately pled the "purchase," "reliance" and "economic loss" (damages) elements of their §10(b) claim.  Nor could Defendants seriously deny that their Class Period misstatements regarding INO-4800 were material.  Indeed, Inovio had thrown its hat into the COVID-19 race in early 2020, and as the pandemic was taking hold across the globe – millions would soon become ill, and over one million would perish – nothing could have been more important to Inovio and its shareholders than INO-4800.  Inovio's success in rapidly developing a vaccine and being able to produce sufficient doses, moreover, were critical capabilities being eyed by the U.S. government's OWS.  If Inovio could get its foot in the OWS door, it could receive well over $1 billion in funding and gain some of the cache of its big-pharma competitors.

And yet, faced with the well-pled allegations of fact in the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 68) ("Complaint"), Defendants attempt to rewrite the pleading, make unpersuasive disavowals of statements they indisputably made, and side-step their own false statements.  Defendants even claim that allegations in the Complaint based on their own extra-judicial admissions and sworn court testimony are now "speculative."  Ultimately, Defendants' challenges to the Complaint's allegations of falsity, scienter and loss causation go nowhere.

As amply set forth herein, the Complaint has specifically identified Defendants' statements about creating INO-4800 in three hours, being "on [the] right track" to deliver one million doses of INO-4800 in 2020, and claiming INO-4800 had been selected by OWS.  The Complaint also alleges why those statements were false and misleading when made.  *See* §IV.A., *infra*.  The Complaint's well-pled allegations also raise a strong inference of scienter, evidencing Defendants' knowledge and reckless disregard of the true, undisclosed facts about INO-4800.  *See* §IV.B., *infra*.  Defendants have implicitly admitted as much with respect to the non-disclosure dimension of Plaintiffs' case.  Indeed, in arguing the case should be dismissed for lack of scienter, Defendants inappropriately rely

- 2 -

on an out-of-circuit pleading standard (from the Tenth Circuit) that is materially different from controlling Third Circuit law.  The Complaint adequately alleges loss causation.  For all of these reasons, Defendants' Motion should be denied.

## II.     STATEMENT OF FACTS

Inovio is a biotechnology company founded in 1979, though it has never obtained approval to market any product.  ¶¶4, 26.[3]  In 2020, it has been focused on INO-4800, a vaccine candidate for SARS-COV-2 (the "Virus"), the cause of the COVID-19 pandemic.  *See* ¶¶5-11.  During the February 14, 2020 through August 10, 2020 Class Period, at a time when the market was particularly vulnerable and sensitive to expressions of optimism regarding the pandemic, Defendants misled investors by making false and misleading statements concerning INO-4800.  ¶¶1, 7, 97-112.  On February 14 and March 2, 2020, Defendants declared that Inovio had "construct[ed]" its vaccine "in about three hours" after accessing the genetic sequence of the Virus.  ¶¶97, 99.  Defendants would later attempt to walk that back, admitting that Inovio had merely "designed" a vaccine in that time.  ¶¶101, 113.

Defendants also made misstatements concerning the manufacturing of INO-4800.  On March 24, 2020, Inovio and Kim boasted that a technology transfer and partnership with manufacturer Ology Bioservices, Inc. ("Ology") increased Inovio's manufacturing capabilities, when in truth Inovio did not have the permission of VGXI, Inc. ("VGXI") (Inovio's sole provider of the vaccine) to transfer VGXI's technology (thus, Ology could not deliver a single dose).  ¶¶102-103.  On April 30, 2020, Inovio and Juba touted a partnership with vaccine manufacturer Richter-Helm BioLogics GmbH & Co. KG ("Richter-Helm"), but concealed that Inovio and its partners were still incapable of producing one million doses in 2020.  ¶¶104-105.  And on May 11, 2020, Kim reiterated that Inovio was "preparing 1 million doses" and was "on [the] right track" to produce them by year-end.  ¶106.

---

[3]     "¶_" references throughout the brief are to the numbered allegations in the Complaint.

- 3 -

This was untrue at the time, as Inovio had experienced a painful falling out with VGXI and was already aware of severe limitations with other manufacturers. ¶¶108, 110. Kim knew at the time that VGXI had refused a technology transfer and cancelled its contract with Inovio, and admitted in sworn testimony that the million doses was always dependent on a technology transfer – although that was never shared with investors. ¶¶90, 108. Defendants also issued misleading risk disclosures that concealed the severe manufacturing problems that had already surfaced. ¶¶109-110.

On June 30, 2020, Defendants represented that INO-4800 had been selected for OWS, the federal government's program designed to, *inter alia*, deliver hundreds of millions of doses of a vaccine by January 2021. ¶¶11, 111. This was not true: Inovio had not been selected for OWS. ¶112.

Naturally, these and other Class Period misstatements artificially inflated Inovio's stock price. ¶¶12, 98, 100, 107, 142. That was, of course, the plan. Defendants took advantage of that inflation: Raising over $320 million in cash through a series of at-the-market ("ATM") offerings, while defendants Kim and Kies lined their own pockets with stock sales, and compensation predicated on raising funds and scientific development. ¶¶12, 29, 33, 109, 133-141.

