IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK MCDERMID, individually and on behalf of all other similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>   Defendants. | Case No. 2:20-cv-01402-GJP<br><br>CLASS ACTION |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 2

    A.    The February 14 and March 2 Vaccine Statements Fail on Falsity, Loss Causation, and Scienter. ...................................................................................... 2

    B.    The March 24 to May 12 Statements About Inovio's Production Goals and Capabilities Fail on Falsity and Scienter. ................................................. 4

        1.    The May 11 "On Track" Statement Was Not False or Misleading. ........... 4

        2.    The Remaining Statements Regarding Inovio's Production Goals and Capabilities Were Not False or Misleading. ................................................. 6

        3.    Plaintiffs Fail to Plead a Strong Inference of Scienter. .............................. 7

    C.    The June 30 OWS Statement Fails on Falsity, Scienter, and Loss Causation. ....... 8

III.    CONCLUSION ..................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
  2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)...........................................................................8

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
  105 F. Supp. 3d 1265 (D. Kan. 2015) ......................................................................................9

*Anderson v. StoneMor Partners, L.P.*,
  296 F. Supp. 3d 693 (E.D. Pa. 2017), *aff'd sub nom. Fan v. StoneMor*
  *Partners LP*, 927 F.3d 710 (3d Cir. 2019) .............................................................................7

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ..................................................................................................8

*Curran v. Freshpet, Inc.*,
  2018 WL 394878 (D.N.J. Jan. 12, 2018) .................................................................................4

*In re DVI, Inc. Sec. Litig.*,
  2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) ............................................................................3

*Fan v. StoneMor Partners LP*,
  927 F.3d 710 (3d Cir. 2019)..............................................................................................2, 9

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)....................................................................................................7

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ........................................................................5

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)............................................................................................3, 5, 8

*Klein v. Autek Corp.*,
  147 F. App'x 270 (3d Cir. 2005) .............................................................................................6

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012)....................................................................................4

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011) .....................................................................................8

*In re Merck & Co., Securities, Derivative & "ERISA" Litigation*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..............................................................................10

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).................................................................................................6

*In re NutriSystem, Inc. Derivative Litig.*,
    666 F. Supp. 2d 501 (E.D. Pa. 2009) ...................................................................................10

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018)...................................................................................6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015).................................................................................................................2

*Padgett v. RiT Techs. Ltd.*,
    2020 WL 5201347 (D.N.J. Sept. 1, 2020) ...........................................................................7

*In re Synchronoss Techs., Inc. Sec. Litig.*,
    2020 WL 2786936 (D.N.J. May 29, 2020) .........................................................................10

*In re U.S. Interactive, Inc. Class Action Sec. Litig.*,
    2002 WL 1971252 (E.D. Pa. Aug. 23, 2002) .......................................................................5

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
    2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) .......................................................................3

*Weller v. Scout Analytics, Inc.*,
    230 F. Supp. 3d 1085 (N.D. Cal. 2017) ................................................................................7

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017)....................................................................................................7

**Statutes**

15 U.S.C. § 78u-4(2)(A) .................................................................................................................4

## I.    INTRODUCTION

Plaintiffs' Opposition highlights the flaws underlying each of their three theories of fraud.

**First, as to the statements regarding Inovio's vaccine development**, Plaintiffs do not dispute that Inovio designed its vaccine within three hours of receiving the viral sequence, and that Inovio's vaccine was manufactured and in use in preclinical trials *weeks before* Dr. Kim made the allegedly misleading statements about the time it took to "construct" the vaccine.  Given this timeline, it is unsurprising that Plaintiffs are unable to explain how or why Dr. Kim's use of "construct" versus "design" would mislead investors, or why he would want to cause confusion on this issue.  Plaintiffs are simply working backwards from the March 9, 2020, stock drop, attempting to piece together a narrative of fraud.  But the narrative makes no sense.  Inovio's stock dropped after a short seller accused Dr. Kim of lying about the time it took to *design* (not "construct") the vaccine—an accusation Plaintiffs concede is baseless.  Plaintiffs attempt to characterize Inovio's response later that day, refuting the accusation, as a correction of Dr. Kim's February 14 and March 2 statements.  But Inovio's statement plainly refers to a "third party report" that day, not Dr. Kim's statements weeks earlier.

