## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK MCDERMID, *individually and on behalf of all others similarly situated*,

        *Plaintiff*,

      v.

INOVIO PHARMACEUTICALS, INC., *et al.*,

        *Defendants*.

CIVIL ACTION
NO. 20-01402

**PAPPERT, J.**                                  **February 16, 2021**

### <u>MEMORANDUM</u>

A putative class of shareholders allege Inovio Pharmaceuticals, Inc. and three individual Defendants made false or misleading statements about Inovio's COVID-19 vaccine in violation of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Defendants move to dismiss all claims in the Amended Consolidated Class Action Complaint for failure to state a claim. The Court grants the Motion in part and denies it in part.

I

Inovio is a "biotechnology company focused on bringing to market DNA medicines" to combat infectious diseases. (Am. Compl. ¶ 26, ECF No. 68.) In 2020, Inovio ramped up efforts to develop INO-4800, its vaccine candidate for COVID-19. *See* (*id.* at ¶¶ 5–11). Defendant J. Joseph Kim was Inovio's CEO and President and served as a member of the Board of Directors during the class period. (*Id.* at ¶ 27.) He has extensive experience in the pharmaceutical industry, having worked in vaccine

development at Merck & Company, Inc.  (*Id.*)  He has also "published more than 100 scientific papers, holds numerous patents, and sits on editorial boards and scientific review panels. He also serves on the board of the International Vaccine Institute."  (*Id.*)  Defendant Peter Kies was Inovio's CFO during the class period.  (*Id.* at ¶ 31.)  Defendant Robert Juba, Jr. was the company's Vice President of Biological Manufacturing and Clinical Supply Management during the class period.  (*Id.* at ¶ 35.)  Juba has over twenty-four years' experience in pharmaceutical and biological vaccine manufacturing, having worked at Merck and as the Senior Director of Manufacturing at VGXI, Inovio's long-time manufacturing partner.  (*Id.*)

A

Plaintiffs claim Inovio and the individual Defendants made several false or misleading statements during the class period that artificially inflated Inovio's stock price.  First, on February 14, 2020, Kim claimed in a nationally-televised interview that "within three hours of accessing [COVID-19's genetic sequence] . . . we were able to construct our vaccine INO-4800."  (*Id.* at ¶ 97.)  After Kim's announcement, Inovio's stock price increased 7.5 percent.  (*Id.* at ¶ 98.)  On March 2, Kim took part in a televised meeting with then-President Trump to discuss the COVID-19 pandemic.  During that meeting, Kim took his claim a step further, saying that Inovio had "fully construct[ed] [its COVID-19] vaccine within three hours."  (*Id.* at ¶ 99.)  Inovio's stock rose 69.7 percent by the end of the next day.  (*Id.* at ¶ 100.)

One week later, Citron Research, a well-known securities trader, denounced on Twitter Inovio's "ludicrous and dangerous claim that [it] designed a vaccine in 3 hours."

*See* (*id.* at ¶ 13, 113); (Mot. to Dism., Exh. B, ECF No. 72-3).[1]  Citron Research also called on the SEC to "immediately HALT" trading of Inovio's stock.  (Mot. to Dism. Exh. B.)  Inovio tweeted a response, saying it had "designed a vaccine construct for its coronavirus vaccine (INO-4800) within three hours after the viral sequence was publicly available." (Mot. to Dism., Exh. C); (Am. Compl. at ¶ 113.)  Plaintiffs allege that the difference between "constructing" and "designing" a vaccine is significant because a vaccine construct "is an actual vaccine, not a mere design of one." (Am. Compl. at ¶ 101.)  Inovio's response to Citron Research revealed that it had not *constructed* a vaccine in three hours, as Kim had claimed; rather, it conceded that it had *designed* a vaccine, which it constructed later. (Am. Compl. at ¶¶ 13, 113.)  Within a day, Inovio's stock tumbled from $18.72 per share to just $5.70 per share. (Am. Compl. at ¶¶ 113–14.)

On March 24, 2020, Inovio issued a press release touting its new relationship with manufacturer Ology Bioservices.  (*Id.* at ¶ 102.)  In that release, Kim said the

---

[1] Defendants have asked the Court to incorporate by reference or take judicial notice of Exhibits A through V attached to their Motion.  (Req. for Jud. Not., ECF No. 73.)  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original).  In addition, a district court may take judicial notice of facts that are "not subject to reasonable dispute" in that they are either (1) "generally known within the territorial jurisdiction of the trial court" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Plaintiffs agree that the Court may consider Exhibits A–L, N–O and U–V, but dispute the propriety of considering Exhibits M and P–T.  (Resp. to Req. 1, ECF No. 81.)  The Court will not take judicial notice of Exhibits M and P–T because the Amended Complaint does not rely on them and, in any event, they have no bearing on the Court's decision.  The press release marked as Exhibit M is irrelevant to Plaintiffs' claims regarding Inovio's purported manufacturing capacity during the class period.  And although Defendants ask the Court to notice Exhibits P–T only to show what information was in the public realm at the time, that fact does not impact the Court's analysis either.

