UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. 2:20-cv-01402-GJP |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |
| INOVIO PHARMACEUTICALS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

4827-5996-4914.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS
      CERTIFICATION UNDER RULE 23 .....................................................................2

      A.    The Proposed Class Satisfies the Standards for Class Certification Under
            Rule 23(a)....................................................................................................3

            1.    The Class Is So Numerous that Joinder Is Impracticable ...........................3

            2.    Common Questions of Law and Fact Exist as to All Class
                  Members ....................................................................................................4

            3.    Plaintiffs' Claims Are Typical of Those of the Class ...................................5

            4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the
                  Class ..........................................................................................................6

      B.    The Proposed Class Satisfies the Standard for Class Certification Under
            Rule 23(b)(3).................................................................................................8

            1.    Common Questions of Law and Fact Predominate over Individual
                  Questions....................................................................................................8

                  a.    Plaintiffs Are Entitled to a Presumption of Reliance
                        Because Inovio's Equity Securities Traded in an Efficient
                        Market During the Class Period.....................................................10

                        (1)    Inovio's NASDAQ Listing Is Strong Evidence of
                               Market Efficiency ...............................................................11

                        (2)    *Cammer* Factor 1: Weekly Trading Volume .....................11

                        (3)    *Cammer* Factor 2: Analyst and Media Coverage...............12

                        (4)    *Cammer* Factor 3: Market Makers.....................................12

                        (5)    *Cammer* Factor 4: Form S-3 Eligibility............................13

                        (6)    *Cammer* Factor 5: Inovio Securities Reacted to
                               Unexpected, Company-Specific Information ....................13

                        (7)    *Krogman* Factor 1: Market Capitalization.........................14

                        (8)    *Krogman* Factor 2: Bid-Ask Spread .................................15

                        (9)    *Krogman* Factor 3: Float..................................................15

4827-5996-4914.v1

**Page**

        b.      Damages Are Measurable on a Class-Wide Basis..........................16

    2.      A Class Action Is the Superior Way of Fairly and Efficiently Adjudicating This Action...........................................................................17

III.    CONCLUSION.........................................................................................................19

4827-5996-4914.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)................................................................................................17

*Alfaro v. First Advantage LNS Screening Sols., Inc.*,
No. 15-5813 (MAS) (TJB), 2017 WL 3567974
(D.N.J. Aug. 16, 2017)..........................................................................................4, 6

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...........................................................................................2, 8, 9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).........................................................................................2, 9, 10

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018), *aff'd sub nom.*
*Vizirgianakis v. Aeterna Zentaris, Inc.*,
775 F. App'x 51 (3d Cir. 2019) ............................................................................6, 9

*Bizzarro v. Ocean Cnty.*,
No. 07-5665 (FLW), 2009 WL 1617887
(D.N.J. June 9, 2009) ...............................................................................................7

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ................................................................... *passim*

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
No. 12-5275, 2015 WL 5097883
(D.N.J. Aug. 31, 2015)................................................................................... *passim*

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................................................................................................3

*Dartell v. Tibet Pharms., Inc.*,
No. 14-3620, 2016 WL 718150
(D.N.J. Feb. 22, 2016)..............................................................................................5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................9

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
__U.S. __, 141 S. Ct. 1951 (2021)........................................................................10

4827-5996-4914.v1

**Page**

*Grodko v. Cent. Eur. Distrib. Corp.*,
No. 12-5530, 2012 WL 6595931
(D.N.J. Dec. 17, 2012) ..............................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).............................................................................................9, 10

*In re CIGNA Corp. Sec. Litig.*,
No. 02-cv-8088, 2006 WL 2433779
(E.D. Pa. Aug. 18, 2006)..........................................................................3, 4, 6, 18

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., PNC Bank NA*,
795 F.3d 380 (3d Cir. 2015)....................................................................................4, 6

*In re Constar Int'l Inc. Sec. Litig.*,
585 F.3d 774 (3d Cir. 2009)........................................................................................3

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009).............................................................................15

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008)............................................................... *passim*

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011)..........................................................................10, 11, 14

*In re JPMorgan Chase & Co. Sec. Litig.*,
No. 12 Civ. 03852 (GBD), 2015 WL 10433433
(S.D.N.Y. Sept. 29, 2015) .......................................................................................15

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
No. 05-1151 (SRC), 2013 WL 396117
(D.N.J. Jan. 30, 2013) ..............................................................................................18

*In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*,
No. 08-2177 (DMC)(JAD), 2012 WL 4482041
(D.N.J. Sept. 25, 2012) ..............................................................................11, 12, 13

*In re NFL Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016).................................................................................4, 6

*In re NII Holdings, Inc. Sec. Litig.*,
311 F.R.D. 401 (E.D. Va. 2015) ..............................................................................15

4827-5996-4914.v1

**Page**

*In re Novo Nordisk Sec. Litig.*,
  No. 3:17-cv-00209-BRM-LHG, 2020 WL 502176
  (D.N.J. Jan. 31, 2020) .......................................................................................... *passim*

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001).......................................................................................13

