# Exhibit L

Excerpted

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**GIBBONS P.C.**
BY:  John C. Romeo
ID #77692
Stephen J. Finley
ID #200890
One Logan Square
130 N. 18th Street, Suite 1210
Philadelphia, PA 19103
Telephone:  215-446-6261
Facsimile:  215-446-6325
sfinley@gibbonslaw.com
jromeo@gibbonslaw.com

**COOLEY LLP**
Michael J. Klisch (Of Counsel)
Joshua M. Siegel (Of Counsel)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC  20004-2400
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899
mklisch@cooley.com
jsiegel@cooley.com

Robert T. Cahill (Of Counsel)
11951 Freedom Drive
Reston, Virginia  20190
Telephone:  (703) 456-8044
Facsimile:  (703) 456-8100          *Attorneys for Plaintiff Inovio*
rcahill@cooley.com                  *Pharmaceuticals, Inc.*

| | | |
|---|---|---|
| INOVIO PHARMACEUTICALS, INC., | ) | COURT OF COMMON PLEAS |
| | ) | OF MONTGOMERY COUNTY |
| Plaintiff, | ) | |
| | ) | JUNE TERM, 2020 |
| v. | ) | NO. 2020-06554 |
| | ) | |
| VGXI INC. and GENEONE LIFE | ) | |
| SCIENCE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT IN EQUITY

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and the catastrophic havoc wreaked by the pandemic. The U.S. unemployment rate in April alone was 14.7%, and is projected to exceed 23% in June. COVID-19 is destroying lives and livelihoods, and will no doubt continue destroying both without a vaccine.

### B.  Inovio is Developing a Vaccine That Appears Promising.

9.  The worldwide health and medical community is doing everything necessary to develop a vaccine as expeditiously as possible. The U.S. federal government deployed "Operation Warp Speed," a public-private partnership to facilitate, at an unprecedented pace, the development of "substantial quantities of a safe and effective vaccine available for Americans by January 2021." https://www.hhs.gov/about/news/2020/05/15/trump-administration-announces-framework-and-leadership-for-operation-warp-speed.html.

10.  A COVID-19 vaccine requires testing and manufacturing in parallel to streamline and keep aligned with the warp speed efforts to meet this urgent public health need.

11.  Inovio is devoting significant resources to developing a vaccine, which it started developing in January 2020. Its vaccine candidate is the *only* one currently in human trials in the United States using an innovative DNA approach, and its progress has been promising. Its preclinical data, which has been published and peer-reviewed, shows that the vaccine demonstrated robust neutralizing antibody and immune responses against the Virus. It is in Phase I human clinical trials, which are expected to conclude this summer and, pending regulatory approval, will immediately move into Phase II and possibly Phase II/III human clinical trials.

12.  Inovio has a straightforward written contract with VGXI that requires VGXI to transfer certain technology for the manufacture of Inovio's vaccine if VGXI turns down the opportunity to manufacture the vaccine itself. VGXI has repeatedly told Inovio, orally and in writing, that it cannot manufacture further batches of Inovio's vaccine at any time in 2020

3

because it does not have the manufacturing capacity to do so. VGXI had already recognized that its lack of manufacturing capacity and ability to manufacture for commercial supply was an issue before the COVID-19 pandemic occurred. As a result, it is building a new commercial scale manufacturing facility that *might* be available for some activity in early 2022. But, in this environment, that is at least a year or two way, and the world simply cannot wait for VGXI because every minute counts.

13.     VGXI's inability to do the work is not egregious, but rather its refusal to honor its unequivocal contractual obligation to transfer the needed technology for the manufacture of the vaccine is the appalling breach.

