UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>          vs.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>                          Defendants. | Civ. Action No. 2:20-cv-01402-GJP<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     RULE 23(a) IS SATISFIED BECAUSE WILLIAMS AND ZENOFF ARE
        TYPICAL AND ADEQUATE CLASS REPRESENTATIVES ........................................1

        A.      Defendants Fail to Establish that Williams Is Atypical ............................................2

        B.      Defendants Fail to Establish that Zenoff Is Atypical ...............................................4

III.    RULE 23(b) IS SATISFIED BECAUSE DEFENDANTS HAVE FAILED TO
        ESTABLISH A LACK PRICE IMPACT ...........................................................................5

        A.      Because They Concede Price Impact for Two Misstatements and One
                Class Period Disclosure, Defendants Cannot Rebut the *Basic* Presumption ...........6

        B.      Defendants Fail to Prove that the Alleged Misstatements About
                Constructing a Vaccine in Three Hours Had No Price Impact ...............................6

                1.      Defendants Fail to Show the Absence of Price Impact from the
                        February 14 Alleged Misstatement ................................................................7

                2.      Defendants Fail to Show the Absence of Price Impact from the
                        March 2 Alleged Misstatements ....................................................................7

                3.      Price Impact for the February 14 and March 2 Misstatements Can
                        Also Be Inferred from the Price Action Following the Alleged
                        March 9 Disclosure ......................................................................................10

        C.      Defendants Fail to Prove the Absence of, and in Fact Concede, Price
                Impact from the Alleged Misstatements Concerning Inovio's
                Manufacturing Capabilities ......................................................................................11

                1.      Defendants Fail to Show the Absence of Price Impact from the
                        March 24, 2020 Alleged Misstatements ......................................................12

                2.      Though Not Necessary, Price Impact Can Be Inferred from the
                        August 10 Disclosures ..................................................................................12

IV.     CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).................................................................................10

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254 (2d Cir. 2020), *vacated on other grounds by*
    *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    __ U.S. __, 141 S. Ct. 1951 (2021)..........................................................6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................ *passim*

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)......................................................................2

*Bing Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018),
    *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*,
    775 F. App'x 51 (3d Cir. 2019) ................................................................9

*City of Cape Coral Mun. Firefighters' Ret. Plan v.*
    *Emergent Biosolutions, Inc.*,
    322 F. Supp. 3d 676 (D. Md. 2018) ...................................................5, 11

*City of Sterling Heights Gen. Emps.' Ret. Sys. v.*
    *Prudential Fin., Inc.*,
    2015 WL 5097883 (D.N.J. Aug. 31, 2015) ..............................................5

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    __ U.S. __, 141 S. Ct. 1951 (2021)..........................................................5

*Greenberg v. Crossroads Sys.*,
    364 F.3d 657 (5th Cir. 2004) ....................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)...............................................................................5, 6

*In re Celgene Corp. Sec. Litig.*,
    2020 WL 8870665 (D.N.J. Nov. 29, 2020) .......................................10, 12

*In re CIGNA Corp. Sec. Litig.*,
    459 F. Supp. 2d 338 (E.D. Pa. 2006) .......................................................4

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008)............................................................1, 2

4870-9970-9189.v1

**Page**

*In re Finisar Corp. Sec. Litig.*,
  2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...........................................................9

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  210 F.R.D. 476 (S.D.N.Y. 2013) ...........................................................................2

*In re Mattel, Inc. Sec. Litig.*,
  2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ..........................................................15

*In re Organogenesis Sec. Litig.*,
  241 F.R.D. 397 (D. Mass. 2007) ............................................................................3

*In re Rent-Way Sec. Litig.*,
  218 F.R.D. 101 (W.D. Pa. 2003) ............................................................................4

*In re Safeguard Scis.*,
  216 F.R.D. 577 (E.D. Pa. 2003) .............................................................................3

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ...................................................................................1

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .................................................................................12

*Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ............................................................................6

*Pelletier v. Endo Int'l PLC*,
  338 F.R.D. 446 (E.D. Pa. 2021) ......................................................................13, 15

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019) ...................................................................................1

