IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK MCDERMID, individually and on behalf of all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>    Defendants. | Case No. 2:20-cv-01402-GJP<br><br> CLASS ACTION |

**DEFENDANTS' SURREPLY TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

        A.      Defendants Have Proven that the Alleged Misstatements about
                Constructing a Vaccine in Three Hours Had No Price Impact. ............................ 2

                1.      Inovio's stock price was not diluted on February 14. ................................ 2

                2.      Inovio's March 2 statement could not have price impact because it
                        is repetitive of the February 14 statement. ............................................... 2

                3.      Price impact cannot be inferred from the March 9 statement. ................... 5

        B.      Price Impact for the Manufacturing Statements Cannot Be Inferred from
                the August 10 Price Decline. ............................................................................... 7

                1.      There is a mismatch between Plaintiffs' belatedly-identified
                        August 10 corrective disclosure and the May 11 challenged
                        statement. .............................................................................................. 7

                2.      Dr. Stulz considered all evidence relevant to price impact. ..................... 8

        C.      The Court Possesses the Authority to Limit the Overbroad Proposed Class
                Period. ............................................................................................................... 10

III.    CONCLUSION .................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
 2007 WL 276150 (D.N.J. Jan. 25, 2007) ................................................................................10

*Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
 879 F.3d 474 (2d Cir. 2018) .....................................................................................................6

*In re Bell Atl. Corp. Sec. Litig.*,
 1997 WL 205709 (E.D. Pa. Apr. 17, 1997) ......................................................................... 5-6

*In re Celgene Corp. Sec. Litig.*,
 2020 WL 8870665 (D.N.J. Nov. 29, 2020) ..............................................................................6

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
 2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ...........................................................................6

*Goldman Sachs Grp. Inc. v. Ark. Tchrs. Ret. Sys.*
 141 S. Ct. 1951 (2021) ..............................................................................................................8

*In re Intel Corp. Sec. Litig.*,
 2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) .........................................................................5

*Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*,
 332 F.R.D. 370 (N.D. Ga. 2019) .............................................................................................10

*Ryan v. Flowserve Corp.*,
 245 F.R.D. 560 (N.D. Tex. 2007) ........................................................................................ 9-10

*Sherman v. Am. Eagle Express, Inc.*,
 2012 WL 748400 (E.D. Pa. Mar. 8, 2012) .............................................................................10

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
 325 F.R.D. 280 (D. Minn. 2018) ..............................................................................................6

**Other Authorities**

4C Robert J. Haft, *et. al.*,
 Tax-Advantaged Securities § 25:48 ..........................................................................................2

Defendants Inovio Pharmaceuticals, Inc. ("Inovio"), J. Joseph Kim, Peter D. Kies, and Robert J. Juba (collectively "Defendants") submit the following Surreply in response to Plaintiffs' Motion for Class Certification ("Motion").

## I.    INTRODUCTION

In their Reply brief, Plaintiffs seek to distract from the problems with their proposed class by mischaracterizing Defendants' expert's testimony, alleging new theories regarding corrective information, and relying on non-public information. Despite Plaintiffs' efforts, they failed to overcome the critical flaws Defendants identified in their Opposition.

*First*, February 14 to March 9, 2020, should be eliminated from the class period because Defendants have proven that the alleged misstatements about constructing a vaccine instead of merely designing a vaccine had no price impact. Plaintiffs' arguments to the contrary have no merit.

*Second*, Plaintiffs are still unable to articulate a single piece of corrective information that the market learned on August 10. Rather, they now claim for the first time that Inovio's August 10 statement regarding its 2021 manufacturing goals corrected the May 11 statement regarding its 2020 manufacturing goals. But this does not solve any of their problems: (1) the new corrective disclosure does not match the alleged misrepresentations; and (2) all of the facts Plaintiffs allege were omitted from the May 11 statement were fully disclosed well before August 10.

*Finally*, Plaintiffs' argument that the Court need not tailor the proposed class prior to certification is meritless. Defendants are not required to disprove price impact as to every alleged misstatement and corrective disclosure for the Court to modify the class period.

## II.    ARGUMENT

### A.    Defendants Have Proven that the Alleged Misstatements about Constructing a Vaccine in Three Hours Had No Price Impact.

