# Exhibit T

CONFIDENTIAL - UNDER PROTECTIVE ORDER

THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

PATRICK MCDERMID,                )
individually and on behalf )
of all other similarly      )
situated,                        )
                                 )Case No.
                 Plaintiff,      )2:20-cv-01402-GJP
                                 )
          vs.                    )
                                 )
INOVIO PHARMACEUTICALS,      )
INC., et al.,                    )
                                 )
                 Defendants.     )
                                 )


** CONFIDENTIAL **

** UNDER PROTECTIVE ORDER **


REMOTE VIDEOTAPED DEPOSITION

OF

RENÉ M. STULZ

Friday, November 19, 2021

Columbus, Ohio


Reported by:  B. Suzanne Hull, CSR No. 13495


Page 1

CONFIDENTIAL - UNDER PROTECTIVE ORDER

your stance on reviewing internal documents.                13:54:21

      Do you know what the June standby statements     13:54:24
are in this case?                                           13:54:27

      MS. WRIGHT:  Object to form.                      13:54:28

      THE WITNESS:  Not that I can remember.            13:54:29

BY MR. SMITH:                                               13:54:38

    Q.  Defense counsel didn't supply you those       13:54:40
documents in this case?                                     13:54:42

      MS. WRIGHT:  Object --                            13:54:44

      THE WITNESS:  No.                                 13:54:46

      MS. WRIGHT:  -- to the form.                      13:54:46

BY MR. SMITH:                                               13:54:48

    Q.  Is that correct?                              13:54:48

    A.  The only way I would know about those         13:54:50
documents is if they are part of the VGXI litigation        13:54:53
that is public.  Honestly, I don't remember them.           13:54:56

    Q.  Okay.  But you don't list any Inovio Bates    13:55:00
labeled documents that refer to the standby                 13:55:04
statements?  You are not aware of the standby               13:55:07
statements sitting here today; is that correct?             13:55:09

    A.  I certainly don't refer to any such           13:55:12
statements unless they are indirectly referred to as        13:55:17
part of the VGXI litigation and the documents related       13:55:23
to that litigation that I refer to when I would have        13:55:30
forgotten about them.                                       13:55:35

Page 147

CONFIDENTIAL - UNDER PROTECTIVE ORDER

Q.   The part in your report is you were not          13:55:35
aware of the June standby statements; is that right?   13:55:37

A.   I am not at this point remembering any such      13:55:45
statement.  As I have said repeatedly, I have no      13:55:49
reason to look at documents that were internal to     13:55:53
Inovio because I am not conducting a loss causation   13:55:59
analysis.  I am conducting a price impact analysis,   13:56:03
and the price impact analysis has to do the with the  13:56:05
impact of public information.                          13:56:11

Q.   Okay.  But you weren't aware of the standby      13:56:12
statements prior to issuing your report; is that      13:56:16
right?                                                 13:56:18

A.   I have nothing to change of my previous          13:56:18
answer.                                                13:56:21

Q.   Had you heard of that phrase, standby            13:56:21
statement, prior to today?                             13:56:25

MS. WRIGHT:  Object to form.                13:56:26

THE WITNESS:  Prior to today, I don't      13:56:27
remember having heard about those statements.          13:56:29

BY MR. SMITH:                                           13:56:29

Q.   Okay.  So sitting here today, you have no        13:56:31
knowledge about what was contained in the standby     13:56:37
statements; correct?                                   13:56:41

A.   As I sit here today, I don't have any            13:56:42
recollection.                                          13:56:46

Page 148

Q.   Sitting here today, you have no knowledge to whom Inovio sent those standby statements to; correct?

MS. WRIGHT:  Object to form.  And these facts are not in evidence.

BY MR. SMITH:

Q.   You can answer the question.

A.   As I have said repeatedly, I did not look at internal documents of Inovio because such documents were not relevant to my inquiry.

Q.   Sitting here today, you have no knowledge regarding who or how people responded after being exposed to the content of either standby statement; is that correct?

MS. WRIGHT:  Object to form.

THE WITNESS:  My recollection is that I have seen no mention of those statements in the documents that I considered or that I don't remember having seen any reference to those statements.

