# Exhibit Q

# Inovio Pharmaceuticals, Inc.
## 10b5-1 Non-Discretionary Sale Plan

### SALE INSTRUCTIONS

### Seller's Name:  Peter Kies

ENTRY INTO THESE SALE INSTRUCTIONS REQUIRES PRE-APPROVAL UNDER **Inovio Pharmaceuticals, Inc.** INSIDER TRADING POLICY.  IN ADDITION, SOLIUM CAPITAL LLC WILL NOT ACCEPT ANY AMENDMENT OR MODIFICATION TO, OR TERMINATION OF THESE SALE INSTRUCTIONS, WITHOUT CONFIRMATION OF A NEW PRE-APPROVAL FROM **Inovio Pharmaceuticals, Inc.**

This form is a request that Solium Capital LLC ("Solium") exercise certain options or sell shares of stock in accordance with the instructions below.  Please fill out the instructions table as completely as possible, keeping in mind that it must be clear what shares you want sold or options you want exercised, when, and/or at what price.

| Line | a.<br><br>**<u>Designated Sale Period *</u>** | b.<br><br>**<u>Share Type</u>** | c.<br><br>**<u>Grant Date</u>** | e.<br><br>**<u>Vesting Date & Quantity for Unvested Shares</u>** | f.<br><br>**<u>Number of Shares to be sold</u>** | g.<br><br>**<u>Limit Price (if no limit, shares will be sold "at market")</u>** | h.<br><br>**<u>Notes</u>** |
|---|---|---|---|---|---|---|---|
| 1 | 6/3/2020 - 6/2/2021 | Long Shares | FIFO | Vested | 35,000 | $10 | FIFO |
| 2 | 7/15/2020 - 7/14/2021 | Options | 2/23/12 ISO $2.40 | Vested | 35,000 | $10 | |
| 3 | 12/15/2020 - 12/14/2021 | Options | 2/23/12 ISO $2.40<br>3/14/13 ISO $2.16 | Vested | 20,000 | $10 | |
| 4 | 1/15/2021 - 3/5/2021 | Options | 3/11/11 ISO $4.56 | Vested | 30,000 | $10 | |
| 5 | 3/8/2021 - 3/11/2021 | Options | 3/11/11 ISO $4.56 | Vested | 30,000 | $5 | Enter if above order didn't execute |

INO_EDPA_00147473

**Notice of transactions to be provided by Solium to:** <u>Peter Kies (pkies@inovio.com)] [Maggie Campbell (mcampbell@inovio.com).</u>

Upon receipt and execution of this completed and signed SALE INSTRUCTIONS page, Solium agrees to sell the stock described above, on the terms described above in accordance with Solium's Services Access Agreement with **Issuer** and subject to the attached TERMS AND CONDITIONS, which you should read in full. As a result of limitations in the TERMS AND CONDITIONS, there is no guarantee that the shares described above will be sold in accordance with your instructions. *Sale date contingent on company approval of vesting. Solium can only sell shares when company has approved and shares are available in account.*

SELLER                                                          SOLIUM CAPITAL LLC

DocuSigned by:                                                  DocuSigned by:

*Peter Kies*                                                    *[signature]*

D3E23A4C84CB4A9                                                 7D9B758C8DFE44E

Name:    Peter Kies                                            Name:  Matt Bezverkov
Date: 5/18/2020                                                Title: Team Lead, Executive Services

INO_EDPA_00147474

# TERMS AND CONDITIONS

THIS OPTION EXERCISE AND STOCK SALE PLAN ("Plan") between the employee ("Seller") named on the EXERCISE AND SALE INSTRUCTIONS PAGE hereto (the "Exercise Instructions") and Solium Capital LLC ("Agent"), acting as agent for Seller, is effective as of the date set forth on the Exercise Instructions.

I.    RECITALS

1.    This Plan is entered into between Seller and Agent for the purpose of establishing a trading plan that complies with the requirements of Rule 10b5-1(c)(1) under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

2.    Seller is establishing this Plan in order to permit either or both of (a) the orderly exercise of the options granted to Seller by **Inovio Pharmaceuticals, Inc.** (the "Issuer") and listed in the Exercise Instructions (the "Options") and (b) the sale of shares of common stock (the "Stock") either underlying the Options or granted to the Seller by the Issuer as restricted common stock (in either case, the "Plan Shares"), held in an account maintained at Solium Financial Services LLC, a broker-dealer affiliate of Agent ("SFS") in the name "Solium Financial Services, FBO *Issuer*".

3.    Seller acknowledges that Seller is subject to the Issuer's Insider Trading Policy, as amended and supplemented from time to time (the "Policy").

II.    SELLER'S REPRESENTATIONS, WARRANTIES AND COVENANTS

1.    As of the date hereof, Seller is not aware of any material nonpublic information concerning the Issuer or its securities.

2.    Seller is entering into this Plan during an established trading window period pursuant to the Policy and in good faith and not as part of a plan or scheme to evade compliance with the federal securities laws. This Plan has been reviewed by the Issuer and is, and shall remain, in compliance with the Policy.

