# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. 2:20-cv-01402-GJP |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS |
| INOVIO PHARMACEUTICALS, INC., et al., | ) ) ) | ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| Defendants. | ) ) ) | |

4867-5258-8573.v1

**TABLE OF CONTENTS**

                                                                                              **Page**

I.     INTRODUCTION ...............................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................................2

III.   LEGAL STANDARDS GOVERNING MOTION TO DISMISS.....................................4

IV.    PLAINTIFFS' NEW ALLEGATIONS STATE A VALID CLAIM UNDER
       SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 ............................5

       A.    The Complaint Adequately Alleges the Falsity of Defendants'
             Misrepresentations and Material Omissions About the INO-4800 Clinical
             Trials .......................................................................................................................5

             1.    Having Elected to Speak About the INO-4800 Phase 2/3 Clinical
                   Trials, Defendants Were Obligated to Disclose the FDA's Clinical
                   Hold............................................................................................................6

             2.    Defendants' Stock Sales Also Triggered Their Duty to Disclose the
                   FDA's Clinical Hold ..................................................................................11

             3.    Defendants' Statements About the Commencement of a New INO-
                   4800 Clinical Trial Are Not Protected by the PSLRA's Safe
                   Harbor Provision .......................................................................................12

                   a.    Defendants' Omissions of Current Fact Are Not Protected
                         by the Safe Harbor ........................................................................13

                   b.    Even if Forward Looking, Defendants' June 30 and August
                         10 Statements Were Not Accompanied by Meaningful
                         Cautionary Language ....................................................................15

                   c.    Defendants Knew that Their Statements Omitted Material
                         Information About the Clinical Hold.............................................16

       B.    The Complaint Raises a Strong Inference of Scienter ...........................................17

       C.    The Complaint Adequately Alleges Loss Causation ..............................................20

             1.    Plaintiffs Have Adequately Alleged that the August 11, 2020 Stock
                   Price Decline Was Caused, in Part, by Disclosures Related to
                   Defendants' Manufacturing Statements......................................................21

             2.    Plaintiffs Have Adequately Alleged that the August 11, 2020 Stock
                   Price Decline Was Caused, in Part, by Disclosures Related to
                   Defendants' Clinical Trial Statements........................................................22

4867-5258-8573.v1

3. Plaintiffs Have Adequately Alleged that the September 28, 2020 Stock Price Decline Was Caused by Disclosures Related to Defendants' Clinical Trial Statements ........................................................23

V. PLAINTIFFS STATE A VALID CLAIM AGAINST ROBERT JUBA .........................24

VI. CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
554 F.3d 342 (3d Cir. 2009)...................................................................................8

*Chiarella v. United States*,
445 U.S. 222 (1980)..............................................................................................11

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)................................................................................11

*Curran v. Freshpet, Inc.*,
2018 WL 394878 (D.N.J. Jan. 12, 2018) ................................................5, 6, 13, 20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................20

*EPMedSystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000)................................................................................20

*Ganem v. InVivo Therapeutics Holdings Corp.*,
845 F.3d 447 (1st Cir. 2017)..........................................................................14, 16

*Gen. Partner Glenn Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)..................................................................................9

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)................................................................................18

*Hackel v. Aveo Pharms., Inc.*,
474 F. Supp. 3d 468 (D. Mass. 2020) .................................................................16

*Hoey v. Insmed Inc.*,
2018 WL 902266 (D.N.J. Feb. 15, 2018) .............................................................9

*In re Able Lab'ys Sec. Litig.*,
2008 WL 1967509 (D.N.J. Mar. 24, 2008)..........................................................12

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999)................................................................................18

*In re Alpharma Inc. Sec. Litig.*,
372 F.3d 137 (3d Cir. 2004)..................................................................................5

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
2017 WL 5635422 (C.D. Cal. Sept. 20, 2017) ...................................................10

4867-5258-8573.v1

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ........................................................................25

*In re Elecs. for Imaging, Inc. Sec. Litig.*,
2019 WL 397981 (D.N.J. Jan. 31, 2019) ...............................................................18

*In re Novo Nordisk Sec. Litig.*,
2018 WL 3913912 (D.N.J. Aug. 16, 2018) .............................................................13

*In re Xerox Corp. Sec. Litig.*,
935 F. Supp. 2d 448 (D. Conn. 2013),
*aff'd*, 766 F.3d 172 (2d Cir. 2014) .........................................................................23

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)...............................................................13, 15, 17, 18

*Kuhne v. Gossamer Bio, Inc.*,
2021 WL 1529934 (S.D. Cal. Apr. 19, 2021)........................................................16

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).................................................................................................6, 8

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016)..................................................................................13

*Ortiz v. Canopy Growth Corp.*,
537 F. Supp. 3d 621 (D.N.J. 2021) .......................................................................13

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)............................................................................3, 4, 6

*Reid v. Hemispherx Biopharma, Inc.*,
2010 WL 11710594 (E.D. Pa. Apr. 20, 2010) ....................................................1, 14

*SEC v. Ferrone*,
2014 WL 5152367 (N.D. Ill. Oct. 10, 2014)......................................................10, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...............................................................................................18

*Vallabhaneni v. Endocyte, Inc.*,
2016 WL 51260 (S.D. Ind. Jan. 4, 2016)...........................................................9, 10

*Vanderhoef v. China Auto Logistics Inc.*,
2021 WL 3260849 (D.N.J. July 30, 2021).............................................................24

*Weiner v. Quaker Oats Co.*,
129 F.3d 310 (3d Cir. 1997).....................................................................................8

*Williams v. Globus Med., Inc.*,
869 F.3d 235 (3d Cir. 2017)..................................................................................15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b).................................................................................................................5, 15
§78t(a)......................................................................................................................24

Federal Rules of Civil Procedure
Rule 8......................................................................................................................21
Rule 9(b) ..............................................................................................................5, 20
Rule 12(b)(6)..........................................................................................................3, 4
Rule 12(g)(2)...........................................................................................................21

21 C.F.R.
§312.42......................................................................................................................8

52 Fed. Reg. 8798 (Mar. 19, 1987).................................................................................8

**SECONDARY AUTHORITIES**

*IND Application Procedures: Clinical Hold*, U.S. Food and Drug Administration
https://www.fda.gov/drugs/investigational-new-drug-ind-application/ind-application-
procedures-clinical-hold (last visited Apr. 20, 2022) ................................................8

4867-5258-8573.v1

## I. INTRODUCTION

As they did in moving to dismiss the First Amended Consolidated Complaint, Defendants again criticize the Second Amended Consolidated Complaint for somehow getting the facts wrong, or eliding necessary background and context. These are arguments for another day – best reserved for summary judgment or trial. They have no bearing on the instant motion. But with nothing else on which to base their motion, Defendants go to great lengths to set up their alternative narrative and then argue that this narrative – not Plaintiffs', but one of Defendants' own making – fails to state a claim. As one court noted in a situation similar to the one here, where "Defendants rely on innumerable facts well outside the . . . Complaint to argue that Plaintiffs' claims are not cognizable," "[t]o state Defendants' argument is to refute it." *Reid v. Hemispherx Biopharma, Inc.*, 2010 WL 11710594, at *4 (E.D. Pa. Apr. 20, 2010).

