THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK MCDERMID, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INOVIO PHARMACEUTICALS, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-01402-GJP<br><br>CLASS ACTION |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT............................................................................................................. 2

      A.    Plaintiffs Have Not Pled Facts Demonstrating Any Statement About Inovio's
            Plans for Its Phase 2/3 Trial Start Date Were False or Misleading. ....................... 2

            1.    The challenged statements were not misleading by omission. ................... 2

            2.    The challenged statements are protected under the safe harbor. ............... 4

                  a.    The safe harbor applies. ................................................................. 4

                  b.    The statements included meaningful cautionary language. ............ 5

                  c.    Plaintiffs do not plead actual knowledge of falsity......................... 6

      B.    Defendants' 10b5-1 Stock Sales Did Not Create a Duty to Disclose..................... 7

      C.    Plaintiffs Fail to Plead Loss Causation for the Newly Challenged Statements...... 8

      D.    Plaintiffs' Newest Manufacturing Loss Causation Argument Fails. ...................... 9

      E.    Robert Juba Should Be Dismissed........................................................................ 10

III.  CONCLUSION........................................................................................................ 10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*,
  2010 WL 3749459 (E.D. Pa. Sept. 27, 2010) ...........................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997).................................................................................................6

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014)..................................................................................................3

*In re Digit. Island Sec. Litig.*,
  223 F. Supp. 2d 546 (D. Del. 2002)......................................................................................10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)...............................................................................................................9

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)..................................................................................................7

*Hoey v. Insmed Inc.*,
  2018 WL 902266 (D.N.J. Feb. 15, 2018) ..............................................................................5

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)...............................................................................................6, 7

*Laborers' Local #231 Pension Fund v. Cowan*,
  300 F. Supp. 3d 597 (D. Del. 2018)......................................................................................2

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007)..................................................................................................9

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016)...............................................................................................5, 6

*Ortiz v. Canopy Growth Corp.*,
  537 F. Supp. 3d 621 (D.N.J. 2021) .......................................................................................4

*Pamcah-UA Local 675 Pension Fund v. BT Grp. PLC*,
  2021 WL 3415060 (3d Cir. Aug. 5, 2021)..............................................................................1

*Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*,
  217 F.R.D. 305 (N.D.N.Y. 2003)...........................................................................................9

*SEC v. Ferrone*,
  2014 WL 5152367 (N.D. Ill. Oct. 10, 2014)........................................................................3, 4

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 2d 367 (D.N.J. 2010) ..................................................................2, 7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)..............................................................................................1

*Winer Fam. Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007)..................................................................................2

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..............................................................................5

**Statutes**

15 U.S.C.
    § 78u-4(b)(1)(B)................................................................................................2, 8
    § 78u-5(c)(1) .......................................................................................................4

**Other Authorities**

21 C.F.R. § 312.42(e)...................................................................................................7

## I.    INTRODUCTION

"[S]ecurities fraud is not easy to allege." *Pamcah-UA Local 675 Pension Fund v. BT Grp. PLC,* 2021 WL 3415060, at *1 (3d Cir. Aug. 5, 2021). The PSLRA's heightened pleading standard "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

Plaintiffs' Second Amended Complaint ("SAC") fails to plead any such facts supporting their new theory of fraud—*i.e.*, that Defendants intended to deceive investors about the expected start date of Inovio's Phase 2/3 clinical trial. The reason for this is simple: the facts do not exist.

Despite receiving over 38,000 Inovio emails and other documents, ***the SAC does not contain a single new scienter allegation*** to support this new theory of fraud. This failure is particularly critical here because the only new challenged statements are forward-looking projections. Such statements are immune from liability under the PSLRA safe harbor unless Plaintiffs plead ***particularized*** facts demonstrating that Defendants ***knew*** the projected timeframe was unreasonable or unachievable. The SAC comes nowhere close to meeting that burden.

