UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. 2:20-cv-01402-GJP |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS |
| INOVIO PHARMACEUTICALS, INC., et al., | ) ) | ACTION SETTLEMENT |
| Defendants. | ) ) ) | |

4893-8064-5678.v1

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PROCEDURAL HISTORY OF THE ACTION......................................................2

III.    THE TERMS OF THE SETTLEMENT...............................................................4

IV.     THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT
        NEGOTIATIONS..........................................................................................6

V.      FRAMEWORK FOR CLASS ACTION SETTLEMENTS .................................7

VI.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............8

        A.      The Proposed Settlement Is Fair......................................................9

        B.      The Benefits Under the Settlement Are More than Adequate ...............13

        C.      The Other Rule 23(e)(2)(C) Factors Are Met........................................15

                1.      The Proposed Method for Distributing Relief Is Effective........................15

                2.      Attorneys' Fees and Expenses ...........................................16

                3.      The Parties Have No Other Agreements Besides an Agreement to
                        Address Requests for Exclusion ................................................17

        D.      Class Members Are Treated Equitably..................................................17

VII.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
        PURPOSES...................................................................................................18

VIII.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE
        PROCESS AND SHOULD BE APPROVED ................................................21

IX.     PROPOSED SCHEDULE OF EVENTS..........................................................22

X.      CONCLUSION.............................................................................................23

4893-8064-5678.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alves v. Main*,
   2012 WL 6043272 (D.N.J. Dec. 4, 2012),
   *aff'd*, 559 F. App'x 151 (3d Cir. 2014)........................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)............................................................................................20

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................19, 20

*Bredbenner v. Liberty Travel, Inc.*,
   2011 WL 1344745 (D.N.J. Apr. 8, 2011) .....................................................................11

*Campbell v. Transgenomic, Inc.*,
   2019 WL 3003920 (D. Neb. July 10, 2019) ..................................................................22

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ....................................................................................20

*Curiale v. Lenox Grp., Inc.*,
   2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .................................................................7

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)............................................................................................7

*Ernest P. Kline, Eugene F. Knopf v. First W. Gov't Sec., Inc.*,
   1996 WL 153641 (E.D. Pa. Dec. 21, 1995)..................................................................20

*Girsh v. Jepson*
   521 F.2d 153 (3d Cir. 1975)...............................................................................9, 13, 15

*Huffman v. Prudential Ins. Co. of Am.*,
   2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ...........................................................9, 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................................19

*In re Aetna Inc.*,
   2001 WL 20928 (E.D. Pa. Jan 4, 2001) ........................................................................16

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................................14

4893-8064-5678.v1

**Page**

*In re AT&T Corp. Sec. Litig.*,
2005 WL 6716404 (D.N.J. Apr. 25, 2005) ..............................................................................10

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) ...........................................................................................19

*In re CIGNA Corp.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007)..................................................................7, 12, 14

*In re: Genworth Fin. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sept. 26, 2016)..........................................................................17

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)........................................................................................14, 17

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)................................................................................................9, 13

*In re Molycorp, Inc. Sec. Litig.*,
No. 1:12-cv-00292-RM-KMT, ECF 262
(D. Colo. June 16, 2017).........................................................................................................17

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015),
*aff'd*, 821 F.3d 410 (3d Cir. 2016) ........................................................................................12

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)........................................................................13, 14

*In re Philips/Magnavox Television Litig.*,
2012 WL 1677244 (D.N.J. May 14, 2022) .............................................................................12

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010)..........................................................................9, 12

*In re Veritas Software Corp. Sec. Litig.*,
396 F. App'x 815 (3d Cir. 2010) ............................................................................................16

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
2017 WL 2062985 (S.D.N.Y. May 15, 2017) ........................................................................19

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007),
*aff'd*, 838 F.3d 223 (2016) ....................................................................................................19

- iii -

**Page**

*In re Vivopharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................................................10, 12, 14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .....................................................................................7, 9, 12, 18

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
2019 WL 4877563 (D.N.J. Oct. 3, 2019) ...................................................................................10

*Pelletier v. Endo Int'l., PLC, et al.*,
No. 17-cv-5114, ECF 415 (E.D. Pa. Mar. 25, 2022) ................................................................10

*Sanders v. CJS Sols. Grp., LLC*,
2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ............................................................................11

