UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civ. Action No. 2:20-cv-01402-GJP |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| | ) | MEMORANDUM OF LAW IN SUPPORT |
| vs. | ) | OF MOTION FOR FINAL APPROVAL OF |
| | ) | SETTLEMENT, PLAN OF ALLOCATION, |
| INOVIO PHARMACEUTICALS, INC., et al., | ) | AWARD OF ATTORNEYS' FEES AND |
| | ) | EXPENSES, AND AWARDS TO |
| Defendants. | ) | PLAINTIFFS |
| | ) | |

**TABLE OF CONTENTS**

**Page**

I.      OVERVIEW ...................................................................................................1

II.     PROCEDURAL HISTORY..........................................................................2

III.    NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH
        RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY
        APPROVAL ORDER ....................................................................................5

IV.     THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL.....................7

        A.      Plaintiffs and Plaintiffs' Counsel Have More Than Adequately
                Represented the Class ................................................................8

        B.      The Settlement Negotiations Were Conducted at Arm's-Length and Under
                the Oversight of an Experienced Mediator ...........................10

        C.      The Settlement Is Adequate Considering the Costs, Risks, and Delay of
                Trial and Appeal ......................................................................11

                1.      Risks of Establishing Liability and Damages ............................12

                2.      Risks Relating to Inovio's Financial Condition.........................13

                3.      The Settlement Falls Well Within the Range of Reasonableness.............14

        D.      The Settlement Satisfies the Remaining Rule 23(e)(2) Factors...........................16

                1.      The Proposed Method for Distributing Relief Is Effective.......................16

                2.      The Requested Attorneys' Fees Are Reasonable......................................16

                3.      The Parties Have No Other Agreements Besides an Agreement to
                        Address Requests for Exclusion .................................................16

                4.      Class Members Will Be Treated Equitably, and the Reaction of the
                        Class Supports Final Approval ..................................................17

V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........................17

VI.     THE REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
        SHOULD BE APPROVED ........................................................................19

        A.      Attorneys' Fees Should Be Awarded Based on a Percentage of the
                Common Fund ............................................................................20

        B.      The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors .................21

**Page**

1.    The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement ................................................................21

2.    Reaction of Class Members to the Fee Request .........................................22

3.    The Skill and Efficiency of Counsel ...........................................................23

4.    The Complexity and Duration of the Litigation .........................................24

5.    The Risk of Non-Payment ...........................................................................25

6.    The Significant Time Devoted to This Case................................................25

7.    The Range of Fees Typically Awarded .......................................................26

C.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check ......................27

D.    Reasonably Incurred Litigation Expenses Should Be Awarded ...........................28

E.    The Requested Plaintiff Awards Pursuant to 15 U.S.C. §78u-4(a)(4) Are Reasonable ............................................................................................................29

VII.   CONCLUSION.............................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995)...................................................................................28

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
  2013 WL 12153597 (D.N.J. Jan. 30, 2013) ........................................................26

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012),
  *aff'd*, 559 F. App'x 151 (3d Cir. 2014)...............................................................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................20

*Bredbenner v. Liberty Travel*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...........................................................29

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................18

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)...................................................................................7

*Fanning v. Acromed Corp.*,
  2000 WL 1622741 (E.D. Pa. Oct. 23, 2000)........................................................21

*Gelis v. BMW of N. Am., LLC*,
  49 F.4th 371 (3d Cir. 2022) .................................................................................20

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)........................................................................ *passim*

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................................27

*Grier v. Chase Manhattan Auto. Fin. Co.*,
  2000 WL 175126 (E.D. Pa. Feb. 16, 2000) .........................................................21

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)......................................................................21, 22, 23

*Hall v. Accolade, Inc.*,
  2020 WL 1477688 (E.D. Pa. Mar. 25, 2020).......................................................20

**Page**

*Harshbarger v. Penn Mut. Life Ins. Co.*,
   2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) ........................................................21

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................21

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
   2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ..................................................22, 25

*Huffman v. Prudential Ins. Co. of Am.*,
   2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .........................................................13

*In re Aetna Inc.*,
   2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ..............................................................26

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .......................................................14

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ..........................................................................27, 29

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..........................................................................20, 22

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ................................................................................20

*In re CIGNA Corp.*,
   2007 WL 2071898 (E.D. Pa. July 13, 2007) ......................................................7, 12

*In re FAO Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 144693 (E.D. Pa. Oct. 23, 2015) ......................................18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..................................................................................20

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ................................................................12, 27, 29

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ................................................................................19

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ......................................................................14

Page

*In re Lucent Techs., Inc., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) .................................................................24

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
  2016 WL 11575090 (D.N.J. June 28, 2016) ....................................................29

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) ..............................................14, 17, 27

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
  2016 WL 5844319 (D.N.J. Oct. 3, 2016)...........................................................15

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015), *amended*,
  2015 WL 12827803 (E.D. Pa. May 8, 2015),
  *aff'd*, 821 F.3d 410 (3d. Cir. 2016) ..................................................................10

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013)................................................ *passim*

*In re Philips/Magnavox Television Litig.*,
  2012 WL 1677244 (D.N.J. May 14, 2012) ........................................................10

*In re Prudential Ins. Co. Am. Sales Pracs. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)..............................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)........................................................................27, 28

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012)..........................................18, 25, 28

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013)......................................................29, 30

*In re Schering-Plough/Merck Merger Litig.*,
  2010 WL 1257722 (D.N.J. Mar. 26, 2010)..........................................................8

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2020 WL 3166456 (D.N.J. June 15, 2020) ........................................................14

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ................................................................26, 28

4884-4296-0699.v1

**Page**

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    512 F. Supp. 2d 279 (E.D. Pa. 2007) ....................................................................15

*In re Viropharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..................................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................ *passim*

*Li v. Aeterna Zentaris, Inc.*,
    2021 WL 2220565 (D.N.J. June 1, 2021) ................................................................15

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
    2019 WL 4877563 (D.N.J. Oct. 3, 2019) ..................................................................9

*McDermid v. Inovio Pharms., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) .........................................................................9

*Moore v. GMAC Mortg.*,
    2014 WL 12538188 (E.D. Pa. Sept. 19, 2014) ........................................................27

*Rose v. Travelers Home & Marine Ins. Co.*,
    2020 WL 4059613 (E.D. Pa. July 20, 2020) ............................................................11

*Rowe v. E.I. DuPont de Nemours & Co.*,
    2011 WL 3837106 (D.N.J. Aug. 26, 2011) ..............................................................21

