November 15, 2022

Clerk of the Court
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market St.
Philadelphia, PA 19106

**RE:**   ***McDermid v. Inovio Pharmaceuticals, Inc., et al.***
**Civil Action No. 2:20-cv-01402-GJP**
**U.S. District Court, Eastern District of Pennsylvania**

<u>**Class Member Justin P. Green's Objections to the Proposed Class Action Settlement**</u>

To the Clerk of the Court:

Class Member Justin P. Green ("Mr. Green") hereby objects to the proposed class action settlement in the above-referenced civil action.  The proposed settlement is not fair, reasonable, or adequate because  (1) the proposed plan of allocation releases the claims of certain categories of class members in exchange for no consideration, i.e., $0.00 recognized loss amount; (2) the Notice of Pendency and Proposed Settlement of Class Action ("Notice") does not advise the class members that, should they prevail at trial, they may receive a damages award exceeding the aggregate value of the proposed settlement amount and settlement stock; and (3) the unnecessarily burdensome objection procedures discourage good faith objectors and violate class members' due process rights.

Mr. Green has made the aforementioned objections on behalf of the entire class.  Mr. Green requests that the Court disapprove the proposed settlement.  In support of his objections, he states as follows:

**I.**   <u>**The proposed settlement is not fair, reasonable, or adequate because certain class members' claims are released in exchange for no consideration.**</u>

A class action settlement may only be approved if it is "fair, reasonable, and adequate". Fed. R. Civ. P. 23(e)(2).  When deciding whether a proposed class action settlement is fair, reasonable, and adequate, the court must consider the four factors enumerated in Rule 23(e)(2) of the Federal Rules of Civil Procedure and the nine factors identified in *Girsh v. Jepson.  See* 521 F.2d 153, 157 (3rd Cir. 1975).

According to Rule 23(e)(2), the court must consider whether:

(A) the class representatives and class counsel has adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate; and

(D) the proposal treats class members equitably relative to each other.

In *Girsh v. Jepson*, the Third Circuit Court of Appeals adopted the Second Circuit's nine fairness factors from *City of Detroit v. Grinnell Corp.  See Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2nd Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43, 49-50 (2nd Cir. 2000)).  According to *Girsh* and *Grinnell*, the court must consider:

(1)  the complexity, expense and likely duration of the litigation;

(2)  the reaction of the class to the settlement;

(3)  the stage of the proceedings and the amount of discovery completed;

(4)  the risks of establishing liability;

(5)  the risks of establishing damages;

(6)  the risks of maintaining the class action through the trial;

(7)  the ability of the defendants to withstand a greater judgment;

(8)  the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *Grinnell* 495 F.2d at 463.

In the instant case, Lead Plaintiff Manuel S. Williams and Representative Plaintiff Andrew Zenoff (collectively "Plaintiffs") have proposed a plan of allocation for the net settlement funds.  Under the proposed plan of allocation, class members would receive payment from the net settlement funds based on their recognized loss amounts.  The plan of allocation sets forth formulas for calculating recognized loss amounts based on when a class member purchased and sold publicly traded common stock in Defendant Inovio Pharmaceuticals, Inc. ("Inovio").

Plaintiffs admit that "[i]f a Recognized Loss Amount calculates to a negative number or zero under the formulas below, that Recognized Loss Amount will be zero."[1]  The formulas generate a zero-dollar recognized loss amount for large swaths of stock purchases:

---

[1] Notice at ¶ 35.

(1) shares purchased from February 14, 2020 to March 8, 2020 **[23-day time period]** and sold before March 9, 2020 = zero-dollar recognized loss amount;[2]

(2) shares purchased on March 9, 2020 and sold before March 10, 2020 = zero-dollar recognized loss amount;[3]

(3) shares purchased from March 10, 2020 to June 2, 2020 **[84-day time period]** and sold before June 3, 2020 = zero-dollar recognized loss amount;[4]

(4) shares purchased on June 3, 2020 and sold before June 4, 2020 = zero-dollar recognized loss amount;[5] and

(5) shares purchased from June 4, 2020 to August 10, 2020 **[66-day time period]** and sold before August 11, 2020 = zero-dollar recognized loss amount.[6]

Class members who purchased and sold Inovio common stock only within these time periods will have a zero-dollar recognized loss amount and will therefore receive nothing from the proposed settlement.

