UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK McDERMID, Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) vs. ) ) INOVIO PHARMACEUTICALS, INC., et al., ) ) Defendants. ) ) ) | Civ. Action No. 2:20-cv-01402-GJP CLASS ACTION PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEY'S FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS |

4882-3658-5793.v3

## I.    INTRODUCTION

Lead Plaintiff Manuel S. Williams ("Williams") and Representative Plaintiff Andrew Zenoff ("Zenoff," and, together with Williams, "Plaintiffs") respectfully submit this reply in further support of their motion for final approval of the $44 million cash and stock settlement, approval of the proposed Plan of Allocation, an award of attorneys' fees and expenses, and awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.[1]

## II.    THE REACTION OF THE CLASS SUPPORTS FINAL APPROVAL

One of the seminal factors district courts consider in connection with final approval of a settlement is "'the reaction of the class to the settlement.'"  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  The Class's reaction here is overwhelmingly supportive.  Just under 600,000 copies of the Notice of Pendency and Proposed Settlement of Class Action were sent to potential Class Members, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*, and notice was also posted to a case-specific website created for this litigation.[2] The November 23, 2022 deadline for filing objections and submitting requests for exclusion has now passed.  To date, only one Class Member, a lawyer proceeding *pro se*, has objected to the proposed Settlement and Plan of Allocation, but not the Settlement itself, the request for an award of attorneys' fees and expenses, or the request for awards to Plaintiffs.  *See* Class Member Justin P. Green's Objections to the Proposed Class Action Settlement (ECF 157).[3]  Just eleven Class

---

[1]    Unless otherwise noted, all capitalized terms used herein have the same meaning as set forth in the Stipulation of Settlement dated August 22, 2022.  ECF 149-1.

[2]    ECF 156-7, Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11-14.

[3]    Citations to Mr. Green's objection will take the form "Obj. at ___."

Members have requested exclusion, four of which were received after the November 23, 2022 deadline.[4]  Not a single Class Member has objected to the Settlement Amount, Lead Counsel's attorneys' fee and expense request, or the request for awards to Plaintiffs.

With only one objection to the Settlement and seven requests for exclusion after an extensive notice program, the Class's support for the Settlement and Plan of Allocation is apparent. This demonstration of support weighs in favor of approval.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("[t]he vast disparity between the number of potential class members who received notice of the Settlement [478,000] and the number of objectors [six] creates a strong presumption that this factor weighs in favor of the Settlement"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) (finding that 30 objectors out of numerous shareholders was "an infinitesimal number").

The Class's positive reaction also supports the requested attorneys' fees and expenses, along with the requested awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4), which are fully consistent with the Court-approved Notice.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that only two objections out of thousands of notified class members supported approval of the requested fees, particularly when the class included "'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive"); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (when assessing fee requests, courts consider "the presence or absence of substantial objections by members of the class to the settlement terms and/or [the] fees requested by counsel"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 435 (D.N.J. 2004) (approving fee over

---

[4]    Supplemental Declaration of Ross D. Murray Regarding Notice Dissemination and Requests for Exclusion Received to Date ("Supp. Murray Decl."), filed herewith, at ¶5-6.

4882-3658-5793.v3

nine objections, stating that "the lack of a significant number of objections is strong evidence that the fees request is reasonable").

### III.    THE SOLE OBJECTOR'S ARGUMENTS ARE MERITLESS AND SHOULD BE OVERRULED

The sole objector, Justin P. Green, a lawyer proceeding *pro se*, makes three objections to the proposed Settlement and Plan of Allocation.  First, he objects to the extent the Settlement releases claims of Class Members who suffered no damages under §10(b) and therefore have no recognized losses under the Plan of Allocation.  Second, he objects that the Notice does not sufficiently inform Class Members that a judgment might be more than the $44 million Settlement if Plaintiffs were to prevail at trial, and he asserts, without explanation, that this perceived omission somehow deprives this Court of personal jurisdiction over all Class Members.  Third, he argues that the objection procedures are unduly burdensome.  Each of these arguments fails.