The truth concealed by Defendants' misstatements was slowly revealed, directly resulting in significant declines in Inovio's stock price, damaging Plaintiffs and other investors. ¶¶13-17, 113-128, 142-150. On March 9, 2020, Inovio was forced to correct Kim's claims that Inovio had fully constructed a vaccine in three hours. ¶113. On June 3, 2020, in a lawsuit filed by Inovio seeking to force VGXI into a technology transfer (¶¶62, 116), numerous facts contradicting Defendants' statements about Inovio's manufacturing capability were revealed. *See, e.g.*, ¶74 (defendant Juba had determined that it was "mathematically impossible" for VGXI to produce the needed doses of INO-4800); ¶¶85-90, 93-94 (Inovio was dependent on VGXI's technology, but VGXI refused to make a technology transfer and cancelled its contract with Inovio); ¶¶91-92 (even if given, a

- 4 -

4828-6661-2692.v1

technology transfer would have taken months to years to complete); ¶¶82-83 (Richter-Helm could not produce anywhere near the amount of doses needed).  Finally, on August 9, 2020, a *New York Times* report revealed that Inovio's representation of being selected for OWS was misleading.  ¶¶15, 112, 124-125.

## III.   LEGAL STANDARDS GOVERNING MOTION TO DISMISS

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all the allegations as true and draws all reasonable inferences in the favor of the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008); *Curran v. Freshpet, Inc.*, 2018 WL 394878, at \*3 (D.N.J. Jan. 12, 2018).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Phillips*, 515 F.3d at 231.  Here, the Complaint presents a plausible case of securities fraud.

## IV.   PLAINTIFFS STATE A VALID CLAIM UNDER SECTION 10(b)

### A.   The Complaint Adequately Alleges Falsity

To satisfy the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b), a plaintiff must specify each statement alleged to be misleading and why the statement is misleading, setting out the """"first paragraph of a newspaper story" – that is, "the who, what, when, where and how"""" concerning the statements at issue.  *Freshpet*, 2018 WL 394878, at \*3 (quoting *In re Alpharma Sec. Litig.*, 372 F.3d 137, 147 (3d Cir. 2004)); 15 U.S.C. §78u-4(b)(1). As demonstrated below, the Complaint satisfies this standard.  *See also* ¶¶97-112.

#### 1.   Defendants' Statements Regarding "Constructing" a Vaccine Within Three Hours Were Misleading

The Complaint adequately pleads the misleading nature of Kim's February 14 and March 2, 2020 representations that Inovio had "construct[ed]" its vaccine within three hours."  ¶¶97, 99, 101, 113-114.  Defendants do not, and cannot, claim the Complaint fails to identify the who, what, when and where of Kim's February 14 and March 2, 2020 misstatements.  ¶¶97, 99.  And, the Complaint

- 5 -

explains exactly how those statements are misleading:  On March 9, 2020, the Company admitted that it had not constructed the vaccine within three hours, as Kim had previously stated it had, but had merely "designed a vaccine construct" in three hours.  ¶¶101, 113.  *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *27 (D.N.J. Dec. 27, 2019) ("'it is the exposure of the falsity of the fraudulent representation'" that "'is the critical component'" of a corrective disclosure).

Defendants, however, argue that the Complaint does not adequately allege the falsity of Kim's February 14 and March 2 statements because the words "construct" and "design" have similar meanings.  Mtn. at 8.  That argument is invalid.  The Cambridge Dictionary defines the verb construct as "to build something made of many parts," whereas, the verb design is defined as "to make or draw plans for something."  *Cambridge Dictionary of English* (10th ed. 2010).  One generally designs a bridge before constructing it.  The Complaint draws this distinction and alleges the misleading nature of Kim's statements: "[a] vaccine construct (or vaccine prototype) is an actual vaccine, not a mere design of one."  ¶101.

Defendants then point to three analyst reports which contain the word "design," and conclude from this that all market participants understood that Kim meant "design" when he said "construct." Mtn. at 8.  This argument should be rejected too.  If the market understood Kim to mean "design," then it was not necessary for Inovio to correct Kim's statements.  Nor was it necessary to characterize Citron Research ("Citron") as having demonstrated "a lack of understanding" of the development of INO-4800.  And not one of the analyst reports Defendants reference says what market participants understood when Kim said "construct." Here, Defendants are improperly relying on two analyst reports for the truth of the matter asserted (*i.e.,* all market participants understood Kim to really mean "design").  By doing so, however, Defendants risk converting their Motion into one for summary judgment.  *Jones v. Morris Cnty. Corr. Facility*, 2007 WL 1118342, at *2-*4 (D.N.J. Apr. 13, 2007).

- 6 -

Defendants next argue that the Complaint somehow fails to explain "why" Kim's February 24 and March 2, 2020 statements were false or misleading. Mtn. at 8-9. Defendants are sowing confusion here. The cases Defendants cite in support of their argument (Mtn. 8-9) draw the word "why" from the PSLRA's statutory language [15 U.S.C. §78u-4(b)(1)]. The cases Plaintiffs cite do the same, but those opinions include the courts' traditional explanation of how a pleading complies with the requirements of 15 U.S.C. §78u-4(b)(1). *See, e.g.*, *Alpharma*, 372 F.3d at 147 (the complaint must allege the """first paragraph of any newspaper story" – that is, the "who, what, when, where and *how*""").

Defendants further suggest that even if Kim did say "construct," that could not be misleading to investors because the time it took to create INO-4800 was not a "gaiting issue" for its clinical development (*i.e.*, clinical development timelines were not impacted). Mtn. at 8-9. Not only do Defendants cite no legal authority for that contention (as none exists), but Defendants' argument suggests that as long as INO-4800 was ultimately produced for use in small Phase I clinical studies, it was perfectly lawful for Kim to lie about the speed in which the vaccine had been developed.

Ultimately, to the extent Defendants suggest that Kim's misstatements were not material, the 59.5% drop in Inovio's stock price after it corrected them on March 9, 2020 (¶¶113-114, 144), indicates otherwise. *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 352 (3d Cir. 2009) (materiality "self-evident when we look at the market's negative reaction" when the truth was disclosed), *cert. denied*, 559 U.S. 1116 (2010).