**Second, as to the statements regarding Inovio's production plans**, Plaintiffs' theory is premised largely on the false notion that between April and May 2020, Defendants led investors to believe that Inovio could meet its production goals with only its *current* manufacturers.  This theory, however, simply cannot be squared with the statements themselves, which unambiguously state that Inovio was seeking *additional* manufacturers to meet its production goals.  It is no coincidence Plaintiffs ignore this language, as it undermines both falsity and scienter.

**Third, as to the statement regarding Operation Warp Speed ("OWS")**, Plaintiffs argue that Defendants rely on improper extrinsic evidence.  Not so.  Defendants rely on the same press release that Plaintiffs challenge, explaining that Inovio's participation in OWS was for animal

1

studies.  Plaintiffs ignore this fact and binding precedent that requires reading the statement "in light of all its surrounding text," *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015), and directs the Court to consider "whether or not Defendants sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading." *Fan v. StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019).

## II.    ARGUMENT

### A.    The February 14 and March 2 Vaccine Statements Fail on Falsity, Loss Causation, and Scienter.

**No Falsity.**  The Opposition fails to articulate how or why the use of the word "construct" versus "design" would mislead investors.  Plaintiffs insinuate that designing a vaccine is the easy part, and that the physical creation is what investors cared about, but plead no facts to support such conjecture.  Nor could they as it is the identification of the correct antigen(s) to induce a targeted immune response, not the physical production of the substance, that presents the hurdle.  Citron's March 9 tweet illustrates this point.  (¶ 113.)  Citron did not accuse Dr. Kim of lying about the time it took to produce the vaccine.  It accused Dr. Kim of lying about the time it took to ***design*** the vaccine.  (Ex. B.)  Inovio, however, quickly confirmed that it had, in fact, designed the vaccine within three hours (Ex. C), which Plaintiffs concede was true (¶ 113).

**No Loss Causation.**  Plaintiffs also argue that Inovio's March 9 tweet corrected ***Dr. Kim's*** statements.  (Opp. at 24.)  But the plain language of that tweet makes clear it was in response to ***Citron's*** baseless and uninformed accusations earlier that day.  (*See* Ex. C ("A ***third-party*** report ***today*** demonstrated a lack of understanding of the science behind DNA medicines.").)[1]  Nor was Inovio's March 9 tweet the first public disclosure to state that it took Inovio three hours to design a vaccine (MTD at 8), and thus it did not "reveal any new information related to Defendants'

---

[1] Unless otherwise noted, all emphasis is added and internal citations and alterations are omitted.

2

alleged misrepresentations." *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *24 (E.D. Pa. Sept. 3, 2010).

**No Scienter.** Plaintiffs acknowledge that Inovio designed the vaccine in three hours (¶ 113) and began using it in preclinical trials by the end of January (¶ 51), but argue that weeks later Dr. Kim intentionally misled investors about the time it took to "construct" the vaccine. This timeline makes no sense. Plaintiffs fail to explain what possible motivation Dr. Kim would have to cause confusion ***weeks after*** the vaccine was already in use. Instead, Plaintiffs argue that because Dr. Kim used the word "construct" twice, that phrasing was deliberate and calculated to mislead investors. (Opp. at 16 (citing *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012).) Neither logic, nor the cases Plaintiffs cite, support such circular reasoning. In *Avaya*, the defendant "did not simply make statements inconsistent with the existence of widespread and unusual discounting; he ***explicitly denied*** the existence of such discounting in response to repeated questions about pricing by analysts." 564 F.3d at 269. In *Celera*, defendants used language that was "technically correct," but misleading. 2012 WL 3835078, at *3.