partnership "increases Inovio's manufacturing capabilities for [its] COVID vaccine." (*Id.*)  But Plaintiffs say that claim was false because at the time it was made, Inovio was locked in a dispute with its long-time manufacturing partner VGXI, which held proprietary intellectual property and manufacturing processes for manufacturing Inovio's DNA vaccines.  (*Id.* at ¶¶ 63, 102.)  VGXI lacked large-scale manufacturing capacity to produce Inovio's INO-4800 vaccine in 2020 and had not agreed to share its intellectual property or processes, without which Ology could not manufacture the vaccine.  (*Id.* at ¶¶ 63, 108(h), 116.)  Even now, having never received permission to use VGXI's technology, Ology "does not have the capability to deliver any INO-4800 doses." (*Id.* at ¶ 103.)

On April 30, Inovio issued a press release announcing another manufacturing partnership with Richter-Helm Biologics GmbH & Co. that would purportedly increase its manufacturing capabilities for INO-4800.  (*Id.* at ¶ 104.)  Inovio said it "plans to produce one million doses of INO-4800 by the end of 2020.  Additional capacity provided by Richter-Helm will significantly expand manufacturing of this DNA vaccine candidate to meet urgent needs in the midst of the pandemic." (*Id.*)  Despite these claims, Inovio knew at the time that VGXI had produced fewer than 100,000 doses and would not produce any more in 2020, and that VGXI had refused to transfer its intellectual property and technology to Ology.  (*Id.* at ¶ 105.)  In addition, even with VGXI's technology, Richter-Helm had informed Inovio that, at most, it could manufacturer 500,000 vaccine doses in 2020.  (*Id.*)

During an earnings conference call with investors on May 11, 2020, Kim claimed Inovio was "on right track [sic]" to produce one million doses of its vaccine in 2020 and

to scale up production in 2021 using "current contract manufacturers." (*Id.* at ¶¶ 106, 108.)  By the next day, Inovio's stock had risen 8.4 percent.  (*Id.* at ¶ 107.)  Kim failed to disclose material information affecting Inovio's manufacturing capabilities during that earnings call, including: (1) VGXI could not produce one million doses by the end of the year; (2) VGXI had repeatedly refused to transfer its intellectual property and technology to Ology, which could not otherwise manufacture Inovio's vaccine; (3) even if VGXI agreed to the transfer, it could take years to accomplish; (4) although Richter-Helm did not require a VGXI transfer to produce the vaccine, it informed Inovio that it could not produce one million doses in 2020; and, perhaps most importantly, (5) the week prior, VGXI had notified Inovio that it had cancelled their supply contract.  (*Id.* at ¶ 108.)  In short, Kim knew that VGXI would not produce any more vaccine doses and would not transfer its intellectual property or technology to Ology.  That left only Richter-Helm, which told Inovio it could not produce one million doses.  Thus, Kim knew that his claim that Inovio was on track to produce one million vaccine doses in 2020 was false.  In fact, Kim testified in a separate lawsuit between Inovio and VGXI that Inovio's one-million-dose plan in 2020 was dependent on VGXI agreeing to transfer its intellectual property and technology and that, without such an agreement, producing one million doses "would be difficult."  (*Id.* at ¶ 90.)

The next day, Inovio issued a prospectus for an at-the-market offering of $100 million in common stock.  (*Id.* at ¶ 109.)  That prospectus incorporated by reference a prior disclosure, which warned that a failure to secure partners or maintain current relationships with partners could harm Inovio's ability to produce and commercialize its products.  (*Id.*)  The prospectus failed to acknowledge, however, that VGXI had notified

Inovio five days earlier of its termination of their manufacturing agreement and the negative effects that termination would have on Inovio's ability to manufacture a vaccine.  (*Id.* at ¶ 110.)

Inovio's final allegedly false or misleading statement came on June 30, 2020. The company issued another press release, this time announcing: "INO-4800 Selected for the U.S. Government's Operation Warp Speed."  (*Id.* at ¶ 111.)  The full press release explained that the vaccine had been chosen "to participate in a non-human primate (NHP) challenge study as part of the U.S. government's Operation Warp Speed, a new national program aiming to provide substantial quantities of safe, effective vaccine [sic] for Americans by January 2021."  (Mot. to Dism., Exh. I.) Nonetheless, Plaintiffs claim that the announcement that INO-4800 was "selected for" Operation Warp Speed was materially false or misleading because the vaccine had been chosen only for a preliminary study, not as a candidate to receive extensive government funding.  (Am. Compl. at ¶ 112.)