*In re Schering-Plough/ENHANCE Sec. Litig.*,
  No. 8-397 (DMC)(JAD), 2012 WL 4482032
  (D.N.J. Sept. 25, 2012) ...........................................................................................13, 14

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456
  (D.N.J. June 15, 2020) ...................................................................................................7

*In re Winstar Commc'ns Sec. Litig.*,
  290 F.R.D. 437 (S.D.N.Y. 2013) ...................................................................................12

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  No. 0:15-2393-MGL, 2017 WL 4297450
  (D.S.C. Sept. 28, 2017) ................................................................................................17

*Kline v. First W. Gov't Sec., Inc.*,
  No. 83-1076, 1996 WL 153641
  (E.D. Pa. Dec. 21, 1995) ..............................................................................................19

*Krangel v. Golden Rule Res., Inc.*,
  194 F.R.D. 501 (E.D. Pa. 2000).....................................................................................18

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................... *passim*

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)............................................................................................3

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)..............................................................................15

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015)...........................................................................................16

*Pelletier v. Endo Int'l PLC*,
  No. 17-cv-5114, 2021 WL 2023608
  (E.D. Pa. May 20, 2021) ...........................................................................................11, 16

4827-5996-4914.v1

**Page**

*Petrie v. Elec. Game Card, Inc.*,
   308 F.R.D. 336 (C.D. Cal. 2015) ........................................................................15

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019) ......................................................................... *passim*

*Smith v. Merck & Co., Inc.*,
   No. 13-2970 (MAS) (LHG), 2019 WL 3281609
   (D.N.J. July 19, 2019) ..........................................................................................7

*Susinno v. Work Out World, Inc.*,
   333 F.R.D. 354 (D.N.J. 2019) ...............................................................................5

*Todd v. STAAR Surgical Co.*,
   No. CV-14-05263-MWF-RZ, 2017 WL 821662
   (C.D. Cal. Jan. 5, 2017) ......................................................................................16

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   No. 13-6731, 2016 WL 4138613
   (E.D. Pa. Aug. 4, 2016) ............................................................................4, 5, 10, 16

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) ..................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..............................................................................................5

*Williams v. Jani-King of Phila. Inc.*,
   837 F.3d 314 (3d Cir. 2016) ..................................................................................3

*Wilson v. LSB Indus., Inc.*,
   No. 15 CIV 7614 (RA) (GWG), 2018 WL 3913115
   (S.D.N.Y. Aug. 13, 2018) ...........................................................................13, 15, 17

*Yang v. Odom*,
   392 F.3d 97 (3d Cir. 2004) ....................................................................................1

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b) .........................................................................................................2, 9, 18
   §78t(a) ..............................................................................................................9

4827-5996-4914.v1

**Page**

Federal Rules of Civil Procedure
Rule 23 ...........................................................................................................1, 2, 19
Rule 23(a)...........................................................................................................2, 3
Rule 23(a)(1)...........................................................................................................3
Rule 23(a)(2)........................................................................................................4, 5
Rule 23(a)(3)........................................................................................................5, 6
Rule 23(a)(4)........................................................................................................6, 8
Rule 23(b)(3)...................................................................................................*passim*
Rule 23(g) .........................................................................................................2, 19

17 C.F.R.
§239.13...................................................................................................................13
§240.10b-5 ..............................................................................................................9

4827-5996-4914.v1

Lead Plaintiff Manuel S. Williams ("Williams") and Plaintiff Andrew R. Zenoff ("Zenoff") (together, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Class Certification and request that, pursuant to Federal Rule of Civil Procedure 23, the Court certify this case as a class action, appoint Plaintiffs as Class Representatives and appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    INTRODUCTION

Pursuant to Rule 23(a) and Rule 23(b)(3), Plaintiffs seek certification of the following Class:

> All persons who purchased or otherwise acquired the common stock of Inovio Pharmaceuticals, Inc., between February 14, 2020 through August 10, 2020, inclusive (the "Class Period").[1]

The Third Circuit recognizes that "'[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'"[2]  *Yang v. Odom*, 392 F.3d 97, 109 (3d Cir. 2004); *see also City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-5275, 2015 WL 5097883, at *13 (D.N.J. Aug. 31, 2015) ("it is well-settled that the class action is a particularly appropriate vehicle for adjudication of federal securities cases").  As discussed herein, this federal securities case is no exception.

Rule 23(a)'s prerequisites of numerosity, commonality, typicality and adequacy are satisfied here.  Numerosity and commonality plainly exist, as joinder of the thousands of members of the proposed Class would be wholly impracticable, and this securities fraud action raises numerous common questions of law and fact, including the false and misleading nature of alleged

---

[1]    Excluded from the Class are defendants, present or former executive officers of defendants and members of their immediate families, present or former directors of defendants and members of their immediate families, any entity in which a defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded party.

[2]    Citations and footnotes are omitted and emphasis is added unless otherwise noted.