14.     VGXI's breach is causing irreparable harm, and will continue to do so because its failure to transfer the technology is delaying the scale-up, manufacture, and availability of the vaccine, as Inovio and others manufacturers will need to start over and develop an FDA-approved process to manufacture the vaccine. That work will take time the world does not have. The resulting delay in manufacturing a vaccine, caused by VGXI, irreparably harms the public and Inovio. If the vaccine is effective and is approved, Inovio will need hundreds of millions, or even billions, of doses. Like all parties seeking to develop a COVID-19 vaccine, Inovio cannot wait until it receives regulatory approval before starting manufacturing scale up. Rather, it must do that now so that it can begin to distribute the vaccine the instant it is approved. VGXI's breach significantly delays this process and will substantially reduce the number of available doses, which harms public health and the economy. VGXI is holding the vaccine and world health hostage, perhaps to squeeze more money from Inovio or because it is having buyer's remorse over its existing contract. Indeed, it offers no credible legal or factual reason for its

4

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

planning was made more complicated by two factors unique to developing a COVID-19 vaccine: the high volume of doses needed and the warp speed at which the doses must be manufactured.

**D.    VGXI Repeatedly and Clearly Informs Inovio that VGXI is Unable to Manufacture the Vaccine Because it Lacks the Capacity to do so.**

52.    It soon became obvious that, as a matter of basic mathematics, VGXI would not be able to manufacture anywhere close to 1 million doses of the Vaccine by the end of 2020, and that Inovio would have to, as permitted by the Agreement, find additional manufacturers to meet that need.

53.    VGXI admittedly has limited large-scale clinical manufacturing capability, which consists of a single 400-liter fermenter. A 400-liter fermenter yields a batch (also called a "lot") of approximately 30,000 doses, a process that takes two weeks. VGXI is acutely aware of its capacity constraints, as it recently announced that it would *begin* construction on another commercial manufacturing facility (to become operational in 2022) to house a large-scale 1500-liter fermenter.

54.    Since at least January 2020, VGXI repeatedly and clearly notified Inovio that it had no available large-scale manufacturing slots in 2020 because those slots already had been taken by VGXI's other customers or reserved for other Inovio DNA plasmids (only 2 slots).

55.    On January 13, 2020, Robert Juba (Inovio's VP, Biological Manufacturing and Clinical Supply Management) asked Dorothy Peterson (VGXI's Chief Operating Officer) whether VGXI had any open large-scale manufacturing slots for the Vaccine. Ms. Peterson wrote that, other than the two large-scale slots Inovio previously had secured for the manufacture of another Inovio product (an HIV drug), "there are no other 400 L[itre] slots in 2020." This was

---

group of healthy patients (typically a few hundred to 3,000). The FDA must approve the vaccine's progress through each phase before it can proceed to the next phase of testing.

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

consistent with VGXI's representations to Inovio concerning its 2020 limited large-scale manufacturing capacity, as VGXI stated in April 2019 that its large-scale manufacturing slots were booked for the next year.

56.     Ultimately, after extensive negotiations (which required Inovio to get approval from the National Institutes of Health), Inovio gave up the two large-scale manufacturing slots it had reserved for other plasmids and substituted the Vaccine in their place.  That enabled VGXI to manufacture two large-scale lots of the Vaccine (a total of 55,000 doses).  VGXI delivered one lot (approximately 26,000 doses) to Inovio in April 2020, and is due to deliver another lot (approximately 29,000 doses) in late June 2020.

57.     On March 24, 2020, in response to more discussions about VGXI's capacity for large-scale manufacturing, VGXI reiterated to Inovio that "[a]s we have discussed, our schedule for large scale is currently full for the remainder of 2020."  VGXI did not offer Inovio any other large-scale manufacturing slots, or claim that it could fill 1 million doses by the end of 2020.

58.     In short, VGXI admittedly cannot meet Inovio's need for 1 million doses of the Vaccine by the end of 2020, and VGXI repeatedly informed Inovio of that fact.

**E.     Because VGXI was Unable to Manufacture the Vaccine, Inovio Engages Two Other Manufacturers.**

59.     Because VGXI was unable to manufacture the needed doses of the Vaccine, Section 2.9(a)(iii) protected Inovio's ability to ensure that another manufacturer could use the VGXI Technology to manufacture the Vaccine, as it required VGXI to provide a Technology Transfer (which included the VGXI Technology) to Inovio.