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...................................................................................1

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ...........................................................7

*Willis v. Big Lots, Inc.*,
  242 F. Supp. 3d 634 (S.D. Ohio 2017) .................................................................12

**Page**

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(a)..................................................................................................................1, 3
    Rule 23(b) .....................................................................................................................5
    Rule 23(b)(3).................................................................................................................5

4870-9970-9189.v1

## I.      INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opp.") is limited to: (1) an attack against the proposed Class Representatives' satisfaction of Rule 23(a)'s typicality requirement; and (2) a suggestion that certain parts of the Class Period are not amenable to the fraud-on-the-market presumption of reliance because Defendants have established a lack of price impact. Both arguments fail.  Plaintiffs have shown that Class Certification is warranted and Defendants cannot rebut the presumption of reliance.  The Court should certify the case as a class action, appoint Manuel S. Williams ("Williams") and Andrew Zenoff ("Zenoff") as class representatives, and appoint Robbins Geller Rudman & Dowd LLP as class counsel.

## II.     RULE 23(a) IS SATISFIED BECAUSE WILLIAMS AND ZENOFF ARE TYPICAL AND ADEQUATE CLASS REPRESENTATIVES

Defendants only challenge the typicality element of Rule 23(a).[1]  For the reasons below, the Court should reject Defendants' arguments.  The typicality requirement "'centers on whether the interests of the named plaintiffs align with the interests of the absent members.'"  *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019) (quoting *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)).  It "does not require that the putative class members all share identical claims."[2] *Roofer's*, 33 F.R.D. at 75.  This requirement is "undemanding" and it is "'usually satisfied'" as long as "the named plaintiffs and putative class challenge 'the same unlawful conduct.'"  *Id.* (citing *Stewart*, 275 F.3d at 227, and *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009)).

---

[1]    Defendants claim in §IV.C. of their brief and one accompanying paragraph that Williams and Zenoff fail the adequacy requirement of Rule 23(a) as well.  *See* Opp. at 25.  But virtually all the text following that heading in their brief relates only to typicality.  *See id.*  Because Defendants have elected to merge these two requirements, Plaintiffs need not address their adequacy argument independently.  *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 201 & n.6 (E.D. Pa. 2008).

[2]    All citations are omitted and emphasis is added unless otherwise noted.

In trying to paint Williams and Zenoff as atypical, Defendants are fighting an uphill battle. "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a ***significant*** role at trial." *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006). Here, Defendants bear the burden of demonstrating that "'it is ***predictable*** that a ***major*** focus of the litigation will be on an arguable defense unique to the named plaintiff.'" *Id.*

### A. Defendants Fail to Establish that Williams Is Atypical

First, Defendants argue that Williams is atypical "because he is subject to a unique truth-on-the-market defense." Opp. at 26. In order for a purported unique defense to defeat class certification, Defendants must demonstrate there is a risk that the proposed class representative "might devote time and effort to the defense ***at the expense of issues that are common and controlling for the class***." *Beck*, 457 F.3d at 297. They fail to do so here.

Defendants assert that the market knew the "truth" regarding J. Joseph Kim's ("Kim") constructed-in-three-hours statement as early as March 3. Opp. at 13, 26. Far from being a unique issue, this is the quintessential example of an "issue[] that [is] common and controlling for the class," *Beck*, 457 F.3d at 297, because if true, it would alter the scope of the securities fraud case for vast numbers of class members – not just Williams. *See also* Opp. at 26 ("this defense may be relevant to other putative class members"). Defendants do not argue that Williams had access to any non-public information; accordingly, "Defendants cannot show that this unique defense will become a major focus of the litigation." *DVI*, 249 F.R.D. at 202 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 482 (S.D.N.Y. 2013)) ("[C]ourts have consistently certified classes where there was no evidence that the named plaintiff received non-public information from a corporate officer.") On this basis alone, the Court should reject Defendants' attempt to disqualify Williams.