#### 1.    Inovio's Stock Price Was Not Diluted on February 14.

Plaintiffs' argument that Inovio's expert, Dr. Stulz, should have taken into account the purportedly dilutive effect of Inovio's at-the-market offering ("ATM") is unsupported and inaccurate.  (Reply at 7.)  Inovio did not "execut[e]" an ATM "after the close of trading on February 13, 2020." (*Id.*)  On February 13, 2020, Inovio filed a Notice of Effectiveness for its Form S-3 filed on January 31, 2020, to register shares of common stock for its previously-issued convertible bonds, which could be converted into Inovio common stock beginning on August 1, 2020.  (Exs. R & S.)[1]

To the extent Plaintiffs intended to reference Inovio's after-market announcement on February 7, 2020, regarding a $100 million ATM, the argument still fails.  It is well-known that "[t]he biggest advantage of ATM programs is their minimal market impact, based on the slow 'trickle' out of shares." 4C Robert J. Haft, *et. al.*, Tax-Advantaged Securities § 25:48.  Presumably, the fact that Plaintiffs are mistaken about the timing of Inovio's at-the-market offering and its minimal expected impact is why Plaintiffs' expert, Professor Feinstein, also does not address the impact of Inovio's ATM in either of his expert reports.  In short, Plaintiffs have identified no basis upon which Inovio's ATM should be considered in the price impact analysis.

#### 2.    Inovio's March 2 Statement Could Not Have Price Impact Because It Is Repetitive of the February 14 Statement.

Plaintiffs ignore the fact that Dr. Kim's March 2 statement repeated the same information Inovio announced two weeks earlier on February 14.  Instead, they argue that the March 2

---

[1]  "Ex." refers to the exhibits attached to the Declaration of Heather Speers in Support of Defendants' Surreply to Plaintiffs' Motion for Class Certification ("Speers Decl.").

statement could impact Inovio's stock price because: (1) it was made at a different time and under different circumstances than the February 14 statement; and (2) it was accompanied by new non-fraudulent information.  Both arguments implicitly concede that it was *not* the allegedly false statement that impacted the stock price.

*First*, Plaintiffs argue the March 2 statement "carried more weight" than the February 14 statement because it was made "in a televised audience with the President of the United States." (Reply at 8.)  But in an efficient market, information is fully incorporated into a company's stock price within a matter of minutes of its announcement.  Contrary to Plaintiffs' argument, this is not a case where information was previously reported in an obscure setting and later became widely available via a new reporting source.  Instead, the information was initially reported on Fox News, a televised nationwide news source.  That the information was repeated two weeks later in another highly visible venue does not change the fact that it was already fully incorporated into the price of Inovio's stock and therefore could not have had price impact.

In an attempt to support their argument, Plaintiffs mischaracterize Dr. Stulz's deposition testimony, claiming he "conceded that the facts and circumstances surrounding purportedly 'repeated statements' can be relevant when assessing the price impact," but that he failed to undertake that analysis here.  (Reply at 8.)  Nonsense.  Dr. Stulz was very clear in his deposition that he had considered the circumstances in which the March 2 statement was made and concluded that the facts alleged to be misleading were already public information and thus, in an efficient market, would not have impacted Inovio's stock price:

> Q: Is it your opinion that the circumstances under which that statement were made are irrelevant to your assessment on price impact?
>
> A: There are cases where the circumstances can make a difference, and there are other cases where it doesn't.

Q: And did you conclude that in this case the circumstances didn't make a difference?

A: I concluded that in this case the market knew since January that it had taken three hours to develop the design of the – [to] design[] the vaccine; that that is the information that seemed to be intriguing to people, the three hours; and that was known.

Q: For purposes of the basis of your opinion, did you consider the circumstances under which that statement was made on assessing price impact?

A: I thought about whether [there] was anything that made the statement different, but the statement had already been – essentially been made.

(Ex. T at 195:6-196:3 (objections omitted).)

Upon further questioning about why the changed circumstances analysis was not referenced in his report, Dr. Stulz replied:

I don't have a discussion of the change in circumstances because it was not relevant to my opinion. The -- there is no evidence, as I keep repeating, that analysts [thought] that there was new information [] at that time. Now, by that time, the market knew that the vaccine existed in physical form and had been used in preclinical trials. That was public information.

(*Id.* at 197:8-15.)