BY MR. SMITH:

Q.   And sitting here today, you have no knowledge why Inovio issued those standby statements; isn't that right?

MS. WRIGHT:  Object to form.

THE WITNESS:  Given that I haven't seen the

Page 149

statements, I can't comment on the content of the statements. 13:57:54 13:57:57

BY MR. SMITH: 13:57:58

Q. Do you -- 13:57:58

A. I said I don't remember. I mean, I said I haven't seen them. I don't remember discussions. 13:57:59 13:58:01

Q. Sitting here today, you have no knowledge of the message Inovio was conveying in either of those statements; correct? 13:58:03 13:58:05 13:58:10

MS. WRIGHT: Object to form. 13:58:11

THE WITNESS: I have told you what I can tell you about my knowledge of those statements. 13:58:12 13:58:16

BY MR. SMITH: 13:58:19

Q. Sitting here today, you have no knowledge of how Inovio worked with the public relations consultants to further dissemination of the messages in the standby statements; isn't that right? 13:58:21 13:58:23 13:58:26 13:58:29

MS. WRIGHT: Object to form. 13:58:32

THE WITNESS: You are referring to materials that I have not seen, that are not public, and that are not part of my report. 13:58:33 13:58:39 13:58:44

BY MR. SMITH: 13:58:44

Q. So sitting here today, you have no knowledge of who received information from either of the standby statements; isn't that right? 13:58:45 13:58:47 13:58:50

CONFIDENTIAL - UNDER PROTECTIVE ORDER

MS. WRIGHT:  Object to form.    13:58:53

THE WITNESS:  I -- now, I told you    13:58:54

everything I know about those statements.  But    13:59:14

I don't -- fail to see how any of this would affect    13:59:16

my opinions.    13:59:21

BY MR. SMITH:    13:59:24

Q.  How could you be in theory?    13:59:24

A.  Honestly, if you want me to look at this,    13:59:26

I will be glad to look at -- look at it and think    13:59:30

about it.  But I keep repeating the same statement,    13:59:33

which is that a price impact analysis is not a loss    13:59:37

causation analysis; that I took the steps that    13:59:44

I needed to take to perform a price impact analysis,    13:59:48

and those steps did not involve me looking at    13:59:52

internal communications of Inovio.    13:59:56

Q.  Well, we're not talking about internal    13:59:58

communications.  We are talking about communications    14:00:01

to market participants.    14:00:03

You have no knowledge of that, do you?    14:00:04

MS. WRIGHT:  Object to form.    14:00:06

THE WITNESS:  I am back to what I have said    14:00:07

before, which is what is relevant for the price    14:00:20

impact analysis that I conduct is the information    14:00:24

that is public.  If you are saying that I omitted    14:00:28

public information, then I would like to see it, and    14:00:33

Page 151

CONFIDENTIAL - UNDER PROTECTIVE ORDER

I would like to think about it.  As far as I know, you have not shown that I was missing public information.

If there is private information that is disclosed and is disclosed before the alleged curative disclosure, that information might be already in the price and would not affect my opinion of price impact.

BY MR. SMITH:

Q.  Well, isn't it true that because you haven't seen the standby statements, you wouldn't know how that information became public?

MS. WRIGHT:  Object to form.  Assumes evidence -- assumes facts not in evidence.

BY MR. SMITH:

Q.  You can answer the question.

A.  What I can say is that I have not seen evidence of those statements in the research that I have conducted.  If you show me that those statements were public in some form, then I would want to consider them, and I would want to think about them.

Q.  But you never got that opportunity because you didn't see the standby statements; isn't that right?

14:00:37
14:00:40
14:00:42
14:00:44
14:00:47
14:00:55
14:00:59
14:01:05
14:01:07
14:01:08
14:01:10
14:01:14
14:01:16
14:01:20
14:01:21
14:01:22
14:01:26
14:01:31
14:01:39
14:01:44
14:01:51
14:01:54
14:01:56
14:01:57
14:02:01

Page 152

CONFIDENTIAL - UNDER PROTECTIVE ORDER

MS. WRIGHT:  Object to form.      14:02:01

THE WITNESS:  If I had seen references to      14:02:05
those statements and had seen discussions that was      14:02:07
important information, I obviously would have      14:02:12
investigated further about those statements.  My      14:02:18
recollection is that I never saw any discussion of      14:02:23
this, either from the company, through the media, or      14:02:26
through analyst statements.      14:02:31