3.    While this Plan is in effect, Seller agrees not to enter into or alter any corresponding or hedging transaction or position with respect to the securities covered by this Plan (including, without limitation, with respect to any securities convertible or exchangeable into Stock) and agrees not to alter or deviate from the terms of this Plan.

4.    (a)    Seller agrees to provide Agent with a certificate dated as of the date hereof and signed by the Issuer substantially in the form of Exhibit A hereto (the "Certificate") prior to commencement of any sales under this Plan.

(b)    Seller agrees to notify Agent as soon as practicable if Seller becomes aware of the occurrence of any event contemplated by paragraph 3 of the Certificate. Such notice shall indicate the anticipated duration of the suspension of trading relating to the restriction, but shall not include any other information about the nature of the restriction or its applicability to Seller and shall not in any way communicate any material nonpublic information about the Issuer

INO_EDPA_00147475

or its securities to Agent. Such notice shall be in addition to the notice required to be given to Agent by the Issuer pursuant to the Certificate. Upon receipt of such notice Agent shall cease sales of Plan Shares, and shall not resume such sales unless and until Agent has been notified by the Issuer that the restriction has been lifted.

5.      Seller acknowledges and agrees that Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect sales of Plan Shares pursuant to this Plan.

6.      Seller has consulted with Seller's own advisors as to the legal, tax, business, financial and related aspects of, and has not relied upon Agent or any person affiliated with Agent in connection with, Seller's adoption and implementation of this Plan. Seller acknowledges that Agent is not acting as a fiduciary or an advisor for Seller.

7.      Seller acknowledges that accounts maintained by SFS in relation to the transactions described herein, will be in its name and it may receive investment earnings in connection with the investment at its risk and for its benefit of funds held in those accounts, from time to time.

8. The Seller agrees to indemnify, defend and hold harmless Agent (and its directors, officers, employees and affiliates) from and against all claims, liabilities, losses, damages and expenses (including reasonable attorneys' fees and costs) arising out of or attributable to: a.) any breach by the Seller of this Plan (including Seller's representations and warranties hereunder), b.) any violation by the Seller of applicable laws or regulations relating to this Plan or the transactions contemplated by this Plan, and c.)Agent's actions taken or not taken in compliance with this Plan, except in each case, to the extent the result of Agent's gross negligence, willful misconduct, recklessness or bad faith. This indemnification will survive the termination of this Plan.

9.      If Seller is an affiliate or control person for purposes of Rule 144 under the Securities Act of 1933, as amended, or if the Stock subject to the Sales Plan are restricted securities subject to limitations under Rule 144, then Seller agrees that the sale will be made in accordance with the applicable provisions of Rule 144, including volume and manner of sale limitations. Seller authorizes Agent to, and Agent agrees to, complete and file on Seller's behalf any Forms 144 (five (5) copies pre-signed by Seller) necessary to effect the sale. Seller agrees to provide Agent with such information as is reasonably necessary for Agent accurately and timely to complete the Forms 144. Notwithstanding such authorization, Seller acknowledges that Agent shall not be liable for any failure to complete or file Form 144 on behalf of Seller except as set forth in this Section 9.

10.     Seller agrees not to take any action or to cause any other person or entity to take any action that would require Seller to aggregate sales of Stock pursuant to Rule 144 and not to take any action that would cause the sale not to comply with Rule 144.

11.     Seller agrees to make all filings, if required, under Sections 13(d), 13(g) and 16 of the Exchange Act, to the extent any such filings are applicable to Seller.

INO_EDPA_00147476

12.    Seller agrees that until this Plan has been terminated, Seller shall not enter into a binding contract with respect to the purchase or sale of Plan Shares with another broker, dealer or financial institution, instruct another broker, dealer or financial institution to purchase or sell Plan Shares, or adopt a plan for trading with respect to Plan Shares other than this Plan.

## III.    LIMITATION OF LIABILITY

1.    Except where a different standard is required by law, Agent shall not under any circumstances be liable for:

(a)    indirect, incidental, consequential, exemplary, aggravated, special or punitive damages or losses or the loss of profits, business, data, revenue or savings, even if advised of the possibility of such damages arising out of or in any way in connection with this Plan; or

(b)    any failure to perform or any delay in performance that results from a cause that is beyond its reasonable control, including but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God".

2.    Notwithstanding anything to the contrary whatsoever, Agent shall not be liable to Seller for:

(a) the exercise of discretionary authority or discretionary control under this Plan, or

(b) any failure to effect a sale required by ARTICLE IV, except for failure to effect sales as a result of the gross negligence or willful misconduct of Agent

## IV.    IMPLEMENTATION OF THE PLAN

1.    (a)    Agent will (i) exercise the number of Options and sell the Plan Shares acquired thereupon on the date and/or subject to any price conditions set forth in the Exercise Instructions, and/or (ii) sell the Plan Shares vesting on the date and/or subject to any price conditions set forth in the Sale Instructions.