Defendants' entire argument hinges on this premise: the U.S. Food and Drug Administration's ("FDA") clinical hold issued in June 2020 only concerned a Phase 3 trial of INO-4800 and did not prevent Inovio Pharmaceuticals, Inc. ("Inovio" or the "Company") from proceeding to a Phase 2/3 clinical trial for its proposed vaccine. This is not what Plaintiffs allege and is demonstrably false. As set forth in detail below, Plaintiffs' allegations establish that the FDA's June 2020 clinical hold had an immediate and material impact on Inovio's ability to proceed with any new clinical trial for INO-4800 – whether a Phase 2, Phase 3, or combined Phase 2/3 trial.

Yet despite the roadblock presented by the FDA clinical hold, Inovio told investors on June 30 that it would proceed to a Phase 2/3 trial for INO-4800 "this summer," and later, on August 10 that it would proceed to a Phase 2/3 trial (while slightly delayed from its prior guidance of summer) "in September." In the weeks between these statements, defendants J. Joseph Kim ("Kim") and Peter D. Kies ("Kies") sold nearly $4 million dollars in Inovio stock. But Defendants' statements were false or misleading given that ***the FDA's June 26, 2020 clinical hold letter explicitly***

- 1 -

*prohibited Inovio from giving INO-4800 to any new clinical trial subject and identified significant deficiencies with the proposed vaccine*. Eventually, the truth caught up with Defendants as the end of September arrived, and the Company was forced to disclose the fact of the clinical hold, which resulted in Inovio's share price falling sharply. These are the facts as Plaintiffs allege them, and they more than plausibly allege claims against Defendants for their misstatements and material omissions about the INO-4800 clinical trial.

## II.    STATEMENT OF FACTS

Plaintiffs previously alleged that Defendants engaged in a scheme to deceive investors and the market by making a series of statements between February and August 2020 about Inovio's development of a COVID-19 vaccine, INO-4800. *See generally* First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 68) ("FAC"); *see also* ECF No. 85 ("MTD Order") at 1-7. Defendants first misled investors about how long it took to construct the COVID-19 vaccine and then made false and misleading statements about Inovio's ability to manufacture the vaccine in 2020 and 2021. FAC, ¶¶97-103, 106-110; MTD Order at 1-7, 11-24. The Court upheld these allegations and denied Defendants' prior motion to dismiss on February 16, 2021. MTD Order.

On January 28, 2022, Plaintiffs moved for leave to amend their complaint. ECF No. 121. Based on evidence that was produced late in the discovery period, the Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 129) ("SAC") – which was deemed filed on February 17, 2022 – identified that Defendants' fraudulent scheme did not end with their misstatements about the ability to manufacture INO-4800. Based on documents that were unearthed in discovery, the fact emerged that Defendants were informed by the FDA on June 23, 2020 that the proposed clinical trial for INO-4800 was placed on a partial clinical hold – meaning that "subjects may not be given the investigational drug," as the FDA stated in a

June 26, 2020 letter to the Company. ¶¶60, 110, 112, 114.[1] Contrary to Defendants' factual argument that the clinical hold only applied to a Phase 3 trial of INO-4800, the plain language of the FDA's June 26, 2020 letter made it clear that Inovio could not commence *any* new trial of INO-4800 until the FDA lifted the clinical hold.[2]

The clinical hold letter also identified significant deficiencies with INO-4800 and the Phase 1 testing results of the proposed vaccine that Defendants would have to address in order to have the hold lifted. As alleged, the June 26, 2020 letter informed Defendants that, among other problems, "[t]he preclinical and clinical data [Inovio] ha[s] submitted are insufficient to inform the risk of vaccine-induced enhanced disease for INO-4800." ¶¶60, 110, 112, 114. The FDA also identified that the "low response rates" of clinical participants "are concerning" and the fact that "a lower proportion of subjects with a neutralizing antibody response compared with a binding-antibody response may suggest that some subjects have responded with predominantly non-neutralizing antibodies. This raises concerns about the potential for vaccine-induced enhanced disease." *Id.*

Defendants did not disclose the FDA's clinical hold to investors. Instead, on June 30, 2020, Defendants issued a press release assuring investors that "INOVIO to begin U.S. Phase 2/3 efficacy study this summer upon regulatory concurrence." ¶¶10, 109. Between June 30 and July 30, 2020, defendants Kim and Kies sold 170,000 shares of Inovio stock for insider trading proceeds of

---

[1] Unless otherwise stated, all "¶_" and "¶¶_" references are to the SAC.

[2] Defendants spend nearly ten pages of their brief on a statement of "judicially noticeable facts." Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' SAC (ECF No. 133-1) ("Defs' MTD") at 2-11. As set forth in the accompanying Opposition to Defendants' Request for Judicial Notice, the vast majority of these purported "facts" are not drawn from Plaintiffs' allegations and are not properly subject to judicial notice. Unable to articulate any cognizable basis for dismissal under Federal Rule of Civil Procedure 12(b)(6), Defendants have resorted to rewriting the allegations and importing their own supposed facts. But that is not permitted on a motion to dismiss, where the court is required to accept all allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008).

$3,935,750, but failed to disclose anything about the clinical hold on any new INO-4800 trials. ¶¶29, 33, 111-112. After these stock sales were completed, Defendants said on August 10, 2020 that the INO-4800 trials would be delayed until September 2020. ¶¶11, 113. That disclosure (in conjunction with the additional disclosure regarding the INO-4800 manufacturing issues) triggered a stock price decline of over 23%. ¶122. But Defendants still did not disclose the FDA's partial clinical hold – which by that point, had been in effect and had not been resolved for a month and a half. ¶114. To the contrary, in response to analyst questions, Kim assured investors that "we will be able to, certainly by September, announce the Phase II/III start." ¶113.

Finally, on September 28, 2020, Inovio issued a press release disclosing that the FDA "has notified the company it has additional questions about the company's planned Phase 2/3 trial of its COVID-19 vaccine candidate INO-4800" and "[u]ntil the FDA's questions have been satisfactorily addressed, INOVIO's Investigational New Drug Application (IND) for the Phase 2/3 trial is on partial clinical [hold]," facts Defendants had known, but failed to disclose, since June 26, 2020. ¶125. In response to this disclosure, Inovio's stock price dropped another 28%, and the Company's market capitalization fell by more than $439 million. *Id*.

## III. LEGAL STANDARDS GOVERNING MOTION TO DISMISS

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See* MTD Order at 8-9 ("[F]or all 'well-pleaded factual allegations, the court should assume their veracity,' draw all reasonable inferences from them 'and then determine whether they plausibly give rise to an entitlement to relief.'").[3] Dismissal is not appropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231.