Instead, Plaintiffs argue that all they need to plead to survive dismissal is that Defendants (i) were aware that the FDA had placed Inovio's proposed Phase 3 trial protocol on partial clinical hold, and (ii) did not disclose this fact when projecting the anticipated start date for a Phase 2/3 trial. Plaintiffs are wrong. Defendants' statements made clear that the anticipated start date was contingent on FDA approval, thus signaling to any reasonable investor that approval to proceed had not yet been granted. And critically, Plaintiffs do not allege that the projected start dates were so ambitious that it would be unrealistic for Inovio to respond to the hold comments and receive FDA approval to proceed with the clinical trial as planned.

Plaintiffs try to distract from this by arguing that Defendants present an "alternative narrative" to generate a factual dispute. But that is simply not true. Although Defendants' Opening

Brief certainly presents a more complete narrative, it is the ***absence of factual allegations*** to support falsity, scienter, and loss causation that renders the SAC deficient.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Pled Facts Demonstrating Any Statement About Inovio's Plans for Its Phase 2/3 Trial Start Date Were False or Misleading.[1]

The newly challenged statements concern Inovio's plans to begin a Phase 2/3 clinical trial upon FDA concurrence. (¶¶109, 113.) Plaintiffs argue that because "Defendants elected to speak about the purported start of Inovio's next clinical trials of INO-4800 . . . they undertook a duty to speak fully and accurately on the matter." (ECF No. 135 ("Opp.") at 6.) The duty to disclose, however, is not so all-encompassing as Plaintiffs suggest. "[T]he duty to disclose rule does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be so 'incomplete as to mislead.'" *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 419–20 (D.N.J. 2010) (quoting *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007)). "Often, a statement will not mislead even if it is incomplete." *Id.* at 419. It is, thus, Plaintiffs' burden to "state facts showing that, due to its incompleteness, the statement ***affirmatively led the plaintiff in a wrong direction*** (rather than merely omitted to discuss certain matters)."[2] *Id.*; *see* 15 U.S.C. § 78u-4(b)(1). Plaintiffs have not met that burden.

### 1.    The challenged statements were not misleading by omission.

Plaintiffs argue that Defendants' statements projecting a Phase 2/3 trial start date by the

---

[1] Although the SAC suggests otherwise (¶¶109–10), Plaintiffs have represented that they "do not bring any claims based on Defendants' June 30, 2020 statements regarding the Phase 1 clinical trial results." (Opp. at 5–6 n.4.) Accordingly, any claims premised on these statements should be stricken or dismissed with prejudice to avoid any potential confusion regarding their viability as a basis for liability. *Cf. Laborers' Local #231 Pension Fund v. Cowan*, 300 F. Supp. 3d 597, 605 (D. Del. 2018) (court's review is limited to "statements alleged to be false or misleading").

[2] Unless noted, all emphasis is added and citations, quotations marks, and alterations are omitted.

end of "summer" or "September" were misleading because Inovio did not disclose that it had received a partial clinical hold on a different proposed trial protocol. (Opp. at 6–10.) But those same statements expressly stated the start date was contingent on FDA approval. (¶109 ("INOVIO . . . *plans to initiate* a Phase 2/3 efficacy trial this summer *upon regulatory concurrence*"); ¶113 ("So we've been working urgently to get our Phase II/III events. *We are in very active discussions with the FDA on the design, and we feel that we are very close to this process*.").) Given these disclosures, no reasonable investor would think Inovio already had FDA approval to begin a Phase 2/3 trial. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 165 (3d Cir. 2014) (rejecting argument that statement was misleading despite "explicit warning . . . that initiation of Phase 3 would be 'subject to regulatory approval'").

Recognizing this fact, Plaintiffs argue instead that the partial clinical hold meant that "Inovio needed more than just standard FDA concurrence to begin any new trial of INO-4800." (Opp. at 10.) Plaintiffs conspicuously offer no support for this argument, and Defendants are not aware of any authority suggesting that a partial clinical hold sets a higher threshold for approval.