*Schwartz v. Urb. Outfitters, Inc.*,
2016 WL 7626720 (E.D. Pa. Oct. 31, 2016) ..............................................................................10

*Yellowdog Partners, LP v. Curo Grp. Holdings Corp.*,
No. 2:18-cv-02662-JWL-KGG, ECF 106
(D. Kan. Dec. 18, 2020) .............................................................................................................17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78j(b) ..........................................................................................................................................3
§78t(a) ..........................................................................................................................................3
§78u-4(a)(4) ..................................................................................................................................5
§78u-4(a)(7) ................................................................................................................................22

**Page**

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................21, 22
    Rule 23(a)...................................................................................................18
    Rule 23(a)(2)..............................................................................................19
    Rule 23(b)(3)........................................................................................18, 20
    Rule 23(c)(2)(B).........................................................................................21
    Rule 23(c)(3)..............................................................................................21
    Rule 23(e)...................................................................................2, 7, 8, 18
    Rule 23(e)(1)(B).....................................................................................8, 21
    Rule 23(e)(2).........................................................................................8, 9, 18
    Rule 23(e)(2)(A) ..........................................................................................9
    Rule 23(e)(2)(B).........................................................................................11
    Rule 23(e)(2)(A)-(B)....................................................................................9
    Rule 23(e)(2)(C).........................................................................................15
    Rule 23(e)(2)(C)(i).....................................................................................13
    Rule 23(e)(2)(C)(ii)....................................................................................15
    Rule 23(e)(2)(C)(ii)-(iv).............................................................................15
    Rule 23(e)(2)(C)(iii)...................................................................................16
    Rule 23(e)(2)(C)(iv)...................................................................................17
    Rule 23(e)(2)(D) ........................................................................................17
    Rule 23(e)(3)................................................................................................8

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation*,
    §21.63 (4th ed. 2004)..................................................................................8

4893-8064-5678.v1

Lead Plaintiff Manuel S. Williams ("Lead Plaintiff") and Representative Plaintiff Andrew Zenoff (collectively, "Plaintiffs")[1] respectfully submit this Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    PRELIMINARY STATEMENT

A settlement has been reached in this matter following extensive, hard-fought litigation and arm's-length mediation and settlement discussions overseen by Gregory P. Lindstrom of Phillips ADR Enterprises, a highly respected and experienced mediator.  As set forth in the Stipulation, the Settlement provides for the payment of $30 million in cash plus 7,000,000 shares of Inovio common stock valued at $2.00 per share for a total value of $44 million to resolve this securities class action against all Defendants.  This is an outstanding recovery for the Class.

The litigation is at an advanced stage and therefore the Settling Parties were well informed of the strengths and weaknesses of their claims and defenses as they negotiated the Settlement.  They had the benefit of this Court's ruling on Defendants' motion to dismiss as well as extensive briefing on Plaintiffs' motion for class certification, which motion remained pending at the time the proposed Settlement was agreed to in principle.  The Settling Parties also benefitted from the extensive and detailed investigation and discovery conducted as the case was litigated – over half a million pages of documents (285,000 of which were produced by Defendants), 22 fact depositions of Plaintiffs, current and former employees of Inovio and third parties, and the exchange of class certification-related expert reports and expert depositions.  The Settling Parties were also preparing to litigate summary judgment and had retained experts on the factual questions presented in this Action when the Settlement was reached.

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") attached as Exhibit A to the Declaration of Trig R. Smith in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Smith Decl.").  All citations are omitted and emphasis is added, unless otherwise indicated.

4893-8064-5678.v1

In addition, under the Stipulation, Class Members who properly submit valid Proof of Claim forms will be treated equitably because each will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation. For all of these reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Settlement Hearing and other Settlement-related dates may be scheduled. At the preliminary approval stage, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e). As set forth below, the Settlement easily satisfies these standards because it is a fair, reasonable, and adequate resolution for the Class. In particular, the Settlement balances the objective of securing the highest possible recovery with recognition of the substantial risks and costs of continued litigation and the risk that, as in any complex case, the Class could receive nothing, or a sum far less than the Settlement Amount, after a trial and any appeals are completed. Accordingly, Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class and represents a highly favorable result.