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ..............................................................28

*Teh Shou Kao v. CardConnect Corp.*,
    2021 WL 698173 (E.D. Pa. Feb. 23, 2021) ..................................................... *passim*

*Whiteley v. Zynerba Pharms., Inc.*,
    2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ..........................................................26

*Wood v. AmeriHealthCaritas Servs., LLC*,
    2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) ..............................................................28

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..............................................................29

4884-4296-0699.v1

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)................................................................................................................3
§78t(a)................................................................................................................3
§78u-4(a)(4) .............................................................................................. *passim*
§78u-4(a)(6) .....................................................................................................19
§78u-4(a)(7) .......................................................................................................6

Federal Rules of Civil Procedure
Rule 23.............................................................................................................5, 6
Rule 23(c)(2)(B)..............................................................................................5, 7
Rule 23(e)........................................................................................................1, 5
Rule 23(e)(1)(B)...................................................................................................5
Rule 23(e)(2)................................................................................................. *passim*
Rule 23(e)(2)(A)............................................................................................8, 10
Rule 23(e)(2)(B).................................................................................................10
Rule 23(e)(2)(C)(i).............................................................................................11
Rule 23(e)(2)(C)(ii)-(iv)....................................................................................16
Rule 23(e)(2)(D)...........................................................................................16, 17
Rule 23(e)(3)........................................................................................................8
Rule 23(h)..........................................................................................................19

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
  (NERA Economic Consulting Jan. 25, 2022).........................................................15

4884-4296-0699.v1

Lead Plaintiff Manuel S. Williams and Representative Plaintiff Andrew Zenoff (together, the "Plaintiffs")[1] respectfully submit this memorandum of law in support of their motion for final approval of the cash and stock settlement (the "Settlement"), the Plan of Allocation, an award of attorneys' fees and litigation expenses, and awards to Plaintiffs Williams and Zenoff for their work on behalf of the Class.

## I.   OVERVIEW

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs seek final approval of the Settlement of this action which provides for the payment of $30 million in cash plus the greater of 7,000,000 shares of Inovio common stock or $14 million worth of stock, for a total value of at least $44 million.  This Settlement, which resulted from arm's-length negotiations overseen by Gregory P. Lindstrom, an experienced mediator, represents an exceptional recovery for the Class without significant delay and should be approved.  The Settlement follows hard-fought litigation, including the completion of fact discovery.  Through these efforts, following the Court's comprehensive decision largely denying Defendants' motion to dismiss, Plaintiffs' Counsel gained a full understanding of all of the relevant issues, which they brought to bear in negotiating and ultimately agreeing to the Settlement.

The Settlement easily satisfies the requirements of Rule 23(e)(2), meets each of the *Girsh* factors,[2] and balances the objective of attaining the highest possible recovery against the many risks and costs of continued litigation.  This includes the risk that, as in any complex case, the Class could receive nothing, or a far lower sum, after trial and any appeals.  Additionally, the Plan of Allocation set forth in the Notice should be approved because it treats Class Members equitably and ensures

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), dated August 22, 2022 (ECF 149-1).  All emphasis is added and internal citations are omitted unless otherwise indicated.

[2]    *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

4884-4296-0699.v1

that each Class Member that properly submits a valid Proof of Claim will receive a *pro rata* share of the monetary relief.

Lead Counsel's request for an award of attorneys' fees and litigation expenses, and Plaintiffs' requests for awards pursuant to 15 U.S.C. §78u-4(a)(4), should be approved as well as they are reasonable and well within the range approved in similar matters.  Plaintiffs' Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation might last or whether there would ultimately be any recovery.  At each stage of the litigation, Plaintiffs' Counsel faced off against highly sophisticated defense counsel.  Since this suit was filed, Plaintiffs' Counsel thoroughly investigated Plaintiffs' potential claims, filed amended complaints on three occasions, successfully opposed Defendants' motion to dismiss as to the vast bulk of Plaintiffs' claims, fully briefed Plaintiffs' motion for class certification, and completed fact discovery that was both large and complex.  Defendants produced over 284,000 pages of documents; Defendants' expert produced over 86,000 pages of documents; third parties produced over 202,000 pages of documents; and Lead Counsel deposed 14 current and former Inovio employees and five non-party witnesses.  All of this work was completed expeditiously and resulted in the superb result presented here for final approval.

Plaintiffs thus respectfully request final approval of the proposed Settlement and Plan of Allocation, and the award of attorneys' fees and expenses, and class representative awards.

## II.    PROCEDURAL HISTORY

This case has a substantial procedural history which is detailed in the Declaration of Tor Gronborg in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees and Expenses, and Awards to Plaintiffs ("Gronborg Decl."), filed concurrently herewith.  Accordingly, Plaintiffs will provide only a brief summary here.

- 2 -

The case began on March 12, 2020, when Patrick McDermid filed the initial complaint in *McDermid v. Inovio Pharms., Inc., et al.*, No. 2:20-cv-01402-GJP, in the United States District Court for the Eastern District of Pennsylvania (the "Court").  ECF 1.  On June 18, 2020, the Court appointed Manuel S. Williams Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP Lead Counsel.  ECF 54.

On August 3, 2020, Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Consolidated Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act").  ECF 60.  On September 21, 2020, Plaintiffs filed the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("First Amended Complaint" or "FAC").  ECF 68.

Defendants moved to dismiss the FAC on November 5, 2020.  ECF 72.  On February 16, 2021, after full briefing, the Court issued a memorandum and order granting in part and denying in part the motion to dismiss.  ECF 85-86.  Across 26 pages, the Court thoroughly evaluated each claim and upheld them all, save for allegations pertaining to Inovio's statements about the Richter-Helm vaccine manufacturing contract inclusion in the U.S. Government program known as Operation Warp Speed.  *See* ECF 85-86.

On July 29, 2021, Plaintiffs moved for an order certifying the proposed class.  ECF 99.  That motion was fully briefed and was pending when the parties agreed to settle in May 2022.  It was then denied as moot.

On February 17, 2022, Plaintiffs filed the Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint" or "SAC"), alleging violations of §§10(b) and 20(a) of the 1934 Act.  ECF 129.  The SAC added new allegations pertaining to Inovio's failure to disclose that the FDA had placed Inovio's COVID-19 vaccine

candidate on partial clinical hold effective June 26, 2020, a fact that was uncovered in discovery. *See* ECF 129, ¶¶17, 60, 110-114, 125.