Rule 23(e)(2) requires the court to consider whether the proposed settlement will provide adequate relief to the class. To determine whether the relief is adequate, the court must consider, *inter alia*, "the effectiveness of any proposed method of distributing relief to the class..." Fed. R. Civ. P. 23(e)(2)(C)(ii). In this case, the proposed plan of allocation does not effectively distribute relief to the class because certain class members, those who only bought and sold during the zero-loss time periods, will receive nothing from the settlement fund.

Rule 23(e)(2) also requires the court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In this case, the proposed settlement does not treat class members equitably because certain class members are relegated to a position so far back in line that they receive nothing. Mr. Green does not contend that each class member must receive the same individual recovery from the settlement fund, but each class member should at least receive something in exchange for releasing the defendants.

Even without considering the Rule 23(e)(2) factors, a district court cannot approve the release of class action claims if the release is legally insupportable. In *In re Continental Airlines*, the Third Circuit Court of Appeals vacated a district court's order approving a bankruptcy reorganization plan that would have released

---

[2] Notice at ¶¶ 36(a), 37(a).
[3] Notice at ¶ 38(a).
[4] Notice at ¶ 39(a).
[5] Notice at ¶ 40(a).
[6] Notice at ¶¶ 41(a), 42(a).

and permanently enjoined class action plaintiffs' claims in exchange for no consideration. *See* 203 F.3d 203, 211-13, 215, 217 (3rd Cir. 1999). The Court concluded that such a plan was "clearly invalid under any standard" and was legally insupportable. *See id.* at 214 n.11, 218.

Plaintiffs' proposed settlement is unfair, unreasonable, and inadequate because class members who bought and sold only during the zero-loss time periods do not receive adequate relief from the settlement fund and are not treated equitably relative to other class members. Plaintiffs' proposed settlement is also invalid as a matter of law because class members who bought and sold only during the zero-loss time periods are required to release their claims in exchange for no consideration. For these reasons, the Court should disapprove the proposed settlement.

**II.    The proposed settlement is not fair, reasonable, or adequate and violates class members' due process rights because the Notice does not advise class members that, should they prevail at trial, they may receive a damages award exceeding the value of the proposed settlement.**

In addition to deciding whether a proposed class action settlement is fair, reasonable, and adequate, the court must also determine whether the class members have received adequate notice. *See Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F.Supp.2d 322, 327 (E.D. Pa. 2007). Adequate notice is required by the Due Process Clause of the Fifth Amendment to establish personal jurisdiction over absentee class members. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3rd Cir. 1998). For proposed class action settlements, class members must receive "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B); *Girsh*, 521 at 158. "[T]he notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Bradburn*, 513 F.Supp.2d at 328 (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 226 F.R.D. 498, 518 (E.D. Pa. 2005)) (internal quotation marks omitted) (emphasis added).

In the instant case, Page 6 of the Notice contains a section entitled "What Might Happen If There Were No Settlement?".[7] In that section, class members are advised about two potential outcomes if no settlement were reached: they may recover nothing if they fail to establish their claims or they may recover substantially less if

---

[7] Notice at ¶ 23.

the defendants prevail on any defenses.[8]  Those are the only two alternative outcomes presented to the class members.  Class members are not advised about a third potential outcome—that, should they prevail on their claims at trial, they may receive a damages award exceeding the aggregate value of the proposed settlement amount and settlement stock.  Without this critical information, class members cannot make an informed decision about the benefits and risks of accepting the proposed settlement.

As previously discussed, the first factor under Rule 23(e)(2) is whether class counsel has adequately represented the class.  By failing to provide information about forgoing a potential higher damages award at trial, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel") has failed to adequately represent the class.  The information omitted from the Notice is material to class members' determination of whether to accept the proposed settlement, rendering the entire proposed settlement unfair, unreasonable, and inadequate.

The legal foundation for class counsel's duty to fully inform class members can be found first and foremost in attorney ethics rules.  The Pennsylvania Rules of Professional Conduct require attorneys to explain matters to clients "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  204 Pa. Code Rule 1.4.  An attorney's duty to explain matters to clients includes an explanation of the "prospects of success" of litigation matters. *See id.* at cmt. 5.  If class members are not advised about the benefits and risks of forgoing settlement, they are not fully informed and are therefore not adequately represented.

The Third Circuit has recognized the importance of fully and accurately informing class members.  As a general matter, the Court has concluded that "[m]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice..." *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3rd Cir. 1988).  The Court has held that a confusing notice in a class action raises concerns of procedural unfairness, even if the notice was issued with the district court's imprimatur. *See Lusardi v. Lechner*, 855 F.2d 1062, 1076, 1079 (3rd Cir. 1988), *vacated in part, modified in part, and remanded sub nom. Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D. N.J. 1988). *See also Lusardi v. Xerox Corp.*, 975 F.2d 964 (3rd Cir. 1992).