### A.    The Plan of Allocation Calculates Damages in Accordance with the PSLRA

The Settlement provides $30 million in cash, plus stock with a minimum value of $14 million, to compensate Class Members who suffered actual damages under §10(b) on their purchases of Inovio common stock during the Class Period, *i.e.*, losses proximately caused by Inovio's alleged misrepresentations and omissions.  Merely purchasing stock at an inflated price is insufficient to give rise to damages.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  The Private Securities Litigation Reform Act ("PSLRA") states that a plaintiff in a federal securities fraud case "shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter ***caused the loss*** for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4) (emphasis added).  Interpreting that statutory language, the Supreme Court in *Dura* ruled that, "as a matter of pure logic," no ***loss*** occurs until the fraud has begun to be revealed and the artificial inflation has begun to leak out of the stock price.  *Dura*, 544 U.S. at 342.

- 3 -

4882-3658-5793.v3

Accordingly, a Class Period purchaser who buys inflated stock but then "sells the shares quickly before the relevant truth begins to leak out" will "not have [suffered] any loss" attributable to the fraud. *Id.*

Mr. Green is such a purchaser and therefore suffered no damages under §10(b).  Despite having bought Inovio stock during the Class Period, Mr. Green sold those shares prior to the revelation of the fraud, and thus his shares remained inflated at the time he sold.  As a matter of law, and of "pure logic," he cannot have suffered a loss.  *Id.*  Tracking the language of §10(b), the PSLRA and *Dura*, the Plan of Allocation does not allow him to recover under the Settlement.  His Recognized Loss Amount under the Plan is zero.

Mr. Green principally relies on *In re Continental Airlines*, a non-securities case that is inapposite.  There, the Third Circuit considered a bankruptcy reorganization plan that released certain third parties' claims against non-debtors without consideration.  203 F.3d 203, 211 (3d Cir. 2000).  The Court found that "the provision in the Continental Debtors' plan releasing and permanently enjoining Plaintiffs' lawsuits against the non-debtor D&O defendants does not pass muster under even the most flexible tests for the validity of non-debtor releases."  *Id.* at 214.  The concerns behind the Third Circuit's conclusion are simply not present here.  This is not a situation where certain Class Members with otherwise valid and valuable claims are having those claims extinguished in exchange for nothing.  Here, the only Class Members not entitled to recover under the Settlement are those who have no damages.  The same would be true in this case if Plaintiffs prevailed at trial.

As the court in *In re WorldCom, Inc. Sec. Litig.* recognized, "fairness does not require that Class Members be compensated for losses stemming from purchases at prices that it would be extraordinarily difficult to argue were inflated by the malfeasance alleged in the complaint."  388 F. Supp. 2d 319, 343 (S.D.N.Y. Sept. 21, 2005).  Those objectors had purchased WorldCom stock

- 4 -

prior to the start of the Class Period, and claimed to be receiving inadequate compensation for their enforced release of potential claims through the settlement. *Id.* The Court found that argument had no merit because "it appears highly unlikely that [the objectors] could establish a factual basis for recovery." *Id.* at 342. The prices of shares purchased pre-Class Period were not inflated at the time of purchase and were not damaged by subsequent corrective disclosures: "there is compelling evidence that WorldCom's manipulations of its financial reporting did not impact prior periods [*i.e.*, pre-Class Period] in any material way that requires compensation in order for the settlement to be approved as fair." *Id.* at 343. Indeed, in essentially every securities fraud class action there are class members who bought and sold stock before a fraud and related disclosure and therefore suffered no damages.[5]

Nor is it true that the proposed Settlement and Plan of Allocation treats Class Members inequitably – exactly the opposite. All Class Members are entitled to receive an amount based on their Recognized Loss Amount. Indeed, paying some Class Members more than their Recognized Loss Amount – which is what Mr. Green appears to suggest – would violate Rule 23(e)(2): "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether . . . the proposal ***treats class members equitably relative to each other***." Fed. R. Civ. P. 23(e)(2). Allowing most Class Members to recover a portion of their recognized losses, while allowing others to receive a windfall