### 2.    Defendants' Statements Regarding the Company's Manufacturing Capabilities Were Misleading

Notably, Defendants do not dispute that the Complaint adequately alleges the who, what, when, where and how regarding Defendants' misrepresentations and material omissions about Inovio's manufacturing capacity for INO-4800 (¶¶102, 104, 106, 109-110). Mtn. at 9-16. Rather,

- 7 -

Defendants raise several arguments that the statements and omissions are not actionable as a matter of law. *Id.* The Court should reject each one of them.

### a. Plaintiffs' Theory of Falsity Is Not Speculative

Defendants contend that Plaintiffs' theory "is that Inovio will be unable to produce one million doses by the end of 2020." Mtn. at 9. That is an inaccurate characterization of the pleading. Rather, Plaintiffs' theory of falsity here is Inovio was not "on [the] right track" to deliver one million doses in 2020 – let alone hundreds of millions of doses each year thereafter – ***at the time*** Defendants said or suggested otherwise. ¶108. Moreover, Plaintiffs' theory of falsity is grounded in fact. Defendants had direct knowledge that its primary vaccine manufacturer – VGXI – could not produce sufficient doses of INO-4800 to support Inovio's production guidance for 2020 and beyond. ¶¶63, 70-74. At the same time, Defendants had direct knowledge that the Company's current slate of potential replacement manufacturers would also be unable to produce enough doses unless Inovio could force a VGXI technology transfer. ¶¶63, 68, 85-90, 105, 108. Defendants also knew VGXI had repeatedly refused to make such a transfer. ¶¶63, 94, 105, 108. Far from speculation, these allegations are based on Inovio's own extra-judicial admissions and testimony provided under oath in a court of law.

In support of their "speculation" argument, Defendants rely on *Alvarez v. Ins. Co. of N. Am.*, 313 F. App'x 465, 468 (3d Cir. 2008). Mtn. at 9. But in *Alvarez* the panel addressed whether contact language was misleading (it was not) and said nothing of a speculative theory of fraud. Defendants also rely on *In re Molycorp, Inc. Sec. Litig.*, but the allegations of fraud here are not dependent on "events . . . yet to occur." 2015 WL 1540523, at *15-*17 (D. Colo. Mar. 31, 2015). When Kim claimed that Inovio was "on [the] right track" to meet dosage guidance, he was referring to the Company's capabilities as of May 2020.

### b.      Defendants' Manufacturing Statements Are Not Protected by the PSLRA's Safe Harbor

Defendants argue that their manufacturing statements were forward looking and not actionable under the PSLRA's safe harbor.  Mtn. at 9-12.  The statements are not forward-looking, and even if they were, they were not accompanied by adequate cautionary language and were made with actual knowledge of their falsity.  *Cf. OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481,490-91 (3d Cir. 2016).  Accordingly, the safe harbor does not apply.

### (1)      Defendants' Manufacturing Statements Are Not Forward-Looking

Plaintiffs allege that when the Company announced the Ology agreement in March 2020, Defendants knew but failed to disclose that VGXI had already refused to make the needed technology transfer to Ology.  ¶¶102-103.  Likewise, when the Company announced the Richter-Helm agreement in April 2020, Defendants knew but failed to disclose that VGXI, Ology and Richter-Helm combined could not produce one million doses in 2020.  ¶¶104-105.  *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912 at *9 (D.N.J. Aug. 16, 2018) (safe harbor did not apply where statement was based on representations about contracts entered into).  The alleged omission in the June 2020 offering documents is not about the future, but is about Defendants' failure to disclose that on May 7, 2020, VGXI informed Kim that it cancelled its long-standing contract with Inovio. ¶¶93, 109-110.

Defendants also contend that Kim's May 11, 2020 statement that "when we say we're preparing 1 million doses [by the end of 2020] . . . we're on right track to do that" (¶106) is protected by the safe harbor.  Not so.  *See, e.g.*, *Freshpet*, 2018 WL 394878, at *4 (no safe harbor where statements incorporated representations about current manufacturing capacity).  When Kim made that statement, the Company did not at that time have sufficient manufacturing resources to be "on [the] right track" to deliver one million doses. ¶108.  *See In re Celgene Corp. Sec. Litig.*, 2019 WL

- 9 -

6909463, at *14 (D.N.J. Dec. 19, 2019) (holding that the "on track" component of Celgene's representation regarding its ability to meet its projections is not forward looking because it "pertains to Celgene's current position vis-à-vis its future objectives").

### (2)    Defendants' Cautionary Language Is Not Meaningful

Although Defendants' seek to hide behind their risk disclosures, the language they point to is not sufficiently meaningful to qualify for the safe harbor. Mtn. at 10. First, it is mere boilerplate and says nothing of the actual risk attendant to one of Inovio's key business partners – that of VGXI – cancelling its contract to manufacture the vaccine for the Company. As such, the language is neither substantive nor tailored to the specific risk at issue here. *OFI*, 834 F.3d 481.

Ironically, Defendants could not support their argument by directing the Court to the May 12, 2020 cautionary language which is alleged to be misleading (¶109 ("If any of our current or future collaborators . . . terminates our agreements . . . our commercialization of products could be diminished or blocked completely.")). That must be because on May 7, 2020, VGXI – had already cancelled its contract with Inovio. Accordingly, the Complaint also adequately alleges the May 12, 2020 cautionary statement is misleading too. "[A] company may be liable under Section 10(b) for misleading investors when it describes as hypothetical a risk that has already come to fruition." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241-42 (3d Cir. 2017).