No such circumstances are alleged here. No one asked Dr. Kim what he meant when he said "construct," or expressed any confusion about whether he was referring to the time it took to design versus physically create the vaccine. Nor do Plaintiffs allege any facts that "construct" is "an immunological term of art" (Opp. at 16), much less that Dr. Kim had knowledge of such. In any event, Dr. Kim's statements were not prepared remarks (*e.g.*, an earnings call or press release); they were made during conversations with a Fox news reporter and President Trump. This undercuts any inference that his phrasing was deliberately calculated to mislead investors.

Finally, Dr. Kim's and Mr. Kies' June and July stock sales do not support any inference of

scienter because those sales post-date the purported corrective disclosure.  (MTD at 21–22.)  Plaintiffs do not dispute this legal principle.  Instead, they argue that it should not apply here because unlike the cases cited in Defendants' Opening Brief, Plaintiffs challenge additional (unrelated) statements made after the purported corrective disclosure.  (Opp. at 21.)  Plaintiffs, however, cite no authority indicating that this distinction is relevant given that the later alleged misstatements are based on different theories of fraud.  Nor would such distinction comport with the requirement that scienter be pled "with respect to *each* act or omission."  15 U.S.C. § 78u-4(2)(A).

**B.      The March 24 to May 12 Statements About Inovio's Production Goals and Capabilities Fail on Falsity and Scienter.**

**1.      The May 11 "On Track" Statement Was Not False or Misleading.**

The Opposition focuses most heavily on Dr. Kim's May 11 statement that Inovio was "on [] track" to meet its production goals, arguing it was misleading because it did not state that Inovio's current manufacturers could not meet these goals.  (Opp. at 9, 12–13.)  But contrary to Plaintiffs' selective excerpting, Dr. Kim's statement was not confined to *current* manufacturers; he stated Inovio was "on [] track" by "relying on our current contract manufacturers of plasmids *and adding on additional manufacturers* that can help us scale."  (¶ 106.)  Plaintiffs' avoidance of this language underscores their inability to reconcile it with their theory of fraud.

Plaintiffs also argue that the PSLRA Safe Harbor does not apply because they allege omissions of present fact.  (Opp. at 11 (citing *Curran v. Freshpet, Inc.*, 2018 WL 394878, at *4 (D.N.J. Jan. 12, 2018)).)  That rule applies only where a defendant uses "inadequately disclosed historical facts to support unsound projections."  *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1126 (S.D. Cal. 2012) (cited in *Freshpet*, 2018 WL 394878, at *4).  It has no application here as Inovio's production goals expressly contemplated "adding on additional manufacturers"

4

(*i.e.*, a future condition).  (¶ 106.)  Moreover, under Third Circuit law, where there is no "specific assertion about the current state of [affairs] that could be distinguished from the future projections"—as here—the statement that a company is "on track" is forward-looking and subject to the PSLRA safe harbor.  *Avaya*, 564 F.3d at 255–56.

Plaintiffs also fail to meaningfully address the cautionary statements accompanying Dr. Kim's May 11 statement.  (MTD at 10.)  Instead, they argue that the ***only*** substantive and tailored risk disclosure is one that addresses the loss of VGXI.  (Opp. at 10.)  This argument fails for at least two reasons.  First, "the PSLRA does not require that the cautionary statement at issue include the ***precise particular factor*** that ultimately causes (or could cause) the forward-looking statement to be untrue."  *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *8 (N.D. Cal. Nov. 16, 2020).  "The issue is whether the cautionary language is sufficient to convey to an investor that the prediction in question is not a guarantee."  *In re U.S. Interactive, Inc. Class Action Sec. Litig.*, 2002 WL 1971252, at *9 (E.D. Pa. Aug. 23, 2002).  Inovio's risk disclosures—which address potential delays in production and issues scaling up (MTD at 10)—are more than adequate to immunize Dr. Kim's "on [] track" statement.  Second, the loss of VGXI did not impact Inovio's ability to meet its production goals because Defendants had already accounted for VGXI's inability to manufacture one million doses when Inovio set its production goal.  (MTD at 11–12, 15–16.)