B

Plaintiffs allege that after making these false and misleading statements Inovio and the individual Defendants cashed in on Inovio's artificially high stock price by organizing several at-the-market stock offerings and selling individually held shares of the company.

In February, March, April and May, Inovio raised more than $300 million from investors in at-the-market offerings, a process through which a company can incrementally place new shares into the market.  (*Id.* at ¶ 135.)  Plaintiffs claim Inovio fraudulently pumped up its stock price to maximize investments during this period, in

6

part because it had no other material source of income and faced mounting research and development expenses.  (*Id.* at ¶ 134.)

Plaintiffs also allege that the individual Defendants were motivated to mislead investors on the success of Inovio's vaccine production because significant portions of their compensation were performance-based.  (*Id.* at ¶ 138–41.)  Moreover, during the class period, Kim sold 100,000 shares of Inovio common stock for approximately $2,135,000.  (*Id.* at ¶ 29.)  Similarly, Kies sold 70,000 shares for about $1,800,750.  (*Id.* at ¶ 33.)  Neither Defendant had voluntarily sold any shares in the 18 months leading up to these sales.  (*Id.* at ¶¶ 29, 33.)  Plaintiffs acknowledge that Kim and Kies allegedly sold their shares as part of Rule 10b5-1 trading plans, but claim these plans are not valid defenses to the fraud allegations because both men "had knowledge of, or recklessly disregarded, non-public, material adverse facts concerning the development status of INO-4800 at the time [they] created the trading plan[s]."  (*Id.*)  Like the at-the-market stock offerings, Plaintiffs allege these sales support the individual Defendants' knowledge and intent to defraud.

## C

Finally, Plaintiffs allege they suffered significant losses as a result of Defendants' "scheme to deceive investors and the market."  (*Id.* at ¶ 142.)  Plaintiffs provide data showing increases in Inovio's stock price around the time of each alleged false or misleading statement and subsequent declines around the time the true nature of these statements came to light.  *See* (*id.* at ¶¶ 142–50).

D

In Count One, Plaintiffs' claim all Defendants violated Section 10(b) of the
Exchange Act and Rule 10b-5 promulgated thereunder by engaging in a scheme to
inflate Inovio's stock price with false or misleading statements.  (*Id.* at ¶¶ 159–68.)  In
Count Two, Plaintiffs claim all Defendants violated Section 20(a) of the Exchange Act
as "controlling persons" at Inovio.  "[L]iability under Section 20(a) is derivative of an
underlying violation of Section 10(b)," so if any of Plaintiffs' Section 10(b) claims fail, so
will the corresponding Section 20(a) claim.  *See Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d
242, 252 (3d Cir. 2009).

II

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief
that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A
claim is facially plausible if the plaintiff pleads facts from which the Court can infer
"that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).  Though this "plausibility standard is not akin to a 'probability
requirement,'" it demands "more than a sheer possibility that a defendant has acted
unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See
Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take
note of the elements the plaintiff must plead to state a claim."  *Id.* (alterations omitted)
(quoting *Iqbal*, 556 U.S. at 675).  Next, the Court "should identify allegations that,
'because they are no more than conclusions, are not entitled to the assumption of
truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual

allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679).

III

To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014); *see Avaya*, 564 F.3d at 252 ("To state a claim for securities fraud under Rule 10b-5, plaintiffs must allege defendants made a misstatement or an omission of material fact with scienter in connection with the purchase or the sale of a security upon which plaintiffs reasonably relied and plaintiff's [sic] reliance was the proximate cause of their injury.") (internal quotation marks omitted). "A corporation is liable for statements by employees who have apparent authority to make them." *Avaya*, 564 F.3d at 251 (internal citation omitted).

In addition to Rule 12(b)(6)'s markers, plaintiffs raising fraud claims under the Exchange Act must meet the heightened pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). See *City of Edinburgh Council*, 754 F.3d at 168. Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This "heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits

9

brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Rule 9(b) may be satisfied by describing 'the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into [the] allegations of fraud.' Stated differently, the plaintiff must plead the 'who, what, when, where, and how' of the fraud." *Alberici v. Recro Pharma, Inc.*, No. 18-cv-2279, 2020 WL 806719, at \*4 (E.D. Pa. Feb. 14, 2020) (quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002) & *Avaya*, 564 F.3d at 253) (internal citations omitted).

The PSLRA imposes heightened pleading requirements for the first two elements of a Section 10(b) and Rule 10b-5 claim. "First, the PSLRA requires that 'the complaint . . . specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint [must] state with particularity all facts on which that belief is formed.'" *Id.* at \*5 (quoting 15 U.S.C. § 78u-4(b)(1)). "Second, the PSLRA requires that 'the complaint . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A)). And "when allegations are made on information and belief, the complaint must not only state the allegations with factual particularity, but must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey." *Avaya*, 564 F.3d at 253.