4827-5996-4914.v1

misstatements, materiality, scienter, and damages.  Typicality and adequacy exist too.  Plaintiffs' claims are based on the same alleged course of conduct as, and are virtually identical to, the claims of members of the proposed Class, and Plaintiffs have actively and zealously represented the interests of the Class to date.  Plaintiffs' selected counsel is highly experienced and will continue to vigorously prosecute this case to maximize Class members' recovery.

Rule 23(b)(3)'s predominance and superiority requirements are also satisfied.  In addition to Class members' claims all stemming from the same underlying course of misconduct by defendants, the reliance element of the Class's §10(b) claims is also subject to common proof.  Where securities trade in an efficient market, as here, the fraud-on-the-market doctrine establishes class-wide reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  As explained in the accompanying Report on Market Efficiency by Professor Steven P. Feinstein, Ph.D., CFA ("Feinstein Rpt.") attached as Exhibit A to the Declaration of Trig R. Smith in Support of Motion for Class Certification ("Smith Decl.") filed concurrently herewith, the market for Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company") common stock was efficient during the Class Period, and damages can be calculated using a class-wide methodology.  A class action is superior to other available methods of adjudicating Class members' claims, as it will conserve judicial resources, prevent inconsistent rulings, and include Class members whose individual claims may be too small to make independent litigation economically feasible.

For these reasons, as detailed herein, Plaintiffs request that the Court grant their Motion for Class Certification and appoint them as Class Representatives pursuant to Rule 23(a) and (b)(3), and appoint Robbins Geller as Class Counsel pursuant to Rule 23(g).

## II.    THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

At the class certification stage, a movant need only show that the requirements of Rule 23 are met, not that the movant will ultimately prevail on the merits. *Amgen Inc. v. Conn. Ret. Plans & Tr.*

- 2 -

4827-5996-4914.v1

*Funds*, 568 U.S. 455, 466 (2013); *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 322 (3d Cir. 2016).  To obtain certification, a putative class must satisfy all four requirements of Rule 23(a) and one of the categories of Rule 23(b).  *See In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009); *Jani-King*, 837 F.3d at 319 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  Rule 23(a) provides four prerequisites for class certification: (1) the class must be so numerous that joinder of all members is impractical (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims of the representative parties must be typical of the claims of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

Here, the prerequisites of Rule 23(a) are satisfied, and Plaintiffs seek class certification under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**A.     The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(a)**

**1.     The Class Is So Numerous that Joinder Is Impracticable**

Rule 23(a)'s "numerosity" requirement is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no minimum number of members needed for a suit to proceed as a class action."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).  However, a showing that the "'potential number of plaintiffs exceeds 40'" will generally satisfy numerosity.  *Id.*  "[C]ourts have recognized a presumption that the 'numerosity requirement is satisfied when a class action involves a nationally traded security.'"  *In re CIGNA Corp. Sec. Litig.*, No. 02-cv-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).

Here, the proposed Class consists of thousands of members.  Throughout the Class Period, Inovio averaged: (1)  148.9 million shares of common stock outstanding; (2) a market capitalization

- 3 -

as high as $5.0 billion; and (3) a weekly trading volume of over 100% of shares outstanding. Feinstein Rpt., ¶¶52, 79, 82.  Joining each person who invested in Inovio common stock during the Class Period as an individual plaintiff would be impracticable; the numerosity requirement is, thus, satisfied.  *See, e.g.*, *CIGNA*, 2006 WL 2433779, at *2 (numerosity satisfied where "one hundred and forty million shares . . . were outstanding during the class period, and the stock was actively traded"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-6731, 2016 WL 4138613, at *7 (E.D. Pa. Aug. 4, 2016) (numerosity satisfied where "stock traded on the NASDAQ" and "there were millions of shares of stock outstanding"); *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74 (D.N.J. 2019) (numerosity satisfied where defendant issuer had more than 100 million shares outstanding and average weekly trading volume of approximately 9.5 million shares).

### 2. Common Questions of Law and Fact Exist as to All Class Members

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426-27 (3d Cir. 2016).  As the Third Circuit has emphasized, "Meeting this requirement is easy enough: '[W]e have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable.'"  *NFL Players*, 821 F.3d at 427 (quoting *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., PNC Bank NA*, 795 F.3d 380, 397 (3d Cir. 2015)).

The "commonality requirement is readily satisfied in securities fraud cases."  *DFC*, 2016 WL 4138613, at *8.  To satisfy the "commonality" prerequisite, a plaintiff need only demonstrate that the "'common contention . . . [is] of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Alfaro v. First Advantage LNS Screening Sols., Inc.*, No. 15-

- 4 -

5813 (MAS) (TJB), 2017 WL 3567974, at *2 (D.N.J. Aug. 16, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  This requirement "'is easily met'" since "'a single question of fact suffices to satisfy commonality.'"  *Susinno v. Work Out World, Inc.*, 333 F.R.D. 354, 359 (D.N.J. 2019).

Here, virtually every question of law or fact is common to Class members, including without limitation:

- whether defendants made any untrue statements of material fact or omitted to state any material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading;

- whether defendants acted with the requisite intent when making material misrepresentations or omissions;

- whether and to what extent the price of Inovio shares was artificially inflated or maintained during the Class Period due to the alleged false and misleading statements or omissions;

- whether reliance is presumed under the fraud-on-the-market doctrine; and

- whether Plaintiffs and other members of the Class suffered damages, and the appropriate measure thereof.