60.     Ology Bioservices, Inc. ("Ology") is one of the manufacturers chosen by Inovio to manufacture the Vaccine.

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

61.     On or about March 25, 2020, Inovio informed VGXI about Inovio's relationship with Ology and the subsequent need for VGXI to provide a Technology Transfer to Ology. Inovio also stated that because of the urgent pace of development, and in parallel with the Technology Transfer, Ology would attempt to manufacture the Vaccine using Ology's own process. It was not (and is not) known if Ology's process will be successful, as the Vaccine it manufactures must be "analytically comparable" to the Vaccine manufactured using the VGXI Technology, which is a strict standard.

62.     On March 26, 2020, Inovio and Ology publicly announced that the Department of Defense ("DoD") awarded Ology with a contract valued at $11.9 million to work with Inovio to manufacture the Vaccine. The aim of that program is to rapidly and efficiently deliver the Vaccine to the DoD for upcoming clinical trials.

63.     Between late March and early May 2020, Inovio repeatedly asked VGXI about the required Technology Transfer to Ology, and VGXI slow-rolled the process and refused to commit to providing the Technology Transfer.

64.     Another manufacturer chosen by Inovio to manufacture the Vaccine was Richter-Helm BioLogics, GmbH & Co. KG ("Richter-Helm").

65.     On April 30, 2020, Inovio and Richter-Helm publicly announced they had entered into an agreement whereby Richter-Helm would manufacture the Vaccine. VGXI had provided a Technology Transfer to Richter-Helm in 2015 for another of Inovio's product candidates, so it had access to the VGXI Technology. Richter-Helm agreed it would be able to allocate five large-scale manufacturing slots which could potentially deliver 500,000 doses of the Vaccine by the end of 2020. VGXI was aware of this transaction before it was announced publicly.

14

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**F.    VGXI Breaches the Agreement by Refusing to Provide the Technology Transfer and Purporting to Terminate the Agreement.**

66.    On May 6, 2020, despite its duty to do so, VGXI still had not committed to providing the Technology Transfer to Ology.  Mr. Juba again sought to address the Technology Transfer with Ms. Peterson, who responded that she would "take a look at this today."

67.    On May 7, 2020, VGXI purported to terminate the Agreement, and informed Inovio that VGXI would not permit the Technology Transfer to Ology.  *Exhibit 2.*

68.    This letter was based on a false premise (*i.e.*, that Inovio breached the Agreement because it "failed to provide VGXI the opportunity to manufacture Inovio's COVID-19 DNA vaccine as required under the Supply Agreement").

69.    VGXI claimed that the Agreement expired under Section 3.3(a), and VGXI "will not extend the agreement beyond the Initial Term."  Finally, it made a vague and unsubstantiated claim that Inovio "may have [] shared" VGXI's confidential information with Ology.  It concluded with an offer "to negotiate a new master services agreement for future business . . . ."

70.    VGXI's refusal to provide the Technology Transfer to Ology was and is a clear breach of Section 2.9(a)(ii) and (iii) of the Agreement, which imposed a duty on VGXI to provide the Technology Transfer.

71.    VGXI's effort to terminate and purported termination of the Agreement is invalid, and is itself a flagrant breach of the Agreement, as the Agreement has not expired under Section 3.3(a), because under that provision the Agreement remains in effect after the Initial Term (which expired in 2018) unless otherwise terminated by one of the parties upon 180 days' notice, which never happened.  In short, Inovio has not materially breached the Agreement, or otherwise done anything to warrant a lawful termination of the Agreement.

72.      On May 7, 2020, VGXI sent a letter to Ology for the express purpose of interfering in the business relationship between Inovio and Ology. *Exhibit 3*. This letter too was based on a false premise: that "Inovio does not have any right to transfer VGXI's intellectual property" and VGXI has "not provided any authorization to Inovio to provide these rights to third parties."

73.      Because VGXI cannot fulfill Inovio's manufacturing request, Section 2.9(a)(iii) of the Agreement imposed an absolute duty on VGXI to permit the Technology Transfer to Ology, which includes providing Ology with VGXI's Technology.