Defendants try to get around this by claiming that the defense is unique to Williams because of its purported effect on his *standing*: he cannot have been damaged by the alleged fraud, they argue, because the market had digested the truth before his first purchase.  Opp. at 26-27.  This is simply untrue.  Dr. Kim appeared at a televised news conference at the White House with President Trump at 3:20 p.m. Eastern on March 2 and claimed to a worldwide audience that Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company") had "fully construct[ed] our vaccine within three hours."  ¶99.[3]  Inovio's stock price increased by 69.7% the next day and more than tripled between March 2 and March 6 – notwithstanding the previously published March 3 press release stating the Company had designed INO-4800 in three hours.  ¶100.  The market did not consider the press release to be a retraction of Dr. Kim's March 2 statements at the White House.

The cases Defendants cite to are unpersuasive.  They first reference *In re Safeguard Scis.*, 216 F.R.D. 577 (E.D. Pa. 2003), a case that does not address standing.  Opp. at 27.  In *Safeguard*, the Court declined to certify a class where the three proposed class representatives all failed to satisfy Rule 23(a): one because of "serious concerns with credibility," another who may have been "'subject to the defenses of lack of reliance, estoppel, waiver, satisfaction, and release,'" and a third who gave "conflicting testimony" which "reveal[ed] an antagonistic interest to the class as a whole."  216 F.R.D. at 582-83.  None of these concerns is present here.  Defendants also cite the out-of-Circuit decision in *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 404-05 (D. Mass. 2007).  It, too, is distinguishable.  There, the court decided that one proposed class representative lacked standing to sue an individual defendant who did not join the defendant corporation until after the proposed representative's final purchase – and thus, could not serve as a class representative.  *See id.* at 403-04.

---

[3]   All "¶__" are to the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 68).

Williams is not subject to any unique defense, did not have access to any non-public information, and his claims are the same as the claims of other Class Members.

## B.     Defendants Fail to Establish that Zenoff Is Atypical

Defendants next claim that Zenoff is atypical because he did not suffer any compensable loss. Opp. at 27-29.  But while there are many methods for calculating out-of-pocket losses, Defendants went fishing for one that lets them argue that Zenoff has none.

Defendants do not dispute that Zenoff's trading records demonstrate that he purchased 550 more shares than he sold during the Class Period, nor that he held those 550 shares from August 4, 2020 ($20.32 closing price) through well beyond the Class Period.  Aggregating Zenoff's shares from different trading accounts, to calculate losses, demonstrates that he undoubtedly suffered economic harm because Inovio's stock price closed at $18.99 per share on the evening of August 10, and by the close of trading on August 12, the Company's stock price closed at $13.75 per share.[4] Ex. E.  In the 90 trading days following the August 10 alleged corrective disclosure, moreover, the stock price never exceeded $18.99 per share.

Defendants point to no persuasive legal authority to support their assertion that losses must be calculated by disaggregating transactions across accounts first.  Nor do they acknowledge that courts in this District have rejected their argument.  *See, e.g.*, *In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 354-55 (E.D. Pa. 2006) (holding that the Seventh Amendment right to have a jury determine damages prevented the Court from ruling on the aggregation/disaggregation dispute; that

---

[4]    Courts routinely aggregate a plaintiff's transactions across multiple accounts when deciding, for example, who suffered the greatest loss at the lead plaintiff stage.  *See, e.g.*, ECF No. 53 at 5 ("The Inovio Group claims to have lost almost $1.3 million after buying over 425,000 shares of Inovio stock worth about $5.5 million during the class period."); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 105 (W.D. Pa. 2003) ("As an institutional investment advisor that purchased securities on behalf of its clients' accounts, Cramer Rosenthal alleged a loss of $10.1 million in connection with its purchase of Rent-Way stock . . . .").  All "Ex. __" are to the Declaration of Trig R. Smith in Further Support of Motion for Class Certification, filed concurrently herewith.

"[t]he specific calculation of damages in this case should be resolved based on a trial record"; and that "any final decision about Defendants' contention[]" must wait until "after a record has been made at a trial, where all of the evidence relevant . . . [to] purchases can be presented and subjected to cross-examination").