Plaintiffs also argue that the statement had price impact on March 2 because the pandemic worsened in the period between the February 14 and March 2 statements. (Reply at 8.) But even if market participants became more interested in investing in biotechnology companies in the context of the intensifying pandemic, this does not create any price impact from repetition of information the market already knew. Of course, price impact from the intensifying pandemic is unrelated to the statement Plaintiffs allege to be false, and thus, does nothing to refute Defendants' price impact arguments.

***Second***, Plaintiffs argue the March 2 statement is not repetitive of the February 14 statement because it was accompanied by the announcement that Inovio expected to deliver "about

4

one million doses" by the end of 2020.  (Reply at 8; FAC ¶ 99.)  To be clear, although Plaintiffs' challenge statements made later in the proposed class period regarding Inovio's production goals, ***they do not allege this March 2 statement regarding Inovio's goal of producing 1 million doses was false or misleading***.  (Opp. Exs. D at 4 & E at 4.)  In other words, Plaintiffs effectively concede that it was ***not*** the allegedly false statements about constructing a vaccine in three hours that caused the stock price to rise, but rather, it was the ***non-fraudulent*** statement about Inovio's manufacturing goals.  This argument plainly does nothing to refute Defendants' price impact arguments; if anything, it bolsters them.

### 3.    Price Impact Cannot Be Inferred from the March 9 Statement.

Plaintiffs also fail to rebut Defendants' evidence that Inovio's March 9 stock decline was unrelated to the alleged fraud, and thus, provides no basis to infer artificial inflation from the alleged misrepresentations on February 14 or March 2.

The evidence is incontrovertible: Prior to March 9, the market was already aware that Inovio had ***designed*** its vaccine in three hours and started small-scale manufacturing and preclinical trials shortly thereafter.  (Opp. at 5-6, 20-21.)  Plaintiffs claim that this is an untimely truth-on-the-market defense (Reply at 10), but they are wrong.  A truth on the market defense does not apply here—where the truth was disclosed by the company.  *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *13 n.18 (N.D. Cal. Mar. 29, 2019) (noting that a "truth on the market" defense applies "where a defendant's failure to disclose material information may be excused where the information was made credibly available to the market by other sources" and concluding it did not apply to defendants who were "argu[ing] that they disclosed all required information").  And, a truth-on-the-market defense also does not apply here—where information was made known to the market ***after*** the alleged misrepresentation.  *In re Bell Atl. Corp. Sec. Litig.*, 1997 WL 205709, at *26 (E.D. Pa. Apr. 17, 1997) (the truth-on-the-market doctrine applies where "the

market was not affected by the representation because the truth of the matter was already known and had been factored into market prices").

In any event, the law is clear that at the class certification stage, courts must consider evidence of whether an alleged corrective disclosure is presenting facts to the market for the first time. *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 485 (2d Cir. 2018) (remanding case to district court to consider defendant's argument that the fact was disclosed on 34 instances without decline in price before alleged corrective disclosure); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *21-22 (S.D.N.Y. Oct. 18, 2019), *R. & R. adopted in part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) (finding that the 2018 Second Circuit decision in *Goldman* requires district courts to consider the "'newness' of corrective disclosure at the class certification stage"); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic*, Inc., 325 F.R.D. 280, 291 (D. Minn. 2018) ("Corrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time, because, if investors already know the truth, false statements won't affect the price." (internal quotation marks and citation omitted)).  The Third Circuit has held the same.  In fact, in the very case Plaintiffs cite, the court found defendants failed to rebut the *Basic* presumption in part because "[d]efendants d[id] not provide their own evidence demonstrating that the market had already reacted to news." *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *12 (D.N.J. Nov. 29, 2020).

Perhaps realizing that this is a losing argument, Plaintiffs attempt to distract the Court with a series of internal Inovio communications. (Reply at 10.)  However, as non-public documents, these communications have no bearing on price impact.  At most, the communications could support falsity or scienter, which are not at issue at class certification.  However, a close examination of the documents shows no intent to defraud, but rather confirmation that Inovio

6

believed its statements were true.  (*See, e.g.*, Reply Ex. K ("Please note where we say in the attached that DNA vaccine INO-4800 was designed in three hours...we believe this may cover the vaccine construct comment since it speaks to design."); Reply Ex. M ("Best to drop the 3-hour vaccine talk....it's hurting us....***while true***...no one believes you can make a vaccine in 3 hours...and we're left cleaning this up multiple times on media and investor phone calls.") (emphasis added).)