BY MR. SMITH:      14:02:33

Q.  And, again, you never received copies of the      14:02:35
standby statements; so you wouldn't know what to      14:02:38
investigate; isn't that right?      14:02:43

MS. WRIGHT:  Object to form.  Asked and      14:02:44
answered.      14:02:45

THE WITNESS:  What went on within the      14:02:45
corporation is not the object of my research in this      14:02:48
report.  At the next stage of this litigation, if      14:02:55
there is one, whoever is as the experts will have      14:03:01
to look at that type of information under some      14:03:07
circumstances.  But in this stage of the litigation      14:03:10
there was no reason for me to do so because I was      14:03:14
concerned about the impact on the stock price of      14:03:17
public information, and so I found that for August 9      14:03:22
and August 10, there was no new information that was      14:03:28
disclosed that was related to the allegations      14:03:33

Page 153

CONFIDENTIAL - UNDER PROTECTIVE ORDER

concerning manufacturing capability as they are    14:03:37

summarized by the court.    14:03:42

BY MR. SMITH:    14:03:44

Q.   And, of course, you wouldn't know that    14:03:45
because you didn't see -- receive copies of the    14:03:46
standby statements; isn't that right?    14:03:49

MS. WRIGHT:   Object to form.   Asked and    14:03:51
answered.    14:03:52

THE WITNESS:   So I -- I don't -- I mean,    14:03:53
you -- you will have to reframe your question because    14:03:54
I just told you why those statements that weren't    14:03:58
public weren't an issue for me to investigate.    14:04:02

BY MR. SMITH:    14:04:07

Q.   But that information did become public, and    14:04:08
you weren't aware of that; isn't that right?    14:04:10

MS. WRIGHT:   Object to form.    14:04:12

THE WITNESS:   I looked extensively for    14:04:15
public -- new public information.   Those statements    14:04:18
were not discussed on August 10 and, therefore, could    14:04:22
not be public information that affected the stock    14:04:30
price on August 11.    14:04:33

BY MR. SMITH:    14:04:36

Q.   So it -- are you testifying that the standby    14:04:36
statements don't make a difference here because you    14:04:41
are certain that none of the information contained in    14:04:44

Page 154

CONFIDENTIAL - UNDER PROTECTIVE ORDER

them became public?  14:04:46

MS. WRIGHT:  Object to form.  14:04:47

BY MR. SMITH:  14:04:48

Q.  How can you be certain of that?  14:04:48

MS. WRIGHT:  Object to form.  Assumes facts  14:04:50
not in evidence.  14:04:52

We don't know what the standby statements  14:04:53
are that you keep referring to.  14:04:55

MR. SMITH:  Well, you produced them.  I'm  14:04:57
sure you do know what they are.  14:05:01

MS. WRIGHT:  Trig, if there is --  14:05:02

BY MR. SMITH:

Q.  You can answer --

MS. WRIGHT:  -- something to show him --

BY MR. SMITH:

Q.  -- the question.

MS. WRIGHT:  -- show him, but I don't  14:05:04
know --  14:05:05

MR. SMITH:  No.  14:05:05

I don't need to show him anything.  It is my  14:05:06
deposition.  If you want to show them to him, you  14:05:09
can.  14:05:11