(b)    Agent will delegate the processing of securities transactions to SFS.

(c)    if the market is not available for regular session trading on a day specified in the Plan, Agent will resume trading on next trading day on which the market is available for trading.

(d)    Agent shall cease exercising Options and selling Plan Shares on the earliest to occur of (i) the date on which Agent receives a notice of termination of trading under the Plan, (ii) the date on which Agent receives a notice from the Seller or Issuer that the Issuer or any other

INO_EDPA_00147477

person has publicly announced a tender or exchange offer with respect to any Stock, (iii) the date on which Agent receives a notice from the Seller or Issuer of public announcement of a merger, acquisition, reorganization, recapitalization, or comparable transaction affecting the securities of the Issuer as a result of which Stock is to be exchanged or converted into securities of another entity, (iv) the date on which Agent receives a notice of the commencement of any proceedings in respect of or triggered by Seller's bankruptcy or insolvency, (v) the date on which all Plan Shares sold pursuant to this Plan or the date specified for termination in the Exercise or Sale Instructions is reached.

2.      The number of Options to be exercised and Plan Shares sold, and any applicable minimum sale price, shall be adjusted automatically on a proportionate basis to take into account any reclassification, stock split, reverse stock split or stock dividend with respect to the Stock or any change in capitalization with respect to the Issuer that occurs during the term of this Plan.

3.      Agent agrees to furnish notice to the Issuer of the exercise of the Options and sale of Plan Shares under this Plan by fax or e-mail transmitted to the number or address set forth on the Exercise Instructions, as soon as practicable, and in any event no later than 10:00AM Eastern Time on the first business day after the trading day on which such sale was executed. Seller hereby authorizes Agent to serve as Seller's attorney-in-fact and, in accordance with the terms of this Plan, to exercise the Options and sell the Plan Shares. The Options shall be exercised in the order specified in the Exercise Instructions, provided, however, that Agent shall in no event exercise any Option if at the time of exercise the exercise price of the Option is equal to or higher than the market price of the Stock.

V.      GENERAL

1.      This Plan constitutes the entire agreement between the parties with respect to this Plan and supersedes any prior agreements or understandings with regard to the Plan.

2.      This Plan may be modified or amended only by a writing signed by the parties hereto, provided further that this Plan may not be modified or amended until Issuer has communicated its review of such modification or amendment to Seller and Agent.

3.      This Plan may be terminated prior to the end of the Plan sales period as follows:  i) 90 days after the date upon which Agent receives written notice that Seller's employment with Issuer has terminated (with or without cause); ii) upon three business days prior written notice from the Seller, delivered by facsimile or overnight delivery to the Agent; iii) written notice from Seller or Issuer during the sales period of restrictions as a result of the occurrence of any event contemplated by paragraph IV.1(d); or iv) notice of the termination of the Services Access Agreement between Issuer and Agent.

4.      If any provision of this Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation. All other provisions of this Plan will continue and remain in full force and effect.

INO_EDPA_00147478

**EXHIBIT A**

**ISSUER CERTIFICATE**

1.      **Inovio Pharmaceuticals, Inc.** (the "Issuer") represents that its insider trading policy (the "Policy") allows adoption of trading plans pursuant to the Securities and Exchange Commission Rule 10b5-1 relating to its common stock (the "Stock"), by certain directors, officers and employees of the Issuer, including the Non-Discretionary Sale Plan (the "Plan") between Peter Kies ("Seller") and Solium Capital LLC (the "Agent").

2.      The sales to be made by Agent for the Seller pursuant to the Plan do not violate the Policy, and the Issuer is not aware of any legal, contractual or regulatory restrictions applicable to the Issuer, Seller or their respective affiliates as of the date of this representation that would prohibit either Seller from entering into the Plan or any sale pursuant to the Plan.

3.      If at any time during the term of the Plan the Issuer becomes aware of a legal, contractual or regulatory restriction that is applicable to the Issuer, Seller or their respective affiliates that would prohibit any sale pursuant to the Plan (other than any such restriction relating to Seller's possession or alleged possession of material nonpublic information about the Issuer or its securities), the Issuer agrees to give notice of such restriction by overnight mail or email to Agent, at the address shown below:

> Solium Capital LLC
> 222 S. Mill Avenue Suite 424
> Tempe, AZ 85281
> Attn: Matt Bezverkov, Team Lead, Executive Services
> ExecutiveServices@solium.com

Such notice shall indicate the anticipated duration of the restriction, but shall not include any other information about the nature of the restriction or its applicability to Seller. In any event, the Issuer shall not communicate any material nonpublic information about the Issuer or its securities to Agent.

4.      The Issuer acknowledges that Seller has authorized Agent to serve as Seller's agent and attorney-in-fact to exercise Options to purchase the Plan Shares from time to time pursuant to the Plan.

Dated: 5/18/2020 _____

**Inovio Pharmaceuticals, Inc.**

By: _____
DocuSigned by:
024322F8FE6D4D1...
Name: Joseph Kim
Title: Chief Executive Officer

INO_EDPA_00147479