---

[3] All citations and footnotes are omitted and emphasis is added unless otherwise noted.

4867-5258-8573.v1

## IV. PLAINTIFFS' NEW ALLEGATIONS STATE A VALID CLAIM UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934

Contrary to Defendants' arguments, Plaintiffs' new allegations about the clinical hold on new trials of INO-4800, like the prior allegations about the construct and manufacturing of INO-4800, adequately plead falsity, scienter, and loss causation.

### A. The Complaint Adequately Alleges the Falsity of Defendants' Misrepresentations and Material Omissions About the INO-4800 Clinical Trials

To satisfy the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b), Plaintiffs are required to specify each statement alleged to be misleading and why the statement is misleading, setting out the """"first paragraph of a newspaper story" – that is, the "who, what, when, where and how"""" concerning the statements at issue. *Curran v. Freshpet, Inc.*, 2018 WL 394878, at *3 (D.N.J. Jan. 12, 2018) (quoting *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 147 (3d Cir. 2004)); MTD Order at 10. Plaintiffs' new allegations easily satisfy this standard. In the SAC, Plaintiffs set forth the false and misleading statements and material omissions about the INO-4800 clinical trials in Inovio's June 30, 2020 press release and in the Company's August 10, 2020 press release and conference call with analysts, and identify how those statements failed to disclose the truth about the clinical trials and the FDA clinical hold. ¶¶109-110, 113-114. The amended allegations also identify specifically when defendants Kim and Kies sold their stocks in the days and weeks following their receipt of the clinical hold letter while, at the same time, keeping material facts hidden from investors. ¶¶111-112. Specifically, Plaintiffs allege that Defendants violated the federal securities laws by failing to disclose "that Inovio had already been informed by the FDA that the trial for INO-4800 had been placed on partial clinical hold." ¶¶60, 110, 112, 114.[4] Defendants cannot, and do not, contest that Plaintiffs adequately allege the "who,

---

[4] Defendants try to distract from the well-pled allegations by arguing that their June 30, 2020 statements regarding the Phase 1 trial of INO-4800 are not actionable. Defs' MTD at 11-13. But

- 5 -

what, when, where, and how" of the misstatements and material omissions regarding the status of the INO-4800 clinical trials.  Instead, Defendants turn to factual arguments, relying on exhibits that are not referenced in the SAC or subject to judicial notice, to craft their own narrative and try to explain away their fraudulent conduct.  Defs' MTD at 4-8, 14-22.  But, again, on a motion to dismiss, "the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Freshpet*, 2018 WL 394878, at \*3 (citing *Phillips*, 515 F.3d at 231).

### 1. Having Elected to Speak About the INO-4800 Phase 2/3 Clinical Trials, Defendants Were Obligated to Disclose the FDA's Clinical Hold

On both June 30 and August 10, 2020, Defendants elected to speak about the purported start of Inovio's next clinical trials of INO-4800.  ¶¶10-11, 60, 109, 113.  Having done so, they undertook a duty to speak fully and accurately on the matter.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (duty to disclose exists where necessary to make statements not misleading).  As this Court previously recognized, "once Defendants chose to speak . . ., they had a duty to include material information that would render those statements not misleading."  MTD Order at 21.  But Defendants failed to disclose the FDA's clinical hold letter, which forbade Inovio from starting any new trial of INO-4800.  Nevertheless, Defendants argue that they had no duty to disclose anything about the FDA's June 26, 2020 clinical hold letter.  Defs' MTD at 14-15.

Plaintiffs do not bring claims based on statements regarding the Phase 1 trial.  Rather, as set forth in the SAC, falsity is based on Defendants' failure to disclose that any new trial of INO-4800 could not proceed as a result of the FDA's clinical hold letter.  ¶¶110, 112, 114.  The lone quote in the SAC regarding the Phase 1 interim results – "We are very encouraged by the positive interim safety and preliminary cellular and humoral immune response results to date" – simply provides useful context regarding the statements for which Plaintiffs do bring claims, setting the stage for the misleading claims that Inovio was going to begin new Phase 2/3 trials within two months.  *See* ¶109.  To be sure, defendant Kim's statement about the "positive" and "encourag[ing]" interim Phase 1 results stand in stark contrast to the problems identified with this same data by the FDA just four days prior, including the agency's conclusion that "'the low response rates' of participants in the Phase 1 trial 'are concerning.'"  ¶110.  And this is certainly relevant to Defendants' motivation to keep the clinical hold letter hidden from investors.  But, as set forth in the SAC, Plaintiffs do not bring any claims based on Defendants' June 30, 2020 statements regarding Phase 1 clinical trial results.

4867-5258-8573.v1

According to Defendants, they did not have a duty to disclose the fact that the FDA had issued a clinical hold because the June 26, 2020 letter only concerned a proposed Phase 3 trial of INO-4800, not the Phase 2/3 trial that was the subject of the June 30 and August 10, 2020 statements, and because the clinical hold letter was just immaterial "back and forth between Inovio and the FDA." Defs' MTD at 14-15. These arguments not only require the Court to accept as true Defendants' version of the facts and assume Plaintiffs' allegations are inaccurate, which is improper on a motion to dismiss, they are also dead wrong.

Defendants' contention that the June 26, 2020 clinical hold letter was limited to just a Phase 3 trial of INO-4800 is rendered false by the FDA's letter itself. As alleged in the SAC, the letter specifically informed Defendants that they could not proceed with any new trial of INO-4800 and "subjects may not be given the investigational drug" until the issues identified in the letter were resolved. ¶¶60, 110, 112, 114. And, as alleged, the issues identified in the clinical hold letter were not minor and were not limited to just a potential Phase 3 trial. Indeed, the FDA clinical hold letter specifically identified, among other deficiencies, that "[t]he preclinical and clinical data [Inovio] ha[s] submitted are insufficient to inform the risk of vaccine-induced enhanced disease for INO-4800 and are therefore insufficient to support initiation of your proposed Phase 3 trial." *Id*. The FDA also noted that the "low response rates" of participants in the Phase 1 trial "are concerning" and the fact that "a lower proportion of subjects with a neutralizing antibody response compared with a binding-antibody response may suggest that some subjects have responded with predominantly non-neutralizing antibodies. This raises concerns about the potential for vaccine-induced enhanced disease." *Id.* Contrary to Defendants' *post hoc* spin, the June 26, 2020 clinical hold letter prevented Inovio from beginning any new trial of INO-4800, regardless of whether it was a Phase 2, Phase 2/3, or Phase 3 trial. Consequently, having elected to speak about initiating a new trial of INO-4800 "this summer" and "in September," Defendants triggered a duty to disclose the fact that the FDA had

- 7 -

placed a clinical hold on any such trial and no new trial could begin until after the issues identified in the June 26, 2020 clinical hold letter were resolved. *See* MTD Order at 21 (citing *Matrixx*, 563 U.S. at 44-45) ("Plaintiffs are correct that, once Defendants chose to speak about their various manufacturing deals and progress, they had a duty to include material information that would render those statements not misleading.").