Plaintiffs also argue that Defendants' case law is inapposite because it "only concerned 'interim FDA feedback' on a clinical trial design, not a clinical hold in which the FDA barred the use of the investigational drug." (Opp. at 9.) But that is precisely Defendants' point: the June 26 partial clinical hold letter identified comments that Inovio needed to resolve in order to move forward. In other words, it provided interim feedback on Inovio's proposed Phase 3 trial design; it did *not* bar the use of INO-4800. The FDA expressly stated on the June 23 call and in the June 26 letter that *__Inovio's ongoing Phase 1 clinical trial may continue as planned__*. (Ex. S at 1.)

Finally, Plaintiffs' argument that "the situation here is akin to *SEC v. Ferrone*" could not be more wrong. (Opp. at 10.) In that case, the defendant received a "full clinical hold" that

3

completely "barred any use of SF–1019 [the investigational drug] on humans, including through so-called compassionate use waivers." *SEC v. Ferrone*, 2014 WL 5152367, at *1 (N.D. Ill. Oct. 10, 2014). The following year, when the "full clinical hold" was still in effect, the defendant publicly stated that "[c]ompassionate use waivers have been issued by the institutional review board of the FDA in Houston, Texas for the use of SF–1019." *Id.* at *2. No such facts are pled here. The FDA issued a ***partial*** clinical hold, which ***expressly allowed Inovio to continue administering INO-4800 to subjects in its Phase 1 trial***. And Inovio never made any statements claiming to have received FDA approval to proceed to the next clinical trial when it had not.

### 2. The challenged statements are protected under the safe harbor.

The PSLRA safe harbor protects "any forward-looking statement"—whether it is "based on an untrue statement of a material fact ***or omission of a material fact necessary to make the statement not misleading***"—so long as the statutory requirements are met. 15 U.S.C. § 78u-5(c)(1). Plaintiffs argue against the plain language of the statute, claiming Defendants' forward-looking statements fall outside the safe harbor because Plaintiffs' theory of fraud alleges an "omission[] of present fact." (Opp. at 13–14.) Plaintiffs are wrong.

### a. The safe harbor applies.

The plain language of the statute makes clear that the safe harbor applies where a forward-looking statement is allegedly misleading by omission. 15 U.S.C. § 78u-5(c)(1). Courts within the Third Circuit recognize two narrow exceptions to this rule: (i) where the statement at issue is a "mixed present/future statement," as opposed to purely forward-looking, and (ii) where the forward-looking statement itself is "a *pretext* to cover up a presently existing fact." *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 642–43 (D.N.J. 2021).

Neither exception applies here: the June 30 and August 10 statements are purely forward-looking projections about the timing of a future clinical trial contingent on FDA approval, and

4

there is no allegation that these projections were made as a pretext to cover up the receipt of the partial clinical hold. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021) ("[I]n order to establish that a challenged statement contains non-forward-looking features . . . , a plaintiff must plead sufficient facts to show that the statement goes *beyond* the articulation of 'plans,' 'objectives,' and 'assumptions' and instead contains an express or implied 'concrete' assertion concerning a specific 'current or past fact.'").

Accordingly, because Defendants' June 30 and August 10 purely forward-looking statements were (i) accompanied by meaningful cautionary language and (ii) made without actual knowledge that the Phase 2/3 clinical trial would not start in "summer" or "September" as projected, the statements are protected by each of the two, independent prongs of the safe harbor.[3]

**b.      The statements included meaningful cautionary language.**

Defendants' June 30 and August 10 projections about the Phase 2/3 clinical trial start date were accompanied by meaningful cautionary language warning investors that "[t]he commencement . . . of clinical trials can be delayed for a number of reasons, including delays related to: obtaining regulatory approval to commence a clinical trial." (ECF No. 133-1 at 18.) Unsurprisingly, Plaintiffs' Opposition does not address this risk disclosure. (*See* Opp. at 15.) It is, however, precisely this risk that ultimately caused Inovio to miss the projected start date. *See Hoey v. Insmed Inc.*, 2018 WL 902266, at *20 (D.N.J. Feb. 15, 2018) (defendant's cautionary language was not misleading when disclosed risk that materialized was "the very issue which Plaintiff raises in the Amended Complaint"). That should be the end of the inquiry.