## II.    PROCEDURAL HISTORY OF THE ACTION

This is a consolidated securities class action brought against Defendants on behalf of all persons and entities who purchased or otherwise acquired common stock of Inovio from February 14, 2020, to August 10, 2020, inclusive (the "Class Period").

This case has a substantial procedural history, which helped provide the Settling Parties with an extensive understanding of all the relevant issues when negotiating and ultimately agreeing to the Settlement. The case began on March 12, 2020, when Patrick McDermid filed the initial complaint in *McDermid v. Inovio Pharms., Inc., et al.*, No. 2:20-cv-01402-GJP, in the United States District Court for the Eastern District of Pennsylvania (the "Court"). ECF 1. On June 18, 2020, the Court

4893-8064-5678.v1

appointed Manuel S. Williams Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP Lead Counsel. ECF 54.

On August 3, 2020, Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Consolidated Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"). ECF 60. On September 21, 2020, Plaintiffs filed the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("First Amended Complaint" or "FAC"). ECF 68.

Defendants moved to dismiss the FAC on November 5, 2020. ECF 72. On February 16, 2021, after full briefing, the Court issued a memorandum and order granting in part and denying in part the motion to dismiss. ECF 85-86. Across 26 pages, the Court thoroughly evaluated each claim and upheld them all, save for allegations pertaining to Inovio's statements about the Richter-Helm vaccine manufacturing contract inclusion in the U.S. Government program known as Operation Warp Speed. *See* ECF 85-86.

On July 29, 2021, Plaintiffs moved for an order certifying the proposed class. ECF 99. That motion is fully briefed and remains pending.

On February 17, 2022, Plaintiffs filed the Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint" or "SAC"), alleging violations of §§10(b) and 20(a) of the 1934 Act. ECF 129. The SAC was largely identical to the FAC, with two distinctions: (a) it dropped all reference to the Operation Warp Speed allegations, which had been dismissed; and (b) it incorporated new allegations pertaining to Inovio's failure to disclose that the FDA had placed Inovio's COVID-19 vaccine candidate on partial clinical hold effective June 26, 2020. *See* ECF 129, ¶¶17, 60, 110-114, 125.

Defendants moved to dismiss the SAC on March 21, 2022. ECF 133. That motion is fully briefed and remains pending.

4893-8064-5678.v1

As the litigation continued, the Settling Parties simultaneously engaged in extensive fact and expert discovery. The Settling Parties have produced, combined, over half a million pages of documents (285,000 by Defendants), and other document discovery was received from no fewer than 14 third-party entities. Defendants deposed Messrs. Williams and Zenoff. Plaintiffs conducted 20 fact depositions of current and former employees of Inovio and third parties. Experts for both sides produced reports pertaining to class certification and were deposed.

The parties first attempted to resolve this case with the help of Gregory P. Lindstrom, a nationally known mediator of securities class actions, on July 13, 2021; the parties mediated again with Mr. Lindstrom on February 15, 2022. In advance of both mediations, the parties submitted detailed mediation statements. The parties negotiated in good faith, but were unable to reach a resolution at either mediation, as the parties' positions remained far apart.

The mediator continued to work closely with the parties to achieve a settlement. These negotiations were protracted, complex, and challenging. After extensive further discussions and negotiations, the mediator issued a "mediator's proposal" on May 18, 2022, which the parties accepted.

## III.    THE TERMS OF THE SETTLEMENT

The parties have agreed to settle the case for a total value of $44 million, $30 million in cash and 7,000,000 shares of Inovio common stock valued at $2.00 per share. The cash, stock, and accrued interest comprise the Settlement Fund. In addition, the Class is protected if Inovio's stock price drops by the inclusion of this provision:

> [W]ith respect to the stock transferred to the Escrow Agent, if the average closing price of Inovio common stock is trading below $2.00 per share for the ten (10) trading days prior to the date the Court enters the Judgment, Defendants shall, within ten (10) days of the Effective Date, contribute to the Settlement the amount representing the difference between $2.00 per share and the average closing price of the common stock of Inovio for the ten (10) trading days prior to the date the Court enters the Judgment multiplied by 7,000,000. This contribution can be made in cash or Inovio common stock. If the contribution is made using Inovio common stock, the

- 4 -

number of shares shall be calculated based on the average trading price of Inovio common stock for the ten (10) trading days prior to the Effective Date.

Stipulation, ¶2.4.