Defendants moved to dismiss the SAC on March 21, 2022.  ECF 133.  That motion is fully briefed and remains pending.

In the two-plus years that this case has been pending, Lead Counsel efficiently litigated this Action to a successful conclusion.  In addition to briefing key motions, Plaintiffs completed fact discovery and began expert discovery.  This was a massive effort in which the Defendants and non-parties produced, in the aggregate, over half a million pages of documents, with document productions from no fewer than 14 third-party entities.  Defendants deposed Messrs. Williams and Zenoff.  Plaintiffs conducted 19 fact depositions of current and former employees of Inovio and third parties.  And experts for both sides produced reports pertaining to class certification and were deposed.

Concurrent with the discovery process, the parties first attempted to resolve this case with the help of Gregory P. Lindstrom, a nationally known mediator of securities class actions, on July 13, 2021.  The parties mediated again with Mr. Lindstrom on February 15, 2022.  In advance of both mediations, the parties submitted detailed mediation statements.  The parties negotiated in good faith but were unable to reach a resolution at either mediation, as the parties' positions remained far apart.

The mediator continued to work closely with the parties to achieve a settlement.  These negotiations were protracted, complex, and challenging.  Chief among the issues to be worked out was the contribution of applicable directors and officers liability coverage proceeds and the level of contribution by Inovio which, as explained below (§IV.C.2.), was and remains in a precarious financial position.  After extensive further discussions and negotiations, the mediator issued a "mediator's proposal" on May 18, 2022, which the parties accepted.  That proposal included the

- 4 -

entire remaining amount of insurance proceeds and a significant contribution by Inovio – including

cash and the greater of 7,000,000 shares of stock or $14 million worth of stock.

The Court entered an Order Preliminarily Approving Settlement and Providing for Notice

("Preliminary Approval Order") on August 31, 2022.  ECF 150.  As detailed below (§III.), notice has

been provided to the Class in accordance with the Court's Preliminary Approval Order.  Objections

to, or requests to be excluded from, the proposed Settlement are due by November 23, 2022, and the

Court will hold the Settlement Hearing on December 15, 2022, at 2:00 p.m.  ECF 150.  To date, no

objections have been filed, and only three requests for exclusion have been submitted.

## III.   NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY APPROVAL ORDER

Rule 23(e), which governs notice requirements for class action settlements, provides that

"[t]he court must direct notice in a reasonable manner to all class members who would be bound by

the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires that a certified

class receive "the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice and Summary Notice were approved by the Court in the Preliminary

Approval Order (ECF 150), and fully comply with Rule 23.  Among other disclosures, the Notice

apprises Class Members of the nature of this litigation, the definition of the Class, the claims and

issues in the litigation, and the claims that will be released in the Settlement.  The Notice also: (i)

advises that a Class Member may enter an appearance through counsel; (ii) describes the binding

effect of a judgment on Class Members; (iii) states the procedures and deadline for Class Members

to exclude themselves from the Class or to object to the proposed Settlement, the Plan of Allocation,

or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting

a Proof of Claim; and (v) provides the date, time, and location of the Settlement Hearing.  In

addition, the Notice and Summary Notice satisfy the Private Securities Litigation Reform Act of 1995's ("PSLRA") disclosure requirements (15 U.S.C. §78u-4(a)(7)) by stating, among other things: (i) the amount of the Settlement determined in the aggregate on an average per-share basis; (ii) that the Settling Parties[3] do not agree on the average amount of damages per-share that would be recoverable if Plaintiffs prevailed at trial, and stating the issues on which the Settling Parties disagree; (iii) that Plaintiffs' Counsel intend to apply for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Plaintiffs' Counsel; and (v) the reasons the Settling Parties are proposing the Settlement.  The contents of the Notice and Summary Notice therefore satisfy all applicable requirements.

In the Preliminary Approval Order, the Court found that this notice program satisfies, in form and content, "the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto." Preliminary Approval Order, ¶4.  The notice program has since been carried out.  The Claims Administrator, Gilardi & Co. LLC ("Gilardi"), commenced mailing the Notice and the Proof of Claim form on September 20, 2022 to all Class Members who could be reasonably identified, along with 4,722 securities brokers and other financial institutions whose clients may be Class Members. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-6, submitted herewith.  As a result of these efforts, a total of 576,695 Notice packets have been sent to potential Class Members and nominees. *Id.*, ¶11.  On September 27, 2022, Gilardi published the Summary Notice in *The Wall Street Journal* and over *Business Wire*, and on September 20, 2022, it posted copies of the Notice, Proof of Claim,

---

3   *See* Stipulation (ECF 149-1), ¶1.37.

Stipulation, and Preliminary Approval Order on the website maintained for the Settlement, www.InovioSecuritiesLitigation.com. *Id.*, ¶¶12, 14.

This combination of notice by mail to all Class Members who could be identified with reasonable effort, supplemented by publication in a widely-circulated newspaper, over a newswire, and on a website, is typical of notice plans in securities class actions, and constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also, e.g.*, *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *5 (E.D. Pa. Jan. 25, 2016).

## IV.     THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL

It is well established that the settlement of class action litigation is favored. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting that the "strong presumption in favor of voluntary settlement agreements" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

Rule 23(e)(2) identifies the following factors to be considered at final approval:

> (2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

These factors are considered alongside, and largely overlap with, those set forth by the Third Circuit in *Girsh*:

"(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

521 F.2d at 157.[4]  The Third Circuit has also explained that there is an initial presumption that a settlement is fair if: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *Warfarin*, 391 F.3d at 535.

As detailed below, each of these factors supports final approval of the Settlement.

## A.   Plaintiffs and Plaintiffs' Counsel Have More Than Adequately Represented the Class

The first factor under Rule 23(e)(2) concerns the adequacy of representation provided by the class representatives and class counsel.  *See* Rule 23(e)(2)(A).  This overlaps with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *See*

---

[4]   The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

4884-4296-0699.v1

*Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (noting similar considerations for applying presumption of fairness).

The Court has expressed confidence in the abilities of Lead Plaintiff and Lead Counsel to pursue this litigation by appointing each to their respective positions.  ECF 53.  The Court's confidence was well-placed, as Lead Counsel and Plaintiffs have vigorously pursued this litigation. Among many other undertakings, Lead Counsel filed the Consolidated Complaint, the First Amended Complaint, and the Second Amended Complaint, fully briefed Defendants' two motions to dismiss, and fully briefed Plaintiffs' motion for class certification.  Lead Counsel also completed fact discovery, in which Defendants and third parties produced almost 500,000 pages of documents and Plaintiffs conducted 19 fact depositions of current and former Inovio employees and third parties.  In addition, experts on both sides produced expert reports regarding class certification and were deposed.  At each of these stages, Plaintiffs' Counsel successfully advanced this case.