---

[8] Notice at ¶ 23.

Despite its obligation to fully inform, Lead Counsel has provided no information about the prospects of success should this case proceed to trial. The Notice presents the alternatives to settlement as a lose-lose scenario for class members. If no settlement is approved, class members are advised that they may receive no recovery or a lower recovery than what is being offered. The Notice does not advise class members that if no settlement is approved and they prevail on their claims at trial they could receive a higher recovery than what is being offered.

Rather than providing information about the prospects of success at trial, Lead Counsel drafted a notice that reads more like a scare tactic: settle or get nothing. Rule 23 of the Federal Rules of Civil Procedure, the Pennsylvania Rules of Professional Conduct, the Fifth Amendment's Due Process Clause, and Third Circuit precedent require more, namely fully-informed class members. The Notice should have provided information about all benefits and risks of accepting the proposed settlement, including the fact that class members may be forgoing a potentially more valuable trial judgment. The failure to include that information deprives the Court of personal jurisdiction, evinces Lead Counsel's failure to adequately represent the class, and renders the proposed settlement materially unfair, unreasonable, and inadequate.

III.    **The proposed settlement is not fair, reasonable, or adequate and violates class members' due process rights because the unnecessarily burdensome objection procedures discourage good faith objectors.**

In the instant case, the objection procedures are unfair, unreasonable, and inadequate and violate class members' due process rights for four reasons. First, the Court lacks authority to alter the objection procedures beyond those set forth in Rule 23(e). Second, the objection procedures effectively prohibit electronic filing by good faith objectors while the parties' attorneys are permitted to freely avail themselves of electronic filing. Third, the objection procedures require objectors to submit proof of claim documents before the December 19, 2022 claim submission deadline. Fourth, the objection procedures require objectors and their attorneys, if any, to provide a history of all objections they have made in prior, unrelated class action lawsuits with no limitations as to timeframe.

These objection procedures place unnecessary burdens on good faith objectors. The named plaintiffs were not required to submit proof of claim documents to maintain their claims. Plaintiff Patrick McDermid, for

example, merely submitted a certification of his share purchases without producing proof of claim documents.[9] The effect of these onerous and unfair objection procedures is to discourage good faith objectors from making valid objections that would otherwise benefit the class as a whole. Because these objection procedures are materially unfair to good faith objectors, the proposed settlement should be disapproved.

## A. Court Authority to Alter Rule 23(e) Objection Procedures

According to Rule 23(e), an objection to a proposed class action settlement must meet two requirements: the objection must (1) "state whether it applies only to the objector, to a specific subset of the class, or to the entire class" and (2) "state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5)(A). The court has discretion to direct notice to class members "in a reasonable manner", Fed. R. Civ. P. 23(e)(1)(B), but nothing in Rule 23 provides the court or the parties themselves with authority to alter the objection procedures set forth therein.

The objection procedures in the instant case extend well beyond Rule 23(e)'s objection requirements. The objection procedures require the objector to provide information about when the objector's Inovio shares were bought and sold; to provide a list of all prior class action objections the objector and his or her attorney have made, presumably in their entire lifetimes; to produce proof of claim documentation before the proof of claim deadline; to sign the objections, even if the objector is represented by an attorney; and, if the objector intends to appear at the settlement hearing, to produce a witness list and an exhibit list. These extended objection procedures are essentially a way for Plaintiffs and Class Counsel to conduct unilateral micro-discovery regarding the objectors and their attorneys without a similar mechanism for objectors and their attorneys to examine Plaintiffs and Class Counsel.

There is no mechanism for the Court to alter the objection procedures set forth in Rule 23(e). The extended objection procedures required in this case are legally impermissible, are procedurally unfair, and violate class members' due process rights.