---

[5]     *See, e.g.*, *Pelletier v. Endo*, No. 2:17-cv-05114, ECF 395-2 at 10 (E.D. Pa. Oct. 15, 2021) ("If sold prior to February 29, 2016, the claim per share is $0.00."); *In re Valeant Pharms.*, No. 3:15-cv-07658, ECF 539-25 at 6 (D.N.J. Apr. 22, 2020) ("For each share of Valeant common stock purchased or otherwise acquired during the Class Period, the claim per share shall be as follows: (a) Sold with an equal, or greater, level of percent inflation (see Table-A), the Exchange Act Recognized Loss Amount is zero."); *In re ViroPharma, Inc. Sec. Litig.*, No. 2:12-cv-02714, ECF 87-3 at 25 (E.D. Pa. Apr. 29, 2015) ("[for shares] sold on or before April 9, 2012, the last trading day before the corrective disclosure that reduced the amount of inflation in the ViroPharma common stock price, the Inflation Loss for purchased shares matched to such sales is zero").

- 5 -

4882-3658-5793.v3

when they suffered no damages, would be inequitable.  And of course, Mr. Green, like all Class Members who do not wish to participate in this Settlement, is free to opt out if he would prefer to pursue his own claims.

### B.      The Notice Is Sufficient

Mr. Green next objects that the Notice "does not advise class members that if no settlement is approved and [Plaintiffs] prevail on their claims at trial [the Class] could receive a higher recovery than what is being offered."  Obj. at 6.  No such verbiage is required under the PSLRA or Rule 23.  The PSLRA requires a statement of the potential outcome in the matter.  Accordingly, the Notice states that "the parties do not agree on the amount of recoverable damages if Plaintiffs were to prevail on each of the claims."  Notice at 2.  This is standard in securities class action settlements and is the same language approved by Judge Baylson in the *Pelletier v. Endo* settlement,[6] Judge Shipp in the *Valeant* settlement,[7] and courts throughout the Third Circuit and across the country.[8]  Moreover, the Notice also contains a Plan of Allocation which provides a specific formula allowing each Class Member to calculate their Recognized Loss Amount, *i.e.*, the maximum likely recovery if Plaintiffs fully prevailed at trial, and identifies that if "all potential Class Members elect to participate, the estimated average recovery is $0.23 per damaged share."

---

[6]    *Pelletier v. Endo*, No. 2:17-cv-05114-MMB (E.D. Pa.), ECF 395-2, at 2 (¶4) ("Moreover, the parties do not agree on the amount of recoverable damages if Plaintiffs were to prevail on each of the claims.").

[7]    *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.), Notice of Pendency and Proposed Settlement of Class Action, ECF 539-25, at 2 ("The Settling Parties . . . do not agree on the amount of damages per security, if any, that would be recoverable if the Class prevailed on each claim alleged.").

[8]    The fact that the parties disagree on the amount of damages is also explained in Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorney' Fees and Expenses, and Awards to Plaintiffs ("Final Approval Brief"), ECF 156-1 at 5-6.

4882-3658-5793.v3

*See* ECF 156-8, ¶¶3, 31-53.   Thus, contrary to Mr. Green's argument, the Notice explicitly identifies that the theoretical recovery if Plaintiffs fully prevailed at trial would be higher than the anticipated recovery based on the Settlement.   The Notice provides exactly what the PSLRA requires as well as what Mr. Green claims is missing.