### (3)    Defendants Had Direct Knowledge of the Falsity of Their Manufacturing Statements

Even if Defendants' manufacturing statements could be characterized as forward-looking (they cannot), Defendants next argue the statements are not actionable because the Complaint does not allege Defendants knew those statements to be misleading when made. Mtn. at 10-12. Specifically, Defendants mischaracterize the Complaint as failing to allege "Defendants had actual

- 10 -

4828-6661-2692.v1

knowledge that Inovio would be unable to meet its production goals." *Id*. at 10.  That is not what Plaintiffs' allege.  Rather, the Complaint makes clear that:

- When Defendants announced the Ology deal on March 24, 2020 ("'[t]his partnership increases Inovio's manufacturing capabilities for our COVID vaccine'"), Defendants knew that Inovio had not acquired VGXI's permission for a technology transfer and that Ology did not have the capacity to deliver a single dose.  ¶¶80-81, 102-103.

- When Defendants announced the Richter-Helm deal on April 30, 2020 ("to produce one million doses of INO-4800 by the end of 2020"), Defendants knew that VGXI, Ology and Richter-Helm, combined, were not capable of delivering one million doses to Inovio in 2020.  ¶¶63, 80-92, 104-105.

- On May 11, 2020, when Kim stated Inovio's "right on track" with its current contract manufacturers to deliver one million doses, Kim knew that VGXI had cancelled its contract, refused to share its intellectual property ("IP") with Ology and VGXI, Ology and Richter-Helm, combined, were not capable of delivering one million doses.  ¶¶63, 80-94, 106, 108.

Defendants' reliance on *Williams* is misplaced.  Mtn. at 11.  As the panel in *Williams* observed, "knowledge that sales from one source might decrease is not the same as actual knowledge that the company's overall sales projections are false."  869 F.3d at 246.  But the Complaint alleges that when Kim said "on [the] right track," he knew that all of Inovio's current vaccine suppliers could not hit the one million dose goal.  ¶¶63, 80-94, 106, 108.

### c. The Alleged Omitted Facts Rendered Defendants' Manufacturing Statements Materially Misleading

Defendants contend that "Plaintiffs do not allege that any of the [manufacturing] statements were affirmatively false or factually inaccurate."  Mtn. at 12 (pointing to allegations of omitted facts).  First, if Defendants are correct, the safe harbor does not apply.  *See Freshpet*, 2018 WL 394878, at *4 (safe harbor does not apply to alleged omissions of present facts).  Second, as is universally recognized, when Defendants chose to speak, they undertook the duty to speak fully and accurately.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (duty to disclose exists where necessary to make statements not misleading).

- 11 -

Here, Defendants chose to speak about the March 2020 Ology IP transfer deal, but failed to disclose that the only company that could make that IP transfer was VGXI, and VGXI had said no. ¶¶102-103.  Defendants chose to speak about the April 2020 Richter-Helm deal, which added a third manufacturer to Inovio's slate of vaccine manufacturers, but failed to disclose that VGXI, Ology and Richter-Helm combined (all of Inovio's INO-4800 manufacturers) were not capable at that time of producing one million doses in 2020.  ¶¶104-105.  And, Kim failed to inform investors of the same fact when he misleadingly claimed "we're right on track" to producing one million doses with our "current" manufacturers.  ¶¶106-107.

Defendants also contend that the alleged omission in the May 2020 prospectus is not actionable because Inovio had several vaccine manufacturers at the time.  Mtn. at 12-13.  Again, Defendants ignore, *inter alia*, the allegation that the offering document is misleading because:  (a) Defendants failed to disclose that its key vaccine manufacturer – VGXI – had cancelled its contract on May 7, 2020; and (b) the other two manufacturers hired in March and April 2020 – Ology and Richter-Helm – were not capable of producing one million doses.  ¶110.

### d.        The Remainder of Defendants' Arguments Concerning Falsity Are Improper on a Motion to Dismiss

Defendants' Motion devotes significant space to making inappropriate and premature factual arguments.  Mtn. at 13-16.  While these arguments should be summarily rejected by the Court and reserved by Defendants for summary judgment, Plaintiffs will briefly address them.

First, Defendants deny that VGXI "'repeatedly refused the transfer request.'"  Mtn. at 13. *But see* ¶81 (Inovio's court filing states "'between late March and early May 2020, Inovio repeatedly asked VGXI' about transferring its technology, but VGXI 'refused to commit to providing' its technology to Ology'").

- 12 -

Second, Defendants assert that Inovio believed it had a contractual right to a technology transfer. Mtn. at 13-14. But whether Inovio had that right (or honestly believed it did) does not alter the fact that Defendants concealed the May 7, 2020 VGXI contract cancellation from investors.

Third, Defendants speculate that a VGXI technology transfer could take just 30 days, ignoring that VGXI had repeatedly made clear that it would not allow it. Mtn. at 14. Even assuming a transfer, Defendants knew that it could take several months to over two years. ¶¶91-92.

Fourth, Defendants cite to another section of Juba's sworn testimony in the VGXI case, and incorrectly claim that it "contemplate[s]" a period of "30 days for the Tech Transfer." Mtn. at 14 (citing ECF No. 72-3, Ex. H. at 2-4). But Juba's testimony went to the need for VGXI employee involvement for 30 days to support the transfer process. ECF No. 72-3, Ex. H. at 2-4.

Fifth, Defendants deny factual support for the Complaint's allegation that to be "on [the] right track" was always "'dependent on getting a technology transfer from VGXI.'" Mtn. at 14. But Kim said that twice, under oath. ¶90.

Sixth, Defendants suggest that because they had "manufacturing lined up" for 500,000 doses during the Class Period (Mtn. at 6, 14), they were, thus, on track to make good on their one million dose delivery goal. But "manufacturing lined up" does not mean vaccines in hand. In any event, the Complaint alleges that "it would be impossible" for Richter-Helm to manufacture "anything over 500,000 doses," during 2020. ¶105. In other words, 500,000 was an aspirational ceiling, not a floor, and that figure was the maximum number of doses possible from Richter-Helm for the entirety of 2020. *Id*.