Additionally, Plaintiffs' argument that Defendants had "actual knowledge" that Inovio's ***current*** contract manufacturers could not produce a million doses by the end of 2020 (Opp. at 11), does not address the key issue—*i.e.*, whether Dr. Kim knew on May 11 "that it was ***not possible*** to meet the projection."  (MTD at 11.)  None of the facts Plaintiffs identify demonstrate that Dr. Kim knew on May 11 that Inovio would be unable to meet its production goal "by relying on [its] current contract manufacturers of plasmids ***and adding on additional manufacturers***."  (¶ 106.)

2.       **The Remaining Statements Regarding Inovio's Production Goals and Capabilities Were Not False or Misleading.**

**March 24 Statement Announcing Partnership with Ology.**   Plaintiffs argue this statement was misleading because it did not disclose that VGXI had refused to provide a Tech Transfer to Ology. (Opp. at 12.)  But the Opposition does not substantively address two key points: (1) VGXI was contractually obligated to provide the Tech Transfer to Ology and (2) Inovio's March 24 statement ***pre-dated*** VGXI's improper refusal to do so.  (MTD at 13–14.)  Plaintiffs merely argue that these are "inappropriate and premature factual arguments" that the Court need not consider.  (Opp. at 12.)  They are wrong.  "To be actionable, a statement or omission must have been misleading ***at the time it was made***."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).  Plaintiffs are unable to identify any allegation that Inovio requested the Tech Transfer on or before March 24, much less that VGXI had already refused.  Instead, Plaintiffs point to their temporally vague allegation that Inovio made requests "[b]etween late March and early May 2020." (¶ 81.)  This is inadequate, *Klein v. Autek Corp.*, 147 F. App'x 270, 275 (3d Cir. 2005) (allegations of "vague and generic time frames" such as "June 2000" inadequate under Rule 9(b)), especially given other allegations that ***VGXI was not aware of Inovio's partnership with Ology until March 23***—the day before the challenged statement was made—and that no request for a Tech Transfer was made (or refused) that day.  (*See* ¶¶ 76, 79.)

**April 30 Statement Announcing "Additional Capacity" from Richter-Helm.**  While not clearly articulated, Plaintiffs appear to argue that the April 30 press release misleadingly implied that, with the addition of Richter-Helm, Inovio had the capacity to produce one million doses by the end of 2020. (Opp. at 12.)  However, "the Court focuses on the statements themselves, not [P]laintiff[s'] recasting of them." *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.,* 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018).  And the April 30 press release made no such claim; it

stated only that Inovio "plans to produce one million doses of INO-4800 by the end of 2020" and that Richer-Helm would provide "additional capacity" to meet that goal. (¶ 104.)

**May 12 Risk Disclosure.**  Plaintiffs argue Inovio's risk disclosure regarding the potential impact of losing partners was misleading because it did not disclose (i) that Ology and Richter-Helm could not produce one million doses by the end of 2020, and (ii) VGXI's termination.  (Opp. at 12.)  Neither argument is availing.  As to Ology and Richter-Helm's production capacity, Plaintiffs make no attempt to explain how this bears any connection to the risk disclosure or renders it misleading.  *See Weller v. Scout Analytics, Inc.*, 230 F. Supp. 3d 1085, 1094 (N.D. Cal. 2017) (no falsity where "the reasons Plaintiff offers . . . bear no connection to the substance of the statement itself").  As to VGXI's termination, this is merely the predicate event; the warned-of risk is the potential negative impact on product development and commercialization.  (MTD at 15–16.)  A duty to disclose arises only when the warned-of risk comes to fruition.  *Williams v. Globus Med., Inc.*, 869 F.3d 235, 242 (3d Cir. 2017).  Here, Plaintiffs do not argue that the warned-of risk was realized as of May 11 as a result of VGXI's termination days earlier.  (*See supra*, p. 5.)