Defendants claim that Plaintiffs have failed to adequately plead falsity, scienter and loss causation for each of the alleged misstatements identified in the Amended Complaint. Those alleged misstatements can be grouped into three categories for purposes of analyzing the Defendants' Motion: (1) Kim's statements about Inovio constructing a vaccine in three hours; (2) statements about Inovio's progress toward producing one million vaccine doses in 2020; and (3) Inovio's claim that it was selected for inclusion in Operation Warp Speed. Plaintiffs adequately plead claims only for the first two groups of statements.

A

1

Defendants move to dismiss Plaintiffs' claims regarding Kim's statements about constructing a vaccine in three hours because they fail to adequately plead falsity. In Defendants' estimation, Kim's statements were neither false nor misleading because "construct" and "design" are synonymous. (Mot. to Dism. at 8) (citing Roget's 21st Century Thesaurus, DESIGN, CONSTRUCT (3rd ed. 2013)). As evidence of the terms' interchangeability, Defendants cite several instances of investors and analysts noting that Kim had claimed that Inovio "designed" a vaccine in three hours after he said it had "constructed" a vaccine in that time. (*Id.*) Plaintiffs respond with dictionary definitions they believe show that the terms are not synonymous. (Resp. to Mot. to Dism. 6, ECF No. 80.) As this disagreement shows, whether "construct" and "design" are synonyms in this context and how investors and analysts interpreted Kim's statements are questions of fact inappropriate for resolution at the motion to dismiss

11

stage of the litigation.  *See Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1074 (E.D. Pa. 2017).

Defendants further claim that, even if the terms are not synonymous, Plaintiffs do not satisfy the first of the PSLRA's heightened pleading requirements by failing to plead why Kim's statements were misleading.  (Mot. to Dism. at 8–9); *see Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007).  As Defendants see it, "[t]he value is in the design," so Plaintiffs do not explain why Kim's statements were misleading so long as investors thought Inovio had at least designed a vaccine in three hours.  (*Id.*)  Plaintiffs counter that Defendants "are sowing confusion" and that they satisfy the PSLRA's requirement by emphasizing the difference between designing and constructing a vaccine.  (Resp. to Mot. at 7.)

Plaintiffs plead enough to satisfy the PSLRA's requirement to allege why the statements were misleading.  They posit that Kim's initial claim that Inovio constructed a vaccine in three hours—and his subsequent explanation to then-President Trump that Inovio had "fully construct[ed]" a vaccine in that time—misled investors into believing that the company had quickly created a vaccine that it had only designed.  Plaintiffs contend that this belief may have led some investors to have unfounded confidence in Inovio's ability to produce a vaccine.  *See* (Am. Compl. at ¶ 13).  To support that contention, Plaintiffs allege that Inovio's stock price rose after each misleading statement, including a 69.7-percent increase after Kim's statement at the White House.  (*Id.* at ¶¶ 98, 100.)

The Third Circuit addressed this pleading requirement in *Winer Family Trust*, 503 F.3d at 330.  There, the defendants announced a new business relationship

between two entities: Pennexx and Smithfield Foods. *Id.* In announcing the partnership, defendants failed to disclose a prior "disastrous" relationship between Pennexx and Smithfield and plaintiffs claimed this failure to disclose was misleading. *Id.* The district court concluded that plaintiffs failed to plead why this statement was misleading because defendants had no duty to disclose that unrelated prior relationship and the Third Circuit affirmed. *Id.* Here, by contrast, Plaintiffs allege that Kim misled investors by claiming Inovio constructed a vaccine when it had only designed one. And they allege that a vaccine construct is distinct from a design. (Am. Compl. at ¶ 101.) By alleging Defendants claimed to have achieved something they did not achieve and thereby instilling false confidence in investors, Plaintiffs have satisfied their burden of alleging why Kim's statements were misleading.

2

Defendants also move to dismiss Plaintiffs' claims based on Kim's vaccine construction statements because they fail to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see* (Mot. to Dism. at 17–18). Specifically, Defendants claim Plaintiffs do not allege that Kim intended to deceive when he said "construct" instead of "design," and even if they had, such a claim would be implausible because the terms are synonymous. (Mot. to Dism. at 18.) Plaintiffs respond that they allege sufficient facts about Kim's background and his consistent use of the term "construct" to survive dismissal. (Resp. to Mot. at 16.)

To adequately plead scienter, a plaintiff must allege facts giving rise to a strong inference "of either reckless or conscious behavior." *In re Advanta Corp. Sec. Litig.*, 180

13

F.3d 525, 534–35 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  "In order to state a Rule 10b-5 claim, '[a] reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 n.4 (3d. Cir. 2013) (quoting *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013)).  The Third Circuit has explained that the relevant inquiry in analyzing scienter "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter.  Accordingly, as with all totality-of-the circumstances tests, our analysis will . . . ultimately rest not on the presence or absence of certain types of allegations but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter."  *Avaya*, 564 F.3d at 269.