Evidentiary proof of these claims will necessarily be common to all members of the Class, and courts have routinely found the commonality requirement satisfied in similar circumstances. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-BRM-LHG, 2020 WL 502176, at *5 (D.N.J. Jan. 31, 2020); *Dartell v. Tibet Pharms., Inc.*, No. 14-3620, 2016 WL 718150, at *3 (D.N.J. Feb. 22, 2016); *DFC*, 2016 WL 4138613, at *8.  The proposed Class satisfies Rule 23(a)(2)'s commonality requirement.

### 3.   Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Third Circuit has "set a 'low threshold' for typicality" such that "'"[e]ven relatively pronounced factual differences will generally

- 5 -

not preclude a finding of typicality where there is a strong similarity of legal theories" or where the claim arises from the same practice or course of conduct.'" *NFL Players*, 821 F.3d at 428; *Alfaro*, 2017 WL 3567974, at *3 (same).

Here, Plaintiffs assert claims typical of those of absent Class members. The First Amended Consolidated Class Action Complaint for Violation of Federal Securities Laws (ECF No. 68) ("Complaint") alleges that defendants made material misrepresentations and omitted material facts necessary to make their public statements not false or misleading. Complaint, ¶¶97-112. This course of conduct artificially inflated (or artificially maintained) the prices of Inovio securities. *Id.*, ¶¶98, 100, 107, 142-143. And when the truth was revealed through a series of disclosures, the price of Inovio securities fell and Class members were damaged. *Id.*, ¶¶113-130, 142-150. Thus, Plaintiffs, who purchased publicly traded Inovio equity securities during the Class Period, and all other Class members, were damaged by the same alleged course of conduct. *CIGNA*, 2006 WL 2433779, at *3 (typicality satisfied where proposed class representatives, like other class members, "purchased CIGNA common stock at an inflated price caused by allegedly fraudulent public statements of CIGNA executives, and suffered losses as a result"); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 340 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019); *Novo*, 2020 WL 502176, at *6. The typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *Cmty. Bank*, 795 F.3d at 392; *see also NFL Players*, 821 F.3d at 431. "'[T]he burden to prove that the representation is not adequate rests with the party challenging the class

- 6 -

representation.'" *Smith v. Merck & Co., Inc.*, No. 13-2970 (MAS) (LHG), 2019 WL 3281609, at *3 (D.N.J. July 19, 2019) (quoting *Bizzarro v. Ocean Cnty.*, No. 07-5665 (FLW), 2009 WL 1617887, at *14 (D.N.J. June 9, 2009)).

As demonstrated above, Plaintiffs and all other Class members share the same interest in proving identical core issues of law and fact in order to prosecute their claims. *See* §III.A.2.-3., *supra*. Plaintiffs allege they sustained damages by acquiring Inovio stock at artificially inflated prices as a result of defendants' material misstatements and omissions. *See, e.g.*, Complaint, ¶¶142-150. Thus, Plaintiffs' interests are aligned with those of the absent Class members who were similarly damaged.

Moreover, Plaintiffs have already successfully represented the interests of the Class, demonstrating adequacy, assertiveness and commitment to zealously prosecute this action. Plaintiffs have continuously supervised the litigation and worked with counsel to protect the Class members' interests. *See* Smith Decl., Ex. B, Declaration of Manuel S. Williams in Support of Motion for Class Certification ("Williams Decl."), ¶¶5-8; *id.*, Ex. C, Declaration of Andrew R. Zenoff in Support of Motion for Class Certification ("Zenoff Decl."), ¶¶5-8. Plaintiffs understand class representatives' responsibilities as fiduciaries to the Class and have certified that they will seek to act in the Class's best interests in prosecuting the litigation. Plaintiffs will more than adequately protect the interests of the Class.

Plaintiffs have also engaged Lead Counsel, a "proposed class counsel [that] is highly qualified to represent the class." *Sterling Heights*, 2015 WL 5097883, at *9; *see also Grodko v. Cent. Eur. Distrib. Corp.*, No. 12-5530 (JBS-KMW), 2012 WL 6595931, at *10 (D.N.J. Dec. 17, 2012) ("Robbins Geller has extensive experience with complex securities litigation and a successful track record."); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *12 (D.N.J. June 15, 2020); *Novo*, 2020 WL 502176, at *6 (finding

Robbins Geller qualified as class counsel); Transcript at 55, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y. Feb. 13, 2020), ECF No. 1316 ("[P]laintiffs' representation is adequate and . . . the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."). For decades, Robbins Geller has demonstrated its capability to represent various classes more than adequately in numerous complex securities cases. *See* Smith Decl., Ex. D, Robbins Geller Firm Résumé. And Lead Counsel's adequacy is further demonstrated by the substantial work conducted in this action thus far.

Plaintiffs and Lead Counsel satisfy the adequacy requirement of Rule 23(a)(4).