74.      On May 11, 2020, Inovio responded to VGXI's May 7, 2020 letter. *Exhibit 4*. The May 11 letter notified VGXI that Inovio did not breach the Agreement, and that the Agreement did not expire under Section 3.3(a). It stated that Inovio "takes the protection of its intellectual property assets, as well as those of our partners, very seriously," and that Inovio "acted appropriately under the terms of the Agreement and did not inappropriately release confidential information to a third party." It concluded with an offer to discuss the matter with VGXI in an attempt to reach a resolution.

75.      Between May 8 and 27, 2020, the parties' CEOs spoke in an attempt to resolve the dispute, but they reached an impasse and were unable to do so. Inovio offered a proposal to resolve the dispute, yet VGXI steadfastly refused to provide a substantive response.

**G.      The Vaccine Currently is in Phase I Human Clinical Trials, and the Preliminary Data for the Vaccine is Encouraging.**

76.      The data from the Vaccine's preclinical study showed that the Vaccine demonstrated a robust neutralizing antibody and immune responses against the Virus. This data was published in a peer-reviewed journal.

16

77.    As of June 2020 (the time of filing this Complaint), the Vaccine is in Phase I human clinical trials in the U.S. (Pennsylvania and Missouri), and Inovio plans to start Phase I trials in China and South Korea.  The Phase I trials are anticipated to conclude in Summer 2020.

78.    Provided Inovio obtains regulatory approval, Inovio anticipates conducting Phase II/Phase III human clinical trials as quickly as possible after the close of the Phase I trials.

**H.    VGXI's Breach of the Agreement Causes Irreparable Harm.**

79.    VGXI's refusal to provide the Technology Transfer to Ology in breach of Defendants' contractual obligations, and its invalid purported termination of the Agreement, causes irreparable harm.

80.    VGXI's breaches of the Agreement delay the scale-up, manufacturer, and availability of the Vaccine.  VGXI is one of only a limited number of DNA plasmid manufacturers in the world.  However, without a technology transfer of VGXI's manufacturing process to one of this small group of DNA manufacturers, as required under the Agreement, Inovio would be severely delayed, and thereby irreparably damaged, in its ability to provide the requisite number of Vaccine doses for the public benefit.  But VGXI has no available capacity in the near term to manufacture any of Inovio's products and cannot manufacture products for commercial sale as it lacks the necessary approvals and facility.

81.    That leaves only one company, Richter-Helm, with knowledge of the existing manufacturing process (which it learned through a 2015 Technology Transfer).  Richter-Helm does not have the capacity or availability to manufacture the volume of DNA plasmids Inovio needs to develop, test, and potentially produce one million doses in 2020, over 100 million doses in 2021, and hundreds of millions of doses thereafter.  Accordingly, VGXI's breaches of the Agreement will likely deprive the world of millions of Vaccine doses.

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-06554-14 Docketed at Montgomery County Prothonotary on 06/03/2020 2:09 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

82.     Because VGXI does not have FDA approval to manufacture vaccines for commercial sale, Inovio must hire other (FDA approved) manufacturers to manufacture doses for public use.

83.     Because of the desire to develop and distribute an effective vaccine at warp speed, Inovio seeks to get multiple manufacturers on board now – before final FDA approval – so that it immediately can scale up manufacturing and begin distributing as many doses as possible the instant the Vaccine is approved.

84.     These manufacturers could set up manufacturing quickly if, as the contract requires VGXI to do, VGXI provides the Technology Transfer.

85.     But because VGXI refuses to provide the Technology Transfer, these other manufacturers must set up the manufacturing process from scratch, a process which can take months, or even years, with a DNA vaccine.  This delay will cause a loss of time that could otherwise be used to make the Vaccine, which in turn results in delays getting it to patients around the world who desperately need it.  There is also no guarantee that a new process will produce product that will meet the stringent criteria needed to demonstrate comparability with the existing vaccine in clinical testing.

## COUNT I
### (Breach of Contract)

86.     Paragraphs 1-85 of this Complaint are incorporated herein as if set forth in their entirety.

87.     The Agreement is a valid and enforceable contract between Inovio and VGXI.

88.     VGXI had a contractual duty to (a) perform the Technology Transfer and provide the information required by the Agreement, and (b) comply with the termination and expiration provisions of the Agreement.

18