### III.    RULE 23(b) IS SATISFIED BECAUSE DEFENDANTS HAVE FAILED TO ESTABLISH A LACK PRICE IMPACT

Defendants concede that Plaintiffs have satisfied the superiority requirement under Rule 23(b)(3).  The predominance requirement is also satisfied because Plaintiffs are entitled to the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988). *See* ECF No. 100 at 9-16.  Plaintiffs have shown, and Defendants assume for purposes of their opposition, that Inovio stock traded in an efficient market during the Class Period.  *See id.* at 10-16; Report on Market Efficiency by Professor Steven P. Feinstein, Ph.D., CFA (ECF No. 101-1) ("Feinstein Rpt."), ¶¶50-156; Expert Report of René M. Stulz, Ph.D. (ECF No. 107-2) ("Stulz Rpt."), ¶7; Ex. F, Reply Expert Report of Professor Steven P. Feinstein, Ph. D., CFA. ("Feinstein Rebuttal"), ¶¶1-2, 6.  Defendants are left to try to rebut the presumption of reliance, but fail to do so.

To rebut the *Basic* presumption, Defendants must prove a complete absence of evidence of price impact – "'that an alleged misrepresentation did not actually affect the market price of the stock.'"  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, __ U.S. __, 141 S. Ct. 1951, 1959 (2021) (quoting *Halliburton Co. v. Erica P. John Fund*, *Inc.*, 573 U.S. 258, 284 (2014) ("*Halliburton II*")). "Merely pointing to other potential causes for a stock price change following a corrective disclosure is . . . not enough to rebut the *Basic* presumption."  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *12 (D.N.J. Aug. 31, 2015).  Rather, proving a lack of price impact requires showing "that the alleged misstatements caused ***no*** price impact whatsoever." *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 686-87 (D. Md. 2018); *see also Sterling Heights*, 2015 WL 5097883, at *5, *12 (defendants

bear the burden of "proving that the alleged misrepresentation(s) had no impact on the stock price");

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 270 n.18 (2d Cir. 2020) (Defendants must show that "other events explain the entire price drop"), *vacated on other grounds by Goldman*, 141 S. Ct. at 1963.

A.     **Because They Concede Price Impact for Two Misstatements and One Class Period Disclosure, Defendants Cannot Rebut the** *Basic* **Presumption**

Defendants concede that the *Basic* presumption applies to the period of May 11, 2020 to June 3, 2020, and further concede that two of the five groups of alleged misstatements (May 11 and May 12) and one of the four alleged disclosures (June 3) impacted Inovio's stock price. *See* Opp. at 16 (the presumption "can . . . apply to the period May 11, 2020 to June 3, 2020"). Having conceded price impact for some misstatements and an alleged disclosure, Defendants cannot meet their burden of "proving that the alleged misrepresentation(s) had ***no impact*** on the stock price." *Sterling Heights*, 2015 WL 5097883, at *5, *10 (citing *Halliburton II*, 573 U.S. at 278-79); *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019) (finding that defendants failed to rebut the presumption because they did not "even argue that there was 'no price impact whatsoever'"). Here, as in *Southern Co.*, Defendants concede that "the stock price decline following at least one Class Period corrective disclosure . . . was statistically significant," and "[t]his concession dooms Defendants' attempt to rebut the presumption of reliance." 332 F.R.D. at 395.

B.     **Defendants Fail to Prove that the Alleged Misstatements About Constructing a Vaccine in Three Hours Had No Price Impact**

Defendants argue that the February 14 and March 2, 2020 statements concerning Inovio having constructed a vaccine in three hours did not impact Inovio's stock price. Opp. 19-21. Setting aside Defendants' concession of price impact as to other statements, these arguments still fail.

### 1. Defendants Fail to Show the Absence of Price Impact from the February 14 Alleged Misstatement

Defendants argue that Inovio's stock price increase on February 14 "cannot be distinguished from normal volatility," *i.e.*, that the residual return was not statistically significant. *Id.* at 19 (citing Stulz Rpt., ¶51).[5] But that is insufficient. *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at *14 (E.D. Pa. Aug. 4, 2016) (quoting *Sterling Heights*, 2015 WL 5097883, at *12 n.8) ("[I]t does not 'necessarily follow from the mere absence of a statistically significant change in the stock price that there was no price impact.'").