Finally, Plaintiffs' argument that the Citron Tweet is ***also*** a corrective disclosure is neither timely nor tenable.  Plaintiffs have unambiguously represented to this Court that they are not alleging that the Citron Tweet is a corrective disclosure: "The Complaint alleges that Inovio, ***not Citron***, corrected Kim's statements on March 9, 2020."  (ECF 80 at 24 (emphasis added) (citing FAC ¶ 101).)  Nor does this argument make any sense.  Citron accused Inovio of lying about the time it took to ***design*** the vaccine; an accusation that Inovio refuted, and which Plaintiffs do not allege here.  Furthermore, as discussed in Inovio's Opposition, Inovio's response to the Citron tweet only repeated the same statement it made on March 3, again saying that "Inovio designed a vaccine construct for its coronavirus vaccine (INO-4800) within three hours."  (Opp. at 5; FAC ¶ 13.)

**B.    Price Impact for the Manufacturing Statements Cannot Be Inferred from the August 10 Price Decline.**

**1.    There Is a Mismatch Between Plaintiffs' Belatedly-Identified August 10 Corrective Disclosure and the May 11 Challenged Statement.**

Although not alleged in the Complaint, Plaintiffs argue for the first time in their class certification briefing, that Dr. Kim's statement on the August 10 earnings call that, "our focus is squarely on scaling up for the 100 million doses that we feel are needed in 2021" corrected his prior statements from May 11.  (Reply at 14-15.)  But despite Plaintiffs' assertions, Dr. Kim was discussing different manufacturing goals in his May 11 and August 10 statements.

7

To make this new argument, Plaintiffs need to mischaracterize the May 11, 2020 challenged statement. They state in their Reply that on the May 11 earnings call, "Kim claimed that the Company was, at that moment, 'on track' to deliver *100 million doses of vaccine in 2021*." (Reply at 13 (emphasis modified).) This is incorrect. On May 11, Dr. Kim stated that Inovio was "on [the] right track" to produce *1 million doses in 2020*. (FAC ¶ 106.) With respect to the 2021 goal of 100 million doses, on May 11, Dr. Kim said only that Inovio was "preparing and increasing [its] scale to be able to provide hundreds of millions of doses starting next year." (Ex. U at 12-13.)

Relying on this mischaracterization, Plaintiffs claim that Dr. Kim's August 10 statement about Inovio's progress with respect to its 2021 goal of 100 million doses corrected Dr. Kim's May 11 statement about Inovio being "on [the] right track" to meet its 2020 goal of one million doses. These two statements, however, are not comparable as they relate to two different goals. In other words, there is a "mismatch between the contents of the misrepresentation and the corrective disclosure." *Goldman Sachs Grp., Inc. v. Ark. Tchrs. Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021).

Additionally, and perhaps most telling, Plaintiffs do not dispute that all of facts they allege were omitted from the May 11 statement were disclosed *prior to* August 10. (Opp. at 14-15; Ex. K.)

### 2.   Dr. Stulz Considered All Evidence Relevant to Price Impact.

In a last attempt to salvage their alleged August 10 corrective disclosure, Plaintiffs point to a series of internal communications and public articles from June 2020 that they claim should have been, but were not, factored into Defendants' expert's price impact analysis for August 10. (Reply at 13-14.) As an initial matter, Plaintiffs fail to explain how these internal communications and public articles from June 2020 are relevant to the August 10 price impact analysis. But even if

8

they were, Plaintiffs' arguments rely on a mischaracterization of both the documents and Dr. Stulz's testimony.

During Dr. Stulz's deposition, Plaintiffs' counsel repeatedly referred to Inovio's "standby statements" without providing any context as to what they were or showing Dr. Stulz the documents Plaintiffs' counsel was referencing.  (Ex. T at 147:2-162:4.)  Based on this exchange, Plaintiffs argue that "Defendants failed to provide their expert with material evidence relevant to evaluating price impact." (Reply at 13).  But that is wholly inaccurate.  Dr. Stulz made clear that he would not have considered any purely internal documents in his price impact analysis *because such documents cannot, as a matter of economic principles, have an impact on Inovio's stock price*.  (Ex. T at 148:1-9, 149:1-10, 152:23-153:2.)  And, as noted in his report, Dr. Stulz considered all public press published on June 4, 2020, including the June 4 *Philadelphia Business Journal* article (Opp. Ex. A at 83) that Plaintiffs contend contained the same information as the internal "standby statements."  (Reply at 13.)  Thus, to the extent the statements could have had any impact on Inovio's stock price, they were considered and Dr. Stulz still found no price impact for August 10.