BY MR. SMITH:  14:05:13

Q.  Professor Stulz, you have no knowledge,  14:05:14
sitting here today, whether any information from the  14:05:17

Page 155

CONFIDENTIAL - UNDER PROTECTIVE ORDER

standby statements became public or how they became   14:05:19

public; isn't that right?   14:05:25

MS. WRIGHT:  Object to the form.   14:05:26

THE WITNESS:  What is relevant for my   14:05:27

inquiry concerning August 10 is the information that   14:05:30

becomes public on that day.  Remember that I am   14:05:35

assuming that the market is efficient; therefore,   14:05:41

information that affects the stock price on August 11   14:05:45

is going to be mostly information that becomes public   14:05:51

after the close of markets on August 10.  I looked   14:05:55

extensively at that information; that on -- my   14:06:00

conclusion is that based on no new information   14:06:05

disclosed then by the company that is related to the   14:06:11

allegations, as I described them previously.  That is   14:06:15

all I need for my opinion.  I don't need anything   14:06:19

else.   14:06:22

BY MR. SMITH:   14:06:22

Q.  So if one of the elements of the standby   14:06:23

statement was repeated to a reporter and that   14:06:27

reporter attributed that statement to a member of   14:06:30

Inovio's senior management, you weren't aware of that   14:06:35

document, were you?   14:06:43

MS. WRIGHT:  Object to form.   14:06:44

THE WITNESS:  I -- I don't quite understand   14:06:45

what you are saying in the sense of --   14:06:48

Page 156

CONFIDENTIAL - UNDER PROTECTIVE ORDER

BY MR. SMITH:

    Q.  Because there is -- there is a little bit of standby --

    A.  I'm not done.

    Q.  There is an element of the standby statement in a news report.

        Are you saying you didn't see that?  How would you know that you -- how would you know to look for it if you weren't given a copy of the standby statement?

        MS. WRIGHT:  Object to form.

        THE WITNESS:  So I'm sorry.

        You interrupted me at the beginning of my answer here.

        What I'm saying is what matters here is what was learned.  Whether it reflected something in the statements that you are discussing or not is irrelevant for me.  The question is what became public, and that is what I focused on, and that is what I based my opinion on.

BY MR. SMITH:

    Q.  But nowhere in your report do you address the standby statements -- nowhere in your report do you apply your methodologies to addressing the standby statements.

Page 157

CONFIDENTIAL - UNDER PROTECTIVE ORDER

You didn't know about them because they were    14:07:49

not shared with you?    14:07:53

A.  No.    14:07:54

MS. WRIGHT:  Object to form.    14:07:54

THE WITNESS:  That is not correct.  That is    14:07:55

not correct because --    14:07:56

BY MR. SMITH:    14:07:57

Q.  Oh, you did see the standby statements?  Is    14:07:58

that what you are testifying to now?    14:08:02

A.  No.    14:08:04

MS. WRIGHT:  Object to form.    14:08:04

Mischaracterizes his testimony.    14:08:05

THE WITNESS:  And I'm saying I don't refer    14:08:07

to them because there is no public information on the    14:08:10

dates that I am focused on that talks about those    14:08:13

standby statements.  If --    14:08:18

BY MR. SMITH:    14:08:22

Q.  Okay.  How do you know that?    14:08:22

A.  I'm not done.    14:08:23

Q.  How do you know that?    14:08:24

A.  I'm not done.    14:08:24

Q.  How do you know that?    14:08:24

A.  I'm not done.    14:08:24

Q.  How do you know that?  You just made an    14:08:26

assertion that there is no information that became    14:08:27

Page 158

CONFIDENTIAL - UNDER PROTECTIVE ORDER

public out of the standby statements. 14:08:29

How do you know that? 14:08:33

A.  You didn't let me finish my answer. 14:08:35

Q.  Go ahead and finish. 14:08:38

A.  So the answer was not as -- your question 14:08:40
was that I didn't mention them because they weren't 14:08:45
shown to me.  And my answer is that whether they were 14:08:49
shown to me or not is irrelevant to my answer.  The 14:08:55
reason for that is that what is relevant for my study 14:08:59
is the public information.  If that public 14:09:02
information reflects something new that is related to 14:09:07
those statements, then it would have been 14:09:12
incorporated in my analysis.  But what matters is 14:09:15
what is new public information. 14:09:19

Q.  And you just said that no information out of 14:09:22
the standby statements became public. 14:09:26

Is that what you said? 14:09:29

A.  No. 14:09:30

I did not say that.  What I said is that 14:09:31
I examined exhaustively the new private 14:09:33
information -- I mean the new public information, and 14:09:37
I concluded that the new private information is not 14:09:40
related to the allegations concerning manufacturing 14:09:45
as they are summarized by the court in the court's 14:09:50
decision.  That is all I needed for my report. 14:09:54

Page 159

CONFIDENTIAL - UNDER PROTECTIVE ORDER

I didn't need anything else.                                14:09:57

Q.   The report doesn't address any comments --            14:09:59
commentary of market participants based on                 14:10:05
information they were receiving from the company in         14:10:10
those standby statements; isn't that right?                14:10:12