Defendants also try to downplay the significance of the FDA's clinical hold letter, suggesting that it was nothing more than "back and forth" with the FDA and was "not a final decision from the FDA." Defs' MTD at 14-15. First, this is simply an effort to argue that the clinical hold letter was not material. But materiality is "'a mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts are peculiarly for the trier of fact.'" *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d Cir. 1997). Indeed, it is hard to plausibly dispute the materiality of the clinical hold letter given the immediate and negative reaction of investors when the clinical hold was finally disclosed on September 28, 2020. ¶125; *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 352 (3d Cir. 2009) (materiality is "self-evident when we look at the market's negative reaction" when the truth was disclosed).

Second, Defendants' suggestion that a clinical hold letter is just insignificant "back and forth" with the FDA and does not represent a decision by the agency is blatantly incorrect. The FDA's website identifies that "***[a] clinical hold is an order issued by FDA*** to the sponsor of an IND application to delay a proposed clinical investigation or to suspend an ongoing investigation." *See IND Application Procedures: Clinical Hold*, U.S. Food and Drug Administration https://www.fda.gov/drugs/investigational-new-drug-ind-application/ind-application-procedures-clinical-hold (last visited Apr. 20, 2022); 21 C.F.R. §312.42 (same). It is well-recognized that a clinical hold is a serious matter and indicates significant issues with a proposed clinical trial. As stated in the summary of the New Drug, Antibiotic, and Biologic Drug Product Regulations, 52 Fed.

Reg. 8798, 8807 (Mar. 19, 1987), the "***FDA would not place a clinical hold on a Phase 2 or 3 study, because of study design, unless the design was so deficient that the study could not meet its stated objective of establishing the product's safety and effectiveness***." *See also id.* at 8799 ("[T]he final rule limits clinical holds in Phase 1 studies to situations where there is an unreasonable and significant risk to human subjects. In Phases 2 and 3, FDA's authority to issue a clinical hold would extent [*sic*] to serious defects in study design that would render the study incapable of producing valid evidence of safety and effectiveness. All clinical holds must be approved by the director of the division in FDA's Center for Drugs and Biologics with responsibility for review of the IND.").[5]

The cases cited by Defendants provide no support for their argument. *Gen. Partner Glenn Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016), only concerned "interim FDA feedback" on a clinical trial design, not a clinical hold in which the FDA barred the use of the investigational drug. Similarly, neither *Hoey v. Insmed Inc.*, 2018 WL 902266 (D.N.J. Feb. 15, 2018), nor *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260 (S.D. Ind. Jan. 4, 2016), concerned clinical hold letters (or similarly binding decisions from European authorities) or provide any support for the notion that a clinical hold letter can be dismissed as just immaterial back and forth with the FDA. Indeed, the *Endocyte* court specifically found that the FDA communications at issue were not subject to disclosure because "if the FDA had serious concerns about the study design, the FDA could have issued a

---

[5] Defendants argue that "the FDA expressly told Inovio that it chose that mechanism [a partial clinical hold] to communicate feedback because it 'was deemed to be a more expeditious way of delineating and resolving any pending issues than a series of asynchronous, real-time, informal requests.'" Defs' MTD at 14 (emphasis omitted). But that storyline is not drawn from any allegation in the SAC, and it must be disregarded on a motion to dismiss. It is also not based on anything in the actual June 26, 2020 FDA clinical hold letter (which Defendants have studiously avoided submitting to the Court and continue to insist is "Highly Confidential"). Rather, it comes from an internal, self-serving Inovio memorandum that, as addressed in the accompanying Opposition to Defendants' Request for Judicial Notice, was not a basis for Plaintiffs' allegations and is not subject to judicial notice.

4867-5258-8573.v1

clinical hold." 2016 WL 51260, at *13.[6] While Defendants' cases are inapposite, the situation here is akin to *SEC v. Ferrone*, 2014 WL 5152367 (N.D. Ill. Oct. 10, 2014). There, the U.S. Securities and Exchange Commission ("SEC") brought suit for securities fraud against executives of a pharmaceutical company for failing to disclose FDA clinical hold letters. *Ferrone*, 2014 WL 5152367, at *1-*2, *5. The court rejected the argument that FDA clinical hold letters were immaterial and granted summary judgment to the SEC, holding that "the FDA's placement of two clinical holds . . . substantially alters the 'total mix' of publicly available information" when "[t]he underlying truth about the FDA holds remained non-public information." *Id*. at *6.

Just as Defendants cannot dismiss the FDA's clinical hold letter as nothing more than immaterial back and forth with the FDA, they cannot escape liability for their misstatements and omissions simply because some (but not all) of the statements included the generic qualifier that a new clinical trial would begin "upon regulatory concurrence." Defs' MTD at 15-16 (emphasis omitted). All clinical trials require regulatory concurrence to commence, as Defendants themselves admitted. *See* ¶¶11, 113 (defendant Kim explaining that "FDA concurrence just means it's an actual term for FDA approval of any process in process steps" or, in "colloquial language," proposed clinical trials can proceed "upon getting FDA okay to move to the next steps"). But what was true for Inovio before the FDA issued the clinical hold letter was no longer true after, and Inovio needed more than just standard FDA concurrence to begin any new trial of INO-4800. Defendants needed the FDA to lift the clinical hold that prevented Inovio from giving INO-4800 to any new trial

---

[6] *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 5635422 (C.D. Cal. Sept. 20, 2017), is no help to Defendants either, as the claims there were not premised on a failure to disclose an FDA clinical hold. In fact, contrary to the situation here, in *Arrowhead*, the FDA clinical holds issued in connection with the investigational new drug at issue were promptly disclosed by the defendant. *See id.* at *2, *5, *12.

4867-5258-8573.v1

patients.  That was material information Defendants knew, but failed to disclose to investors, when they spoke on June 30 and August 10, 2020.[7]

### 2. Defendants' Stock Sales Also Triggered Their Duty to Disclose the FDA's Clinical Hold

Corporate executives are required to abstain from trading their stock or to disclose non-public material information prior to any sales.  *See Chiarella v. United States*, 445 U.S. 222, 227 (1980) ("[A] corporate insider must abstain from trading in the shares of his corporation unless he has first disclosed all material information known to him.").  Defendants do not dispute the requirement to abstain or disclose.  Nor do they dispute that they knew the truth about the FDA's June 26, 2020 clinical hold letter, and that those facts had not been disclosed, at the time of their stock sales in June and July 2020.  As a result, Defendants are left to argue that their stock sales did not trigger a duty to disclose because they "were made pursuant to 10b5-1 plans."  Defs' MTD at 15.