Plaintiffs, however, argue that it was the receipt of the partial clinical hold on June 26 that

---

[3] Plaintiffs' suggestion that **both** prongs of the safe harbor must be satisfied to receive protection (Opp. at 16) is incorrect. The PSLRA "provides **two distinct** entrances to the safe harbor." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016).

caused the delay, and therefore, no cautionary language absent disclosure of that hold could be meaningful. (Opp. at 15.) But again, the SAC contains no facts to support this argument. There are no allegations that, as of June 30 or August 10, the partial clinical hold rendered it impossible for Inovio to receive FDA approval to begin the Phase 2/3 trial within the projected timeframe.

### c.    Plaintiffs do not plead actual knowledge of falsity.

Even if the cautionary language had been insufficient (it was not), the June 30 and August 10 statements are protected under the actual knowledge prong. *See OFI*, 834 F.3d at 491. This is where scienter and falsity intertwine. "Since [the safe harbor] provision specifies an 'actual knowledge' standard, the **scienter requirement for forward-looking statements is stricter** than that for statements of current fact. Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of **knowing falsity**." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 274 (3d Cir. 2009).

When challenging forward-looking statements, "plaintiffs bear the burden of pleading factual allegations, not hypotheticals, sufficient to reasonably allow the inference that **the forecast** was made with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). Yet, despite having access to over 38,000 emails and other documents produced by Defendants, the SAC contains no such facts. It does not, for example, allege that, as of June 30, Defendants believed they would be unable to resolve the hold comments prior to a "summer" start date. It does not allege that, as of August 10, Defendants believed they would be unable to resolve the hold comments in time for a "September" start. It does not allege that that the short delay from "summer" to "September" was caused by an inability to clear the hold comments, rather than a shift in strategy to pursue a Phase 2/3 trial as opposed to a Phase 3 trial. In short, it does not allege that any Defendant failed to adequately consider the time it would take to resolve the hold

comments and allow for FDA review in forecasting the projected Phase 2/3 trial start dates. *See Avaya*, 564 F.3d at 263 ("[O]missions and ambiguities count against inferring scienter.").

Instead, Plaintiffs argue that "Defendants had not even responded to the FDA about those issues as of June 30 or August 10." (Opp. at 16.) But this argument merely highlights the flaw in their theory—Defendants did not claim on either June 30 or August 10 that it could proceed with a Phase 2/3 trial immediately. Rather, Defendants gave estimates months out, providing ample time to submit a response to the hold comments and receive FDA concurrence to proceed. *See* 21 C.F.R. § 312.42(e) ("FDA shall respond in writing to the sponsor within 30-calendar days of receipt of the request and the complete response.").

Finally, Plaintiffs set out a separate scienter section within their Opposition, arguing that pleading recklessness is sufficient to meet their burden. (Opp. at 17–20.) "In the case of the forward-looking statements, however, an inference of recklessness does not avail plaintiffs—that is, it must be placed on the nonculpable-explanation side of the balance when we weigh competing inferences." *Avaya*, 564 F.3d at 274. Plaintiffs also argue that "scienter is satisfied where . . . the defendant had actual knowledge of the material information." (Opp. at 18 (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004)).) Plaintiffs' interpretation of that standard is flawed. The focus is on material information that would render the challenged statement false, not any and all undisclosed material facts. *See Synchronoss*, 705 F. Supp. 2d at 402. Plaintiffs identify no material information that contradicted Defendants' projected timing.