With respect to notice and settlement administration, Plaintiffs propose a nationally-recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), subject to the Court's approval. Stipulation, ¶1.3. The proposed notice plan and plan for claims processing are discussed below in §VIII and in the Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Decl."). *See* Smith Decl., Ex. B.

Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treasury Regulation §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement, on behalf of all Plaintiffs' Counsel, for: (a) an award of attorneys' fees not to exceed 27.5% of the Settlement Amount; (b) payment of expenses and charges resulting from the prosecution of the Action in an amount not to exceed $900,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. In addition, Plaintiffs will seek awards of no more than $160,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

Once Notice and Administration Expenses, Taxes and Tax Expenses, and Court-approved attorneys' fees and expenses and any award(s) to the Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following the distribution shall be further distributed in an economically feasible manner. Stipulation, ¶5.9. The Plan of Allocation

- 5 -

treats all Class Members equitably based on the timing of their Inovio share purchases, acquisitions, and sales.

Plaintiffs and Defendants have entered into a Supplemental Agreement which provides that Defendants shall have the option to terminate the Stipulation in the event that valid requests for exclusion from the Class exceed certain criteria.  Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members who do not opt out of the Settlement will release any and all claims against Defendants arising out of, relating to, or in connection with: (a) the facts, matters, events, transactions, acts, occurrences, statements, representations, misrepresentations, and/or omissions which were or could have been alleged in this Action; and (b) purchases and/or acquisitions by any Class Member of Inovio publicly traded common stock during the Class Period.  ERISA and derivative claims are excepted, as are claims by Defendants for insurance coverage or claims to enforce the Settlement.  Stipulation, ¶1.27.

## IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The parties engaged in extensive arm's-length settlement negotiations at various points throughout the litigation, including two mediation sessions before Gregory P. Lindstrom of Phillips ADR Enterprises, a well-known mediator of securities class actions.  The first mediation session was conducted by video conference in July 2021.  Each side prepared detailed mediation briefs with extensive exhibits attached for the mediator's benefit.  The parties negotiated in good faith but remained far apart.

Although the initial mediation was unsuccessful, the parties maintained open channels of communication regarding settlement, and informal discussions continued as the case was litigated through discovery.  The parties engaged in a second formal mediation session with Mr. Lindstrom in February 2022.  Once again, the parties submitted detailed mediation briefs in advance and highlighted how, in their views, their respective positions had grown stronger as a result of

- 6 -

4893-8064-5678.v1

discovery. These discussions were complex and challenging. Although an agreement was not reached that day, progress was made. Following the second mediation, each side received an unsolicited "mediator's proposal" to settle the case on terms proposed by Mr. Lindstrom. Each side accepted the mediator's proposal to settle the case for a combination of cash and stock with an aggregate value of $44 million. Once this agreement had been reached to settle in principle, the parties then proceeded to negotiate the precise details of the terms of the Settlement, including the stock component.

## V.    FRAMEWORK FOR CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("'The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of

4893-8064-5678.v1

the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation*, §21.63 (4th ed. 2004). At this juncture, Plaintiffs request that the Court take the first and second steps in the settlement approval process by entering the proposed Preliminary Approval Order and ordering the dissemination of notice to the Class.

## VI.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Pursuant to Rule 23(e), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Certification of the Class for settlement purposes is addressed in §VII below. Rule 23(e)(2) includes the following factors:

> *(2) Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors overlap with those set forth by the Third Circuit in *Girsh v. Jepson*:

> "(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the

- 8 -

trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

(ellipses in original) 521 F.2d 153, 157 (3d Cir. 1975); *see Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *5 (E.D. Pa. Apr. 5, 2019) (granting final approval after analyzing Rule 23(e)(2) and *Girsh* factors). The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010). The Third Circuit has explained that there is an initial "presumption of fairness" of the settlement if this Court finds that: "'(1) the settlement negotiations [are conducted] at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *See Warfarin*, 391 F.3d at 535.

Each of these factors favor preliminary approval.