Plaintiffs' Counsel brought substantial litigation experience to this case.  Lead Counsel Robbins Geller has successfully prosecuted hundreds of securities class actions on behalf of investors.  *See, e.g.*, *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 281 (E.D. Pa. 2020) (approving Robbins Geller as lead counsel and Saxton & Stump as local counsel; stating that "Robbins Geller is a preeminent litigation firm with a record of winning complex securities class actions"); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action").  In addition, local counsel Lawrence Stengel has been a distinguished judge, and Chief Judge of this Court, and previously served as a judge of the Court of Common Pleas of Lancaster County.

- 9 -

Plaintiffs and Plaintiffs' Counsel have thus adequately represented the Class under Rule 23(e)(2)(A), and have secured "an adequate appreciation of the merits of the case" by means of substantial discovery and litigation. *See Warfarin*, 391 F.3d at 537. "[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'" *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *see also Viropharma*, 2016 WL 312108, at *11 (stating that courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d. Cir. 2016).[5] Bringing their experience and knowledge of this case to bear, Plaintiffs' Counsel believe that the Settlement is in the best interests of the Class.

### B. The Settlement Negotiations Were Conducted at Arm's-Length and Under the Oversight of an Experienced Mediator

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's-length. *See* Rule 23(e)(2)(B); *see also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness).

With the benefit of discovery, the Settling Parties engaged in extensive arm's-length negotiations, including mediations and conferences conducted by Gregory P. Lindstrom, an experienced mediator of securities class actions. The Settling Parties engaged in two formal mediation sessions with Mr. Lindstrom on July 13, 2021 and February 15, 2022. In advance of both

---

[5]    *See also In re Prudential Ins. Co. Am. Sales Pracs. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (identifying "the extent of discovery on the merits" as a relevant factor in evaluating class action settlements); *In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("'Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.'").

- 10 -

mediations, the parties submitted detailed mediation statements.  The parties negotiated in good faith, but were unable to reach a resolution at either mediation, as the parties' positions remained too far apart.

These negotiations were protracted, complex, and challenging, and included detailed discussions about the merits of Plaintiffs' case.  After extensive discussions and negotiations following the second formal mediation, the mediator recommended a settlement of $44 million in cash and stock, and the Settling Parties ultimately agreed to settle the case.  *See Viropharma*, 2016 WL 312108, at *11 (approving settlement after arm's-length negotiation overseen by mediator after parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery").

The mediator's direct participation helped ensure that negotiations were non-collusive and conducted at arm's-length.  *See Teh Shou Kao v. CardConnect Corp.*, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021) ("'[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.'") (alterations in original); *Rose v. Travelers Home & Marine Ins. Co.*, 2020 WL 4059613, at *7 (E.D. Pa. July 20, 2020) (same).  This factor thus weighs strongly in favor of approving the Settlement.

### C.    The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal

The third factor under Rule 23(e)(2), which overlaps with several of the *Girsh* factors (*i.e.*, factors 1, 4-9), concerns the adequacy of the Settlement in light of the costs, risks, and delay that trial and appeal would impose.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  "Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."  *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).  This case was filed two years ago, and undoubtedly faces many risks and delays were litigation to continue, including at summary judgment, trial, and appeal.

- 11 -

At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Class Member could receive a financial recovery.

### 1.    Risks of Establishing Liability and Damages

Plaintiffs believe that their case is strong but acknowledge that there would be risks involved in further litigation.  Defendants' motions to dismiss have challenged virtually every aspect of Plaintiffs' claims.  They have maintained, for example, that their statements with respect to Inovio's Phase 1 clinical trial were not false or misleading and/or were non-actionable honestly held opinions. *See, e.g.*, ECF 133-1 at 11-12.  Defendants similarly argued that Defendants' statements about Inovio's Phase 2/3 clinical trial were not false or misleading and in any event were forward-looking statements protected by the PSLRA safe harbor.  *Id.* at 14.  Defendants have also argued that the element of scienter has not been met because, among other reasons, the individual Defendants' stock sales were made pursuant to 10b5-1 trading plans.  *Id.* at 22.  Defendants further argued that the element of loss causation could not be met because there is no link between the alleged misconduct and Inovio's stock price declines on the relevant disclosure dates.  *Id.* at 23-25.

In opposition to Plaintiffs' motion for class certification, based on their expert's analysis, Defendants argued, in part, that there was no price impact from the February 14 and March 2, 2020 alleged misrepresentations as well as from the March 9, 2020 alleged corrective disclosure.  ECF 107, at 19-21.  In response, Plaintiffs' expert defended his own conclusions on those topics (ECF 112-3, ¶¶20-35), and he would have done so again at trial.  However, such a "battle of the experts" at trial would have necessarily involved substantial expenses and risks.  *See CIGNA*, 2007 WL 2071898, at *3 (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194

F.R.D. 166, 183 (E.D. Pa. 2000) ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict."); *see also Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context").

While Plaintiffs remain confident in their positions in response to these arguments, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated.[6] Moreover, any trial victory for Plaintiffs would likely have been appealed by Defendants, which at a minimum would have resulted in substantial delays before any financial recovery. "Compared to the costs and risks of continued litigation, the settlement avoids these uncertainties and provides the . . . class with substantial and certain relief." *CardConnect*, 2021 WL 698173, at *7-*8. Accordingly, this factor weighs in favor of approving the Settlement.

### 2. Risks Relating to Inovio's Financial Condition

The financial recovery under the Settlement is even more impressive, and the risks of proceeding through trial and appeal are all the more apparent, when Inovio's precarious financial condition is taken into account. *See Girsh*, 521 F.2d at 157 (whether or not defendants can withstand a greater judgment is a relevant factor). For the quarter ended March 30, 2022, Inovio reported a net loss of $79.1 million, and $61.9 million in net cash used to support operating activities. 10-Q filed on May 10, 2022, for the quarter ending March 31, 2022, at 3, 4, and 28-29. In the following quarter

---

[6]   *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

ended June 30, 2022, the Company reported a net loss of $108.5 million, and $112.4 million in net cash used to support operating activities.  10-Q filed August 9, 2022, for the quarter ending June 30, 2022, at 3, 4, and 7.  And on August 9, 2022, Inovio announced it planned on a 30% operating expense reduction by terminating 18% of its workforce, and firing 86% of its contractors for the express purpose of preserving its cash.  Press Release dated August 9, 2022, at 2.