## B. Prohibition on Electronic Filing of Objections

According to Rule 5(d) of the Federal Rules of Civil Procedure, a person represented by an attorney

---

[9] Doc. 1 at 4.

must file papers electronically unless nonelectronic filing is allowed by the court or by local rule. Fed. R. Civ. P. 5(d)(3)(A). According to the Clerk of Court's published online procedures, *pro se* filers may submit legal documents for filing in four ways: "(1) by email; (2) by mail; (3) by placing them in the dropbox in the Courthouse lobbies; and (4) in person."[10]

Based on Rule 5(d), class action objectors who have retained attorneys should be permitted (in fact, may be required) to file objections electronically. Similarly, based on the Clerk's online procedures, *pro se* objectors should be permitted to submit objections for filing via email to the Clerk's office. Nonetheless, in the instant case, the objection procedures limit the ways in which class members—most of whom are likely to be *pro se* claimants—can file their objections. According to the Notice, class members (whether represented or *pro se*) may only submit objections by mail or in person, effectively prohibiting electronic filing of objections.[11]

This effective prohibition on electronic filing is procedurally unfair and violates class members' due process rights because it treats objectors differently than other class members, including the named plaintiffs. By disallowing electronic filing by represented objectors, the objection procedures conflict with Rule 5(d). Additionally, by altering the Clerk's published online procedures for *pro se* filers, the objection procedures in this case are likely to cause confusion for *pro se* objectors. *Pro se* objectors may believe, understandably, that they can rely on the Clerk's online procedures for *pro se* filers, which allow filing via email. Plaintiffs have provided no explanation for why email, a method of filing that promotes judicial economy and reduces expenses, should not be allowed for class members.

The objection procedures have been crafted to discourage any objections whatsoever so that Class Counsel and Plaintiffs can get themselves paid as soon as possible, regardless of the best interests of the class as a whole. The objection procedures work to the advantage of Plaintiffs (seeking settlement approval) at the disadvantage of good faith objectors (seeking settlement disapproval). The parties' attorneys are permitted to avail themselves of the Court's electronic filing system, but class members have no comparable method for filing their objections electronically. The parties' attorneys can file most documents for free online, but class members

---

[10] "Ways to File", Filing Your Complaint, https://www.paed.uscourts.gov/pro-se/pro-se-complaint#Ways (last accessed Nov. 14, 2022).

[11] Notice at ¶ 73.

must incur mailing cost or travel cost to file objections.  These disparate filing procedures are facially and fundamentally unfair.

## C.  Proof of Claim Before the Deadline

To participate in the class action settlement in this case, the Notice requires class members to submit a proof of claim form with supporting documentation.[12]  The supporting documentation may include brokerage confirmation slips, monthly brokerage account statements, or an authorized statement from the class member's broker.[13]  The postmark deadline for submitting a proof of claim and supporting documentation is December 19, 2022.[14]

The objection procedures inexplicably change the rules for good faith objectors.  An objector must provide the information required for the proof of claim form and must produce supporting documentation with his or her objections.[15]  This effectively moves up the proof of claim deadline for objectors to November 23, 2022.[16]  Additionally, an objector's supporting documents, which include confidential information such as account numbers and other personal financial information, must "be filed" into the public record.[17]

The objection procedures are unfair because they alter the manner and deadline for good faith objectors to submit proofs of claim.  To the extent necessary, Mr. Green objects to providing his confidential financial information and requests entry of a protective order to prevent the publication or dissemination of class members' confidential financial information.  The proposed claim submission process does not provide adequate safeguards for class members' confidential financial information.

## D.  Class Action Objection History

In addition to the unnecessarily burdensome procedures for electronic filing and for submitting proof of claim, the objection procedures in this case are also unnecessarily burdensome because they require good faith objectors and their attorneys, if any, to provide a list of class action settlements in which they have previously

---

[12] Notice at ¶ 62.
[13] Proof of Claim at ¶ C(4).
[14] Notice at 2.
[15] Notice at ¶ 74.
[16] Notice at ¶ 73.
[17] Notice at ¶ 73.

objected.[18]    Neither the named plaintiffs nor non-objecting class members are required to provide such information.

The requirement to provide a list of prior class action settlement objections presumes that an objector in this case is a serial objector acting in bad faith. Unless there is some evidence that an objector is acting in bad faith, Class Counsel should not be permitted unilateral discovery regarding an objector and his or her attorneys. Absent a showing of bad faith, an objector's prior objections in unrelated class actions are irrelevant, and an attorney should not be compelled to essentially provide a list of former clients. To the extent that the Court is permitting discovery regarding objectors and their attorneys, Mr. Green requests the opportunity to conduct discovery regarding the named plaintiffs and Class Counsel, including Class Counsel's history of responding to objections in class actions.

## IV.    Conclusion

For the reasons set forth in detail above, Mr. Green requests that the Court disapprove the proposed class action settlement. Mr. Green intends to appear at the settlement hearing. Mr. Green has attached the following documents to these objections: (1) Affidavit of Justin P. Green; (2) Charles Schwab monthly brokerage account statement for July 1, 2020 to July 31, 2020; (3) List of Previous Class Action Objections; (4) Witness List; and (5) Exhibit List.