Mr. Green also suggests that the deficiencies he perceives with the Notice somehow deprive this Court of personal jurisdiction over absent Class Members.   Obj. at 4, 6.   He cites *In re Prudential Ins. Co.*, 148 F.3d 283 (3d Cir. 1998).   But in *Prudential*, the Third Circuit affirmed the district court's finding of personal jurisdiction, for settlement purposes, over all eight million absent class members.   *See In re Prudential*, 148 F.3d at 306 ("The district court also found it had personal jurisdiction over all members of the proposed class.   We agree.").   Mr. Green points to no case or any logical basis for finding a lack of personal jurisdiction over class members in circumstances analogous to those here.[9]

### C.      The Objection Procedures Are Not Burdensome

Lastly, Mr. Green argues that the objection procedures set forth in the Notice deviate from Rule 23 due process and are unduly burdensome.   Obj. at 6-9.   But Rule 23 does not specify any specific procedures for objecting to a class action settlement.   Moreover, Mr. Green's objection rings hollow as he was able to comply with the objection procedures and provides no evidence that any other Class Member was burdened by these procedures.   Indeed, the procedures the Court approved in this case are virtually identical to those Judge Baylson recently approved in *Pelletier v. Endo*.   *See id.*, ECF 397, ¶68 (directing objectors to establish their membership in the Class by including documentation of their transactions and identifying all previous class action objections,

---

9    Mr. Green also claims that the "ethics rules" (without identifying a specific rule) require Plaintiffs to provide the Class with proper notice of the Settlement, and alleges that Lead Counsel is inadequate counsel for not having done so.   Obj. at 5.   Because the Notice is, in fact, adequate, this unsupported argument fails as well.

4882-3658-5793.v3

among other requirements). Those procedures are, in turn, virtually identical to the procedures used in countless other securities fraud class action settlements. That is because the vast majority of the public does not have access to electronic filing through PACER. Accordingly, submission of objections by mail is a widely adopted practice in securities class action settlements. *See, e.g.*, *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.), Notice of Pendency and Proposed Settlement of Class Action, ECF 539-25 at 14 (providing instructions for submitting written objections by mail), *available at* https://www.valeantsecuritiessettlement.com (last accessed Nov. 21, 2022). There is simply no reason to believe that the procedures here, consistent with other securities class action settlements in this Circuit and every other, impose an undue burden on Class Members.

Mr. Green also takes issue with the requirement that he submit his transaction records along with his objection. Obj. at 9. But those records are necessary to verify that he is a Class Member and has standing. Only Class Members can object. Fed. R. Civ. P. 23(e)(5)(A) ("Any ***class member*** may object. . . .") (emphasis added); *see In re LIBOR-Based Financial Instruments Antitrust Litig.*, 327 F.R.D. 483, 499 (S.D.N.Y. 2018) (only class members have standing to object to a settlement); *In re Drexel Burnham Lambert Grp., Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991) ("Only Class members have standing to object to the Settlement of a class action."). The transaction records that must be submitted with an objection are no different than the records all Class Members, including Plaintiffs, need to submit with a claim.

Finally, Mr. Green objects to the related requirement that objectors provide their objection history. But this requirement is designed to help the Court identify professional or bad-faith objectors. "Federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. Apr. 2, 2003). In fact, the 2018 amendment to Rule 23(e)(5) was intended to dissuade "objectors [who are] seeking only personal

- 8 -

4882-3658-5793.v3

gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process." Fed. R. Civ. P. 23(e)(5) advisory committee's note to the 2018 Amendment. And courts in this Circuit have barred so-called professional objectors. *See, e.g.*, *Cf. Cole v. NIBCO, Inc.*, No. 13-7871 (FLW), ECF 223 at 2 (D.N.J. Apr. 5, 2019) (denying motion to appear *pro hac vice* filed by professional objector Christopher Bandas "[i]n light of Mr. Bandas' past behavior" and noting that "several courts around the country have expressed skepticism that Mr. Bandas' objections to class settlements have been made in good faith").[10]

## IV.    CONCLUSION

Based on the entire record herein, Plaintiffs respectfully request that the Court: (i) overrule the Green objection in its entirety and grant their motion for final approval of the Settlement and the Plan of Allocation; (ii) award the requested attorneys' fees of 27.5% of the Settlement Amount and payment of litigation expenses of $814,374.95, plus interest on both amounts at the same rate and for the same period as earned by the Settlement Fund; and (iii) award Lead Plaintiff Williams and Representative Plaintiff Zenoff $77,450.00 and $75,712.50, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

DATED:  December 8, 2022                    Respectfully submitted,

                                            SAXTON & STUMP
                                            LAWRENCE F. STENGEL (PA #32809)


                                                    s/ Lawrence F. Stengel
                                            _____
                                            LAWRENCE F. STENGEL

---

[10]   Mr. Green, like Mr. Bandas, is an attorney based in Corpus Christi, Texas.