Seventh, Defendants admit they failed to disclose the May 7, 2020 VGXI contract cancellation in the June 2020 offering documents, but claim because the attendant risk associated with the cancellation had not materialized, the risk disclosure is not misleading. Mtn. at 16-17. That is wrong. The risk disclosure states: "***If any of our current or former or future collaborators*** . . .

- 13 -

*terminates our agreements* . . . *our commercialization of products could be diminished or blocked completely*." ¶109.  The commercialization of Inovio's vaccine had already been diminished.  As alleged in the Complaint and admitted by Kim under oath, VGXI's production limitations and its subsequent cancellation of its contract with Inovio forced Defendants to try to find replacement manufacturers.  Once identified, Ology and Richter-Helm made clear to Inovio that they could not deliver one million doses unless VGXI transferred its IP.  And, VGXI repeatedly refused to transfer it.

More important, OWS's top advisor published an article regarding the criteria vaccine candidates should satisfy for inclusion in OWS, including demonstration of "fast and effective manufacturing" and the ability "to reliably produce more than 100 million doses by mid-2021." ¶16.  That certainly was not Inovio.  And, OWS had already handed out billions of dollars of cash to other vaccine sponsors who had satisfied the commercialization criteria.  ¶11.

### 3. Defendants' June 30, 2020 Statement that INO-4800 Had Been "Selected for the U.S. Government's Operation Warp Speed" Is Misleading

The Company's June 30 press release stated that INO-4800 had been "[s]elected for the U.S. Government's Operation Warp Speed," when in fact it had not.  ¶¶111-112.  In arguing against the materiality of this statement, Defendants again resort to evidence outside the four corners of the pleading and claim that an analyst observed that Inovio's participation in OWS was "limited" to a non-human clinical study.  Mtn. at 17.  The analyst report, however, does not say that; it does not even use the word "limited."  Defendants next point to another analyst's reference to "media reports" that Inovio might not have been selected for inclusion in OWS.  *Id*.  What media reports, and why should they be accepted over the words of the Company?

In any event, materiality is "'a mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts are peculiarly for the

- 14 -

4828-6661-2692.v1

trier of fact.'" *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d Cir. 1997).  Here, sometime prior to August 9, 2020, *The New York Times* believed it was sufficiently unclear whether Inovio had, in fact, been selected for OWS and thus reached out to Inovio to clarify.  ¶112.  After *The New York Times* reported that Inovio would not confirm selection for OWS, the stock price plunged 28%. ¶126.  That misstatement was material.  *See, e.g.*, *Pharmacia.*, 554 F.3d at 352.

**B.      The Complaint Raises a Strong Inference of Defendants' Intent to Deceive, or Scienter**

To plead scienter, a plaintiff must "allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'"  *Inst. Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009). Recklessness is conduct that constitutes "'an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  *Id*. at 267 n.42.  A plaintiff "'must sufficiently plead' Defendants' knowledge of facts or access to information contradicting their public statements . . . [i.e., that] Defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."'"  *In re Elec. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *6 (D.N.J. Jan. 31, 2019).  The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,'" but must merely be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 315, 324 (2007).  The question is "whether **all** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id*. at 323 (emphasis in original).

As an threshold matter, Defendants argue that Plaintiffs "rely solely" on "'motive and opportunity'" allegations to plead a strong inference.  Mtn. at 21.  As demonstrated below, that argument is baseless.

- 15 -

### 1.   The Complaint Adequately Alleges Kim's Intent to Deceive Investors About the "Three Hour" Construction Statements

Plaintiffs adequately allege facts giving rise to a strong inference of reckless or conscious conduct by Kim in stating that Inovio had constructed INO-4800 within three hours. ¶¶132-141. Kim has published more than 100 scientific papers, holds numerous patents, and sits on editorial boards and scientific review panels. ¶27. For decades, Kim has been an immunologist and serves on the Board of the International Vaccine Institute. *Id.* Given Kim's lengthy background as an immunologist, he is certain to understand there is a premium placed on being precise and accurate when talking publicly about vaccine development. *Id.* And, he certainly knows the difference in the meaning of the words "design" and "construct," particularly where the phrase "vaccine construct" (an actual vaccine prototype) is an immunological term of art. ¶101.

In addition, Kim's use of the word "construct" on February 24 and March 2, 2020 was not an act of negligence. Kim used the same language at least twice when touting INO-4800 on Fox Business and while speaking with President Trump before a live national television audience. ¶¶97, 99. Kim deliberately said "construct," and he knew that that word would have maximum impact on potentially millions of listeners – to say nothing of its impact on Inovio's share price. ¶¶98, 100. *See, e.g.*, *Avaya*, 564 F.3d at 269 ("Among the facts alleged by Shareholders, the most powerful evidence of scienter is the content and context of [defendants'] statements themselves."); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at \*3 (N.D. Cal. Sept. 4, 2012) ("[t]he wording of Defendants' statements . . . suggests they understood what was going on").

Defendants argue that scienter is somehow negated before Kim made the "three[-]hour" statements because INO-4800 had already been produced for use in preclinical trials. Mtn. at 1. But Defendants fail to explain how that negates scienter.