### 3.    Plaintiffs Fail to Plead a Strong Inference of Scienter.

Plaintiffs neither allege nor argue that any Defendant ***intended*** to mislead investors about Inovio's production goals and capabilities.  Instead, they claim that such allegations are unnecessary, and scienter is adequately pled by alleging that Defendants "had actual knowledge of the material information."  (Opp. at 17 (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).)  Plaintiffs misapply *GSC*.  Courts in the Third Circuit require plaintiffs to plead not only knowledge of the omitted facts, but also that defendants knew or should have known the omissions were material and likely to mislead investors.  *See, e.g.*, *Padgett v. RiT Techs. Ltd.*, 2020 WL 5201347, at *6 (D.N.J. Sept. 1, 2020); *Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693, 704 (E.D. Pa. 2017), *aff'd sub nom. Fan v. StoneMor Partners LP*, 927 F.3d

7

710 (3d Cir. 2019).  Plaintiffs identify no such allegations, and thus, fail to plead scienter.

Even under the (incorrect) standard proposed by Plaintiffs, the Complaint still fails to plead scienter because the only facts Defendants purportedly knew concerned Inovio's current manufacturers.  (Opp. at 17.)  However, as discussed above, the statements Plaintiffs challenge are not confined to the current manufacturers; they expressly invoke Inovio's intent to contract with *additional manufactures* to meet its production goals.  (*See supra*, pp. 4–5.)

Plaintiffs' remaining scienter arguments fare no better.  Defendants' stock sales post-date the purported corrective disclosure and thus do not support scienter.  (*See supra*, pp. 3–4.)  As for Inovio's capital raises, Plaintiffs identify no "unusual circumstances" that exacerbated Inovio's need for capital.  *Avaya*, 564 F.3d at 279.  To the contrary, Plaintiffs allege that "[f]or years leading up to 2020, Inovio repeatedly informed investors that the Company would need to continue to raise capital to fund its operations."  (¶ 133.)  Indeed, this is the norm in biopharmaceuticals, which is why courts routinely find such allegations insufficient.  *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 626–27 (4th Cir. 2008).  The two out-of-circuit cases cited by Plaintiffs are inapposite, as they involved unusual circumstances, not present here.  *See In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *30 (C.D. Cal. Aug. 8, 2013) (alleging defendant withheld information to avoid a going concern qualification that would prevent it from raising capital it "desperately needed" because "it was likely to go into default within a few months"); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 812 (C.D. Cal. 2011) (alleging defendants artificially inflated the stock price because its key financing arrangement required the stock to trade above $6.50).  Here, Plaintiffs identify no "unusual circumstances" underlying Inovio's capital raises that warrant an inference of fraud.  *Avaya*, 564 F.3d at 279.

C.      **The June 30 OWS Statement Fails on Falsity, Scienter, and Loss Causation.**

**No Falsity.**  The Opposition focuses on the headline and largely ignores the body of the

press release, but the law requires it to be read in context.  The Court must consider whether the remainder of the press release "sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading." *StoneMor*, 927 F.3d at 716.  Plaintiffs do not dispute this point of law or that the release provided context by explaining that the vaccine was being tested "in [non-human primate] challenge studies as part of Operation Warp Speed."  (Ex. I at 2.)

Because Plaintiffs cannot dispute the press release in full, they instead argue that Defendants "resort to evidence outside the four corners of the pleading."  (Opp. at 14.)  This is incorrect.  While the Opening Brief does make passing reference to analyst reports, Defendants rely primarily on statements in the June 30 press release, which Plaintiffs concede is incorporated by reference.  (*See* MTD at 16–17 (citing Ex. I); ECF 81 at 1 (consideration of Ex. I is proper).)