Plaintiffs have pled scienter with the requisite particularity.  They detail Kim's background and experience in the pharmaceutical industry, which strongly suggests he would understand the difference between constructing and designing a vaccine (taking as true Plaintiffs' allegation that these terms have distinct meanings in this context). (Am. Compl. at ¶¶ 27–30.)  Plaintiffs also allege that not only did Kim claim Inovio "constructed" its vaccine in three hours several times during a televised interview, he took the claim a step further when speaking with then-President Trump on television, claiming Inovio had "fully constructed" its vaccine in three hours.  Consistent usage of "construct" and the heightened claim that the company had "fully constructed" the

14

vaccine support a strong inference of scienter.  Even if Defendants' claim that Kim
consistently used "construct" because he thought it was synonymous with "design"
raises a plausible inference that he did not act with scienter, that inference is no more
plausible than the inference raised by Plaintiffs' allegations.  *See Tellabs*, 551 U.S. at
324 (2007) ("The inference that the defendant acted with scienter need not be
irrefutable . . . or even the most plausible of competing inferences.") (internal quotation
marks omitted).

Plaintiffs further support their scienter allegations with contentions about Kim's
motive to mislead investors.  In particular, Plaintiffs claim Kim had motive to mislead
investors into overvaluing Inovio's stock because he knew that he could personally
profit from selling his own shares. (Am. Compl. at ¶¶ 29, 134–35.)  Defendants rightly
contend that this motive does not, on its own, give rise to a strong inference of scienter
because Kim did not sell his shares until after it became clear that Inovio had only
designed its vaccine in three hours and most executives are motivated to increase their
own compensation.  (Mot. to Dism. at 22–23) (citing *Avaya*, 564 F.3d at 278–79
(allegations of general corporate motive or executive stock sales, alone, cannot support
strong inference of scienter)).  But courts do not consider allegations in a vacuum;
instead, they consider "whether all of the facts alleged, taken collectively, give rise to a
strong inference of scienter." *Avaya*, 564 F.3d at 269 (quoting *Tellabs*, 551 U.S. at 326)).
Plaintiffs claim neither Kim nor Kies sold stock in the year-and-a-half leading up to
their 2020 sales and that they sold at a time when Inovio's stock price was artificially
inflated by investors' optimism in Inovio's ability to produce vast quantities of a viable

vaccine—an optimism Kim and Kies knew was unfounded.  Viewed in light of all Plaintiffs' allegations, this motive supports scienter.

Inovio, like many corporations, also sought to raise capital through at-the-market stock offerings.  That, on its own, is not suggestive of fraud.  *See id.* at 278–79.  However, considered in the context of Plaintiffs' claims about the alleged chain of misstatements throughout 2020 and Inovio's push to receive support for, and develop, a viable COVID-19 vaccine, this allegation of motive also helps Plaintiffs' scienter claims survive dismissal.

Considering Plaintiffs' allegations in context and in their totality, and construing all inferences in Plaintiffs' favor, the Court finds that they plead enough facts to support a strong inference of scienter.

3

Defendants next argue for dismissal for failure to allege loss causation.  Under the PSLRA, Plaintiffs must allege that the Defendants' act or omission "caused the loss for which [they] seek[] to recover damages."  15 U.S.C. § 78u–4(b)(4); *see McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3d Cir. 2007) ("In order to satisfy the loss causation requirement . . . the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss").  "[A] plaintiff must allege 'that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.'"  *Curran v. Freshpet, Inc.*, No. 16-cv-2263, 2018 WL 394878, at *6 (D.N.J. Jan. 12, 2018) (quoting *Lentell v. Merrill Lynch*, 396 F.3d 161, 173 (2d Cir. 2005)).  "Allegations of loss causation are not subject to the heightened pleading requirements

16

of Rule 9(b) and the PSLRA." *Id.* (citing *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 348 (2005)). "Whether the plaintiff has proven [loss] causation is usually reserved for the trier of fact." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000).

Defendants argue Plaintiffs fail to show that Kim's vaccine construct statements "caused the loss for which [they] seek[] to recover damages." (Mot. to Dism. at 24) (quoting 15 U.S.C. § 78u-4(b)(4).) First, they argue that Inovio's March 9 tweet did not reveal any new information about Kim's alleged misstatement because the market always knew Kim meant "design" when he said "construct." (Mot. to Dism. at 24.) Second, they point out that Citron Research accused Inovio of falsely saying it had *designed* a vaccine in three hours. (*Id.* at 25.) So Inovio's response was less a correction of Kim's prior statements and more a direct response to Citron Research's claim. Nonetheless, Plaintiffs adequately plead loss causation. They assert that Inovio's stock price increased 7.5 percent after Kim's first vaccine construct claim and 69.7 percent after he told President Trump that Inovio had "fully construct[ed]" its vaccine in three hours. As Plaintiffs tell it, Inovio's March 9 tweet was the first time it claimed to have only designed a vaccine in three hours and its stock price tumbled in response. These allegations, accepted as true, satisfy Plaintiffs' obligation to plead loss causation.