**B.     The Proposed Class Satisfies the Standard for Class Certification Under Rule 23(b)(3)**

In addition to meeting Rule 23(a)'s prerequisites, this action also satisfies Rule 23(b)(3)'s requirements that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.     Common Questions of Law and Fact Predominate over Individual Questions**

Under Rule 23(b)(3), predominance exists where the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Amgen*, 568 U.S. at 469. "[T]he predominance inquiry turns on whether the evidence necessary to prove the essential elements of the underlying claims will vary from class member to class member, causing the Court to engage in individual treatment of the issues." *Papa*, 333 F.R.D. at 78-79. At the same time, a plaintiff seeking class certification need not show that every element of its claims can be proven on a class-wide basis. *Amgen*, 568 U.S. at 469. "When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate." *Novo*, 2020 WL 502176, at *8.

- 8 -

Common issues predominate here.  In federal securities fraud cases such as this one, proof of §10(b)'s elements of falsity, scienter, materiality and loss causation are common issues because "failure of proof" of any of these elements "would end the case" for all putative class members. *Amgen*, 568 U.S. at 459-60 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class."); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*") (because it is a common question, a plaintiff is not required to "show loss causation as a condition of obtaining class certification").  Since Plaintiffs' §20(a) claims are predicated on the same legal and factual basis as defendants' alleged violations of §10(b), they will be determined by a common resolution of the same issues.  *See Bing Li*, 324 F.R.D. at 339.

The predominance requirement is typically met in a securities fraud class action because the plaintiffs are entitled to rely on the fraud-on-the-market presumption of reliance.  *See Basic*, 485 U.S. at 247; *Amgen*, 568 U.S. at 461.  The fraud-on-the-market theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations,'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'"  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*") (quoting *Basic*, 485 U.S. at 246-47).

For *Basic*'s fraud-on-the-market presumption to apply, a plaintiff must show: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed."  *Halliburton II*, 573 U.S. at 268. However, Plaintiffs must prove only three of these *Basic* prerequisites at the class certification stage – not all four.  "In *Amgen*, we held that materiality should be left to the merits stage because it

- 9 -

does not bear on Rule 23's predominance requirement." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, __U.S. __, 141 S. Ct. 1951, 1959 (2021).  "The remaining *Basic* prerequisites – publicity, market efficiency, and market timing – 'must be satisfied' by plaintiffs 'before class certification.'" *Id.* (quoting *Halliburton II*, 573 U.S. at 276).  Here, the alleged misrepresentations were made publicly (*see* Complaint, ¶¶97-110), Plaintiffs traded the stock after misrepresentations were made and before the truth was revealed (*see id.*, ¶¶97-110, 113-130; ECF No. 12-4; ECF No. 68 at 62), and Inovio shares traded in an efficient market.  The fraud-on-the-market presumption established in *Basic* applies.  Accordingly, common questions predominate, and Rule 23(b)'s requirements are satisfied.

> **a.     Plaintiffs Are Entitled to a Presumption of Reliance Because Inovio's Equity Securities Traded in an Efficient Market During the Class Period**

During the Class Period, Inovio stock was widely traded in a highly efficient market, entitling Plaintiffs to the fraud-on-the-market presumption of reliance.

To determine whether the market for a security was efficient, courts in this Circuit regularly look to the non-exhaustive list of factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) (the "*Cammer* factors").  *See DFC*, 2016 WL 4138613, at \*12; *Sterling Heights*, 2015 WL 5097883, at \*6; *Papa*, 333 F.R.D. at 80 n.8; *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 n.16 (3d Cir. 2011) ("*DVI II*").  Additionally, courts within the Third Circuit also frequently use three additional factors, typically referred to as the "*Krogman* factors."  *Sterling Heights*, 2015 WL 5097883, at \*6.

As established by Professor Steven P. Feinstein ("Professor Feinstein"), all of the *Cammer* factors and *Krogman* factors demonstrate that Inovio shares traded in an efficient market throughout the Class Period.  Feinstein Rpt., ¶¶50-88.

- 10 -

**(1)    Inovio's NASDAQ Listing Is Strong Evidence of Market Efficiency**

Throughout the Class Period, Inovio common stock was listed and traded on the NASDAQ. *Id.*, ¶23. "[T]he listing of a security on a major exchange such as . . . the NASDAQ weighs in favor of a finding of market efficiency," *DVI II*, 639 F.3d at 634; *Pelletier v. Endo Int'l PLC*, No. 17-cv-5114, 2021 WL 2023608, at *29 (E.D. Pa. May 20, 2021) (that stock "trades on major stock exchanges, including NASDAQ," "[are] frequently held to be a standalone basis for finding market efficiency"); *see also* Feinstein Rpt., ¶¶23, 68-69.

**(2)    *Cammer* Factor 1: Weekly Trading Volume**

An "'average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption.'" *In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*, No. 08-2177 (DMC)(JAD), 2012 WL 4482041, at *5 (D.N.J. Sept. 25, 2012). High trading volume "is often seen as indicative of efficiency because 'many investors are executing trades on the basis of newly available or disseminated corporate information.'" *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008) ("*DVI I*") (quoting *Cammer*, 711 F. Supp. at 1286), *aff'd*, 639 F.3d 623 (3d Cir. 2011).