Inovio executed an at-the-market offering of $100 million worth of their stock after the close of trading on February 13, 2020.  ¶98.  Defendants and their expert do not address the possible dilutive effect on Inovio's stock price as a result of this offering.  Thus, they failed to prove that the February 14 statement had no price impact.  Feinstein Rebuttal, ¶44 ("Dr. Stulz . . . similarly cannot reliably conclude that the 14 February 2020 and 2 March 2020 statements themselves did not impact the price of Inovio stock.").

### 2. Defendants Fail to Show the Absence of Price Impact from the March 2 Alleged Misstatements

Inovio's stock jumped nearly 70% in response to Kim's March 2 statements, and the parties' experts agree that the residual return was statistically significant.  ¶100; Feinstein Rpt., Ex. 8 at 103; Stulz Rpt., Ex. 2B at 1.  Defendants provide no evidence addressing what impacted Inovio's stock price and identify nothing other than the March 2 statements that would explain Inovio's stock price increase.  Instead, Defendants argue that the March 2 misstatements would not impact Inovio's stock price in an efficient market because "the alleged misrepresentation on March 2 is essentially the same" as the misstatement on February 14.  Opp. 19-20.  But this argument assumes away a fact in

---

[5]   The "residual return" "is the stock's return after controlling for market and industry sector effects."  Feinstein Rpt., ¶130; *see also* Stulz Rpt., ¶¶36-37 (residual return is the difference between the actual return and expected return).

controversy: whether or not the two statements conveyed the same information to the market.  Such a threadbare assertion cannot carry Defendants' burden of proving no price impact.  *See Sterling Heights*, 2015 WL 5097883, at *12 (Defendants must come forward with direct evidence).

Defendants' argument is also factually incorrect, as the March 2 statements did not simply confirm the February 14 statement.  Rather, the March 2 statements provided more information about the vaccine "construct" being brought to market through "about one million doses."  Feinstein Rebuttal, ¶¶31-34.  And while the February 14 statement represented that Inovio was "able to construct our vaccine INO-4800 *in about three hours*," the March 2 statements represented that "we were able to *fully* construct our vaccine *within three hours*."  ¶¶97, 99.

Defendants' expert also conceded that the facts and circumstances surrounding purportedly "repeated statements" can be relevant when assessing the price impact of each statement.  Ex. G at 195:5-12 (███████████████████████████████████████████████████████████ ████████████████████).  If ever there were a case where changed circumstances mattered, it is this one.  Between the February 14 and March 2 statements, the world changed.  On February 14, 2020, the coronavirus killed its first victim outside Asia.  Ex. H.  On February 23, 2020, Italy implemented strict lockdown as the country became a global COVID-19 hotspot.  Ex. I.  Three days later, the Centers for Disease Control and Prevention warned the public to "brace . . . for the eventual community spread" and cautioned that "'disruption to everyday life may be severe.'"  *Id.*  And by March 1, 2020, COVID-19 had spread to nearly 60 countries, with about 7,200 infections and 104 deaths reported globally.  Ex. J.  Certainly the words of a vaccine development laboratory executive, in a televised audience with the President of the United States, carried more weight and were more closely watched by markets as the situation with COVID-19 dramatically worsened.

Defendants' expert testified ████████████████████████████████████████████████ █████████████.  Ex. G at 195:22-197:15.  Defendants' arguments thus rely on ignoring the fact

that by the time Kim faced a worldwide audience alongside President Trump on March 2, the most serious pandemic in a century had surged across the globe.  As a result of these developments, markets paid attention to Kim's statements and reacted more powerfully than they did a couple of weeks earlier.  As Defendants themselves recognize, it is a "market reality that a stock's price will not change upon the release of confirmatory information." *Greenberg v. Crossroads Sys.*, 364 F.3d 657, 663 (5th Cir. 2004).  Here, Inovio's stock price skyrocketed on March 3, after Kim made his statements at the White House the day prior.  By Defendants' own logic, the price reaction demonstrates that the statements could not have been merely confirmatory.