Next, Plaintiffs claim that a June 4 *Politico* article "quoted Kim again saying Inovio was then 'on track' and the litigation would be resolved in days." (Reply at 13 (citing Reply Ex. Q).) The document Plaintiffs include, however, does not quote Dr. Kim as saying Inovio was "on track." (*See* Reply Ex. Q.)  Rather, he is quoted as saying "The last thing we want is by this fall or this winter, is realize through clinical testing that oh my god, we have a successful, safe and effective vaccine against Covid-19, and oh by the way, we only have a million doses." (*Id*.)  The Court must look to "the actual content of the press releases at issue," not Plaintiffs'

9

mischaracterization of them. *Ryan v. Flowserve Corp.*, 245 F.R.D. 560, 564 n.8 (N.D. Tex. 2007), *rev'd in part, vacated in part on other grounds*.

Finally, Plaintiffs point to a June 26 internal Inovio email as evidence that Defendants attempted to calm investors' fears following the June 25 Pennsylvania state court decision denying Inovio's request for a preliminary injunction against VGXI. (Reply at 14.) But again, it is unclear what Plaintiffs believe the import of this internal email to be given that the messaging in this email—"we're moving fwd with manufacturing plans to address the global need for an effective COVID vaccine"—was entirely consistent with Dr. Kim's later statements on August 10—"our focus is squarely on scaling up for the 100 million doses that we feel are needed in 2021." (Reply at 14.)

### C.    The Court Possesses the Authority to Limit the Overbroad Proposed Class Period.

Relying on out of circuit authority, Plaintiffs appear to argue that the Court lacks the power to modify the class period if it finds that Defendants have successfully rebutted the presumption of reliance as to only some, but not all, alleged misrepresentations and corrective disclosures. (Reply at 6 (citing *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019).) They are wrong. Courts in this Circuit have found that they undeniably "possess the authority to limit or modify class definitions in order to provide the precision needed for class certification." (Opp. at 11 (quoting *Sherman v. Am. Eagle Express, Inc.*, 2012 WL 748400, at *6 (E.D. Pa. Mar. 8, 2012) and citing *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2007 WL 276150, at *3 (D.N.J. Jan. 25, 2007)).)

This argument is particularly disingenuous here, where Defendants have demonstrated lack of price impact as to an entire theory of fraud (encompassing the period February 14 to March 9) and shown that the stock drop at the tail-end of the proposed class period cannot support an

inference of price impact as to any surviving challenged statement.  Resolution of these issues will not only impact the scope of discovery and issues at trial, but may influence the parties' assessment of their respective legal positions.

## III.  CONCLUSION

For the foregoing reasons and the reasons discussed in Defendants' Opposition to Plaintiffs' Motion for Class Certification, the Court should deny Plaintiffs' Motion.  If the Court is inclined to certify any class period, it should run from May 11, 2020 to June 3, 2020.

Dated: January 21, 2022

Respectfully Submitted,

DUANE MORRIS LLP

By: *s/ Patrick Loftus*
    Patrick Loftus (PA60417)
    30 South 17th Street
    Philadelphia, PA 19103
    (215) 979-1367 (phone)
    (215) 689-3591 (fax)
    loftus@duanemorris.com

    COOLEY LLP
    Luke Cadigan (*Pro Hac Vice*)
    500 Boylston Street
    14th Floor
    Boston, MA 02116-3736
    (617) 937-2300 (phone)
    (617) 937-2400 (fax)
    lcadigan@cooley.com

    Koji F. Fukumura (PA73831)
    Heather Speers (*Pro Hac Vice*)
    4401 Eastgate Mall
    San Diego, CA 92121-1909
    (858) 550-6000 (phone)
    (858) 550-6420 (fax)
    kfukumura@cooley.com
    hspeers@cooley.com

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on January 21, 2022, I filed this document on the Court's docket using the Court's CM/ECF system.  Based on the Court's records, all counsel of record were served with a copy of the foregoing document by electronic means.

*s/ Patrick Loftus*

DUANE MORRIS LLP
Patrick Loftus (PA60417)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1367 (phone)
(215) 689-3591 (fax)
loftus@duanemorris.com

12