MS. WRIGHT:  Object to form.                       14:10:15

THE WITNESS:  My report examined the market       14:10:16
commentary from the analysts.                              14:10:19

BY MR. SMITH:                                               14:10:21

Q.   Uh-huh.                                          14:10:21

A.   And so if some of that market commentary        14:10:22
reflected what they were -- analysts were told by the      14:10:26
company, it would be something I took into account.        14:10:31

Q.   Okay.  Did you see any information in your       14:10:34
review of the materials for this case where people         14:10:36
were talking about the status of the VGXI litigation       14:10:40
in June?                                                   14:10:44

MS. WRIGHT:  Object to form.                       14:10:45

THE WITNESS:  I saw doc- -- I mean, I saw          14:10:46
analyst reports that were discussing the VGXI             14:10:54
litigation throughout June and July and August.           14:10:58

BY MR. SMITH:                                               14:11:01

Q.   And did you have any understanding where the     14:11:02
information came from that those analysts were             14:11:03
putting in the reports regarding the VGXI litigation?      14:11:06

Page 160

CONFIDENTIAL - UNDER PROTECTIVE ORDER

A.   Well, some of that information obviously   14:11:12
came from the litigation itself that had access to   14:11:15
the lawsuit.   14:11:20

Q.   Did you eliminate all other sources of   14:11:21
information other than the VGXI litigation?   14:11:25

MS. WRIGHT:  Object to form.   14:11:29

THE WITNESS:  I'm sorry?  I'm sorry?   14:11:30

BY MR. SMITH:   14:11:30

Q.   Did you look for -- did you -- did you look   14:11:31
for company representatives commenting about what   14:11:33
they believed the status of the litigation was in   14:11:35
June?   14:11:39

A.   I -- I -- so going -- going back to the   14:11:42
question, I took into account all of the information   14:11:49
that was reflected in the analyst reports, in the   14:11:54
media, and in the statement by the company.   14:12:00

Q.   Okay.  But, again, I just want to make clear   14:12:03
that you did not consider the standby statements, how   14:12:10
they were communicated, who parroted -- parroted the   14:12:14
information from the standby statements.   14:12:17

You didn't address that in your report, did   14:12:19
you?   14:12:22

MS. WRIGHT:  Object to form.   14:12:23

THE WITNESS:  Well, let me summarize the   14:12:24
answer that I have given a number of times; that is   14:12:33

Page 161

CONFIDENTIAL - UNDER PROTECTIVE ORDER

that as of now I don't remember having seen those statements.  But whether I saw those statements or not is irrelevant to my report and is irrelevant to my opinions.

BY MR. SMITH:

Q.  What is your understanding of who makes a determination of what is relevant and not relevant in this case?

MS. WRIGHT:  Object to form.

THE WITNESS:  I am not substituting myself for the trier of fact.  The trier of fact makes those determinations.  What I am saying is in my analysis as a financial economist for what affected the stock price, that information would not be relevant for an analysis of price impact by a financial economist. That is all I am saying.

BY MR. SMITH:

Q.  Even if it would make -- even if it was being publicly disseminated by the defense?

MS. WRIGHT:  Object to form.

THE WITNESS:  What I am saying here is that my focus is on the information that is public; that, on the whole, that information changes on particular dates.  And so for August 11, what is relevant is what is it that the market learned just before