At best, Defendants' argument is an affirmative defense that is inappropriate to adjudicate at the pleading stage.  The argument would require the Court to ignore the allegations that the trading plans were not valid, because defendants Kim and Kies "had knowledge of, or recklessly disregarded, non-public, material adverse facts concerning the development status of INO-4800 at the time [they] created the trading plan."  ¶¶29, 33.  It would also require the Court to accept as true Defendants' contention, which finds no support in the allegations, that both Kim's and Kies's 10b5-1 trading plans were valid and that all of the stock sales in June and July 2020 were conducted in accordance with a valid trading plan.  But on a motion to dismiss, the Court should neither ignore the

---

[7] Defendants rely on *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 165 (3d Cir. 2014), for the proposition that their statements are not actionable because they said that the INO-4800 clinical trials would begin "upon regulatory concurrence."  Defs' MTD at 16-17.  But *Pfizer*, like Defendants' other cited authorities, is distinguishable because it does not involve a situation where Defendants' statements about beginning a clinical trial upon receiving FDA concurrence were contradicted by the FDA's prior issuance of a hold preventing the start of any new trial until deficiencies identified by the hold were resolved.

- 11 -

Plaintiffs' allegations nor accept Defendants' factual arguments as true. *In re Able Lab'ys Sec. Litig.*, 2008 WL 1967509 (D.N.J. Mar. 24, 2008), is instructive on this point. There, the court evaluated the defendant's argument on a motion to dismiss that his stock sale occurred pursuant to a pre-existing 10b5-1 plan and was thus immunized from liability, and held that "[t]he trade cannot be immunized from liability." *Id.* at *27 n.40. As the court reasoned: this "requires an additional factual finding of good faith. Not only can this Court not make such factual findings when considering a motion to dismiss, but this Court must also draw all inferences in favor of the non-moving party." *Id.*

This Court already considered and rejected a closely related argument in denying the initial motion to dismiss. Defendants previously argued that their insider trading could not be evidence of scienter because it was done pursuant to 10b5-1 trading plans. ECF No. 72-1 at 22. But given the allegations that the trading plans were not valid and that it is Defendants' burden to establish that the plans were entered into in good faith, the Court specifically considered the insider trading in determining that Plaintiffs had alleged a strong inference of scienter. MTD Order at 7, 15-16. Just as the Court rejected Defendants' contention that the June and July 2020 stock sales were irrelevant to scienter, so to should it reject the argument that the stock sales did not trigger Defendants' duty to disclose the truth about the FDA's clinical hold letter.

### 3. Defendants' Statements About the Commencement of a New INO-4800 Clinical Trial Are Not Protected by the PSLRA's Safe Harbor Provision

Defendants argue that their June 30 and August 10, 2020 statements about the initiation of a new INO-4800 clinical trial were all forward looking and, therefore, not actionable under the PSLRA's safe harbor provision. Defs' MTD at 16-22.[8] But as this Court has already held, the safe

---

[8] As Defendants concede, by their silence, the safe harbor argument does not apply to the duty to disclose that was triggered by their stock sales on June 30, July 15, and July 30, 2020.

4867-5258-8573.v1

harbor does ***not*** "apply to omissions of present fact." MTD Order at 18. That is exactly what Plaintiffs allege here – Defendants failed to disclose the known fact that the FDA had issued a clinical hold barring Inovio from proceeding with any new trial of INO-4800. ¶¶110, 114. Moreover, Defendants' June 30 and August 10 statements were not accompanied by meaningful cautionary language and were made with actual knowledge of their falsity, which would independently eliminate the safe harbor defense. *Cf. OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490-91 (3d Cir. 2016).

### a. Defendants' Omissions of Current Fact Are Not Protected by the Safe Harbor

Plaintiffs allege that when Inovio made statements about the start of a Phase 2/3 trial "this summer" and "in September," Defendants knew, but failed to disclose, that the FDA had already placed a clinical hold on any new trials for INO-4800 and that, until the issues identified in the FDA letter were resolved, Inovio was barred from administering its proposed vaccine to any additional trial participants – whether in Phase 2, Phase 3, or combined Phase 2/3 trials. ¶¶60, 110, 112, 114. In other words, the alleged omissions on June 30 and August 10, 2020 were not about a potential future occurrence, but rather involved the failure to disclose presently existing facts – the FDA's clinical hold letter – which had a material impact on Inovio's ability to proceed with any new trial of INO-4800. As the Court unambiguously held on the last motion to dismiss, "***[t]he Safe Harbor does not immunize those claims," like the ones here, involving "omissions of present fact***." MTD Order at 18-19 (citing *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009), and *In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at \*9 (D.N.J. Aug. 16, 2018)); MTD Order at 18-19 (citing *Freshpet*, 2018 WL 394878, at \*3); *see also Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 643 (D.N.J. 2021) ("'Allegations based upon omissions of existing facts or circumstances do not constitute forward[-]looking statements protected by the safe harbor of the Securities Act.'").

While studiously ignoring the Court's prior Order and the wealth of Third Circuit authority holding that omissions of current fact are not protected by the PSLRA safe harbor, Defendants principally rely on *Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447 (1st Cir. 2017), for their safe harbor argument. Defs' MTD at 19, 21. As with Defendants' other cited authority, this out-of-Circuit opinion deals with a much different situation than the one present here and thus provides little, if any, persuasive value. *Ganem* did not concern a clinical hold; rather, it involved an "approval letter" that "erected no material barriers to an immediate enrollment of the first patient" in the study at issue there. 845 F.3d at 455-56. Accordingly, there was no material, current fact that was omitted from the challenged statements. The situation here is obviously different given that the FDA did not approve anything, but rather placed a clinical hold on any new trial for INO-4800, specifically directing Inovio that trial "subjects may not be given the investigational drug." ¶¶60, 110, 112, 114.

While not cited by Defendants, *Reid* is more instructive. There, like here, "Defendants argue[d] that their statements regarding the timeframe for the FDA's decision on [a new drug application] were forward-looking because they are 'plans or objectives relating to the[ir] products.'" *Reid*, 2010 WL 11710594, at *4. The Court rejected this argument because "Plaintiffs allege[d] that in making these statements . . . Defendants knowingly omitted important facts regarding the Agency's serious concerns respecting the . . . application – concerns that would cause significant delay, at the very least." *Id.* The barriers erected by the FDA here for Inovio to proceed to a Phase 2 or 3 trial were even more significant than those in *Reid*, and Defendants' failure to disclose these facts makes the safe harbor provision inapplicable to Defendants' June 30 and August 10 statements.

4867-5258-8573.v1

**b.** **Even if Forward Looking, Defendants' June 30 and August 10 Statements Were Not Accompanied by Meaningful Cautionary Language**

To be protected by the PSLRA's safe harbor provision, forward looking statements must be "accompanied by meaningful cautionary language." MTD Order at 18-19 (citing *Avaya*, 564 F.3d at 254). Even assuming *arguendo* that Defendants' June 30 or August 10, 2020 statements omitting the truth about the clinical hold letter were considered forward looking, they would not qualify for protection under the safe harbor provision because they were not accompanied by meaningful cautionary language.