**B.      Defendants' 10b5-1 Stock Sales Did Not Create a Duty to Disclose.**

Plaintiffs also argue that Dr. Kim's and Mr. Kies' June and July stock sales triggered an independent duty to disclose the partial clinical hold on Inovio's proposed Phase 3 clinical trial protocol. The facts alleged in the SAC, however, do not support their argument.

Plaintiffs allege that Dr. Kim and Mr. Kies June and July stock sales were executed

"pursuant to a Rule 10b5-1 trading plan" (¶¶29, 33), entered into on May 18, 2020 (Exs. Q, R). And they allege that it was not until June 23, 2020—over a month after Dr. Kim and Mr. Kies entered into their 10b5-1 plans—that the FDA first informed Inovio that it was placing the proposed Phase 3 clinical trial protocol on hold. (*See, e.g*, ¶112.) Given this, there can be no dispute that neither Dr. Kim nor Mr. Kies traded on the basis of material non-public information about the partial clinical hold, and therefore, their stock sales did not trigger a duty to disclose. *See Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*, 2010 WL 3749459, at *12–13 (E.D. Pa. Sept. 27, 2010) (noting duty to disclose arises "when there is insider trading," and holding "Plaintiffs have not plead sufficient information to show . . . insider trading").

Attempting to postpone the inevitable, Plaintiffs argue that the Court should disregard the 10b5-1 plans in their entirety because Plaintiffs assert "[o]n information and belief," (¶¶29, 33), that Defendants "had knowledge of, or recklessly disregarded, non-public, material adverse facts concerning the development status of INO-4800 at the time [they] created the trading plan[s]." (Opp. at 11 (quoting ¶¶29, 33).) Under the PSLRA, however, allegations made on "information and belief" must state "with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Certainly, that belief must be founded on the 10b5-1 plans themselves, including the dates they were executed. And those dates unequivocally refute the notion that Dr. Kim or Mr. Kies had any knowledge about the partial clinical hold when they entered into their plans.

### C.    Plaintiffs Fail to Plead Loss Causation for the Newly Challenged Statements.

August 10.  Plaintiffs argue that the August 10 disclosure regarding the expected "delay" of the Phase 2/3 clinical trial start date supports loss causation because the stock price declined, in part, due to this "delay." (Opp. at 22–23.)  Critically, however, Plaintiffs allege no facts indicating this "delay" resulted from the June 26 partial clinical hold on Inovio's proposed Phase 3 trial protocol as opposed to other factors—*e.g.*, Inovio's decision to withdraw its proposed Phase 3 trial

8

protocol in favor of a proposed Phase 2/3 clinical trial. Because Plaintiffs fail to allege any facts connecting the "delay" to the allegedly fraudulent omission, this disclosure cannot support loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (plaintiff must show "a causal connection between the material misrepresentation and the loss").

September 28. As the allegations in the SAC make clear, the partial clinical hold received on June 26 concerned Inovio's proposed ***Phase 3*** clinical trial protocol. (*See, e.g.*, ¶110 (addressing Inovio's "initiation of [a] proposed ***Phase 3*** trial").) Inovio's September 28 disclosure concerned a partial clinical hold on Inovio proposed ***Phase 2/3*** clinical trial protocol. (¶125 ("INOVIO's Investigational New Drug Application (IND) for the ***Phase 2/3*** trial is on partial clinical [hold].").) Plaintiffs do not dispute that these are two different proposed clinical trial protocols. Nor do they dispute that Inovio did not receive notification that its proposed ***Phase 2/3*** clinical trial protocol had been placed on partial clinical hold until September 25—*i.e.*, weeks after the challenged statements were made. As such, they fail to plead loss causation. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3d Cir. 2007) ("[P]laintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss.").

**D.   Plaintiffs' Newest Manufacturing Loss Causation Argument Fails.**

Contrary to Plaintiffs' argument, the August 10 manufacturing allegations in the SAC are all new. (*Cf.* Opp. at 21; ECF 121-3 (redline of FAC and SAC).) Defendants are thus entitled to address the inadequacy of these new allegations, which fail for three reasons. *See Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003).