### A.    The Proposed Settlement Is Fair

The first two factors under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (Courts have held that "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

First, Plaintiffs and their counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this litigation on behalf of the proposed Class, including, *inter alia*, by engaging in extensive document review, taking 22 fact depositions of current and former Inovio employees and third parties, defending the depositions of Lead Plaintiff

- 9 -

and Representative Plaintiff, filing several briefs in opposition to Defendants' dismissal motions and in support of class certification, producing expert testimony on class certification, defending that expert's deposition, taking the deposition of the opposing expert, and engaging in extensive settlement negotiations, including thorough pre-mediation briefing and extensive argument. *See In re Vivopharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's-length negotiation overseen by Phillips ADR Enterprises after the parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery.").

Further, Lead Counsel is highly experienced in prosecuting complex securities class actions in this Circuit and throughout the country. Robbins Geller has successfully prosecuted hundreds of securities class actions on behalf of damaged investors, as this Court has already recognized in its order appointing Robbins Geller as Lead Counsel in this litigation. ECF 53 at 14 (approving Robbins Geller as lead counsel and Saxton & Stump as local counsel, and observing that "Robbins Geller is a preeminent litigation firm with a record of winning complex securities class actions"); *see also Pelletier v. Endo Int'l., PLC, et al.*, No. 17-cv-5114, ECF 415 (E.D. Pa. Mar. 25, 2022) (finding that Robbins Geller and co-counsel "worked vigorously and successfully in bringing this case to a close for the benefit of the class, in a very short period of time" and that "quality and performance of results will be handsomely rewarded"); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action"); *Schwartz v. Urb. Outfitters, Inc.*, 2016 WL 7626720, at *3 n.8 (E.D. Pa. Oct. 31, 2016) (stating that Robbins Geller "possess[es] substantial experience prosecuting securities class actions"); *In re AT&T Corp. Sec. Litig.*, 2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) ("Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their

- 10 -

professionalism and diligence displayed during [this] litigation substantiates this characterization.”); *see also* Smith Decl., Exs. C, D (firm resumes of Robbins Geller and Saxton & Stump, respectively). The collective tenacity of Lead Plaintiff, Representative Plaintiff, and Lead Counsel resulted in a very favorable Settlement, with a value of $44 million, providing a substantial financial benefit to the Class.

Second, Rule 23(e)(2)(B) looks at whether the Settlement was negotiated at arm's length.  As detailed above in §IV, the first mediation took place in July 2021 and negotiations continued throughout the litigation, culminating in a second mediation session in February 2022.  The parties each accepted an unsolicited mediator's proposal shortly after the second mediation.  These negotiations were held with each side having full knowledge of the crucial issues in the case and the benefit of full fact discovery, and they involved numerous phone calls and e-mails between counsel in addition to the two mediation sessions with Mr. Lindstrom.  These negotiations were difficult, adversarial, and vigorously executed by both sides, and Defendants are represented by highly sophisticated counsel at one of the world's most preeminent corporate defense firms.  After these discussions, the parties independently agreed – without knowing the other side's decision – to accept a mediator's proposal to settle the case for a total value of $44 million, $30 million in cash and $14 million in Inovio common stock.

In addition, the direct participation of an experienced mediator further ensures that the negotiations were non-collusive and conducted properly.  *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) (“Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'”); *Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) (“[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.”); *see also*

- 11 -

*CIGNA*, 2007 WL 2071898, at *3 (approving settlement where the mediator had been Hon. Layn Phillips (Ret.), the founder of Phillips ADR, the firm that employs Mr. Lindstrom, in part because the direct participation of Hon. Phillips in the mediation supported the inference of arm's-length negotiation).

Because of the extensive litigation and discovery that have already taken place, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement. *Warfarin*, 391 F.3d at 537; *Schering-Plough*, 2010 WL 1257722, at *10. As detailed above in §II, given the numerous documents reviewed, depositions taken, and briefing completed, Lead Counsel knew what important witnesses would testify to and what hurdles would need to be overcome at trial. All of this, combined with Lead Counsel's extensive securities class action experience, was more than sufficient to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Viropharma*, 2016 WL 312108, at *11; *In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2022) ("'Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.'").

Lead Counsel believes that this Settlement is in the best interests of the Class, and that judgment, in view of Lead Counsel's substantial experience in complex securities class actions, is to be afforded considerable weight. *See Viropharma*, 2016 WL 312108, at *11 ("when the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"), *aff'd*, 821 F.3d 410 (3d Cir. 2016); *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally 'attribute significant

weight to the belief of experienced counsel that settlement is in the best interest of the class.'"),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014).