These facts weigh strongly in favor of approving the Settlement.  *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *8 (D.N.J. June 15, 2020) ("Valeant's uncertain financial condition and ability to withstand a larger judgment is an additional risk that weighs in favor of approving Settlement."), *rep. & rec. adopted*, 2021 WL 358611 (D.N.J. Feb. 1, 2021); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *8 (E.D. Pa. Nov. 21, 2008) ("Continuing to trial in the hopes of o[b]taining a higher penalty would merely deplete the insurance policy proceeds . . . .  This factor weighs heavily in favor of settlement."); *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 647 (D.N.J. 2004) (finding that "[t]he decline in Lucent's financial condition" strongly supported approval of settlement).  Due to Inovio's deteriorating financial condition, and the declining balance of the available insurance proceeds due to defense costs, all of which contributed to the Settlement Amount, there is a high probability that a future recovery would be lower than the present Settlement, even if Plaintiffs were to prevail across the board at trial and on appeal.  Especially in light of Inovio's financial difficulties, the Settlement represents a highly favorable outcome for the Class.

### 3.    The Settlement Falls Well Within the Range of Reasonableness

*Girsh* requires the Court to evaluate the proposed Settlement alongside "'a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and . . . in light of all the attendant risks of litigation (the ninth factor).'"  *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) ("*Merck/Vytorin*").  In making a "range of

reasonableness" assessment, courts do not need to make a precise estimate of damages. *See In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016) (granting final approval where "it is not possible to predict the precise value of damages that Plaintiffs would recover if successful"). Here, Inovio's financial condition could turn any favorable outcome after trial and appeal into a hollow victory. Nor is it possible to quantify precisely the risks to recovery posed by Defendants' arguments as to class certification, falsity, materiality, scienter, loss causation, and damages, which are described above.

The recovery under the Settlement – at least $44 million in cash and stock – far surpasses many securities class action settlements in this Circuit involving pharmaceutical companies, and is clearly within the range of reasonableness. *See, e.g.*, *Li v. Aeterna Zentaris, Inc*., 2021 WL 2220565, at *1 (D.N.J. June 1, 2021) (noting approval of settlement of $6.5 million); *Viropharma*, 2016 WL 312108, at *14-*15 (approving settlement of $8 million); *Par Pharm.*, 2013 WL 3930091, at *9, *11 (approving settlement of $8.1 million); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 281-82 (E.D. Pa. 2007) (approving settlement of $12.75 million). In addition, the recovery here is several times larger than the median securities class action settlement values over the last ten years, which range from $7 million to $14 million.[7] Because the theoretical "best possible recovery" is significantly constrained by Inovio's financial condition, the $44 million Settlement – proposed by the mediator and including every remaining dollar available under the applicable insurance policies along with a sizeable contribution by Inovio – represents the best reasonably attainable outcome for the Class in this case. That is why Lead Counsel, based on its experience and expertise, accepted the mediator's recommendation and agreed to settle this case for at least $44 million in cash and stock.

---

[7]    Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022), Fig. 20 at 20, *available at* https://www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html. These figures exclude settlements in excess of $1 billion, merger objections, and settlements for no monetary recovery, and are adjusted for inflation. *Id.*

**D.      The Settlement Satisfies the Remaining Rule 23(e)(2) Factors**

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors are met here.

### 1.      The Proposed Method for Distributing Relief Is Effective

The proposed methods of notice and claims administration process are effective and provide Class Members with the necessary information to receive their *pro rata* share of the Net Settlement Fund.  The notice and claims processes are similar to those commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided.  *See supra* §III (describing notice process); Declaration of Peter Crudo Regarding Notice and Administration, ECF 149-2, ¶¶21-25 (describing claims administration process).

### 2.      The Requested Attorneys' Fees Are Reasonable

As set forth in §VI, *infra*, Lead Counsel's request for an award of attorneys' fees is reasonable and appropriate.

### 3.      The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

As discussed in connection with the motion for preliminary approval, Plaintiffs and Defendants have entered into a supplemental agreement which provides that Defendants will have the right to terminate the Settlement in the event that valid requests for exclusion from the Class exceed the criteria set forth in that agreement.  This is a standard practice for cases of this type, and the parties have no other agreements.

- 16 -

### 4.   Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval

Rule 23(e)(2)(D) requires the Court to consider whether Class Members will be treated equitably.  All Class Members will be treated equitably under the terms of the Stipulation, which provides that each Class Member that properly submits a valid Proof of Claim form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Further, out of the thousands of potential Class Members, there have been no objections and only three requests for exclusion to date, with no requests for exclusion from any institutional investor.  Murray Decl., ¶16.  To the extent that any objections to the Settlement are made subsequent to this filing, they will be addressed in Plaintiffs' reply.

Each factor identified in Rule 23(e)(2) and the Third Circuit's *Girsh* opinion is satisfied. Moreover, pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness.  391 F.3d at 535.  Given the litigation risks involved, the complexity of the underlying issues, and Inovio's financial condition, the recovery of at least $44 million in cash and stock pursuant to the Settlement in the two-plus years since the initial complaint was filed is outstanding, and could not have been achieved without the commitment of Plaintiffs and the hard work of Plaintiffs' Counsel.  Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## V.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Notice contains a Plan of Allocation, which details how the Settlement proceeds are to be divided among Class Members who submit claims.  *See* Murray Decl., Ex. A (Notice, ¶¶30-53). "The '[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'"  *Merck/Vytorin*, 2010 WL 547613, at *6 (alteration in original).  In determining whether a plan of allocation is fair, reasonable, and adequate, "courts give great weight

- 17 -

to the opinion of qualified counsel." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving plan of allocation). "As numerous courts have held, a plan of allocation need not be perfect" and "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