Respectfully submitted,

Justin P. Green*
1242 Grand Canal Dr.
Corpus Christi, TX 78418
Phone: (361) 442-5870
Email: jpgreen47@gmail.com
CLASS MEMBER, *PRO SE*

*Attorney licensed in the State of Texas

CC:    Attorneys for Plaintiffs
       Attorneys for Defendants

---

[18] Notice at ¶ 74.

**CERTIFICATE OF SERVICE**

        I hereby certify that, on this the 15th day of November 2022, a copy of the foregoing letter was served on all other parties and/or counsel as follows:

**Via email to:**
Darren J. Robbins (*darrenr@rgrdlaw.com*)
Lonnie A. Browne (*lbrowne@rgrdlaw.com*)
Matthew J. Balotta (*mbalotta@rgrdlaw.com*)
Michael Albert (*malbert@rgrdlaw.com*)
Sean McGuire (*smcguire@rgrdlaw.com*)
Danielle S. Myers (*danim@rgrdlaw.com*)
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Ste. 1900
San Diego, CA 92101
ATTORNEYS FOR LEAD PLAINTIFF MANUEL S. WILLIAMS

**Via email to:**
Theodore J. Pintar (*tedp@rgrdlaw.com*)
Tor Gronborg (*torg@rgrdlaw.com*)
Trig R. Smith (*trigs@rgrdlaw.com*)
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Ste. 1900
San Diego, CA 92101
ATTORNEYS FOR LEAD PLAINTIFF MANUEL S. WILLIAMS
AND FOR REPRESENTATIVE PLAINTIFF ANDREW ZENOFF

**Via email to:**
Lawrence F. Stengel (*lfs@saxtonstump.com*)
SAXTON STUMP
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
ATTORNEY FOR LEAD PLAINTIFF MANUEL S. WILLIAMS
AND FOR REPRESENTATIVE PLAINTIFF ANDREW ZENOFF

**Via email to:**
Michael C. Dell'Angelo (*mdellangelo@bm.net*)
Shanon J. Carson (*scarson@bm.net*)
BERGER MONTAGUE PC
1818 Market St., Ste. 3600
Philadelphia, PA 19103
ATTORNEYS FOR PLAINTIFF PATRICK MCDERMID

**Via email to:**
Jacob A. Goldberg (*jgoldberg@rosenlegal.com*)
THE ROSEN LAW FIRM
101 Greenwood Ave., Ste. 440
Jenkintown, PA 19046
ATTORNEY FOR PLAINTIFF PATRICK MCDERMID

**Via email to:**
Mark S. Goldman (*goldman@lawgsp.com*)
GOLDMAN SCARLATO & PENNY PC

161 Washington St., Ste. 1025
Conshohocken, PA 19428
ATTORNEY FOR PLAINTIFF PATRICK MCDERMID

**Via email to:**
Craig E. Tenbroeck (*ctenbroeck@cooley.com*)
Peter M. Adams (*padams@cooley.com*)
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
ATTORNEYS FOR DEFENDANT INOVIO PHARMCEUTICALS, INC.
AND FOR DEFENDANT J. JOSEPH KIM

**Via email to:**
Heather Speers (*hspeers@cooley.com*)
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
ATTORNEY FOR DEFENDANTS

**Via email to:**
Georgina J. Inglis (*ginglis@cooley.com*)
Caitlin Bridget Munley (*cmunley@cooley.com*)
COOLEY LLP
1299 Pennsylvania Ave. NW, Ste. 700
Washington, D.C. 20004
ATTORNEYS FOR DEFENDANTS

**Via email to:**
Koji K. Fukumura (*kfukumura@cooley.com*)
COOLEY LLP
10265 Science Center Dr.
San Diego, CA 92121
ATTORNEY FOR DEFENDANTS

**Via email to:**
Luke T. Cadigan (*lcadigan@cooley.com*)
COOLEY LLP
500 Boylston St.
Boston, MA 02116
ATTORNEY FOR DEFENDANTS

**Via email to:**
Patrick K. Loftus (*loftus@duanemorris.com*)
Matthew S. Decker (*mdecker@duanemorris.com*)
DUANE MORRIS LLP
30 S. 17th St.
Philadelphia, PA 19103-7396
ATTORNEYS FOR DEFENDANTS

_____
Justin P. Green

Page 12 of 12

## Affidavit of Justin P. Green

BEFORE ME, the undersigned notary public, appeared Justin P. Green, the affiant, whose

identity is known to me, and after being by me duly sworn, stated under oath as follows:

1. My name is Justin P. Green.  I am over the age of eighteen.  I am of sound mind, and I am capable of making this affidavit.