4882-3658-5793.v3

280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG (*pro hac vice*)
THEODORE J. PINTAR (*pro hac vice*)
TRIG R. SMITH (*pro hac vice*)
LONNIE A. BROWNE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
SEAN C. McGUIRE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
tedp@rgrdlaw.com
lbrowne@rgrdlaw.com
trigs@rgrdlaw.com
mbalotta@rgrdlaw.com
smcguire@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 10 -

4882-3658-5793.v3

CERTIFICATE OF SERVICE

I, Lawrence F. Stengel, hereby certify that on December 8, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ *Lawrence F. Stengel*
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: 717/556-1000
717/441-3810 (fax)

Email: lfs@saxtonstump.com

# Mailing Information for a Case 2:20-cv-01402-GJP MCDERMID v. INOVIO PHARMACEUTICALS, INC. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **ANDREW DAVID ABRAMOWITZ**
  aabramowitz@bm.net,jgionnette@bm.net

- **PETER M. ADAMS**
  padams@cooley.com,daland@cooley.com,ktorres@cooley.com

- **MICHAEL ALBERT**
  malbert@rgrdlaw.com

- **MATTHEW J. BALOTTA**
  mbalotta@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **JEFFREY C BLOCK**
  jeff@blockesq.com

- **LONNIE A. BROWNE**
  lbrowne@rgrdlaw.com

- **LUKE T. CADIGAN**
  lcadigan@cooley.com

- **SHANON J. CARSON**
  scarson@bm.net,emagnus@bm.net

- **MATTHEW S. DECKER**
  MDecker@duanemorris.com

- **MICHAEL C. DELL'ANGELO**
  mdellangelo@bm.net,eyork@bm.net,csimon@bm.net,jgionnette@bm.net

- **MICHAEL D. DONOVAN**
  mdonovan@donovanlitigationgroup.com

- **KOJI F. FUKUMURA**
  kfukumura@cooley.com,jroyer@cooley.com,hlaing@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com,ecombs@cooley.com,chourani@cooley.com

- **BARBARA L. GIBSON**
  bgibson@kohnswift.com,cmusloski@kohnswift.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **MARK S. GOLDMAN**
  goldman@lawgsp.com,lamar@lawgsp.com

- **JUSTIN P. GREEN**
  jpgreen47@gmail.com

- **TOR GRONBORG**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **GEORGINA J. INGLIS**
  ginglis@cooley.com

- **PATRICK J. LOFTUS**
  loftus@duanemorris.com,lverbitski@duanemorris.com,autodocketPHL@duanemorris.com

- **SEAN MCGUIRE**
  smcguire@rgrdlaw.com,e_file_SD@rgrdlaw.com,scaesar@rgrdlaw.com

- **CAITLIN BRIDGET MUNLEY**
  cmunley@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com

- **DANIELLE S. MYERS**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **THEODORE J. PINTAR**
  TedP@rgrdlaw.com,PamM@lerachlaw.com

- **DARREN J. ROBBINS**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **TRIG R. SMITH**
  trigs@rgrdlaw.com,lbrowne@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **HEATHER SPEERS**
  hspeers@cooley.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **CRAIG E. TENBROECK**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **STEPHEN J. TETI**
  steti@blockesq.com,stephen-teti-1589@ecf.pacerpro.com

- **JACOB A. WALKER**
  jake@blockleviton.com,jacob-walker-5598@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`