**2. The Complaint Adequately Alleges Defendants' Intent to Deceive Investors When They Made Their Vaccine Manufacturing Statements**

Defendants concede that the Complaint adequately alleges that they knew of all the non-disclosed facts regarding the VGXI debacle at the time they made their alleged misstatements and omissions. Mtn. at 18-20. The Court need go no further, as scienter is adequately pled on that basis. In a case dealing with non-disclosure of material facts, "'*any* required element of scienter is satisfied where . . . the defendant had actual knowledge of the material information.'" *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). Defendants, however, have improperly relied on *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 639 (D.N.J. 2002), to argue the pleading is *required* to also allege Defendants knew that failure to disclose omitted fact would likely mislead investors. Mtn. at 19. That is not the law in the Third Circuit (*i.e.*, the court in *Wilson* applied the Tenth Circuit pleading standard for recklessness as announced in *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001)). *Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693 (E.D. Pa. 2017), *aff'd sub. nom. Fan v. StoneMor Partners LP*, 927 F.3d 710 (3d Cir. 2019), also relies on the Tenth Circuit's standard announced in *Fleming*. It is no help to Defendants either (Mtn. at 8), because the Complaint alleges Defendants had *direct knowledge* of the non-disclosed material facts (as opposed to recklessly disregarding them) when they made their misleading manufacturing statements. *Anderson*, 296 F. Supp. 3d 693, 704.

The Complaint adequately alleges facts giving rise to a strong inference of deliberate misconduct by Kim and Juba when they made misstatements concerning Inovio's manufacturing capabilities. Each had direct knowledge of, and access to, material facts contradicting their misstatements, including the VGXI contract cancellation, the failure to obtain the necessary VGXI technology transfer, and the limitations of partners like Richter-Helm and Ology. ¶¶90, 93-94, 108. Juba was extensively involved with manufacturing capacity for INO-4800. *See* ¶¶63, 70-74, 77, 79,

4828-6661-2692.v1

81-82, 92, 94.  Kim's and Juba's knowledge of material facts contradicting their statements establish a strong inference of scienter.  *Freshpet*, 2018 WL 394878, at *5.

Defendants next argue that Kim did not intend to deceive because he purportedly "believed Inovio had a contractual right to the Tech Transfer."  Mtn. at 20.  But this belief, whether or not well-founded, does not change the fact that Defendants knowingly concealed: (1) that VGXI had refused to provide an IP transfer; (2) that VGXI had cancelled its contract; and (3) that there would be a lengthy delay in receiving enough doses unless VGXI could be forced to transfer its IP to its competitors across the globe.

Defendants also argue that because Inovio "had other means" of production when they made their statements, they could not have misled investors.  *Id*. at 20 (citing ECF No. 72-3, Ex. H).  Not only is this an improper factual argument, but it is belied by Defendants' own exhibit, which clearly states that Ology's process was "small scale" and that Eurogentec did not know if their process would work.  *Id*., Ex. H at 6, 9.  Defendants also claim that manufacturers like Ology and Eurogentec could produce the vaccine without any technology transfer.  Mtn. at 6.  *But see* ¶68 (Inovio's mid-June 2020 admission that it did not "have a substitute for the VGXI technology").  Inovio's own exhibit and statements in the VGXI litigation show that Inovio had no idea if the processes of Ology, Eurogentec, or any other manufacturer could deliver enough doses in 2020 and beyond.  ECF No. 72-3, Ex. H at 5-6; ¶¶63, 67-68, 86-90.

### 3.   The Complaint Adequately Alleges Defendants' Intent to Deceive Investors Regarding the OWS Statement

The Complaint adequately alleges a strong inference of scienter with respect to Defendants' June 30, 2020 press release, in which they stated in bold letters in the byline:  "***INO-4800 Selected for the U.S. Government's Operation Warp Speed***."  Kim is quoted in the press release and was required by Company policy to ensure it was "true, accurate, complete, timely, understandable, and

- 18 -

not misleading." ¶¶28, 30, 111.  Kim personally interacted with President Trump and members of the Coronavirus Task Force regarding the government's plans to combat the disease.  ¶99.

Further, Defendants were no doubt concerned that investors would react negatively to the section of the Company's June 30, 2020 press release stating that Inovio was not prepared to disclose the immunological response data from the INO-4800 Phase I trial.  ¶¶119-120, 131 (the Company still has not publicly released that efficacy data).  Accordingly, Defendants' June 30, 2020 headline that "INO-4800 [had been] Selected for the U.S. Government's Operation Warp Speed" would soften the blow to the Company's stock price on June 30 and July 1, 2020.  ¶¶111, 119, 121. Further, the statement that INO-4800 had been selected for OWS had the real potential of misleading market participants into believing that Inovio was in the running for $1 billion or more in funding. ¶¶11, 112.  Thus, Defendants' June 30 claim, and the context in which it was made are strong evidence that Kim intended to deceive investors.  *Avaya*, 564 F.3d at 269; *Washtenaw*, 2012 WL 3835078, at *10.

Defendants barely challenge the allegations of scienter as to the June 30 press release, but instead merely repeat much of their falsity argument.  Mtn. at 21.  Again, if Defendants' June 30 press release did not mislead investors, *The New York Times* would not have contacted the Company for the express purpose of confirming Inovio's claim.  ¶112.  Further, Inovio is a small organization, and given Kim's direct interaction with the highest levels of the government during the pandemic, it would be absurd to conclude Kim did not know on June 30 whether Inovio, in fact, had been selected for OWS.  *See Hall*, 2019 WL 7207491, at *20-*21.

Defendants suggest that because the June 30 press release "precisely" stated that Inovio was merely chosen for a monkey study, Kim could not have acted with scienter.  Mtn. at 21.  But that argument ignores the press release's headline, "***INO-4800 [had been] Selected for the U.S. Government's Operation Warp Speed***," and disregards the confusion that banner caused investors.