**No Scienter.**  Plaintiffs concede that the "press release precisely stated that Inovio was merely chosen for a monkey study," but argue this is inadequate to conclude that Dr. "Kim could not have acted with scienter."  (Opp. at 19.)  They cite no legal basis for this argument and their attempt to distinguish *Anderson* on its facts misses the forest for the trees.  (*Id*.)  "The point is not to assess the adequacy of the disclosures or to assess their sufficiency as cautionary statements that would negate materiality," but rather, that the disclosure of purportedly adverse information is inconsistent with an intent to defraud. *Anderson v. Spirit AeroSystems Holdings, Inc.*, 105 F. Supp. 3d 1265, 1266 (D. Kan. 2015).  Here, Inovio's disclosure that its participation was limited to animal studies leads to "a strong inference that the investors were appraised [sic] of the relevant information" and does "not demonstrate an intent to defraud." *StoneMor*, 927 F.3d at 718.

Plaintiffs' myriad arguments regarding Dr. Kim's and Mr. Kies' stock sales also fail.  First, Plaintiffs argue that the Court should disregard that these sales were made pursuant to 10b5-1 trading plans, arguing that is an affirmative defense.  (Opp. at 21.)  However, courts in the Third

9

Circuit routinely consider 10b5-1 plans when analyzing scienter allegations. *See e.g.*, *In re Synchronoss Techs., Inc. Sec. Litig.*, 2020 WL 2786936, at *17 (D.N.J. May 29, 2020) (stock sales under 10b5-1 plans "of minimal value in establishing an inference of scienter"); *In re NutriSystem, Inc. Derivative Litig.*, 666 F. Supp. 2d 501, 518 (E.D. Pa. 2009) (10b5-1 plans "counter any inference" of scienter). Second, Plaintiffs argue the 10b5-1 plans provide no defense because Inovio's "Phase I clinical study commenced in April 2020 and was open label" and thus, Defendants must have known material, non-public information when they entered into 10b5-1 plans. (Opp. at 21.) The Complaint, however, does not allege when Defendants entered into their 10b5-1 plans, or what information was available to them at that time. *See Synchronoss*, 2020 WL 2786936, at *17 ("[I]t is Plaintiff's burden to allege when the Plan was adopted."). In any event, Plaintiffs do not challenge any statements regarding the Phase I trial or explain how such knowledge supports an inference of scienter as to statements regarding Inovio's production goals.

**No Loss Causation.** The June 30 press release was clear that Inovio's participation in OWS was limited to animal studies, and made no mention of any funding from OWS. (Opp. at 25.) Plaintiffs nonetheless argue they have pled loss causation because an article later reported that Inovio was not given funding under OWS. (*Id.*) This argument mischaracterizes *In re Merck & Co., Securities, Derivative & "ERISA" Litigation*, 2011 WL 3444199 (D.N.J. Aug. 8, 2011). Although *Merck* recognizes that a corrective disclosure need not be a "mirror image," it does not hold, as Plaintiffs suggest, that a later disclosure of information ***tangential*** to the alleged misstatement establishes loss causation. Rather, "it is the disclosure of corrective information ***concerning the underlying fact*** . . . which is critical to establishing the causal connection." *Id.* at *32.

## III.    CONCLUSION

The Complaint is deficient, and amendment is futile. It should be dismissed with prejudice.

Dated: January 20, 2021

Respectfully Submitted,

DUANE MORRIS LLP


By: *s/ Patrick Loftus*

Patrick Loftus (PA60417)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1367 (phone)
(215) 689-3591 (fax)
loftus@duanemorris.com

COOLEY LLP
Luke Cadigan (*Pro Hac Vice*)
500 Boylston Street
14th Floor
Boston, MA 02116-3736
(617) 937-2300 (phone)
(617) 937-2400 (fax)
lcadigan@cooley.com

Heather Speers (*Pro Hac Vice*)
4401 Eastgate Mall
San Diego, CA 92121-1909
(858) 550-6000 (phone)
(858) 550-6420 (fax)
hspeers@cooley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on January 20, 2021, I filed this document on the Court's docket using the

Court's CM/ECF system.  Based on the Court's records, all counsel of record were served with a

copy of the foregoing document by electronic means.

*s/ Patrick Loftus*
DUANE MORRIS LLP
Patrick Loftus (PA60417)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1367 (phone)
(215) 689-3591 (fax)
loftus@duanemorris.com