## B

Defendants also move to dismiss Plaintiffs' claims regarding the individual Defendants' statements about Inovio's progress toward producing one million vaccine doses in 2020. They argue these claims are not actionable because: (1) the PSLRA's

Safe Harbor provision protects the statements as forward-looking; (2) Plaintiffs'

position that Defendants could not reach their 2020 production goals is speculative; and

(3) none of the omitted information renders the statements misleading.

1

Defendants argue their statements about Inovio's production capabilities and

goals for 2020 qualify for immunity under the PSLRA's Safe Harbor provision for

forward-looking statements.  (Mot. to Dism. at 9–11); *see* 15 U.S.C. § 78u-5(c).

Plaintiffs contend that they are challenging only Defendants' statements about current

manufacturing capacity, not any forward-looking statements.  (Resp. to Mot. at 9–10.)

The Court agrees with Plaintiffs' characterization.

The PSLRA's Safe Harbor "immunizes from liability any forward-looking

statement, provided that: the statement is identified as such and accompanied by

meaningful cautionary language; or is immaterial; or the plaintiff fails to show the

statement was made with actual knowledge of its falsehood." *Avaya*, 564 F.3d at 254.

When a defendant makes a "mixed present/future statement" the Safe Harbor provision

does not apply "to the part of the statement that refers to the present." *Id.* at 255.  Nor

does the Safe Harbor apply to omissions of present fact. *Curran*, 2018 WL 394878, at

*4.

Plaintiffs challenge statements or omissions of present fact, including

Defendants' failure to disclose: (1) that VGXI had refused a technology transfer to Ology

when they announced the Ology partnership in March of 2020; (2) that VGXI, Ology

and Richter-Helm could not produce one million doses in 2020 when they announced

the Richter-Helm partnership; and (3) that VGXI had cancelled its contract with Inovio

18

in the June 2020 offering documents.  (Am. Compl. at ¶¶ 102–05, 93, 109–10.)
Although portions of Defendants' statements were forward-looking, Plaintiffs do not
challenge those aspects; they take issue with Defendants withholding material
information about Inovio's current relationship with VGXI and its manufacturing
capacity under present conditions.  The Safe Harbor does not immunize those claims.
*See Avaya*, 564 F.3d at 255; *In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at *9
(D.N.J. Aug. 16, 2018).

   Defendants also move to dismiss Plaintiffs' claims regarding Kim's May 11
statement that Inovio was on track to produce one million doses of INO-4800 by the end
of 2020.  (Am. Compl. at ¶ 106.)  Defendants argue this statement was forward-looking,
but Plaintiffs contend this too was a present statement because Inovio did not have the
manufacturing capacity to produce one million doses by the end of the year when Kim
made the statement.  Plaintiffs are correct.  *See Curran*, 2018 WL 394878, at *4
(statements about current manufacturing capacity were present statements); *In re
Celgene Corp. Sec. Litig.*, No. 18-cv-4772, 2019 WL 6909463, at *14 (D.N.J. Dec. 19,
2019) ("[T]he 'on track' comment pertains to [defendant's] current position vis-à-vis its
future objectives. As a result, the statement is more akin to a mixed present/future
statement.").  Unlike in *Avaya*, where the Court held that Defendants' "on track"
statements could not "meaningfully be distinguished from the future projection of
which they are a part," Kim's statements were inextricably linked to Inovio's current
manufacturing capabilities.  *See Avaya*, 564 F.3d at 254–59.

2

Next, Defendants argue that Plaintiffs' claims must fail because they are speculative.  Plaintiffs counter that their theory of falsity is not predicated on a belief that Inovio would not actually produce one million doses of its vaccine by the end of 2020.  Much like their Safe Harbor argument, Plaintiffs' theory of falsity is based on Defendants' manufacturing capacity statements being false and misleading when made. In other words, Plaintiffs claim that Defendants knew they were not, in May of 2020, on track to reach their goals.  (Am. Compl. at ¶ 108.)  Similarly, they claim Defendants knew that VGXI would not help them reach their production goals and that Ology and Richter-Helm lacked the ability to get there on their own.  (*Id.* at ¶¶ 63, 68, 70–74, 85– 90, 105, 108.)  These are not speculative claims that hinge on whether Inovio eventually produced one million vaccine doses in 2020; they are allegations based on Inovio's production capacity at the time they claimed to be on track to reach their goals.