Here, Inovio's average weekly trading volume during the Class Period of 192.2 million shares, well over 100% of all Inovio shares outstanding, exceeds the 1% threshold established in *Cammer* as justifying a substantial presumption of market efficiency. Feinstein Rpt., ¶¶52-53; *Cammer*, 711 F. Supp. at 1293; *see also DVI I*, 249 F.R.D. at 209 (1.70% average weekly trading volume justified "at a minimum, a substantial presumption that the market for DVI's common stock was efficient"). Thus, this factor weighs in favor of a finding of market efficiency.

- 11 -

(3)    *Cammer* **Factor 2: Analyst and Media Coverage**

Only a few analysts are necessary to strengthen the presumption of efficiency.  *See DVI I*, 249 F.R.D. at 209 (coverage by three analysts found sufficient); *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 446 (S.D.N.Y. 2013) (same).  Here, at least eight research firms covered Inovio during the Class Period, reporting on information defendants provided to the market in U.S. Securities & Exchange Commission ("SEC") filings, press releases, and conference calls with analysts and investors.  Feinstein Rpt., ¶¶54-58.  The analyst coverage of Inovio strongly supports a finding that the market for Inovio securities was efficient.  *See DVI I*, 249 F.R.D. at 209.

Courts have also held that widespread media coverage supports a finding of market efficiency.  *See Vytorin/Zetia*, 2012 WL 4482041, at *5; *see also Papa*, 333 F.R.D. at 82.  Here, at least 758 articles were published about Inovio during the Class Period.  Feinstein Rpt., ¶63.  Inovio's extensive media coverage provides further support for the efficiency of the market for Inovio securities.  *DVI I*, 249 F.R.D. at 209-10.

(4)    *Cammer* **Factor 3: Market Makers**

*Cammer* explains that "[t]he existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level."  *Cammer*, 711 F. Supp. at 1286-87.  During the Class Period, Inovio common stock traded on the NASDAQ, a highly developed and sophisticated market in which participants include market makers.  Feinstein Rpt., ¶¶23, 68.  Indeed, there were at least 113 active market makers that traded Inovio common stock during the Class Period.  *Id.*, ¶67.  In addition, institutional investors held significant positions in Inovio common stock during the Class Period.  *Id.*, ¶¶60-61.  These facts are strong evidence that Inovio stock traded in an efficient market throughout the Class Period.  *Id.*; *see also Papa*, 333 F.R.D. at 83-84 (citing *Cammer*, 711 F. Supp. at 1283) (17 market makers weighed

- 12 -

in favor of market efficiency); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 189 (E.D. Pa. 2001) (*Cammer* factors satisfied where 33 market makers traded the company's common stock); *Wilson v. LSB Indus., Inc.*, No. 15 CIV 7614 (RA) (GWG), 2018 WL 3913115, at *12 (S.D.N.Y. Aug. 13, 2018) (noting "large number of institutional investors").

### (5)   *Cammer* Factor 4: Form S-3 Eligibility

A company is eligible to file an SEC Form S-3 registration statement if it has filed SEC reports for 12 consecutive months and has at least $75 million of float shares (shares available for trading by outside investors in the open market).  *See* 17 C.F.R. §239.13; Feinstein Rpt., ¶¶70-77. The ability to file this form indicates that the company is easily able to issue new securities and is evidence of market efficiency.  *DVI I*, 249 F.R.D. at 210; *Papa*, 333 F.R.D. at 84 (quoting *Krogman v. Sterritt*, 202 F.R.D. 467, 476 (N.D. Tex. 2001) ("'Corporations permitted to use the S-3 form are . . . presumed to be actively traded and widely followed,' so a company's ability to file an S-3 registration statement evidences an efficient market.")).

Inovio was eligible to file Form S-3 registration statements throughout the Class Period and did so on March 13, 2020.  Feinstein Rpt., ¶75.  Therefore, *Cammer* Factor 4 supports a finding of market efficiency.  *Id.*, ¶77; *see also In re Schering-Plough/ENHANCE Sec. Litig.*, No. 8-397 (DMC)(JAD), 2012 WL 4482032, at *5 (D.N.J. Sept. 25, 2012); *Vytorin/Zetia*, 2012 WL 4482041, at *5.

### (6)   *Cammer* Factor 5: Inovio Securities Reacted to Unexpected, Company-Specific Information

The court in *Cammer* noted that "one of the most convincing ways to demonstrate [market] efficiency would be to illustrate, over time, a cause and effect relationship between company disclosures and resulting movements in stock price."  *Cammer*, 711 F. Supp. at 1291.  Experts "often perform event studies to prove the causal relationship between a company's stock price and the release of new corporate information."  *Papa*, 333 F.R.D. at 84.  However, "a plaintiff seeking to

- 13 -

demonstrate market efficiency need not always present direct evidence of price impact through event studies." *Waggoner v. Barclays PLC*, 875 F.3d 79, 97 (2d Cir. 2017). *See also DVI II*, 639 F.3d at 634-35; *Schering-Plough*, 2012 WL 4482032, at *5; *Sterling Heights*, 2015 WL 5097883, at *6.