Defendants also argue that Inovio's March 3 press release concerning its vaccine development timeline was an "intervening event [that] severs the link between the alleged misrepresentation on March 2 and the increase in Inovio's stock price the following day."  Opp. at 20 (citing *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *8 (N.D. Cal. Dec. 5, 2017)).  But Defendants ignore that the information in the March 3 press release had been disclosed the previous day at the White House meeting, alongside the alleged misstatements and omissions.  Feinstein Rebuttal, ¶¶33-35.  And Defendants' expert conceded that ████████████████████ ████████████████████.  Ex. G at 192:5-193:6.  Nor does *Finisar* help Defendants, because there, unlike here, there was no statistically significant price increase following the statements at issue.  2017 WL 6026244, at *8.  *See Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 345 n.3 (D.N.J. 2018) (finding *Finisar* factually inapposite where defendants failed to present "direct evidence, through their own event study, that demonstrated a lack of price impact"), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019).

- 9 -

**3.    Price Impact for the February 14 and March 2 Misstatements Can Also Be Inferred from the Price Action Following the Alleged March 9 Disclosure**

On March 9, 2020, Inovio's stock price declined from an opening price of $18.72 to close at $9.83, following the disclosure that Inovio had ***not*** constructed its vaccine within three hours, and the stock dropped further on March 10, 2020, as investors continued to absorb the news. ¶¶113-114. The parties' experts agree that the residual returns on these dates were statistically significant. Feinstein Rpt., Ex. 8 at 104; Stulz Rpt., Ex. 2B at 1.

Rather than try to explain the stock price decline or show no price impact, Defendants raise what amounts to a truth-on-the-market defense, arguing that the market was already aware that Inovio had designed its vaccine in three hours. Opp. at 20-21. But courts have rejected truth-on-the-market arguments disguised as price impact arguments. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481-82 (2013) (quoting *Basic*, 485 U.S. at 249 & n.29) (proof that "'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements . . . is a matter for trial'" or summary judgment); *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *12 (D.N.J. Nov. 29, 2020).

Further, Defendants' argument ignores the fact that Kim selected the word "construct" deliberately and used it to effect. Just minutes before Kim stepped into the Situation Room, ███

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ Ex. K at -1299 (ellipses in original). ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ *Id.* at -1298 (ellipses in original). ███████████

████████████████████████ *Id.* An hour later, Kim told the world that Inovio had "fully constructed" its vaccine in three hours. ¶99.

The March 9 disclosure brought the subterfuge to an end. The market learned through a Tweet that Kim's statements had been false and misleading – likely drafted with ████████ input. Ex. L (████████████████████████████████████ ████████████████████████ ). The next day, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████ Ex. M at -0640-0641.

Defendants also argue that intraday analysis of Inovio's stock price on March 9 undermines price impact because the stock price declined after a Tweet by Citron Research ("Citron") earlier in the day and increased slightly after Inovio's Tweet in response. Opp. at 21. But this argument blinks at reality. As Plaintiffs have alleged, Inovio's stock price dropped in response to the exchange between Citron and Inovio (both to Citron's accusations and Inovio's correcting of Kim), and Inovio's stock price continued dropping on March 10 as investors continued to absorb the news. ¶¶113-114; Feinstein Rebuttal, ¶¶36-37. The momentary pause in the decline after Inovio's Tweet is of no consequence. Defendants also ignore analyst commentary attributing the price decline to the alleged disclosure. Feinstein Rebuttal, ¶¶42-44.

### C. Defendants Fail to Prove the Absence of, and in Fact Concede, Price Impact from the Alleged Misstatements Concerning Inovio's Manufacturing Capabilities

Defendants do not dispute price impact with regard to the June 3, 2020 alleged disclosure and accept application of the *Basic* presumption for the date range of May 11, 2020 to June 3, 2020. Opp. at 16. Defendants, therefore, also concede price impact with regards to the alleged misstatements corresponding to the June 3 disclosure (the March 24, May 11, and May 12 statements concerning Inovio's manufacturing capabilities). *See Emergent*, 322 F. Supp. 3d at 690 (where

defense expert admitted that corrective disclosure "'had an adverse impact on the stock price,'" defendants failed to disprove price impact); *Celgene*, 2020 WL 8870665, at *10 ("'[P]rice impact is shown if, when the truth is revealed, the artificial inflation in the stock price (maintained as a result of a repeated misrepresentation) dissipated and the price of the stock fell.'").