Page 162

CONFIDENTIAL - UNDER PROTECTIVE ORDER

three hours for more than a month.  If we are                15:04:45

anywhere close to an efficient market, that                  15:04:48

information would have been the price.                       15:04:52

BY MR. SMITH:                                                15:04:54

    Q.  So -- so let me ask the question again.              15:04:55

        Is it your opinion that the circumstances            15:04:58

under which that statement were made are irrelevant          15:05:00

to your assessment on price impact?                          15:05:06

        MS. WRIGHT:  Object to form.                         15:05:08

        THE WITNESS:  There are cases where the              15:05:09

circumstances can make a difference, and there are           15:05:20

other cases where it doesn't.                                15:05:22

BY MR. SMITH:                                                15:05:23

    Q.  And did you conclude that in this case the           15:05:23

circumstances didn't make a difference?                      15:05:25

    A.  I concluded that in this case the market             15:05:28

knew since January that it had taken three hours to          15:05:31

develop the design of the -- two designs of the             15:05:35

vaccine; that that is the information that seemed to         15:05:41

be intriguing to people, the three hours; and that           15:05:44

that was known.                                              15:05:48

    Q.  For purposes of the basis of your opinion,           15:05:49

did you consider the circumstances under which that          15:05:53

statement was made in assessing price impact?                15:05:57

        MS. WRIGHT:  Objection.  Asked and answered.  15:06:00

Page 195

CONFIDENTIAL - UNDER PROTECTIVE ORDER

THE WITNESS:  I thought about whether it was  15:06:03
anything that made the statement different, but the  15:06:06
statement had already been -- essentially been made.  15:06:09

BY MR. SMITH:  15:06:15

Q.  Did you consider what had changed between  15:06:16
February and March with regard to the pandemic?  15:06:18

MS. WRIGHT:  Objection.  Object to form.  15:06:21

THE WITNESS:  So is it the pandemic change?  15:06:25
We're still very much at the beginning.  Remember  15:06:29
that things accelerated dramatically after that  15:06:33
meeting at the White House.  15:06:37

BY MR. SMITH:  15:06:40

Q.  Precisely.  15:06:41

A.  After the meeting at the White House, not at  15:06:42
the time of the meeting at the White House, and so  15:06:45
what -- all this doesn't change anything to the fact.  15:06:50
No.  The fact is that Inovio had been saying that it  15:06:53
developed the vaccine in three hours; that Mr. Kim  15:06:56
had said developed -- I mean designed or constructed  15:07:00
in three hours; that was all known.  Now, repeating  15:07:05
it --  15:07:11

Q.  Well --  15:07:11

A.  -- in an efficient market is not going to  15:07:12
generate a price impact.  15:07:14

Q.  What do you --  15:07:16

Page 196

CONFIDENTIAL - UNDER PROTECTIVE ORDER

A.   If it does, then the efficient market becomes meaningless.                          15:07:18 15:07:20

Q.   Where in your report do you address the change to the circumstances?                15:07:21 15:07:24

A.   I -- I don't -- I mean --                                                           15:07:26

Q.   You don't -- you don't, period.                                                    15:07:30

A.   No.                                                                                 15:07:32

What I was going to say is I don't have a discussion of the change in circumstances because it was not relevant to my opinion.  The -- there is no evidence, as I keep repeating, that analysts sought that there was new information in that at that time.  Now, by that time the market knew that the vaccine existed in physical form and had been used in preclinical trials.  That was public information.    15:07:33 15:07:36 15:07:40 15:07:47 15:07:52 15:07:59 15:08:04 15:08:09

Q.   Okay.  Thank you.                                                                   15:08:15

I'd like to shift to the opinion at Paragraph 28-B in your report.  I believe you flesh that out in pages thirty-one and thirty-two.  This deals with the March 24th statement.              15:08:17 15:08:23 15:08:26 15:08:31

A.   Yes.                                                                                15:08:33

Q.   Okay.  What is your understanding of what the allegation is regarding that press release? What -- well, let me ask you differently.        15:08:34 15:08:37 15:08:42

What is your understanding of why plaintiffs    15:08:44

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL - UNDER PROTECTIVE ORDER

STATE OF CALIFORNIA )

) ss.

COUNTY OF KERN      )

I, B. Suzanne Hull, a Certified Shorthand Reporter in the State of California, holding Certificate Number 13495, do hereby certify that RENÉ M. STULZ, the witness named in the foregoing deposition, was by me duly sworn; that said deposition, was taken Friday, November 19, 2021, at the time and place set forth on the first page hereof.

That upon the taking of the deposition, the words of the witness were written down by me in stenotypy and thereafter transcribed by computer under my supervision; that the foregoing is a true and correct transcript of the testimony given by the witness.

Pursuant to Federal Rule 30(e), transcript review was requested.

I further certify that I am neither counsel for nor in any way related to any party to said action, nor in any way interested in the result or outcome thereof.

///

Page 223

CONFIDENTIAL - UNDER PROTECTIVE ORDER

Dated this 20th day of November, 2021, at Bakersfield, California.

B. Suzanne Hull, CSR No. 13495

Page 224