The purported cautionary language Defendants cite to in their motion was not meaningful. Defs' MTD at 17-19. Indeed, the risk disclosures Defendants rely on were pulled from SEC filings that *pre-dated* the June 26, 2020 clinical hold letter (or were just cut-and-pasted from those filings) and generically warn about events that "could" or "'may'" happen. *Id.* at 18. But by the time Defendants spoke on June 30 and August 10, 2020, there was not just a possibility that "'[t]he FDA . . . *may* disagree with the design or implementation of our clinical trials.'" *Id.* The FDA had *already* issued a clinical hold letter, specifically identifying the concerns with INO-4800 and stopping Inovio from initiating any new trial of the vaccine candidate until those concerns were resolved. ¶¶60, 110, 112, 114. As the Third Circuit has held, such language is not meaningful and, in fact, "a company may be liable under Section 10(b) for misleading investors when it describes as hypothetical a risk that has already come to fruition." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241-42 (3d Cir. 2017). Indeed, even more specific cautionary language than Defendants point to here, including "discussion of 'clinical holds' as merely an abstract possibility," has been held to be insufficient to provide safe harbor protection because it "would not have alerted a reasonable

4867-5258-8573.v1

investor to the fact that the proposed clinical trials had already encountered this obstacle." *Ferrone*, 2014 WL 5152367, at \*6.[9]

### c. Defendants Knew that Their Statements Omitted Material Information About the Clinical Hold

Once again assuming *arguendo* that the June 30 and August 10, 2020 statements qualified as forward looking statements – they do not – and that they were accompanied by meaningful cautionary language – they were not – they still would not be protected by the safe harbor provision because Defendants knew the statements were false and misleading when made.

Defendants argue that Plaintiffs have not pled that Defendants knew their statements were false when made because Plaintiffs "do not plead that any Defendant actually knew – as of June 30 or August 10 – when Inovio would receive FDA approval to begin the Phase 2 portion of their proposed Phase 2/3 clinical trial." Defs' MTD at 20. But as alleged, Defendants ***did*** know that neither a Phase 2 trial nor any other new trial of INO-4800 could begin until after the issues raised in the June 26, 2020 clinical hold letter had been resolved, and Defendants had not even responded to the FDA about those issues as of June 30 or August 10. ¶¶60, 110, 112, 114. That was the material fact Defendants indisputably had actual knowledge of. And that was the fact that Defendants failed to disclose, rendering their statements false and misleading. Thus, contrary to Defendants' argument, Plaintiffs' allegations do support "a strong inference that defendants acted with actual

---

[9]  Defendants' cited authority is not persuasive. Defs' MTD at 18. *Hackel v. Aveo Pharms., Inc.*, 474 F. Supp. 3d 468, 479-80 (D. Mass. 2020), did not concern the timing to begin a clinical trial but rather the timing of expected topline results from an already ongoing and approved clinical trial. Nor did *Hackel* involve a situation where a clinical hold was placed on a trial. Likewise, *Kuhne v. Gossamer Bio, Inc.*, 2021 WL 1529934, at \*6 (S.D. Cal. Apr. 19, 2021), did not involve a situation where a clinical hold was placed on a trial about which the defendant made allegedly false and misleading statements. Finally, as stated above, the facts in *Ganem* bear no resemblance to what is alleged here.

4867-5258-8573.v1

knowledge that their [statements] were false or misleading." Defs' MTD at 20 (quoting *Avaya*, 564 F.3d at 259).[10]

**B.      The Complaint Raises a Strong Inference of Scienter**

Just as Plaintiffs adequately alleged scienter for Defendants' false statements and omissions concerning the construct and manufacturing of INO-4800 (MTD Order at 13-16, 22-24), they have done so regarding the misstatements and omissions about the INO-4800 clinical trials. Specifically, Plaintiffs allege that both Kim and Kies (and, therefore, the corporate defendant, Inovio) knew about the June 26, 2020 FDA clinical hold letter prior to June 30, 2020. ¶¶112. Moreover, Plaintiffs allege that these defendants were motived to deceive investors so that they could complete stock sales totaling $3,935,750 in the five weeks following the receipt (and non-disclosure) of the clinical hold letter. ¶¶29, 33, 111-112, 126.

It is telling that Defendants do not dispute these facts – their actual knowledge of the clinical hold letter and subsequent sales of stock – and do not make any independent argument that the SAC should be dismissed for failure to allege scienter. Instead, Defendants lump what appear to be scienter arguments in with their forward looking statement arguments, contending that "the falsity and scienter analyses are intertwined." Defs' MTD at 11. Because, as explained above, the PSLRA safe harbor does not apply to Defendants' omissions of current facts, Defendants have no basis to challenge the allegations of scienter. But to the extent Defendants try to argue on reply that, even absent their safe harbor gambit, Plaintiffs have not adequately alleged a strong inference of scienter, they are wrong.

---

[10]    To the extent that Defendants argue that the standard for adequately alleging actual knowledge in the context of forward looking statements is any different from that necessary to allege actual knowledge for scienter generally, this is not the law, and Defendants' cited cases do not stand for this proposition. *See* Defs' MTD at 20; *see also Avaya*, 564 F.3d at 274 (showing of "knowing falsity" satisfies scienter requirement in either the context of forward looking statements or statements of current fact).

- 17 -

As the Court previously recognized, "[t]o adequately plead scienter, a plaintiff must allege facts giving rise to a strong inference 'of either reckless or conscious behavior.'" MTD Order at 13 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999)). Recklessness is conduct that constitutes "'an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Avaya*, 564 F.3d at 267 n.42. A plaintiff "'must sufficiently plead "Defendants' knowledge of facts or access to information contradicting their public statements . . . [*i.e.*, that] Defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."'" *In re Elecs. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *6 (D.N.J. Jan. 31, 2019).

Importantly, in a case dealing with non-disclosure of material facts, "'***any required element of scienter is satisfied where . . . the defendant had actual knowledge of the material information***.'" *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004). Indeed, while the Supreme Court has cautioned that the inference of scienter "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre" (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 315, 324 (2007)), Plaintiffs here actually identify and quote from the smoking gun – the FDA's June 26, 2020 clinical hold letter. ¶¶60, 110, 112, 114. Defendants do not contest that they knew about the clinical hold, nor could they – as Plaintiffs allege, "[a]s of June 23, 2020, and at the time these statements were made, ***Defendants knew***, but failed to disclose, that Inovio had already been informed by the FDA that the trial for INO-4800 had been placed on partial clinical hold." ¶110.[11] Further,

---

[11] Oddly, Defendants complain that, despite having document discovery, "Plaintiffs allege ***no new facts*** that either the June 30 or August 10 statements were made with an actual '***intent to deceive, manipulate, or defraud***.'" Defs' MTD at 21 (emphasis in original). But as set forth in Plaintiffs' Motion for Leave to Amend the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws, the new allegations regarding the June 30 and August 10, 2020 misstatements and omissions (as well as the stock sales triggering disclosure obligations) are directly based on the June 26, 2020 FDA clinical hold letter that was only uncovered through discovery in

- 18 -

Defendants had direct knowledge of the deficiencies with INO-4800 identified by the FDA, including the FDA's stated concerns with Inovio's Phase 1 trial results and the implications for further clinical testing. *See* ¶110. ("***Inovio was informed*** by a June 23, 2020 telephone call that the FDA was placing the INO-4800 trial on partial clinical hold and again in a June 26, 2020 letter that stated that IND 'has been placed on clinical hold, and subjects may not be given the investigational drug.'"). In other words, there is no dispute that Defendants knew the very facts that, as alleged, they failed to disclose to investors when speaking on June 30 and August 30, 2020 and selling stock on June 30, July 15, and July 30, 2020. Accordingly, Plaintiffs have alleged a strong inference of scienter.