First, Plaintiffs' argument that they need only identify an alleged corrective disclosure and subsequent stock drop to plead loss causation (Opp. at 21), is entirely unfounded and contrary to Third Circuit law. *McCabe*, 494 F.3d at 426 ("In order to satisfy the loss causation requirement . . . the plaintiff must show that the defendant misrepresented or omitted the very facts

that were a substantial factor in causing the plaintiff's economic loss.").

Second, Plaintiffs' argument that the August 10 statements corrected anything other than Dr. Kim's May 11 "on track" statement (Opp. at 22), is contrary to the allegations in the SAC. (¶121 (linking August 10 statements solely to "prior claims that Inovio remained 'on track' with the manufacturing of lNO-4800"); *see also* ECF 112 at 14 (same).)

Third, the only "on track" statement was made on May 11 and it was specific to the 2020 goal of 1 million doses (not the 2021 goal of 100 million doses). (¶104.) To be sure, Dr. Kim also addressed the 2021 goal of 100 million doses during that same May 11 earnings call: "we're preparing and increasing our scale to be able to provide hundreds of millions of doses starting next year." (¶104.) But Plaintiffs do not identify any corrective disclosures on August 10 as to ***that*** portion of the May 11 statement. Presumably, that is because Inovio had made progress since May 11 towards achieving the 2021 goal of 100 million doses. (*See* MTD at 23; Ex. J at 5, 7.)

## E.    Robert Juba Should Be Dismissed.

Plaintiffs allege that "Kim and Kies had the power to . . . and did influence and control, directly or indirectly, the Company's decision-making, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading." (¶163.) There is no such allegation as to Mr. Juba. Plaintiffs rely solely on conclusory allegations about his supervisory role, involvement in "day-to-day operations," and authority to speak on behalf of Inovio. (Opp. at 24.) None of these demonstrate control over the alleged misstatements, and thus fail to plead a Section 20(a) claim. *See In re Digit. Island Sec. Litig.*, 223 F. Supp. 2d 546, 562 (D. Del. 2002) (no control absent allegations of "knowing and substantial participation in the wrongdoing").

## III.    CONCLUSION

The Court should dismiss the newly challenged June 30 and August 10, 2020 statements, the newly alleged August 10 and September 28, 2020 corrective disclosure dates, and Robert Juba.

10

Dated: May 10, 2022

Respectfully Submitted,

DUANE MORRIS LLP


By: *s/ Patrick Loftus*
    Patrick Loftus (PA60417)
    30 South 17th Street
    Philadelphia, PA 19103
    (215) 979-1367 (phone)
    (215) 689-3591 (fax)
    loftus@duanemorris.com

    COOLEY LLP
    Koji F. Fukumura (PA73831)
    Heather Speers (*Pro Hac Vice*)
    4401 Eastgate Mall
    San Diego, CA 92121-1909
    (858) 550-6000 (phone)
    (858) 550-6420 (fax)
    kfukumura@cooley.com
    hspeers@cooley.com

    Caitlin B. Munley (PA318757)
    Georgina J. Inglis (*Pro Hac Vice*)
    1299 Pennsylvania Avenue, NW
    Suite 700
    Washington, DC 20004
    (202) 842-7800 (phone)
    (202) 842-7899 (fax)
    cmunley@cooley.com
    ginglis@cooley.com

    Luke Cadigan (*Pro Hac Vice*)
    500 Boylston Street
    14th Floor
    Boston, MA 02116-3736
    (617) 937-2300 (phone)
    (617) 937-2400 (fax)
    lcadigan@cooley.com

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on May 10, 2022, I filed this document on the Court's docket using the Court's CM/ECF system. Based on the Court's records, all counsel of record were served with a copy of the foregoing document by electronic means.

*s/ Patrick Loftus*

DUANE MORRIS LLP
Patrick Loftus (PA60417)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1367 (phone)
(215) 689-3591 (fax)
loftus@duanemorris.com

12