### B.     The Benefits Under the Settlement Are More than Adequate

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could inevitably impose.[2] *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on risks). These factors weigh in favor of approval of the Settlement.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This case, which was filed in 2020, faces the same risks inherent in any federal litigation, compounded by the length of time that summary judgment, trial, and any appeals would consume. *See Ins. Brokerage*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

The recovery is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). For example, Defendants have maintained that their statements with respect to Inovio's Phase 2/3 trial of its COVID vaccine candidate, INO-4800, were not false or misleading. *See, e.g.*, ECF 144 at 2-7.

---

[2]     The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.

Defendants also maintain that Plaintiffs cannot establish loss causation and damages because there is no link between the allegedly false statements and any movement in Inovio's stock price. *E.g.*, ECF 144 at 8-9. To take another example, in opposing class certification, Defendants argued that Inovio's allegedly false statements regarding constructing INO-4800 in three hours had no price impact, nor did the statements regarding the alleged misrepresentation on March 24, 2020 and August 9-10, 2020. *See* ECF 107 at 19-24. Based on these and other arguments, Defendants' expert surely would have argued against price impact at summary judgment and trial. Plaintiffs' expert would have countered those arguments with equal vigor, and each side's testimony would have relied on complex economic arguments. Proving loss causation and damages, too, is Plaintiffs' burden, and those arguments would have been just as protracted.

Given that the testimony and positions of the parties' experts would vary substantially, these crucial elements would have been resolved at trial, in large part, through a "'battle of experts.'" *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001). Such a battle would increase the expense – as well as the risk – involved with advancing the litigation toward a more positive resolution for Plaintiffs and the Class. Plaintiffs believe their case is strong but acknowledge, as they must, that there are risks to litigation and ultimate recovery. *See Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("the relationship between the price

decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict").

Taking into account that the case has been litigated for over two years, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the Settlement here is certainly reasonable and should be preliminarily approved. *See Girsh*, 521 F.2d at 157. When analyzing the risks of establishing liability and damages at trial, the Court must "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'" *Huffman*, 2019 WL 1499475, at *4. Indeed, given the complexity of the case, the sophistication of Defendants and their counsel, and the uncertain risks and delay inherent in continuing the litigation, a recovery with a total value of $44 million, is outstanding. The Court should find that the relief provided under the Settlement is adequate.

### C.   The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors that a court considers in approving a settlement: (1) the effectiveness of the proposed method for distributing relief; (2) the terms of the proposed attorneys' fees; and (3) the existence of any other "agreement[s]." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors are readily met.

### 1.   The Proposed Method for Distributing Relief Is Effective

As demonstrated below and in the Crudo Declaration, Smith Decl., Ex. B, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are more than sufficient. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, and notification of many known securities brokers, nominees and other financial institutions, to facilitate the identification of potential Class Members. *See* Crudo Decl., ¶¶7-11. This will be supplemented by the publication of the Summary Notice in *The Wall Street*

*Journal* and the issuance of a press release over a national newswire service. *See id.*, ¶13. In addition, a toll-free hotline and a settlement-specific website will be created. Key documents will be posted on the website, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *See id.*, ¶¶17-18.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Plaintiffs' Counsel's economic consultant and based on the consultant's event study analysis estimating the amount of artificial inflation in the price of Inovio common stock during the Class Period.

### 2. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Stipulation provides that Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to this Court for an award of attorneys' fees and expenses 35 days prior to the Settlement Hearing. *See* Smith Decl., Ex. A [Stipulation, Ex. A, Preliminary Approval Order]. As set forth in the proposed Notice, Lead Counsel will request attorneys' fees not to exceed 27.5% of the Settlement Amount and litigation expenses not to exceed $900,000, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.

This fee request is consistent with attorney's fees amounts regularly approved in connection with comparable securities class action settlements. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirmed attorney's fees of 30% on $21.5 million recovery); *Viropharma*, 2016 WL 312 108, at *17 (awarding attorney's fees of 30% on $8 million recovery); *In re Aetna Inc.*, 2001 WL 20928, at *13-*16 (E.D. Pa. Jan 4, 2001) (awarding attorney's

- 16 -

fees of 30% on $82.5 million recovery); *Ikon*, 194 F.R.D. at 192-97 (awarding attorney's fees of 30% on $111 million recovery).[3]

### 3.  The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action.  The Settling Parties have entered into a supplemental agreement which provides that Defendants will have the right to terminate the Settlement in the event that valid requests for exclusion from the Class exceed the criteria set forth in the Supplemental Agreement.  *See* Stipulation, ¶7.3.