Here, the proposed Plan of Allocation is fair and reasonable. It is based on the economic analysis of Plaintiffs' loss causation and damages expert. *See* Gronborg Declaration, ¶92. The calculations were based primarily on that expert's event study analysis, which estimated the amount of artificial inflation in the prices of Inovio shares during the Class Period, as well as additional analysis undertaken by the expert. *Id*. The Plan of Allocation calls for the distribution of the Net Settlement Fund (*i.e.*, the Settlement Amount after the deduction of Notice and Administration Expenses, Taxes and Tax Expenses, and all Court-approved attorneys' fees, litigation expenses, and class representative awards) on a *pro rata* basis, as determined by the ratio between each valid claim and the sum of all valid claims. *See* Notice, ¶45. The calculation of each claim will depend upon several factors, including when the securities were purchased, acquired, or sold. Once each claim is calculated and verified, and the distribution ratio is determined, the Net Settlement Fund shall be distributed to Authorized Claimants who are entitled to a distribution of at least $10.00. *Id*. Any amount remaining following the initial distribution will be further distributed among Authorized Claimants to the extent economically feasible. *Id.*, ¶50. If further re-distribution of funds remaining in the Net Settlement Fund would not be cost effective, the Stipulation calls for any remaining balance to be contributed to Community Legal Services of Philadelphia.[8]

---

[8]   *See* Stipulation, ¶5.9; *see also In re FAO Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 144693 (E.D. Pa. Oct. 23, 2015) (approving Community Legal Services of Philadelphia as *cy pres* recipient in nationwide securities class action); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, ECF 293 (E.D. Pa. April 22, 2016) (same).

This method of distributing settlement funds is fair and reasonable. *See, e.g.*, *Par Pharm.*, 2013 WL 3930091, at *8 (approving similar plan of allocation); *Viropharma*, 2016 WL 312108, at *15 (same). For all of these reasons, the Plan of Allocation should be approved.

## VI.   THE REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

Here, Lead Counsel requests an award of attorneys' fees of 27.5% of the Settlement Amount and litigation expenses of $814,374.95, plus interest earned on these amounts at the same rate and for the same period as earned by the Settlement Fund. Also, Plaintiff Williams and Representative Plaintiff Zenoff seek awards of $77,450.00 and $75,712.50, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

These requests are fair and reasonable, and consistent with fees, expenses, and class representative awards typically granted in similar matters. The Settlement is an exceptional result for the Class in the face of significant risks, and was achieved expeditiously. To do so involved substantial outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery. Further, Plaintiffs' Counsel brought substantial experience to their work on this case and skillfully overcame defense counsel's determined opposition. For these reasons, and those detailed below, Lead Counsel respectfully requests that these attorneys' fees, expenses, and class representative awards be approved.

A. **Attorneys' Fees Should Be Awarded Based on a Percentage of the Common Fund**

It is well established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Viropharma*, 2016 WL 312108, at *15 (same). "Courts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The Supreme Court has recognized that it is appropriate to award counsel a reasonable percentage of the common fund as a fee. *See Boeing*, 444 U.S. at 478-79. This is because the percentage method aligns counsel's interests with those of the Class. The Third Circuit has similarly recognized that "[t]he 'percentage-of-recovery method is generally favored in cases involving a common fund . . . .'" *Gelis v. BMW of N. Am., LLC*, 49 F.4th 371, 379 (3d Cir. 2022). The lodestar method, by contrast, has been limited to statutory fee-shifting cases and cases where the nature of the recovery does not allow the determination of the settlement's value. *Id.* at 379. In addition, it has been criticized in the class action context for incentivizing billing "excessive hours" and drawing out litigation, while failing to incentivize lawyers to seek the largest recovery possible. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) ("*Cendant I*"). Further, the Third Circuit has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("*Cendant II*"). Courts in this district likewise recognize that the percentage-of-recovery method is preferred in common fund cases because it rewards counsel for success and penalizes it for failure. *Hall v. Accolade, Inc.*, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020); *see also*

- 20 -

*Fanning v. Acromed Corp.*, 2000 WL 1622741, at *5 (E.D. Pa. Oct. 23, 2000); *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *7 (E.D. Pa. Feb. 16, 2000).

**B.    The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors**

When evaluating proposed fee awards, courts in the Third Circuit consider several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the Settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest."  *Id.*  Here, each factor supports the requested 27.5% fee award.

**1.    The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement**

In awarding fees, the "most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Viropharma*, 2016 WL 312108, at *16 (same).  To assess this factor, courts "'consider[] the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'"  *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *3 (E.D. Pa. Dec. 20, 2017) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).

Here, the $44 million-plus recovery is an outstanding result that provides an immediate cash recovery to a large Class of investors.  This represents the full remaining amount of the directors' and officers' insurance proceeds in addition to Inovio contributing both cash and the greater of 7 million shares of Inovio stock or $14 million worth of stock.  By contrast, if this litigation were to continue absent the Settlement, that insurance would continue to be depleted by defense costs,

decreasing the likelihood of obtaining a comparable recovery in the future.  The likelihood of a comparable recovery absent the Settlement is further decreased due to Inovio's tenuous financial condition.  In light of these and other factors, after multiple rounds of discussions and negotiations, the mediator recommended that the Settling Parties accept a $44 million resolution (in cash and stock), and they ultimately did so.  As discussed above, that figure is far greater than many securities class action settlements involving pharmaceutical companies that have been approved in this Circuit, and several times the median settlement values of securities class action settlements over the last ten years.  *See supra* §IV.C.3.

Additionally, the "number of class members to be benefitted" by the Settlement is large, since the Class includes all persons and entities who purchased or otherwise acquired the ordinary shares of Inovio from February 14, 2020 through August 10, 2020, inclusive (excluding certain limited sub-categories of purchasers and acquirers).  Likely thousands of investors who bought Inovio common stock during that period will benefit from the Settlement.  *See supra* §III (Notice sent to a total of 576,695 potential Class Members and nominees).  For these reasons, the first *Gunter* factor clearly weighs in favor of approving the negotiated fee.

### 2. Reaction of Class Members to the Fee Request

Notice of this Settlement, including the fee request, has been provided to a total of 576,695 potential Class Members and nominees.  Murray Decl., ¶11.  To date, counsel have received no objections to the fee request (or any other provision of the proposed Settlement).  Thus, the reaction of the Class weighs in favor of approval of the requested fee.  *See Cendant I*, 264 F.3d at 235 (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *see also High St. Rehab., LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784,

- 22 -

at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy.").

In addition, because Plaintiffs Williams and Zenoff both approve of the requested fee,[9] "the Court should afford the fee requested a presumption of reasonableness." *ViroPharma*, 2016 WL 312108, at *15.

### 3. The Skill and Efficiency of Counsel

The third *Gunter* factor – the skill and efficiency of the attorneys involved – is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Id.* at *16. Here, each of these considerations demonstrates the skill and efficiency of Plaintiffs' Counsel and supports the requested fee.