2. As of the opening of trading on February 14, 2020, I owned zero shares of Inovio common stock.

3. On July 7, 2020, I purchased 40 shares of Inovio common stock at a price of $22.0199 per share.  The trade settled on July 9, 2020.

4. On July 14, 2020, I sold 40 shares of Inovio common stock at a price of $25.9200 per share.  The trade settled on July 16, 2020.

5. The enclosed monthly statement from Charles Schwab is a true and correct copy of my monthly account statement for the time period of July 1, 2020 to July 31, 2020.

_____
Justin P. Green, Affiant

SWORN TO AND SUBSCRIBED, before me, the undersigned notary public, on this the 15th day of November 2022.

_____
Notary Public
in and for the State of Texas

_____
Notary's Printed Name

Christal Grimes

My commission expires: ___1/31/2025___

CHRYSTAL J GRIMES
ID# 13098588-9
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-31-2025



**Roth Contributory IRA**
**Account Number:** ▮▮▮▮▮▮▮

**Statement Period: July 1, 2020 to July 31, 2020**
**Page 1 of 4**

*Questions? Call 1 (800) 435-4000 - 24/7 Customer service*
*Visit us at schwab.com/login*

## Account Of

JUSTIN PAUL GREEN
CHARLES SCHWAB & CO INC CUST
ROTH CONTRIBUTORY IRA
1242 GRAND CANAL DR.
CORPUS CHRISTI TX      78418-5717

## Mail To

JUSTIN PAUL GREEN
CHARLES SCHWAB & CO INC CUST
ROTH CONTRIBUTORY IRA
1242 GRAND CANAL DR.
CORPUS CHRISTI TX      78418-5717

## Account Value Summary

| | |
|---|---|
| Cash, Bank Sweep, and Money Market | ▮ |
| Total Investments Long | ▮ |
| Total Investments Short | ▮ |
| **Total Account Value** | ▮ |

## Change in Account Value

| | |
|---|---|
| Starting Account Value | ▮ |
| Transactions & Income | ▮ |
| Income Reinvested | ▮ |
| Change in Value of Investments | ▮ |
| **Ending Account Value** | ▮ |
| Year-to-Date Change in Value Since 6/19/20 | |

## Commitment to Transparency

Client Relationship Summaries and Best Interest disclosures at
**Schwab.com/transparency**

*Please see "Endnotes For Your Account" section for an explanation of the endnote codes and symbols on this statement.*

SIPC has taken the position that it will not cover the balances held in your deposit accounts maintained under programs like our Bank Sweep feature. Please see your Cash Feature Disclosure Statement for more information on insurance coverage.

© 2016 Charles Schwab & Co., Inc. All rights reserved. Member SIPC. (0616-1157)

**charles SCHWAB**

**Roth Contributory IRA**
**Account Number:** ▋▋▋▋▋▋

## Terms and Conditions

**GENERAL INFORMATION AND KEY TERMS:**
All references to "Schwab" in this document refer to the broker-dealer Charles Schwab & Co., Inc. Unless otherwise defined herein, capitalized terms have the same meanings as in your Account Agreement.

If you receive any other communication from any source other than Schwab which purports to represent your holdings at Schwab you should verify its content with this statement.

Securities, products, and services are not available in all countries and are subject to country specific restrictions.

**AIP (Automatic Investment Plan) Customers:** Schwab receives remuneration in connection with certain transactions effected through Schwab. If you participate in a systematic investment program through Schwab, the additional information normally detailed on a trade confirmation will be provided upon request.

**Bank Sweep and Bank Sweep for Benefit Plans Features:** Schwab acts as your agent and custodian in establishing and maintaining your Bank Sweep and Bank Sweep for Benefit Plans features as a Schwab Cash Feature for your brokerage account. Deposit accounts constitute direct obligations of banks affiliated with Schwab and are not obligations of Schwab. Deposit accounts are insured by the FDIC within applicable limits. The balance in the bank deposit accounts can be withdrawn on your order and the proceeds returned to your securities account or remitted to you as provided in your Account Agreement. For information on FDIC insurance and its limits, as well as other important disclosures about the Bank Sweep and Bank Sweep for Benefit Plans features, please refer to the Cash Features Disclosure Statement available online or from a Schwab Representative.

**Cash:** Any free credit balance owed by us to you payable upon demand which, although accounted for on our books of record, is not segregated and may be used in the conduct of this firm's business.