- 19 -

¶¶111-112.  *Anderson v. Spirit AeroSystems Holdings, Inc.*, 105 F. Supp. 3d 1246, 1265 (D. Kan. 2015), *aff'd*, 827 F.3d 1229 (10th Cir. 2016), does not help Defendants.  Mtn. at 21.  That case dealt with sufficiently tailored risk warnings defendants had made before providing optimistic guidance on "forward[ed] losses."  *Anderson*, 105 F. Supp. 3d at 1265.  Here, Defendants' made a statement of present fact, and Defendants never issued risk disclosures warning investors that they may mislead about INO-4800's inclusion in OWS.

### 4. Kim's and Kies' Suspicious Stock Sales Contribute to a Strong Inference of Scienter

While the above facts are more than sufficient to evidence a strong inference of scienter, and "the absence of a motive allegation is not fatal" (*Tellabs*, 551 U.S. at 325), the Complaint also identifies Defendants' motive to mislead the public.  Specifically, Plaintiffs have alleged that, as a result of their fraud, Defendants were able to engage in improper insider trading, facilitate a public stock offerings for a total of $320 million, and allow Kim and Kies to pocket millions in performance-based compensation.  ¶¶132-141.  The allegations, taken together with the Complaint's specific allegations of deliberate malfeasance, create a strong inference of scienter.

Kim and Kies both obtained hefty trading profits during the Class Period.  And, Defendants sold their stock after they made their misleading statements and omissions.  Kim cashed in 8% of his holdings for over $2 million on July 30, 2020.  ¶29.  Notably, Kim had not voluntarily sold any of his direct holdings in the 22 months preceding his July 30, 2020 sale.  *Id*.  And, despite claiming to have a Rule 10b5-1 trading plan, Kim has not sold since.  Kies cashed in over 29% of his Inovio holdings on June 30, 2020, for over $900,000.  ¶33.  He then sold additional shares for over $873,000 on July 15, 2020, representing 27.4% of his total Inovio holdings.  *Id*.  Kim's and Kies' Class Period trading only bolsters the inference of scienter raised by the allegations of direct knowledge and conscious misbehavior.  *See* §IV.B.2., *supra*.

Defendants cite to *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 207 (1st Cir. 1999), and argue that insider trading does not support a strong inference because it occurred following certain corrective disclosures and drops in the stock price. Mtn. at 21. But *Greebel* is distinguishable because here the corrective disclosures were followed by more lies and more selective disclosures. Further, between February 13, 2020 and August 7, 2020, the Company's stock price ballooned from $3.91 per share to $20.22 per share. ¶¶98, 126. Kim and Kies also sold their stock ***before*** August 10, 2020, when *The New York Times* exposed Defendants' June 30 statement to be misleading and the stock price dropped by 23%, or down to $14.62. ¶126. That did not happen in *Greebel*. *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1359 (N.D. Ga. 2010), and *Hoey v. Insmed Inc.*, 2018 WL 902266, at *21 (D.N.J. Feb. 15, 2018), are distinguishable for the same reasons.

Kim and Kies next argue that their Rule 10b5-1 trading plans negate any inference of scienter. Mtn. at 22. But that is an affirmative defense that is inappropriate to adjudicate at the pleading stage. Such a defense requires a finding that the plan was entered into in good faith, which cannot be determined at this stage, where the Court must "draw all inferences in favor of the non-moving party." *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *27 n.40 (D.N.J. Mar. 24, 2008). The trading plan defense should be rejected for the additional reason that the Complaint pleads facts supporting the allegation that when the plans were entered into, Defendants "had knowledge of, or recklessly disregarded, non-public, material adverse facts concerning the development status of INO-4800." ¶¶29, 33. For instance, on June 30, 2020, Defendants informed investors that Inovio would wait to disclose the immunological response data from its Phase I study until it could be published in a peer-reviewed journal. ECF No. 72-3, Ex. I at 2. The Complaint alleges that data has never been made public. ¶¶119, 141. That Phase I clinical study commenced in April 2020 and was open label (*i.e.*, it was not blinded). ¶¶56-57, 60. By June 30, 2020, therefore, when the Company issued a

- 21 -

press release on the results of that study, Defendants had direct knowledge of the still undisclosed immunological response data.

Finally, Defendants point to Kim's increased stock holdings during the Class Period. Mtn. at 22. But that slight increase was due to zero-cost-basis restricted stock units vesting or being awarded to Kim, not open-market purchases of Inovio stock.

### 5. Inovio's Sale of $320 Million in Stock Contributes to a Strong Inference of Scienter

The motive to mislead investors in advance of stock sales is classic evidence of scienter. *See, e.g.*, *In re Res. Am. Sec. Litig.*, 2000 WL 1053861, at \*6 (E.D. Pa. July 26, 2000) ("the desire to raise capital by means of a secondary public offering" gave rise to strong inference of scienter). Defendants argue that "general[ized]" allegations are insufficient. Mtn. at 22-23. But the allegations regarding Inovio's sale of $320 million in stock are not generalized. ¶¶133-137.

The Complaint demonstrates that Inovio's survival depended on raising large amounts of capital through public and private offerings, as Inovio had no material source of current revenue. ¶¶133-134. Without such capital, the Company would have become insolvent almost immediately due to the urgent need of financial resources to rapidly drive the development of INO-4800 during a spiraling pandemic (as well as Inovio's other products in the pipeline). These facts take Plaintiffs' allegations out of the generalized classification, and provide a specific basis for the inference that Defendants were motivated to inflate Inovio's stock price at the time they did. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at \*30 (C.D. Cal. Aug. 8, 2013) ("The fact that [defendant] was in a period of turmoil in early 2010 and may have needed outside capital is strong evidence that the company acted with fraudulent intent . . . ."); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 813 (C.D. Cal. 2011) ("Defendants' motive to artificially inflate the company's stock price stems not merely from the 'generic desire' to raise capital, but also from a need to . . . maintain

- 22 -

access to much-needed operating capital . . . . [S]uch motive evidence buttresses a finding of scienter.").