Defendants contend that Plaintiffs "fail to adequately plead that any alleged omission rendered any challenged statement 'inaccurate, incomplete or misleading.'" (Mot. to Dism. at 12) (quoting *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000)). Plaintiffs argue that Defendants omitted material information from their announcements about Ology and Richter-Helm, their pre-stock-offering prospectus and Kim's claim that Inovio was on track to reach its manufacturing goals.  (Resp. to Mot. at 12.)

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). "Even non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an

affirmative duty to disclose that information." *Oran*, 226 F.3d at 285. "Disclosure is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.' Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011) (quoting 17 C.F.R. §240.10b-5(b)) (internal citation omitted).

Plaintiffs are correct that, once Defendants chose to speak about their various manufacturing deals and progress, they had a duty to include material information that would render those statements not misleading. *See id.* At this stage, Plaintiffs have done enough to allege Defendants made misleading statements and omissions about their manufacturing capabilities and progress in each statement except the April 30 press release about their deal with Richter-Helm. Plaintiffs fail to explain how or why Defendants' statement that Richter-Helm "will significantly expand manufacturing" of INO-4800 was false or misleading when Defendants knew Richter-Helm could produce 500,000 vaccine doses in 2020—far more than any other manufacturer.

Plaintiffs have plausibly alleged that Defendants misled investors by suggesting that Ology, with the help of VGXI, would "increase[] Inovio's manufacturing capabilities" and ultimately help Inovio produce one million vaccine doses in 2020 when Defendants knew that VGXI lacked large-scale manufacturing capacity and had not agreed to transfer its intellectual property or processes to Ology. Likewise, Plaintiffs have plausibly alleged that Defendants' May prospectus was misleading because, although it warned of the risk to manufacturing capacity and profitability caused by the

loss of manufacturing partners, Defendants failed to disclose that VGXI had already cancelled its contract and Ology and Richter-Helm could not pick up the slack.  *See Williams v. Globus Med., Inc.*, 869 F.3d 235, 242 (3d Cir. 2017) ("[A] company may be liable under Section 10(b) for misleading investors when it describes as hypothetical a risk that has already come to fruition.")

Defendants argue Plaintiffs plead only that VGXI cancelled the contract before Defendants issued this prospectus, not that the associated risks had come to fruition. (Reply to Resp. to Mot. 7, ECF No. 83.)  The actual risks warned of are diminished "product development" and "commercialization of products."  (Am. Compl. at ¶ 109.) But Plaintiffs allege both that VGXI cancelled its contract with Inovio and that Ology and Richter-Helm could not meet production goals without VGXI or its technology.  *See* (Am. Compl. at ¶¶ 108–110).  Finally, Plaintiffs plead enough facts to establish the falsity of Kim's statement that Inovio was on track to meet its goal of producing one million vaccine doses in 2020.  Plaintiffs contend that when he made that claim, he knew that VGXI lacked large-scale manufacturing capacity, Ology could not produce any vaccine doses without VGXI's intellectual property or technology and Richter-Helm could produce only 500,000 doses in 2020.  These allegations satisfy the pleading standards for falsity at this stage.[2]

### 3

Defendants also move to dismiss Plaintiffs' claims as to this second category of statements for failure to adequately plead scienter.  The parties disagree about the

---

[2] As Plaintiffs note in their Response, Defendants also make several factual arguments to contest falsity in their Motion to Dismiss. These factual arguments are improper at this stage and are better suited for summary judgment or trial.  *See Sourovelis*, 246 F. Supp. 3d at 1074.

applicable legal standard.  Defendants argue that Plaintiffs must allege facts showing

that Defendants' omissions "[were] so obviously material" that Defendants must have

known their "non-disclosure would likely mislead investors."  (Mot. to Dism. at 18–19)

(quoting *Anderson v. StoneMor Partners, L.P.*, 296 F. Supp. 3d 693, 704 (E.D. Pa. 2017),

*aff'd sub nom. Fan v. StoneMor Partners LP*, 927 F.3d 710 (3d Cir. 2019).  But that

standard applies only to allegations that the Defendants acted recklessly.  *See*

*Anderson* at 704; *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 638–39 (D.N.J. 2002).

Plaintiffs may also allege conscious misbehavior.  *See GSC Partners CDO Fund v.*

*Washington*, 368 F.3d 228, 238–39 (3d Cir. 2004).  When alleging conscious withholding

of material information, "it is certainly true that . . . any required element of scienter is

satisfied where . . . the defendant had actual knowledge of the material information."

*Id.* at 239 (internal quotation marks omitted).