Here, Professor Feinstein conducted event studies of the Inovio securities at issue, examining the causal relationship between the release of Inovio-specific news and the response in Inovio's stock price. Feinstein Rpt., ¶¶89-141. His statistical analysis determined how much of that price response can be explained by market and industry sector factors rather than Company-specific information. *Id.*, ¶¶129-141. The portion of the price change that cannot be attributed to market or industry sector factors is called the "residual return." *Id.*, ¶¶96-97. If the residual return is statistically significant, this indicates that the price movement was caused by new, Company-specific information. *Id.* Based on his event study for Inovio common stock, Professor Feinstein determined that there was a cause-and-effect relationship between new, material Inovio-related information resulting in appropriate movements in the price of the Inovio securities at issue, evidencing that it traded in an efficient market during the Class Period. *Id.*, ¶¶154-156.

### (7)    *Krogman* Factor 1: Market Capitalization

"'Market capitalization, calculated as the number of shares multiplied by the prevailing share price, may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations.'" *DVI I*, 249 F.R.D. at 212 (citing *Krogman*, 202 F.R.D. at 478). During the Class Period, the market capitalization of Inovio common stock as high as $5.0 billion. *See* Feinstein Rpt., ¶79.

Inovio's sizeable market capitalization throughout the Class Period is further evidence of efficiency. *See DVI I*, 249 F.R.D. at 212 (finding market capitalization ranging between $12 million to $300 million, a "rather high market capitalization as compared to the broader survey of publicly traded companies," weighed in favor of a finding of market efficiency).

- 14 -

### (8) *Krogman* Factor 2: Bid-Ask Spread

A bid-ask spread is the difference between the prices at which investors are willing to buy and current stockholders are willing to sell securities, with a low bid-ask spread indicating a more efficient market. *See Sterling Heights*, 2015 WL 5097883, at *6 (citing *Krogman*, 202 F.R.D. at 478); Feinstein Rpt., ¶48. Courts have found markets for securities with bid-ask spreads ranging from 0.02% to 2.91% to be efficient. *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 Civ. 03852 (GBD), 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015) (bid-ask spread of 0.02%); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413 (E.D. Va. 2015) (bid-ask spread of 0.10%); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 619 (C.D. Cal. 2009) (bid-ask spread of 0.51%); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 356 (C.D. Cal. 2015) (bid-ask spread of 2.91%).

During the Class Period, Inovio common stock had a tight bid-ask spread averaging 0.73% during the Class Period, supporting a finding of market efficiency. Feinstein Rpt., ¶¶86-88.

### (9) *Krogman* Factor 3: Float

A stock's "public float" is defined as "the percentage of a security held by the public as opposed to company insiders." *DVI I*, 249 F.R.D. at 212 (citing *Krogman*, 202 F.R.D. at 478). "'Because insiders may have private information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information about the security.'" *DVI I*, 249 F.R.D. at 212 (quoting *Krogman*, 202 F.R.D. at 478); Feinstein Rpt., ¶47.

During the Class Period, the average float for Inovio common shares was 95.7%. Feinstein Rpt., ¶82. The high percentage of Inovio's float supports market efficiency. *Id.*, ¶83; *see also McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (public float of 31% to 43% of shares outstanding supported a finding of market efficiency); *Wilson*, 2018

- 15 -

WL 3913115, at *15 (average public float of 82.41% "exceeds amounts other courts have deemed sufficient to suggest a finding of market efficiency").

In sum, all of the *Cammer* and *Krogman* factors support the conclusion that the market for Inovio securities was efficient during the Class Period. Thus, Plaintiffs have demonstrated that class-wide reliance is appropriately presumed for class certification purposes under the fraud-on-the-market doctrine.

### b.      Damages Are Measurable on a Class-Wide Basis

"[T]he need to perform individual damages calculations does not foreclose class certification under Rule 23(b)(3)." *DFC*, 2016 WL 4138613, at *14 (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015); *Sterling Heights*, 2015 WL 5097883, at *13). In fact, the Third Circuit has indicated that denying class certification based on a finding of individualized damages would "amount[] to an abuse of discretion." *Neale*, 794 F.3d at 375; *see also Novo*, 2020 WL 502176, at *9 ("Additionally, 'in securities cases . . . where all other issues are provable by common evidence, denial of class certification solely on the basis of individual damages calculations would be an "abuse of discretion."' . . . Therefore, the Court 'need not assess the validity of Plaintiffs' damages model at this stage.'").