Yet Defendants still argue that "(1) there was no price impact from the March 24 alleged misrepresentation, and (2) there is no basis to infer price impact on May 11 or May 12 from the August 9 and 10 disclosures." Opp. at 21. The Court should reject these arguments too.

### 1. Defendants Fail to Show the Absence of Price Impact from the March 24, 2020 Alleged Misstatements

Defendants argue that the stock price increase on March 24 "cannot be distinguished from normal volatility and random fluctuations." *Id.* at 22. But "to successfully rebut the *Basic* presumption, a defendant cannot simply show that a price did not rise after a misrepresentation." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 256 (2d Cir. 2016) (statements that "maintain inflation already extant in a company's stock price, but do not add to that inflation, nonetheless affect a company's stock price"); Feinstein Rebuttal, ¶21 ("Price impact and price movement are not the same thing. Information that prevents a stock price decline has price impact even though there may be no movement in the stock price."). Defendants have already conceded price impact as to the manufacturing statements. *See* §III.C., *infra*.

### 2. Though Not Necessary, Price Impact Can Be Inferred from the August 10 Disclosures

Defendants argue that price impact cannot be inferred from the August 10 disclosures, asserting that the disclosures did not reveal new information regarding the allegedly omitted facts.[6]

---

[6]   Plaintiffs previously stipulated that they are not arguing corrective information was published on August 9, 2020. *See* Ex. N.  Apparently Defendants' expert was not familiar with that stipulation

Opp. at 22-23.   But the question is whether **the misstatements** had price impact.   And here, Defendants have already conceded that price impact can be inferred from the June 3, 2020 alleged disclosure – and this concession establishes price impact for the manufacturing-related statements. Quibbling with the August 10 disclosures does nothing for Defendants now.   *See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 487 (E.D. Pa. 2021) ("Contesting one date out of many does not show that the market was inefficient or that stock purchasers were not relying on the market . . . .").

Even if Defendants had not conceded price impact, their argument that no new information regarding Inovio's manufacturing capabilities entered the market on the evening of August 10, 2020 is fatally flawed.   First, the market **did** learn new material information.   Second, Defendants failed to provide their expert with material evidence relevant to evaluating price impact.

On May 11, 2020, Kim claimed that the Company was, **at that moment**, "on track" to deliver 100 million doses of vaccine in 2021.   ¶¶10, 106.   But after the Company's lawsuit against VGXI, Inc. ("VGXI") became public on June 3, 2020, Defendants took action to calm investors' concerns through a series of "████████████."   For example, one ████████████ disseminated to market participants (without the use of an Inovio press release) was, ████████████

████████████████████████████████████████████████████████

████████████████████████████████ Ex. O at -6002.   That exact language appeared in a June 4 *Philadelphia Business Journal* article and was attributed to Richardson.   Ex. P.   On June 4, 2020, *Politico* quoted Kim again saying Inovio was then "on track" and the litigation would be resolved in days.   Ex. Q.[7]

---

and Defendants chose to ignore it.   Plaintiffs will address the arguments regarding the August 10 disclosures, which impacted Inovio's stock price on August 11 and 12.

[7]   Dr. René Stulz testified ████████████████████████████████████████████

████████████████████████████████████████████████████ Ex. G at 147:2-148:25, 150:14-21, 161:9-162:2.