The strong inference of scienter established by the unrefuted allegations of knowledge are buttressed by the same allegations of Defendants' motive and opportunity that the Court previously found supportive of Defendants' scienter. MTD Order at 15-16, 24. If anything, the allegations of Defendants' stock sales are even more indicative of an intent to deceive now, given that the insider trading started just four days after the receipt of the clinical hold letter and Defendants collectively sold 170,000 shares of Inovio stock in little more than a month after June 26, 2020. ¶¶29, 33, 111. As alleged, in the 19 months prior to June 2020, neither Kim nor Kies had voluntarily sold any of their Inovio stock. ¶¶29, 33. Defendants do not dispute the accuracy of these allegations, but suggest that they are irrelevant because the stock sales were purportedly made pursuant to 10b5-1 trading plans. Defs' MTD at 22. That is the same argument Defendants made in their last motion to dismiss. ECF No. 72-1 at 22. And, as discussed above, the Court appropriately rejected it. Not only

this case. *See, e.g.*, ECF No. 121-1 at 1 ("[B]ased on documents produced by Defendants late last year, the fact emerged that [Inovio] was informed by the [FDA] on June 23, 2020 that the proposed clinical trial for INO-4800 was placed on partial clinical hold – meaning that 'subjects may not be given the investigational drug,' as the FDA stated in a June 26, 2020 letter to the Company"). There was no need, and certainly no requirement, for Plaintiffs to cite any additional material uncovered in discovery evidencing Defendants' fraudulent intent. There will be plenty of that, no doubt, at summary judgment.

are Defendants advancing an affirmative defense inappropriate on motion to dismiss, but Plaintiffs have specifically alleged that Kim's and Kies's trading plans were not valid. ¶¶29, 33.

As the Court previously recognized, Plaintiffs' "allegations of actual knowledge of omitted material facts, considered with the allegations of motive and opportunity. . ., satisfy the PSLRA's heightened pleading requirement for scienter." MTD Order at 24. That finding continues to hold true.

### C. The Complaint Adequately Alleges Loss Causation

This Court previously recognized that "'[a]llegations of loss causation are not subject to the heightened pleading requirements of Rule 9(b) and the PSLRA'" and "'[w]hether the plaintiff has proven [loss] causation is usually reserved for the trier of fact.'" MTD Order at 16-17 (quoting *Freshpet*, 2018 WL 394878, at *6, and *EPMedSystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000)). To meet their burden, Plaintiffs need provide only a "'short and plain statement'" that gives the defendants "some indication of the loss and the causal connection that [they have] in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005). Nevertheless, Defendants make three different loss causation arguments, claiming Plaintiffs have not sufficiently alleged that: (1) any part of the August 11, 2020 stock price decline was caused by disclosures concerning the false statements and omissions about the manufacturing of INO-4800; (2) any part of Inovio's August 11, 2020 stock price decline was caused by disclosures concerning the false statements and omissions about the INO-4800 clinical trials; and (3) any part of Inovio's September 28, 2020 stock price decline was caused by disclosures concerning the false statements and omissions about the INO-4800 clinical trials. Defendants' loss causation arguments fail on each count.

4867-5258-8573.v1

### 1. Plaintiffs Have Adequately Alleged that the August 11, 2020 Stock Price Decline Was Caused, in Part, by Disclosures Related to Defendants' Manufacturing Statements

Defendants contend that "[t]he SAC also adds two corrective disclosures dates – August 10 and September 28 – in an attempt to plead loss causation." Defs' MTD at 22. But Plaintiffs' prior complaint alleged that there were corrective disclosures on August 10, 2020 and that those disclosures specifically concerned Defendants' manufacturing statements. *See* FAC, ¶125. Defendants failed to move for dismissal of the FAC on the basis that those allegations did not adequately plead loss causation. Having conceded the adequacy of the allegations previously, Defendants should not be permitted to argue that they are somehow inadequate now. *See* Fed. R. Civ. P. 12(g)(2).

Even if the Court allows Defendants to challenge the August 10, 2020 manufacturing disclosures now, their argument provides no basis for dismissal. Plaintiffs have identified the alleged disclosure on August 10 – Kim's refusal to answer questions about the VGXI, Inc. case or reaffirm the assurances made in the "stand-by" statements that followed the publication of the lawsuit and comment that Inovio was only "focus[ed] . . . on scaling up for 100 million doses" – and the subsequent 23% decline in Inovio's stock price on August 11, 2020. ¶¶14-15, 121-122, 139. Defendants do not and cannot dispute those allegations, which are more than enough to plead loss causation in accordance with Federal Rule of Civil Procedure 8. Instead, Defendants point to other statements Kim made on August 10 and argue that there was nothing negative about what Kim said (and did not say) that day about INO-4800 manufacturing. Defs' MTD at 23-24. But that argument, like so many others, requires the Court to ignore the actual allegations and draw factual inferences in Defendants' favor. It is also undercut by the fact, as identified in Plaintiffs' Reply in Further Support of Motion for Class Certification, that analysts following Inovio certainly saw the manufacturing disclosures on August 10 as negative news: as one analyst put it the next day, "'we

- 21 -

do not believe management's production forecasts'"; another said, "'[o]ur price target reduction results from . . . only a cautious optimism in manufacturing capacity, given management commentary on the 2Q20 call.'" ECF No. 112 at 15.

Defendants also argue that the August 10, 2020 disclosures cannot be corrective of Kim's May 11, 2020 statement that Inovio's capacity to manufacture INO-4800 was "'on [the] right track'" because that statement only concerned the Company's ability to manufacture 1 million doses in 2020 and not 100 million doses in 2021. Defs' MTD at 23-24. But the August 10 disclosures are alleged to be corrective of all of Defendants' false and misleading statements about manufacturing, not just the May 11 "on [the] right track" statement. Moreover, Plaintiffs' allegations (which the Court previously held sufficiently pled the falsity of the manufacturing statements (MTD Order at 17-22)) identify that Kim's May 11 statements concerned both the purported ability of Inovio to manufacture 1 million doses in 2020 **and** 100 million doses in 2021. ¶104. Accordingly, there is no basis for Defendants' contention that the August 10 disclosures are not related to the prior alleged false statements regarding INO-4800 manufacturing.