### D.  Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it treats all Class Members equitably and does not treat Plaintiffs or any other Class Member preferentially.

As set forth in the Plan of Allocation contained in the Notice attached to the Stipulation as Exhibit A-1, Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based on their recognized claim compared to the total recognized claims of all Authorized Claimants.  The Plan of Allocation is substantially similar to other plans approved in securities class actions across the country.  *See, e.g.*, *Yellowdog Partners, LP v. Curo Grp. Holdings Corp.*, No. 2:18-cv-02662-JWL-KGG, ECF 106 (D. Kan. Dec. 18, 2020); *In re Molycorp, Inc. Sec. Litig.*, No. 1:12-cv-00292-RM-KMT, ECF 262 (D. Colo. June 16, 2017).

---

[3]    Any fees and expenses awarded shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses. *See, e.g.*, *In re: Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

4893-8064-5678.v1

Accordingly, each factor identified under Rule 23(e)(2) and in the Third Circuit's *Girsh* opinion is satisfied. Moreover, pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness. 391 F.3d at 535. Given the litigation risks involved and the complexity of the underlying issues, the $30 million in cash and 7,000,000 shares valued at $2.00 per share is an outstanding recovery. Accordingly, Plaintiffs and their counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and that notice of the Settlement should be sent to the Class.

## VII.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Under the terms of the Stipulation, the Settling Parties have agreed, for purposes of the Settlement only, to the certification of the following Class.

> [A]ll persons and entities who purchased or otherwise acquired common stock of Inovio from February 14, 2020 to August 10, 2020, inclusive. Excluded from the Class are: (a) Inovio, J. Joseph Kim, Peter D. Kies, and Robert J. Juba, Jr. (each a "Defendant" and collectively, "Defendants"); (b) members of the immediate family of any Defendant who is an individual; (c) any person who was an officer or director of Inovio during the Class Period; (d) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (e) Inovio's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (f) all persons and entities who timely and validly request exclusion from the Class in accordance with the requirements set by the Court in connection with the Notice of Proposed Settlement; and (g) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

Stipulation, ¶1.4. This definition is substantially identical to the class definition proposed by Plaintiffs in their motion for class certification and in the Second Amended Complaint. *See* ECF 99-100, 129. The proposed Class satisfies the requirements of Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e), and should be certified for settlement purposes only. In addition, Plaintiffs should be appointed Class Representatives, and Lead Counsel should be appointed Class counsel.

First, given that Inovio averaged 148.9 million shares of common stock outstanding during the Class Period, with a market capitalization as high as $5.0 billion, a weekly trading volume of over 100% of shares outstanding, and average public float for common shares of 95.7%, it is

immediately clear that thousands of individuals and entities traded Inovio stock during the Class Period and numerosity is satisfied.  *See* ECF 100 at 11-16 (analyzing the *Krogman* factors and citing the expert report of Steven P. Feinstein in support of Plaintiffs' motion for class certification); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "'may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period'"), *aff'd*, 838 F.3d 223 (2016).

Second, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact exist as to all Class Members. *See* ECF 100 at 4-5 (establishing that common questions of law and fact exist); *see also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public'"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("'Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement.'").  The facts here raise common questions as to whether: (1) Defendants violated the Exchange Act; (2) Defendants' statements misrepresented or omitted material facts; (3) Defendants acted knowingly or recklessly; and (4) investors suffered damages as a result of the alleged misconduct.  These common questions readily establish commonality.  *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (finding commonality satisfied in a securities case that raised similar common questions raised here).

Third, Plaintiffs' claims are typical of the Class's claims because they share the same factual and legal underpinnings.  *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence 'are generally considered sufficient to satisfy the typicality requirement'").

- 19 -

Fourth, Plaintiffs are adequate class representatives because they have no interests "antagonistic" to those of the proposed Class, and there is no doubt that Lead Counsel is "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs, like all Class Members, purchased Inovio common stock at market prices during the Class Period and allege that they were injured by the same material misrepresentations and omissions and subsequent stock price declines that injured all Class Members. *See* ECF 100 at 5-6. Plaintiffs have "actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015). Both Lead Plaintiff Williams and Representative Plaintiff Zenoff gave several hours of deposition testimony in this matter, and both have remained engaged in supervising this litigation throughout their involvement.