The important work of Plaintiffs' Counsel should be recognized in this respect. Among other things, during the two-plus years of litigation, Plaintiffs' Counsel investigated Defendants' conduct, drafted a detailed Consolidated Complaint, First Amended Complaint and Second Amended Complaint, successfully opposed Defendants' motion to dismiss as to key claims, completed fact discovery, obtaining over 284,000 pages of documents from Defendants, 86,000 pages of documents from Defendants' expert, and over 202,000 pages from third parties and deposing 19 current and former Inovio employees and third parties, fully briefed Plaintiffs' motion for class certification, defended Plaintiffs' expert's deposition, and deposed Defendants' class certification expert. *See* §II *supra*. Accordingly, not only is both the amount of the Settlement significant, but the Action was

---

[9]   *See* Declaration of Manuel S. Williams in Support of Motion for Final Approval ("Williams Decl."), ¶5; Declaration of Andrew R. Zenoff in Support of Motion for Final Approval ("Zenoff Decl."), ¶5, submitted herewith.

vigorously and efficiently litigated.  The Settlement is an excellent result for the Class achieved as expeditiously as possible.

In addition, Plaintiffs' Counsel were opposed by Defendants' highly sophisticated counsel, who skillfully pressed every available argument at each stage of the litigation.  Plaintiffs' Counsel also engaged in multiple rounds of mediation and negotiations that ultimately resulted in a resolution of this case for the full remaining amount of the directors' and officers' insurance proceeds in addition to a significant contribution by Inovio.

This outstanding result was only possible due to Plaintiffs' Counsel's vast experience and expertise.  *See supra* §IV.A; *see also* ECF 149-3, 149-4 (firm resume of Robbins Geller and resume of Lawrence Stengel).  Further, Robbins Geller is one of a very few firms with a demonstrated willingness to take securities class actions to trial if required to achieve the best possible result.  *See, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, et al.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller obtaining $1.575 billion settlement after 14 years of litigation and prevailing at jury trial); *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal.) (Robbins Geller securing 2019 jury verdict in securities fraud class action).  Defendants undoubtedly considered this fact when they decided to forego further legal challenges and agreed to settle this case for at least $44 million in cash and stock.  Ultimately, this outstanding result is the best indicator of the skill and expertise that Plaintiffs' Counsel brought to this matter.  *See In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 436 (D.N.J. 2004) ("Indeed, 'the results obtained' for a class evidence the skill and quality of counsel.").

### 4.    The Complexity and Duration of the Litigation

As detailed in §II and VI.B.3 *supra*, this litigation has spanned over two years and involved significant activity.  Each of these stages of litigation presented obstacles that Plaintiffs' Counsel skillfully overcame.  In order to secure this recovery, Plaintiffs' Counsel analyzed a large quantity of

complex, jargon-laden documents concerning the pharmaceutical industry, including clinical trials, and the impact of such clinical trials on Inovio's stock price; secured key admissions in depositions of Inovio employees; and wove the documentary and deposition evidence into a narrative demonstrating that the relevant statements were materially false and misleading. Further, because this case involves multiple corrective disclosures, Plaintiffs' Counsel had to establish that each such disclosure in fact revealed corrective information to the market, and marshalled expert opinion that the stock price declines on the relevant dates were not caused by market-wide, industry-specific, or other Inovio-specific factors. Plaintiffs' and Defendants' experts also differed as to the proper measure of damages as an economic matter.

This is only a sample of the complex issues that arose in the course of this litigation. In light of the complexity and duration of this case, this factor clearly favors approval of the requested attorneys' fees.

### 5.      The Risk of Non-Payment

Lead Counsel prosecuted this case on a contingency fee basis. Thus, without a settlement or a trial victory, they would go unpaid. This created an incentive to litigate the case aggressively and seek the best recovery possible. "'Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.'" *High St. Rehab.*, 2019 WL 4140784, at *13; *see also CardConnect*, 2021 WL 698173, at *10 (no guarantee of success on merits or on class certification supports one-third fee request); *Schering-Plough I*, 2012 WL 1964451, at *7 (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

### 6.      The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees. Lead Counsel invested more than 7,000 hours of attorney and support staff time

- 25 -

over the course of over two years, and incurred $814,374.95 in expenses prosecuting this case for the benefit of the Class, without promise of payment of attorneys' fees or expenses if Plaintiffs did not prevail on their claims.  *See* Declaration of Tor Gronborg Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), ¶¶4, 5.

### 7.     The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund."  *Whiteley v. Zynerba Pharms., Inc*., 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "fell in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also CardConnect*, 2021 WL 698173, at *29 (one-third fee request "in line with fee awards in similar cases" as "fee awards generally range from 19% to 45% of the settlement fund"); *Viropharma*, 2016 WL 312108, at *17 (noting that "[i]n this Circuit, 'awards of thirty percent are not uncommon in securities class actions'") (citing cases).

Courts have frequently awarded fee percentages similar to or higher than the fee of 27.5% requested in this case, even on large recoveries.  *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2013 WL 12153597, at *1-*2 (D.N.J. Jan. 30, 2013) (awarding attorney's fees of 27.5% on $164 million recovery); *In re Aetna Inc.*, 2001 WL 20928, at *13-*16 (E.D. Pa. Jan. 4, 2001) (awarding attorney's fees of 30% on $82.5 million recovery); *see also In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirmed attorney's fees of 30% on $21.5

million recovery).  Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[10]

### C.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts in the Third Circuit may also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee.  *See Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory").  If used, the lodestar cross-check "should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).  Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel cases on a contingency basis." *Ikon*, 194 F.R.D. at 193.  Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

When used, the Third Circuit has recognized that the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and that "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *accord CardConnect*, 2021 WL 698173, at *10-*11. The lodestar cross-check involves simply comparing counsel's "lodestar" to the fee resulting from the requested percentage award and assessing the reasonableness of the resulting multiplier.  The appropriate multiplier varies based on the specifics of each case and "need not fall within any pre-

---

[10]   In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies. *See Merck/Vytorin*, 2010 WL 547613, at *12-*13.   These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a 27.5% fee is lower than commonly negotiated contingent fees. *See id.*, at *13 (noting that contingent fees in the private marketplace are commonly 30% to 40%).

defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." *Id.* at 307. However, the Third Circuit has recognized that percentage awards that result in multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *Veritas Software*, 396 F. App'x at 819; *accord CardConnect*, 2021 WL 698173, at *11; *Wood v. AmeriHealthCaritas Servs., LLC*, 2020 WL 1694549, at *10 (E.D. Pa. Apr. 7, 2020); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

Here, Lead Counsel has spent a total of 7,042.10 hours of attorney and paraprofessional time on this matter, for a total lodestar amount of $4,490,113.50. *See* RGRD Decl., ¶4. The resulting overall lodestar multiplier is 2.69, which falls within the range of reasonableness based on the cases cited above.