**Dividend Reinvestment Customers:** Dividend reinvestment transactions were effected by Schwab acting as a principal for its own account, except for the reinvestment of Schwab dividends, for which an independent broker-dealer acted as the buying agent. The time of these transactions, the exchange upon which these transactions occurred and the name of the person from whom the security was purchased will be furnished upon written request.

**Interest:** For the Schwab One Interest, Bank Sweep, and Bank Sweep for Benefit Plans features, interest is paid for a period that differs from the Statement Period. Balances include interest paid as indicated on your statement by Schwab or one or more of its affiliated banks. These balances do not include interest that may have accrued during the Statement Period after interest is paid. The interest paid may include interest that accrued in the prior Statement Period. For the Schwab One Interest feature, interest accrues daily from the second-to-last business day of the prior month and is posted on the second-to-last business day of the current month. For the Bank Sweep feature, interest accrues daily from the 16th day of the prior month and is credited/posted on the first business day after the 15th of the current month.

If, on any given day, the interest that Schwab calculates for the Free Credit Balances in the Schwab One Interest feature in your brokerage account is less than $.005, you will not accrue any interest on that day. For balances held at banks affiliated with Schwab in the Bank Sweep and Bank Sweep for Benefit Plans features, interest will accrue even if the amount is less than $.005.

**Latest Price/Price (Investment Detail Section Only):** The most recent price evaluation available on the last business day of the statement period, normally the last trade price or bid. Unpriced securities denote that no market evaluation update is currently available. Price evaluations are obtained from outside parties. Schwab shall have no responsibility for the accuracy or timeliness of any such valuations. Pricing of assets not held at Schwab is for informational purposes only.

**Margin Account Customers:** This is a combined statement of your margin account and special memorandum account maintained for you under Section 220.5 of Regulation T issued by the Board of Governors of the Federal Reserve System. The permanent record of the separate account as required by Regulation T is available for your inspection.

**Non-Publicly Traded Securities:** All assets shown on this statement, other than certain direct investments which may be held by a third party, are held in your Account. Values of certain Non-Publicly Traded Securities may be furnished by a third party as provided in Schwab's Account Agreement.

Schwab shall have no responsibility for the accuracy or timeliness of such valuations. The Securities Investor Protection Corporation (SIPC) does not cover many limited partnership interests.

**Option Customers:** Be aware of the following: 1) Commissions and other charges related to the execution of option transactions have been included in confirmations of such transactions previously furnished to you and will be made available promptly upon request 2) You should advise us promptly of any material changes in your investment objectives or financial situation 3) Exercise assignment notices for option contracts are allocated among customer short positions pursuant to an automated procedure which randomly selects from among all customer short option positions those contracts which are subject to exercise, including positions established on the day of assignment.

**Schwab Sweep Money Funds:** Includes the primary money market funds into which Free Credit Balances may be automatically invested pursuant to your Account Agreement. Schwab or an affiliate acts and receives compensation as the Investment Advisor, Transfer Agent, Shareholder Service Agent and Distributor for the Schwab Sweep Money Funds. The amount of such compensation is disclosed in the prospectus. The yield information for Schwab Sweep Money Funds is the current 7-day yield as of the statement period. Yields vary. If, on any given day, the accrued daily dividend for your selected sweep money fund as calculated for your account is less than 1/2 of 1 cent ($0.005), your account will not earn a dividend for that day. In addition, if you do not accrue at least 1 daily dividend of $0.01 during a pay period, you will not receive a money market dividend for that period. Schwab and the Schwab Sweep Money Funds investment advisor may be voluntarily reducing a portion of a Schwab Sweep Money Fund's expenses. Without these reductions, yields would have been lower.

**Securities Products and Services:** Securities products and services are offered by Charles Schwab & Co., Inc., Member SIPC. Securities products and services, including unswept intraday funds and net credit balances held in brokerage accounts are not deposits or other obligations of, or guaranteed by, any bank, are not FDIC insured, are subject to investment risk, and may lose value. SIPC does not cover balances held at banks affiliated with Schwab in the Bank Sweep and Bank Sweep for Benefit Plans features.

**Short Positions:** Securities sold short will be identified through an "S" in Investment Detail. The market value of these securities will be expressed as a debit and be netted against any long positions in Total Account Value.