### 6. The Individual Defendants' Class Period Compensation Contributes to a Strong Inference of Scienter

Allegations concerning compensation can also contribute to a finding of scienter. *See, e.g.*, *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) ("a strong inference of scienter can be inferred from [p]laintiffs' allegations . . . that [defendants] were motivated to inflate America West's financial results and stock prices because their eligibility for stock options and executive bonuses were based principally on the company's financial performance"). Here, Kim's, Kies', and Juba's (the "Individual Defendants") compensation was tied directly to "raising specific amounts of capital during the year." ¶138. When Defendants started making their alleged misleading statements, the Company' stock price skyrocketed, allowing Defendants to execute several ATM stock offerings and attract $320 million from investors at favorable terms. Not only did Defendants lie to maximize funding from the offerings, but those capital raises also maximized Kim's and Kies' salaries and bonus potential.

### 7. Viewed Holistically, Plaintiffs' Allegations Support a Cogent and Compelling Inference of Scienter

The Complaint establishes a pattern of Defendants repeatedly making misstatements, getting corrected, and then making more misstatements. This pattern, when viewed together with Plaintiffs' other allegations, including Defendants' many admissions (¶¶67-68, 89-90), establishes a cogent and compelling inference of scienter. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *10-*11 (D.N.J. Apr. 28, 2017) (scienter sufficiently pleaded based on holistic review, which included allegations of a "pattern of denials and subsequent admissions"); *Avaya*, 564 F.3d at 273 (courts "'need not close their eyes to circumstances that are probative of scienter'"). Defendants' case law does not provide otherwise and is inapposite. *See Martin v. GNC Holdings,*

- 23 -

*Inc.*, 757 F. App'x 151, 154 (3d Cir. 2018) ("no allegations" that defendants knew of the pertinent facts); *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012) (complaint did not contain clear allegations of admissions); *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2018 WL 4524107, at *22 (D. Or. May 29, 2018) ("no patent contradiction between the accurate facts . . . and defendants' relative optimism").

### C.    The Complaint Adequately Alleges Loss Causation

To plead loss causation, a plaintiff need only provide a "'short and plain statement'" giving defendants "some indication of the loss and the causal connection that [they have] in mind." *Dura*, 544 U.S. at 346-47. "[T]his District has consistently analyzed loss causation under Rule 8(a), as opposed to a heightened pleading standard." *Valeant*, 2017 WL 1658822, at *12 n.19. Defendants only challenge loss causation for the February 24 and March 2, 2020 construct-in-three-hours statements, and the June 30, 2020 press release announcing INO-4800's selection for OWS. *Id*.

### 1.    The Complaint Adequately Alleges Loss Causation for Defendants' Construct in Three Hours Statements

With respect to Kim's February 24 and March 2, 2020 statements, Defendants make the unique argument that no corrective information was disclosed on March 9, 2020. Mtn. at 24. They are incorrect. On March 9, 2020, Inovio corrected Kim's statements, admitting that the vaccine had merely been designed in three hours. ¶113. This was certainly "new information" as it contradicted Kim's February 24 and March 2, 2020 statements. *See Hall*, 2019 WL 7207491, at *27 ("'it is the exposure of the falsity of the fraudulent representation'" that "'is the critical component'" of a corrective disclosure). The stock price dropped in response to the March 9, 2020 corrective disclosure. The Complaint need allege no more.

Defendants next complain that Citron is a "notorious" short-seller that used the word "design" in his March 9, 2020 tweet. Mtn. at 25. The argument is irrelevant. The Complaint alleges that Inovio, not Citron, corrected Kim's statements on March 9, 2020. ¶101.

- 24 -

### 2. The Complaint Adequately Alleges Loss Causation for Defendants' INO-4800 Selected for OWS Statement

Defendants argue that the Complaint fails to allege loss causation for Defendants' misleading June 30, 2020 press release because it did not refer to OWS funding, and the August 9, 2020 *New York Times* article reported that Inovio was not given funding for OWS. Mtn. at 25. Defendants are wrong. *The New York Times* asked Inovio if it was, in fact, part of OWS because it noticed Inovio had not received any funding under the program. ¶¶15, 112. Inovio declined to confirm that for a simple reason. It was not true. ¶112. Last, Defendants suggest that the August 9, 2020 corrective disclosure must be a mirror image of the alleged misleading statement. Mtn. at 25 (*i.e.*, the June 30, 2020 said nothing about funding, but *The New York Times* article did). The Third Circuit disagrees. *See, e.g., In re Merck & Co., Inc. Sec. Derivative, & ERISA Litig.*, 2011 WL 3444199, at *32 (noting "*Dura* and its progeny do not demand . . . that corrective disclosures be complete, or put differently be the 'mirror image' of the alleged fraud").

## V. PLAINTIFFS STATE A VALID CLAIM UNDER SECTION 20(a)

The named Individual Defendants do not dispute that they are control persons of Inovio, as defined by §20(a). Mtn. at 25. Because a primary violation of §10(b) has been adequately pled, the Complaint also alleges a valid control person claim.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL

280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: 717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

- 25 -

4828-6661-2692.v1

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
WILLIAM J. EDELMAN
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
wedelman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 26 -

4828-6661-2692.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 21, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)

E-mail:  lfs@saxtonstump.com

4828-6661-2692.v1

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,ECF@bm.net,crmariney@bm.net

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,tstires@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,gas@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
ANDREW             DAVID ABRAMOWITZ
SPECTOR ROSEMAN  AND KODROFF
1818 MARKET STREET
SUITE 2500
PHILADELPHIA, PA 19103
```