At this stage, Plaintiffs have done enough to establish a strong inference that

Defendants' acted with the requisite scienter when announcing their partnership with

Ology, claiming to be on track to reach their goal of producing one million vaccines in

2020 and issuing the May prospectus.  Plaintiffs claim Defendants knew, at the time

they announced their partnership with Ology and said it "increases Inovio's

manufacturing capabilities for [its] COVID vaccine," that Ology could not produce INO-

4800 without a technology transfer from VGXI and that VGXI had not agreed to that

transfer.  (Am. Compl. at ¶¶ 102–03.)  Plaintiffs also claim that Defendants knew

several material facts contradicting their claim that they were on track to produce one

million vaccine doses in 2020.  (*Id.* at ¶ 108.)  And Plaintiffs allege that Defendants

knew when they issued their May prospectus that several of the hypothetical risks

listed in the prospectus had already materialized or were likely to occur given VGXI,
Ology and Richter-Helm's known manufacturing limitations. (*Id.* at ¶ 110.) The
inference raised by these omissions is at least as strong as any other inference offered
by Defendants. Thus, these allegations of actual knowledge of omitted material facts,
considered with the allegations of motive and opportunity discussed above, satisfy the
PSLRA's heightened pleading requirement for scienter.

C

Finally, Defendants move to dismiss Plaintiffs' claims regarding Inovio's
statement about INO-4800's inclusion in Operation Warp Speed. They argue the
statement was neither materially false nor misleading, and that Plaintiffs fail to plead
scienter and loss causation. Specifically, Defendants argue that they included sufficient
information in the Operation Warp Speed press release to render any misstatements
immaterial and that Plaintiffs fail to plead facts supporting their contention that
investors were led to believe Inovio would receive government funds for its vaccine.
(Mot. to Dism. at 16–17.) In response, Plaintiffs accuse Defendants of improperly
relying on documents outside the Amended Complaint and argue that materiality is
best addressed by a fact-finder, not the Court at the motion to dismiss stage. (Resp. to
Mot. at 14–15.) Defendants have the better argument because even if Defendants'
claim that INO-4800 had been selected for inclusion in Operation Warp Speed was
misleading, Plaintiffs do not establish materiality.

Statements are only actionable in securities fraud litigation "if, when read in
light of all the information then available to the market or a failure to disclose
particular information, [they] conveyed a false or misleading impression." *Fan v.*

*StoneMor Partners LP*, 927 F.3d 710, 715–16 (3d Cir. 2019) (internal citation and quotation marks omitted) (alteration in original).  "A false or misleading statement, however, is not enough. [The court] must also find that the alleged misstatement or omission is material." *Id.* at 716.  "[W]hen considering whether an alleged misstatement is material, [courts] pay particular attention to whether or not Defendants sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading." *Id.* (citing *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 599 (3d Cir. 2000)).  Plaintiffs challenge Defendants' statement from a press release claiming their vaccine was "[s]elected for the U.S. Government's Operation Warp Speed." (Mot. to Dism., Exh. I.)  That same press release explained that the vaccine had been chosen "to participate in a non-human primate (NHP) challenge study as part of the U.S. government's Operation Warp Speed, a new national program aiming to provide substantial quantities of safe, effective vaccine [sic] for Americans by January 2021." (*Id.*)  Plaintiffs' contend that Defendants led investors to believe that they had been chosen to receive government funding for their vaccine when they had been chosen only to participate in a government-backed study.  *See* (Am. Compl. at ¶¶ 111–12).  But Defendants never claimed to be receiving vaccine funding and disclosed the fact that INO-4800 had been chosen for the NHP study in the same press release in which it broadly claimed to have been selected for Operation Warp Speed. Plaintiffs do not explain how or why a reasonable investor with access to all this information would have thought Inovio would receive government funding for its vaccine.  Even if Defendants' claim about being selected for Operation Warp Speed was a misrepresentation, the subsequent disclosure rendered it immaterial and not

misleading.  *See Fan*, 927 F.3d at 716–17.  Accordingly, the Court dismisses Plaintiffs'
claims based on Defendants' Operation Warp Speed press release.

IV

Defendants seek dismissal of Plaintiffs' Section 20(a) claims only on the grounds
that these claims must fail if the Section 10(b) claims fail.  (Mot. to Dism. at 25.)
Because the Court dismisses only the Section 10(b) claims related to Defendants' April
30 and June 30, 2020 press releases, it will dismiss only the corresponding Section
20(a) claims.  *See Avaya*, 564 F.3d at 252, 280.

V

District courts must permit a curative amendment to dismissed complaints
under Rule 12(b)(6), unless such amendment would be inequitable or futile.  *See Alston
v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  Amendment of Plaintiffs' claims involving
Defendants' April 30, 2020 and June 30, 2020 press releases would be futile, so Counts
I and II are dismissed with prejudice as to those claims.

An appropriate Order follows.

BY THE COURT:


 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.