Nevertheless, damages related to the Class's claims here can and will be calculated using a common methodology for purchasers of Inovio's equity securities. *See* Feinstein Rpt., ¶¶157-167. Professor Feinstein's report explains how per-share damages can be determined on a Class-wide basis. *Id.*, ¶165. This is more than sufficient at this stage. *See, e.g.*, *Pelletier*, 2021 WL 2023608, at *35 (class-wide damages model not relevant at class certification stage); *Novo*, 2020 WL 502176, at *9 (certifying class and noting that the court "'need not assess the validity of Plaintiffs' damages model at this stage'"); *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2017 WL 821662, at *11 (C.D. Cal. Jan. 5, 2017) (finding Professor Feinstein's methodology sufficient at class

4827-5996-4914.v1

certification and noting that "'[t]he event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation'"); *Wilson*, 2018 WL 3913115, at \*17 ("Feinstein's proposed model isolates and identifies that artificial inflation for those who purchased shares in the Class Period.  Other courts in this district have found that this three-step model suffices at the class certification stage to show that the issue of damages does not preclude a finding that common issues of law and fact predominate over individual damages issues.").  The Supreme Court has endorsed this approach.  "[T]he correct measure of damages . . . is the difference between the fair value of all [the plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972); *see KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-2393-MGL, 2017 WL 4297450, at \*7 (D.S.C. Sept. 28, 2017) (observing that the "Supreme Court long ago agreed with this approach," and citing *Affiliated Ute*).

### 2. A Class Action Is the Superior Way of Fairly and Efficiently Adjudicating This Action

This action also satisfies Rule 23(b)(3)'s requirement that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In assessing the superiority prong, Rule 23(b)(3) sets forth the following four factors: (1) the interests of members of the class in "individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  "[C]lass actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims individually." *Novo*, 2020 WL 502176, at \*6.

- 17 -

Here, each factor demonstrates that a class action is superior. First, Class members' interests in individually controlling the prosecution of separate actions is minimal. The proposed Class is geographically dispersed, and for many Class members, the burden and expense of litigating their claims individually would be economically prohibitive given the relatively small size of their individual damages. *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 05-1151 (SRC), 2013 WL 396117, at *13 (D.N.J. Jan. 30, 2013); *Novo*, 2020 WL 502176, at *9 (citing *Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 506 (E.D. Pa. 2000)) ("class actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims individually").

Second, Plaintiffs are unaware of any §10(b) actions brought by a potential Class member against Inovio related to the fraud alleged in this action, which further confirms the limited ability or interest individual Class members have in prosecuting separate actions. *See Papa*, 333 F.R.D. at 78 (finding the superiority requirement met where "[a]side from [other cases in the same district], the [c]ourt [was] not aware of any class member interest in prosecuting th[e] matter on an individual basis").

Third, the maintenance of a class action in this District ensures an efficient expenditure of resources, as well as consistent rulings concerning matters relating to the Class's claims. *See Merck*, 2013 WL 396117, at *13; *DVI I*, 249 F.R.D. at 218. Because Inovio is headquartered in this District, and many of the acts and practices complained of occurred in substantial part in this District, the Eastern District of Pennsylvania is a desirable forum for this class action.

Finally, Plaintiffs do not foresee any management difficulties that will preclude this action from being maintained as a class action. Rather, certification of the case as a class action appears to be the only means of fairly and efficiently litigating Class members' claims. *See CIGNA*, 2006 WL 2433779, at *5 (superiority satisfied given "burden of litigating potentially thousands of individual

- 18 -

lawsuits" arising "out of the same set of operative facts," "need for efficient use of judicial resources," and fact that "prohibitive expense of maintaining individual actions would likely prevent many individuals from asserting their claims against the Defendants – a clear departure from the underlying rationale and operation of the federal securities laws"); *Kline v. First W. Gov't Sec., Inc.*, No. 83-1076, 1996 WL 153641, at \*35 (E.D. Pa. Dec. 21, 1995) ("[T]he plaintiffs correctly point out that 'considerations of judicial economy and fairness dictate that a class action is superior for securities fraud cases . . . [because] it avoids numerous scattered duplicative lawsuits burdening the federal court system and affords small investors an opportunity to redress their injuries.'").

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Class Certification pursuant to Rules 23(a) and 23(b)(3), appoint Plaintiffs as Class Representatives and appoint Robbins Geller as Class Counsel pursuant to Rule 23(g).

DATED: July 29, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE

s/ Trig R. Smith

TRIG R. SMITH

4827-5996-4914.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for Lead Plaintiff

- 20 -

- 1 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 29, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Trig R. Smith
TRIG R. SMITH

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  trigs@rgrdlaw.com

4827-5996-4914.v1

Case 2:20-cv-01402-GJP Document 100 Filed 07/29/21 Page 30 of 31

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **ANDREW DAVID ABRAMOWITZ**
  aabramowitz@bm.net,jgionnette@bm.net

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,emagnus@bm.net

- **MATTHEW S. DECKER**
  MDecker@duanemorris.com

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,eyork@bm.net,csimon@bm.net,jgionnette@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **KOJI F. FUKUMURA**
  kfukumura@cooley.com,chourani@cooley.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com

- **SEAN MCGUIRE**
  smcguire@rgrdlaw.com,e_file_SD@rgrdlaw.com,scaesar@rgrdlaw.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)