4870-9970-9189.v1

After the court in the VGXI litigation denied Inovio's request for equitable relief, Defendants again attempted to calm investors' fears.   On June 25, 2020, RBC Capital Markets informed investors that "after processing the [court opinion] *and speaking with the company . . . we look to ongoing clarity from mgmt on their strategy to scale up the manufacturing capabilities*." Ex. R at 2.  On June 26, 2020, Defendants said that the VGXI case was ███████████████████

████████████████████████████████████████████████████████████████

Ex. S at -4751.  After receiving Defendants' guidance on June 26, *Bloomberg* quoted Stifel analyst Stephen Willey as saying that he still expected a near-term resolution of the dispute.   Ex. T. Defendants' act of calming investors' fears created an expectation that Defendants would quickly disclose the full impact of the VGXI litigation on the Company's goal of delivering 100 million doses in 2021.  This expectation was all the more fervent given Inovio's announcement that it and one of its partners, Ology, had received millions from the Department of Defense and had been selected as a potential candidate for Operation Warp Speed. ¶11.  The market, accordingly, expected quick and positive updates from management, because time was of the essence in the race for a vaccine.

The truth, of course, was that the technology transfer dispute was a disaster for the Company and Inovio had no realistic shot at manufacturing 100 million doses of its vaccine in 2021.  The market figured this out on August 10, 2020, when, on a conference call, Stifel analyst Stephen Willey asked, "And I guess, what are the projected time lines to a resolution [of the VGXI case] if this does indeed need to be litigated?"  Ex. U at 9.  Kim's prior optimism vanished: he refused to speak about the case and answered no questions about it.  *Id.*  Then he added, "our focus is squarely on scaling up for the 100 million doses that we feel are needed in 2021."  *Id.*  Compared to prior claims that Inovio was "on track" to hit its goals, this new statement was a step backwards.  The subtext was that Inovio was no longer "on track," but rather needed once again to find a compatible

- 14 -

manufacturing partner so that it could "scale up" production.  Conspicuously ignored by Defendants and their expert, analysts condemned Kim's answers regarding manufacturing guidance, even suggesting that he had been lying all along.  On August 11, 2020, Roth Capital Partners told investors, "***we do not believe management's production forecasts***."  Ex. V at 1.  The same day, Cantor Fitzgerald dropped its target price on Inovio from $45 to $31 and remarked, "Our price target reduction results from . . . ***only a cautious optimism in manufacturing capacity, given management commentary on the 2Q20 call***."  Ex. W at 1.

Defendants do not dispute that Inovio's stock price dropped significantly between August 11 and August 12, 2020.  Moreover, ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████  Ex. G at 142:4-144:24; *see also* Feinstein Rebuttal, ¶¶45-56.  And Defendants' argument that there is a purported "mismatch" between the contents of the misstatements and the corrective disclosure (Opp. at 24) is wrong.  A disclosure need only "'relate to, concern, or be linked to a specific alleged misrepresentation.'"  *Endo*, 338 F.R.D. at 483.  It need not be a "mirror image" of the misstatement.  *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021).  That requirement is easily met here.  Feinstein Rebuttal, ¶49 ("Information that told the market that the Company could not produce the represented aggregate volume of doses partially corrects the alleged misrepresentations and omissions, regardless of whether the disclosures identify specific certain manufacturing partners.").  Finally, having failed to establish a lack of price impact for any of the alleged misstatements or disclosure dates, Defendants' attempt to rewrite the class period definition (Opp. at 11-15) should be rejected.

## IV.    CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion for Class Certification.

DATED:  December 8, 2021

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)

s/ LAWRENCE F. STENGEL
LAWRENCE F. STENGEL

280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 8, 2021, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left: 50%;">

s/ LAWRENCE F. STENGEL
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)

E-mail:  lfs@saxtonstump.com

</div>

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **ANDREW DAVID ABRAMOWITZ**
  aabramowitz@bm.net,jgionnette@bm.net

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,emagnus@bm.net

- **MATTHEW S. DECKER**
  MDecker@duanemorris.com

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,eyork@bm.net,csimon@bm.net,jgionnette@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **KOJI F. FUKUMURA**
  kfukumura@cooley.com,chourani@cooley.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com,autodocketPHL@duanemorris.com

- **SEAN MCGUIRE**
  smcguire@rgrdlaw.com,e_file_SD@rgrdlaw.com,scaesar@rgrdlaw.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)