### 2. Plaintiffs Have Adequately Alleged that the August 11, 2020 Stock Price Decline Was Caused, in Part, by Disclosures Related to Defendants' Clinical Trial Statements

Plaintiffs also allege that disclosures on August 10, 2020 regarding a delay in the Phase 2/3 INO-4800 clinical trials were a substantial cause of the Company's August 11, 2020 stock price decline. ¶¶121-122, 139. Specifically, in Inovio's August 10 press release, Defendants disclosed that the next INO-4800 clinical trial would begin "in September," later than the previous (false) representation that the trial would begin by the end of August. *Id.*

Defendants do not dispute these allegations. To the contrary, in opposing class certification, Defendants actually argued that the August 11 stock price decline **was** caused by "the delay of Inovio's Phase 2/3 clinical trials for INO-4800." ECF No. 107 at 24. As Defendants' own expert

4867-5258-8573.v1

opined, "the key new, negative information regarding INO-4800 disclosed in Inovio's August 10, 2020 earnings conference call was a delay in the expected start date of its Phase 2/3 trial." ECF No. 107-2, ¶78. *See also id.*, ¶80 (the "delay in the development timeline for INO-4800 was important given the highly competitive race to produce a viable vaccine"). Having previously represented that the August 10 disclosure about the delay in the beginning of new INO-4800 clinical trials negatively impacted Inovio's stock price, Defendants cannot now plausibly argue that Plaintiffs have not adequately alleged loss causation for the very same disclosure.[12]

### 3. Plaintiffs Have Adequately Alleged that the September 28, 2020 Stock Price Decline Was Caused by Disclosures Related to Defendants' Clinical Trial Statements

Finally, Plaintiffs have also adequately pled loss causation with respect to the belated September 28, 2020 disclosure of the partial clinical hold. ¶¶125, 141. On that day, Inovio issued a press release disclosing that the FDA "has notified the company it has additional questions about the company's planned Phase 2/3 trial of its COVID-19 vaccine candidate INO-4800" and "[u]ntil the FDA's questions have been satisfactorily addressed, INOVIO's Investigational New Drug Application (IND) for the Phase 2/3 trial is on partial clinical trial" – the exact information Defendants could have and should have disclosed two months earlier. ¶125. In response, Inovio's stock price immediately fell 28%. *Id*.

---

[12] Defendants limply argue that the disclosure of the delayed trial was just a "'mere failure to meet . . . forecasts." Defs' MTD at 24 (quoting *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 496 (D. Conn. 2013), *aff'd*, 766 F.3d 172 (2d Cir. 2014)). But in *Xerox*, the issue was that the missed earnings forecast was not connected in any way to any alleged false statement, *i.e.*, it revealed "no new fraud-related information." *Xerox*, 935 F. Supp. 2d at 496. Here the disclosure of the delay specifically concerned the INO-4800 trials that are the precise subject of the alleged misstatements and omissions. Defendants also contend that the August 10 disclosure was simply the disclosure of a known risk. Defs' MTD at 24. But that is just a regurgitation of Defendants' argument that their generic risk disclosures were sufficient. As discussed above, they were not. Defendants failed to disclose to investors the FDA clinical hold letter that forced them to announce the INO-4800 trial delay on August 10, 2020.

4867-5258-8573.v1

Unable to counter these allegations, Defendants fall back on their false factual claim that the June 26, 2020 partial clinical hold only applied to a Phase 3 trial of INO-4800, not a Phase 2/3 trial. Defs' MTD at 24-25. But, as set forth above and in the SAC, the June 26, 2020 partial clinical hold barred Inovio from moving forward with *any* new clinical trial of INO-4800, including a Phase 2/3 or a Phase 3 trial. The FDA was clear on June 26, 2020: "subjects may not be given the investigational drug." ¶¶60, 110, 112, 114. While "mirror image" disclosures are not required to plead loss causation, the allegations here present a classic example of one: Defendants knew on June 26, 2020 that the FDA had placed a partial clinical hold on new clinical trials of INO-4800, they subsequently made statements about the clinical trials and sold stock without disclosing the partial clinical hold, and then on September 28, 2020 they disclosed the FDA had placed a partial clinical hold on new clinical trials of INO-4800, resulting in a significant stock price decline. Loss causation allegations could not be more sufficiently pled.

## V.     PLAINTIFFS STATE A VALID CLAIM AGAINST ROBERT JUBA

Defendants argue that Plaintiffs "concede" Robert J. Juba, Jr. ("Juba") did not control Inovio. Defs' MTD at 25. Not so. Plaintiffs allege numerous facts detailing how Juba "is a control person of Inovio within the meaning of §20(a) of the Exchange Act." *See* ¶37. Serving as Inovio's Vice President of Biological Manufacturing and Clinical Supply Management at all relevant times, Juba had been authorized by defendants Kim and Inovio to speak on behalf of the Company to investors during the Class Period, "had direct and supervisory involvement in the Company's day-to-day operations," and had personal knowledge of specific facts undermining Defendants' misstatements while also participating in, preparing, or approving the alleged misstatements. ¶¶35-36, 63, 163-164. These allegations are more than sufficient at this stage to allege control person liability. *See Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at \*6 (D.N.J. July 30, 2021) (§20(a) claim upheld where the defendants exercised "'decision-making power'" over the company's

business activities, including through directing "day-to-day operations" and being "privy to confidential proprietary information"); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599-600 (D.N.J. 2001) (control adequately alleged based on participation in management, knowledge of inside information, and involvement in misstatements).

## VI. CONCLUSION

For these reasons, Defendants' motion to dismiss the SAC should be denied.

DATED: April 20, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
LONNIE A. BROWNE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE (*pro hac vice*)

s/ TOR GRONBORG
TOR GRONBORG

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
lbrowne@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: 717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for Lead Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 20, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ TOR GRONBORG
TOR GRONBORG

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  torg@rgrdlaw.com

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **ANDREW DAVID ABRAMOWITZ**
  aabramowitz@bm.net,jgionnette@bm.net

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LONNIE A. BROWNE**
  lbrowne@rgrdlaw.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,emagnus@bm.net

- **MATTHEW S. DECKER**
  MDecker@duanemorris.com

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,eyork@bm.net,csimon@bm.net,jgionnette@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **KOJI F. FUKUMURA**
  kfukumura@cooley.com,chourani@cooley.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **GEORGINA J. INGLIS**
  ginglis@cooley.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com,autodocketPHL@duanemorris.com

- **SEAN MCGUIRE**
  smcguire@rgrdlaw.com,e_file_SD@rgrdlaw.com,scaesar@rgrdlaw.com

- **CAITLIN BRIDGET MUNLEY**
  cmunley@cooley.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,lbrowne@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)