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual adjudications. ECF 100 at 8-19. Indeed, because the elements of Plaintiffs' claims, such as falsity, scienter, reliance, economic loss, and loss causation, all present common questions of law and fact that predominate over individualized ones, courts routinely recognize that the predominance requirement is "'"readily met in certain cases alleging . . . securities fraud."'" *Billhofer*, 281 F.R.D. at 158 (alteration in original). Superiority is also readily met because adjudicating individual claims would be a significant waste of judicial resources. *E.g.*, *Ernest P. Kline, Eugene F. Knopf v. First W. Gov't Sec., Inc.*, 1996 WL 153641, at *35 (E.D. Pa. Dec. 21, 1995) ("[T]he plaintiffs correctly point out that 'considerations of judicial economy and fairness dictate that a class action is superior for securities fraud cases . . . [because] it avoids numerous scattered duplicative lawsuits burdening the federal court system and affords small investors an opportunity to redress their injuries.'"). Plaintiffs

are unaware of any other related litigation commenced by purchasers of Inovio common stock during the Class Period. Accordingly, class certification is appropriate here for Settlement purposes.

## VIII.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settling Parties have negotiated the form of the notices to be disseminated to all Persons who fall within the Class definition and whose names and addresses can be identified with reasonable effort. The proposed Notice and Summary Notice are attached to the proposed Preliminary Approval Order as Exhibits A-1 and A-3, respectively. The proposed Notice apprises Class Members of (among other disclosures) the nature of the Action, the definition of the Class, the claims and issues in the Action, and the claims that will be released in the Settlement. The Notice also: (i) advises that a Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Class Members under Rule 23(c)(3); (iii) states the procedures and deadline for Class Members to exclude themselves from the Class and for objection to the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Proof of Claim form to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing. The Settling Parties further propose to supplement the mailed Notice with the Summary Notice, to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. Additionally, the Notice and Claim Form and other relevant documents will be posted on the settlement website.

- 21 -

4893-8064-5678.v1

The Notice and Summary Notice also satisfy the Private Securities Litigation Reform Act of 1995's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-share basis; (ii) that the Settling Parties do not agree on the average amount of damages per share that would be recoverable in the event Plaintiffs prevailed at trial, and stating the issue(s) on which the Settling Parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorney' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Lead Counsel; and (v) the reasons the Settling Parties are proposing the Settlement. The contents of the Notice and Summary Notice therefore satisfy all applicable requirements.

Plaintiffs also request that the Court appoint Gilardi as Claims Administrator to provide all notices approved by the Court to Class Members, to process Proof of Claim forms, and to administer the Settlement. Gilardi is a recognized leader in legal administration services for class action settlements and legal noticing programs, and has implemented successful claims administration programs in many class actions. *See* Crudo Decl., ¶4; *see also* https://gilardi.com.

Thus, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7). The Notice and Summary Notice are "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Campbell v. Transgenomic, Inc.*, 2019 WL 3003920, at \*2 (D. Neb. July 10, 2019). For all of these reasons, the notice program should be approved by the Court.

## IX.    PROPOSED SCHEDULE OF EVENTS

The Settling Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order:

| Deadline for commencing the mailing of the Notice to Class Members and posting the | No later than 20 calendar days after entry of the |
| --- | --- |

4893-8064-5678.v1

| | |
|---|---|
| Notice and Claim Form on the Settlement website (the "Notice Date") (*see* ¶7) | Preliminary Approval Order |
| Deadline to publish the Summary Notice (*see* ¶8) | No later than 7 calendar days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (*see* ¶19) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (*see* ¶¶14, 17) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (*see* ¶19) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting proof of the mailing of the Notice to Class Members and publication of the Summary Notice (*see* ¶9) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (*see* ¶2) | At least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claims Forms (*see* ¶11) | Postmarked no later than 90 calendar days after the Notice Date |

## X.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  August 22, 2022

Respectfully submitted,

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL

280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for Lead Plaintiff

- 23 -

- 24 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
LONNIE A. BROWNE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
lbrowne@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4893-8064-5678.v1