### D.     Reasonably Incurred Litigation Expenses Should Be Awarded

Lead Counsel also requests payment of expenses and charges incurred in connection with the prosecution of this litigation in the aggregate amount of $814,374.95. Counsel in class actions "are entitled to reimbursement of expenses that were 'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *Viropharma*, 2016 WL 312108, at *18 (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *accord AmeriHealth*, 2020 WL 1694549, at *10; *see also Schering-Plough I*, 2012 WL 1964451, at *8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

The expenses borne by Lead Counsel are documented in the accompanying RGRD Declaration. These expenses consist of the typical categories, such as experts, document hosting and production, online legal and financial research, mediation fees, filing fees, and copying. *See* RGRD

Decl., ¶6.  These expenses were reasonable and necessary to the prosecution of the claims and achieving the Settlement, and are of the same type routinely approved in securities class actions.  *See Viropharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

The requested expense amount is significantly lower than the expenses approved in many other securities class actions.  *See, e.g.*, *AT&T Corp.*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses); *Ikon*, 194 F.R.D. at 197 (approving award of over $3.5 million in expenses); *In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621 (ECF 236) (D.N.J. July 23, 2004) (approving award of $3.5 million in expenses).  Further, this amount is less than the expense figure of up to $900,000 set out in the Notice, and to date, there have been no objections to that proposed figure.  For all of these reasons, the requested expense award should be approved.

**E.   The Requested Plaintiff Awards Pursuant to 15 U.S.C. §78u-4(a)(4) Are Reasonable**

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws."  *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA makes clear that it does not limit "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of [a] class."  15 U.S.C. §78u-4(a)(4).  In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives."  *Schering-Plough II*, 2013 WL

- 29 -

5505744, at *37; *see also Bredbenner v. Liberty Travel*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) ("The purpose of these payments is to compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,'" and to "'reward the public service' of contributing to the enforcement of mandatory laws."). Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Lead Plaintiff Williams and Representative Plaintiff Zenoff seek awards of $77,450.00 and $75,712.50, respectively, for their estimated time devoted to supervising counsel and participating in the litigation. *See* Williams Decl., ¶6; Zenoff Decl., ¶6. The declarations describe Lead Plaintiff's and Representative Plaintiff's activities directly related to representing the Class, including: (a) consulting with counsel regarding the litigation and the Court's orders; (b) reviewing and commenting upon pleadings, motions, and briefs; (c) reviewing correspondence and status reports from counsel; (d) responding to discovery requests and collecting documents for production; (e) preparing for and participating in depositions; (f) conferring with counsel concerning litigation strategy; and (g) monitoring settlement negotiations. *See* Williams Decl., ¶3; Zenoff Decl., ¶3. In addition, the detail of the time each Plaintiff spent working on this matter is set forth in the exhibit to each declaration.

The requested class representative awards are reasonable in light of the time each Plaintiff spent representing the Class and based on a reasonable hourly rate for each. *See, e.g.*, *In re CIGNA Corp. Sec. Litig.*, No. 02-8088 (ECF 288) (E.D. Pa. July 13, 2007) (approving awards to lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to lead plaintiffs totaling more than $102,000). The awards sought are also lower than the amount specified in the Notice of up to $160,000 in the aggregate, and there have been no objections to that proposed amount to date. Plaintiffs respectfully request the proposed awards be approved.

- 30 -

## VII.    CONCLUSION

For all the reasons stated above and in the accompanying declarations, Plaintiffs respectfully request that the Court (i) grant their motion for final approval of the Settlement and the Plan of Allocation; (ii) award attorneys' fees of 27.5% of the Settlement Amount and payment of litigation expenses of $814,374.95, plus interest on both amounts at the same rate and for the same period as earned by the Settlement Fund; and (iii) award Lead Plaintiff Williams and Representative Plaintiff Zenoff $77,450.00 and $75,712.50, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

DATED:  November 10, 2022                Respectfully submitted,

                                         SAXTON & STUMP
                                         LAWRENCE F. STENGEL (PA #32809)


                                               *s/ Lawrence F. Stengel*
                                         _____
                                         LAWRENCE F. STENGEL

                                         280 Granite Run Drive, Suite 300
                                         Lancaster, PA  17601
                                         Telephone:  717/556-1000
                                         717/441-3810 (fax)
                                         lfs@saxtonstump.com

                                         Local Counsel for Lead Plaintiff

4884-4296-0699.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
THEODORE J. PINTAR (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
LONNIE A. BROWNE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
tedp@rgrdlaw.com
trigs@rgrdlaw.com
lbrowne@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I, Lawrence F. Stengel, hereby certify that on November 10, 2022, I authorized a true and

correct copy of the foregoing document to be electronically filed with the Clerk of the Court using

the CM/ECF system, which will send notification of such public filing to all counsel registered to

receive such notice.

s/ *Lawrence F. Stengel*
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: 717/556-1000
717/441-3810 (fax)

Email: lfs@saxtonstump.com

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **ANDREW DAVID ABRAMOWITZ**
  aabramowitz@bm.net,jgionnette@bm.net

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LONNIE A. BROWNE**
  lbrowne@rgrdlaw.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,emagnus@bm.net

- **MATTHEW S. DECKER**
  MDecker@duanemorris.com

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,eyork@bm.net,csimon@bm.net,jgionnette@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **KOJI F. FUKUMURA**
  kfukumura@cooley.com,jroyer@cooley.com,hlaing@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,ecombs@cooley.com,chourani@cooley.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **GEORGINA J. INGLIS**
  ginglis@cooley.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com,autodocketPHL@duanemorris.com

- **SEAN MCGUIRE**
  smcguire@rgrdlaw.com,e_file_SD@rgrdlaw.com,scaesar@rgrdlaw.com

- **CAITLIN BRIDGET MUNLEY**
  cmunley@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **THEODORE J. PINTAR**
  TedP@rgrdlaw.com,PamM@lerachlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,lbrowne@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)