**IN CASE OF ERRORS OR DISCREPANCIES: If you find an error or discrepancy relating to your brokerage activity (other than an electronic fund transfer) you must notify us promptly, but no later than 10 days after this statement is sent or made available to you. If this statement shows that we have mailed or delivered security certificate(s) that you have not received, notify Schwab immediately. You may call us at 800-435-4000. (Outside the U.S., call +1-415-667-8400.) Any oral communications should be re-confirmed in writing to further protect your rights, including rights under the Securities Investor Protection Act (SIPA). If you do not so notify us, you agree that the statement activity and Account balance are correct for all purposes with respect to those brokerage transactions.**

**COMPLAINT CONTACT INFORMATION:** Complaints about Schwab statements, products or services may be directed to 1-800-435-4000. For clients residing outside of the U.S., call collect +1-415-667-8400. Please send any written complaints to the Client Advocacy Team, 211 Main St., San Francisco, CA 94105, USA.

**Address Changes:** It is your obligation to keep Schwab informed of any changes in your address, telephone number or other contact information. If you fail to notify Schwab of those changes, you may not receive important notifications about your Account, and trading or other restrictions might be placed on your Account. For assistance, you may contact Schwab at 1-800-435-4000. Clients residing outside of the U.S. may call Schwab collect at +1-415-667-8400.

**Additional Information:**
A financial statement for your inspection is available at Schwab's offices or a copy will be mailed to you upon written request. Any third party trademarks appearing herein are the property of their respective owners. Schwab and its affiliated banks are subsidiaries of The Charles Schwab Corporation.

(1017-7MAX)



**Roth Contributory IRA**
**Account Number:** ▮▮▮

**Statement Period: July 1, 2020 to July 31, 2020**
**Page 3 of 4**

## Investment Detail

| Description | Starting Balance | Ending Balance |
|---|---|---|
| **Cash and Bank Sweep** | | |
| CASH | | |
| BANK SWEEP X,Z | | |
| SCHWAB PREMIER BANK | | |
| **Total Account Value** | | |

## Transaction Detail

| Settle Date | Trade Date | Transaction | Description | Quantity | Price | Total |
|---|---|---|---|---|---|---|
| **Cash, Bank Sweep, and Money Market Funds Activity** | | | | | | |
| **Investments Activity** | | | | | | |
| 07/09 | 07/07 | Bought | INOVIO PHARMA: INO | 40.0000 | 22.0199 | (880.80) |
| 07/16 | 07/14 | Sold | INOVIO PHARMA: INO | (40.0000) | 25.9200 | 1,036.78 |

### Bank Sweep Activity

Opening Balance X, ▮▮▮

| Trans Date | Transaction | Description | Withdrawal | Deposit |
|---|---|---|---|---|

*Please see "Endnotes For Your Account" section for an explanation of the endnote codes and symbols on this statement.*



**Roth Contributory IRA**
**Account Number:** ████████

Statement Period: July 1, 2020 to July 31, 2020
Page 4 of 4

## Bank Sweep Activity (continued)

| Trans Date | Transaction | Description | Withdrawal | Deposit |
|---|---|---|---|---|
| ██████ | ██████ | ██████ | ██████ | ██████ |
| | | **Total Activity** | ██████ | |
| | | | **Ending Balance**[X,Z] | ██████ |

*Bank Sweep: Interest rate as of 07/31/20 was 0.01%.* [Z]

## Contribution Summary

| | | *2019* | *2020* |
|---|---|---|---|
| Rollover | | ██████ | ██████ |
| | **Year to Date Total** | ██████ | ██████ |

## Endnotes For Your Account

| Symbol | Endnote Legend |
|---|---|
| X | Bank Sweep deposits are held at FDIC-insured bank(s) ("Banks") that are affiliated with Charles Schwab & Co., Inc. |
| Z | For Bank Sweep and Bank Sweep for Benefit Plans features, interest is paid for a period that differs from the Statement Period. Balances include interest paid as indicated on your statement by Schwab or one or more of its affiliated banks. These balances do not include interest that may have accrued during the Statement Period after interest is paid. The interest paid may include interest that accrued in the prior Statement Period. |

For information on how Schwab pays its representatives, go to http://www.schwab.com/compensation.

*Please see "Endnotes For Your Account" section for an explanation of the endnote codes and symbols on this statement.*

## **List of Previous Class Action Objections**

None.

## Witness List

None.

**Exhibit List**

1.    Notice of Pendency and Proposed Settlement of Class Action

2.    Proof of Claim Form

3.    Class Member Justin P. Green's Objections to Proposed Class Action Settlement

4.    Charles Schwab monthly brokerage account statement for July 1, 2020 to July 31, 2020