# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK MCDERMID, *individually and on behalf of all others similarly situated*,

*Plaintiff,*

v.

INOVIO PHARMACEUTICALS, INC., *et al*,

*Defendants.*

CIVIL ACTION
NO. 20-01402

**PAPPERT, J.**                                                    **January 18, 2023**
## MEMORANDUM

The parties have agreed to settle this class action after almost three years of litigation.  The Court issued an Order on August 31, 2022, preliminarily approving the settlement.  (ECF 150.)  Plaintiffs now move for final approval of the Settlement Agreement, Plan of Allocation, award for attorneys' fees, expenses, and awards to the lead and representative Plaintiffs.  (ECF 156.)  After reviewing all relevant submissions and holding a hearing (ECF 160), the Court grants the Motion.

I

Patrick McDermid, individually and on behalf of others similarly situated, sued Inovio, CEO J. Joseph Kim, CFO Peter D. Kies, and Vice President of Biological Manufacturing and Clinical Supply Management Robert J. Juba, Jr. alleging violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5.  Plaintiffs claim that during the class period, Defendants made several false or misleading statements regarding Inovio's progress on a COVID-19 vaccine that artificially inflated Inovio's stock price.  For example, on February 14, 2020, Kim announced on television that "within three hours of accessing [COVID-19's genetic

sequence] . . . we were able to construct our vaccine INO-4800." (Second Am. Compl. ¶ 97, ECF 129.) His announcement caused Inovio's stock price to increase 7.5 percent. (*Id.* ¶ 98.) On March 2, 2020, Kim met with then-President Trump, and while discussing the COVID-19 pandemic, stated that Inovio had "fully construct[ed] [its COVID-19] vaccine within three hours." (*Id.* ¶ 99.) Inovio's stock rose 69.7 percent by the end of the next day. (*Id.* ¶ 100.)

After Kim's statements, Citron Research—a well-known securities trading and research firm—denounced on Twitter Inovio's "ludicrous and dangerous" claim that it designed a vaccine in 3 hours. (*Id.* ¶ 115). Inovio later corrected Kim's statements, conceding it had not *constructed* a vaccine in three hours, as Kim had claimed; rather, it had *designed* a vaccine in three hours. (*Id.* ¶ 101.) Over the following months, further misstatements were revealed, such as Inovio's assertion that it could manufacture hundreds of millions of doses of its vaccine. (*Id.* ¶¶ 103–107.) Within two days, Inovio's stock tumbled from $18.72 per share to just $5.70 per share. (*Id.* ¶¶ 115–116.) Over the following months, further company statements—such as Inovio's assertion that it could manufacture hundreds of millions of doses of its vaccine—were revealed as misleading. (*Id.* ¶ 74, 103–107.)

The litigation "was hotly disputed on both sides," and both parties "were fully prepared to take this case forward" to trial. (Hr'g Tr. 10:4–6, ECF 161.) McDermid filed his initial Complaint on March 12, 2020 (ECF 1), and the Court appointed Manuel Williams as lead Plaintiff and Robbins Geller Rudman & Dowd LLP as lead counsel in June of 2020. *See* (ECF 54.) Plaintiffs filed their Consolidated Class Action Complaint (ECF 60) in August of 2020, and a First Amended Complaint in September of 2020

(ECF 68).  On February 16, 2021, the Court granted in part and denied in part Defendants' Motion to Dismiss (ECF 72, 86).  Plaintiffs filed and fully briefed a Motion to Certify the Class (ECF 99), to which the Defendants filed a thorough Response (ECF 107).  Plaintiffs filed a Second Amended Complaint in February of 2022 (ECF 129), to which Defendants filed another Motion to Dismiss (ECF 133).  Throughout this time, the parties engaged in extensive discovery consisting of over half a million pages of documents.  Plaintiffs deposed nineteen fact witnesses, and experts for both sides prepared reports and were deposed.  (Mem. L. Supp. Mot. Final Approval 9, ECF 156-1.)  The parties also participated in two mediations with a mediator with extensive experience in complex class action cases.  (Decl. of Tor Gronborg Supp. Mot. Final Approval ¶ 4, ECF 156-2.)  The parties eventually reached agreement, and the Court preliminarily approved their settlement (ECF 150).  On December 15, 2022, the Court held a hearing on the Final Settlement Agreement (ECF 160).

Under the Settlement Agreement, Inovio agrees to pay an award of at least $44 million.  Of that total, $30 million will be paid in cash, with the remainder paid in either seven million shares of Inovio common stock or $14 million worth of stock, whichever is greater.  (Mem. L. Supp. Mot. Final Approval 1, ECF 156-1.)  Each individual class member's recovery will depend on when they purchased their Inovio stock, how much they paid for their stock, and how many shares the individual purchased.  (Decl. of Tor Gronborg Supp. Mot. Final Approval ¶ 87, ECF 156-2.)

## II

Pursuant to Federal Rule of Civil Procedure 23(e), class actions may only be settled with court approval and only after a hearing that finds the settlement is "fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Court must:  (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).  *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

III

The settlement class must meet Rule 23(a)'s requirements:  numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  These requirements ensure that the named plaintiffs appropriately represent the class and "effectively limit[s] the class claims to those fairly encompassed by the named plaintiff's claims."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citations and quotations omitted).

Because the numerosity requirement is generally met if the potential number of plaintiffs exceeds forty, *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001), the "thousands" of class members who purchased Inovio stock during the class period are sufficiently numerous as to make joinder impractical under Rule 23(a).  *See* (Mem. L. Supp. Mot. Class Certification 3, ECF 100); *In re CIGNA Corp. Sec. Litig.*, No. 02-cv-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) ("[C]ourts have recognized a presumption that the 'numerosity requirement is satisfied when a class action involves a nationally traded security.'").

The commonality bar "is not a high one."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).  A single common issue is enough to satisfy the commonality requirement.  *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Typicality requires

the Court to assess "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented." *Id.* at 57. Here, both the commonality and typicality requirements are met. The issues of law and fact in this case are common to all class members. For example, the question of whether Defendants made false or misleading statements, and the extent to which those statements affected Inovio's stock price, is common to all class members. Additionally, lead Plaintiff's claims are typical of those of all class members: Defendants made materially false and misleading statements that artificially inflated Inovio's stock price, which damaged class members when the stock price fell as the truth was revealed.

The final factor—whether "the representative parties will fairly and adequately protect the interests of the class"—is also met. Fed. R. Civ. P. 23(a)(4). The named Plaintiffs' interests align with those of other class members, and class counsel are qualified, experienced and capable of litigating the class's claims. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). The lead Plaintiff, representative Plaintiff, and class counsel have protected the interests of the class, as reflected by the substantial settlement.

The settlement class also "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  The predominance inquiry focuses on whether the defendants' conduct was common to all class members and whether all members were harmed by the defendants' conduct.  *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623.  The predominance requirement is met where there are issues of law and fact common to all class members regarding Inovio's false and misleading statements.

Superiority requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 534 (citations omitted).  Rule 23(b)(3) directs the Court to consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . .[1]

Fed. R. Civ. P. 23(b)(3).  All these factors are satisfied as nothing about this litigation indicates individual control is a more favorable vehicle for bringing these claims against Inovio.  A class action is therefore superior to other methods of adjudication.  *See In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-341, 2022 WL 16533571, at *3 (E.D.

---

[1]     In the class action settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Pa. Oct. 28, 2022) ("Where there are potentially thousands of shareholders within the proposed class, class resolution is preferable to multiple relitigations that would drain both the parties and the courts of their resources.")

Because all relevant Rule 23(a) and (b) factors are met, the settlement class is certified for purposes of settlement approval.

IV

Before turning to the merits of the Settlement Agreement, the Court must next determine that notice was appropriate. *In re Am. Invs. Life Ins. Co.*, 263 F.R.D. 226, 237 (E.D. Pa. Dec. 18, 2009) (citations omitted). For all classes certified under Rule 23(b)(3), the Court must direct notice to the class members in the best way practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* The Private Securities Litigation Reform Act of 1995 ("PSLRA") also requires that notice to settlement class members include statements regarding the recovery that details the total amount of the proposed settlement, as well as the average amount awarded per share; the potential outcome of the case; the attorneys' fees or costs sought; the identification of the lawyer' representatives; and the reasons for the settlement. 15 U.S.C. § 78u-4(a)(7)(A)–(E).

The notice meets all of the requirements of Rule 23. It includes information regarding the litigation, the definition of the class and the claims and issues in the

litigation.  *See* (Notice of Pendency and Proposed Settlement of Class Action ¶¶ 1–3, ECF 156-8).  It also describes the claims that will be released in the settlement.  *See* (*Id.* ¶¶ 54–60).  The notice also: advises that a class member may enter an appearance through counsel (*Id.* ¶ 63); describes the binding effect of a judgment on class members (*Id.* ¶ 62); states the procedures and deadline for class members to exclude themselves from the class or to object (*Id.* ¶¶ 64–69); states the procedures and deadlines for submitting a Proof of Claim (*Id.* at 2); and provides the date, time, and location of the final settlement hearing (*Id.* ¶ 71).

In addition, the notice satisfies the PSLRA's disclosure requirements by stating, among other things:  the amount of the settlement determined in the aggregate on the average per-share basis (*Id.* ¶ 3); that the Settling Parties do not agree on the average amount of damages per-share that would be recoverable if Plaintiffs prevailed at trial, and it notes the issues on which the Settling Parties disagree (*Id.* ¶ 4).  It also states that Plaintiffs' Counsel intends to apply for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis (*Id.* ¶ 5).  There is also contact information for Plaintiffs' counsel (*Id.* ¶ 6), and the reasons the parties are proposing the settlement is detailed (*Id.* ¶¶ 20–21).  *See* (Notice of Pendency and Proposed Settlement of Class Action, ECF 156-8; Mem. Supp. Mot. Final Approval 5–6, ECF 156-1); 15 U.S.C. § 78u-4(a)(7).

The notice also complies with the Court's Preliminary Approval Order and satisfies the requirements of Rule 23.  The Claims Administrator, Gilardi & Co. LLC, began mailing the Notice Form and the Proof of Claims form on September 20, 2022, to all reasonably identifiable class members.  (Mem. Supp. Mot. Final Approval 6, ECF

156-1.)  To date, Gilardi has sent 576,695 notice packets to potential class members, including 4,722 packets to securities brokers and financial institutions who may have clients who are class members.  (*Id.*)  Additionally, notice was published in *The Wall Street Journal* and over *Business Wire* on September 27, 2022, and a notice was posted on the website www.InovioSecuritiesLitigation.com on September 20, 2022.  (*Id.* at 6–7.)  This notice was adequate and the best practicable under the circumstances.

V

The Court must determine that the proposed settlement is "fair, reasonable and adequate."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 282, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 23(e).  In the Third Circuit, there is an initial presumption of fairness if "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 1998)).  Each of these factors is met: negotiations occurred at arm's length, including via a nationally recognized mediator in securities matters; discovery was extensive in the number of documents produced and depositions taken; Plaintiffs' counsel has well-documented experience handling securities class actions; and only one class member objected to the settlement. Therefore, there is an initial presumption of fairness applied to this settlement.

With the initial presumption of fairness established, Rule 23(e)(2) and the *Girsh* factors guide the Court's in-depth fairness analysis.  *See Girsh v. Jepson*, 521 F.2d 153,

157 (3d Cir. 1975).

## A

Rule 23(e)(2) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Rule 23(e) protects the unnamed members of the class. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims.").

## 1

Class counsel and the lead and representative Plaintiffs adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  Class counsel was able to "develop enough information about the [litigation] to appreciate sufficiently the value of the claims."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).  Counsel has vigorously pursued this case on behalf of class members from the start.  Counsel filed three complaints, responded to Defendants' first motion to dismiss, pursued class certification, conducted discovery involving over 500,000 pages of

documents, and took nineteen fact depositions.  (Mem. L. Supp. Mot. Final Approval 9, ECF 156-1.)

2

The parties negotiated the settlement at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Two mediations were held with an experienced mediator in securities litigation.  The first was on July 13, 2021, and the second on February 15, 2022.  (Decl. of Tor Gronborg Supp. Mot. Final Approval ¶ 84, ECF 156-2.)  Following the second mediation, the parties independently accepted an unsolicited proposal from the mediator.  (*Id.* ¶ 84.)  As Plaintiffs' counsel stated at the hearing, "to say arm's length is . . .  an understatement here."  (Hr'g Tr. 10:14–15.)  That the settlement was the result of a mediator's proposal after two mediations gives it additional weight.  The protracted and contentious negotiations, aided by an experienced mediator, was not collusive.  The use of "an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."  *Kao v. CardConnect Corp.*, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2020) (quoting *Bellum v. Law Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3. 2016).

3

The relief the settlement is expected to provide class members is adequate when balanced against "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

11

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

i

Continuing this litigation would cause the parties to incur substantial additional costs and would have necessitated extensive trial preparation. As Plaintiffs' counsel noted at the hearing, "securities actions are notoriously complex and risky. They're difficult to prove, and they're very expensive." (Hr'g Tr. 11:2–4.) Counsel further noted how "Defendants disputed every element: falsity, scienter, loss causation, and damages." (Hr'g Tr. 11:8–9.) Defendants continue to maintain that Inovio's statements regarding their clinical trials were not false or misleading and that loss causation could not be proven because there is "no link between the alleged misconduct and Inovio's stock price declines on the relevant disclosure dates." (Mem. L. Supp. Mot. Final Approval 12, ECF 156-1.) Additionally, Defendants argue there was no price impact from the alleged misrepresentations or the alleged corrective disclosures. (*Id.*) Plaintiffs acknowledge that they would have had to counter Defendants' experts through their own at trial, and that "such a 'battle of the experts' would have necessarily involved substantial expenses and risks." (*Id.*) In addition to the inherent risk to recovery involved in prolonged litigation, continuing through trial and subsequent appeals would only delay any recovery class members may receive.

Additionally, Inovio's financial condition makes a settlement prudent because it eliminates the risk of a lesser recovery for class members. As discussed below, Plaintiffs demonstrated that they weighed the "significant risk with respect to the financial condition of Inovio" when considering the costs and risks of proceeding to trial.

(Hr'g Tr. 11–12.)  The parties carefully weighed the relevant risks of further delay in reaching this settlement.

ii

The proposed method of distributing relief to the class is effective.  The notice complies with Rule 23 and adequately informed the class members of how to submit a claim form, the date by which the form must be postmarked, and the Claim Administrator provided class members with the necessary Proof of Claim form.  *See* (Notice of Pendency and Proposed Settlement of Class Action ¶ 62, ECF 156-8; Proof of Claim 1–8, ECF 156-8).

iii

The relief to the class remains adequate when considering the terms of the proposed award of attorneys' fees.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  No class member has objected to the amount of fees requested.

iv

Finally, Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3).  The parties disclosed that they agree Defendants have the right to terminate the settlement if requests for exclusion from the class exceed the criteria in the agreement.  (Mem. L. Supp. Mot. Final Approval of Settlement 16, ECF 156-1.)  This supplemental agreement does not affect the adequacy of the relief provided to the class.

4

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other.  Fed. R. Civ. P.

23(e)(2)(D).  The notice states that "[t]he objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of alleged wrongdoing."  (Notice of Pendency and Proposed Settlement of Class Action ¶¶ 31, ECF 156-8).  The Plan calculates a "Recognized Loss Amount" for purchases of Inovio stock during the Class Period depending on when the stock was purchased and sold.  (*Id.* ¶ 35–42.)  A member's "Recognized Claim" under the Plan is the sum of his or her "Recognized Loss Amounts." (*Id.* ¶ 44.)  The Net Settlement Fund is then "distributed to Authorized Claimants on a *pro rata* basis, based on the relative size of their Recognized Claims."  (*Id.* ¶ 45.) "Specifically, a 'Distribution Amount' will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund."  (*Id.*)  The settlement therefore treats class members equitably relative to each other because each member's recovery is proportional to his or her actual loss suffered.  All the Rule 23(e)(2) factors are met.

### B

Courts within the Third Circuit also "employ a more expansive fairness inquiry" by applying the nine *Girsh* factors.  *In re Innocoll,* 2022 WL 16533571, at *4; *see Girsh*, 521 F.2d at 157.  These factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;

> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.  The Court addresses each factor in turn.

1

The first *Girsh* factor is the complexity, expense and likely duration of the litigation.  As discussed above, securities class actions are complex, costly, and time intensive.  Approaching three years in duration, this litigation required complex and skillful work on the part of both parties.  Should it continue, the parties would have to continue retaining experts, incurring additional expenses.  Plaintiffs' counsel have incurred expenses of over $800,000 to date, and "to continue litigating it would have been [to] run into the several millions of dollars through trial and appeals."  (Hr'g Tr. 11:3–7.)  Should the case go to trial, Plaintiffs will have to obtain class certification and maintain the class through trial.  The settlement allows class members to receive their payments quickly; further litigation would delay any potential recovery while the parties continue to incur additional expenses.

2

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement."  *In re Prudential,* 148 F.3d at 318.  In *Prudential*, the Third Circuit held that the district court did not abuse it discretion in finding that 19,000 opt outs—out of 8 million policyholders to whom Prudential sent the class notice—was "truly insignificant."  148 F.3d at 318.

Here, after 576,695 notices were sent out, only eleven exclusions were received. (Hr'g Tr. 3:17–23.)  Additionally, there was only one objection, (Hr'g Tr. 4:2–7),

15

something counsel correctly termed "overwhelmingly positive." (Hr'g Tr. 14:7.) No one objects to the settlement amount, proposed attorneys' fee award, expense request, or the lead Plaintiff and representative Plaintiff's award request. (Hr'g Tr. 29:15–16.) The class supports the settlement, indicative of its fairness.

3

The third factor to consider is the stage of the proceedings and the amount of discovery completed. Courts are instructed to examine the amount of discovery undertaken to "ensure that a proposed settlement is the product of informed negotiations." *In re Prudential,* 148 F.3d at 319.

Here, the parties completed fact discovery before agreeing to settlement. Discovery consisted of over 500,000 pages of documents and nineteen depositions. (Hr'g Tr. 9:18.) The parties retained experts in various fields and engaged in two rounds of contested mediations with a nationally recognized mediator. (Hr'g Tr. 9:18–24.) Both parties had a clear sense of the strengths and weaknesses of their respective cases, and this factor cuts in favor of approval of the settlement.

4

*Girsh* factors four and five "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. Plaintiffs acknowledged the continued hurdles they would face at summary judgment, trial, and then appeal. (Mem. L. Supp. Mot. Final Approval 11, ECF 156-1.) At trial, Plaintiffs would face the uncertainty of proving each element of their case, all of which the Defendants aggressively contested throughout the litigation. Specifically,

Defendants maintain that the statements regarding Inovio's Phase One, Two, and Three clinical trials "were not false or misleading and were non-actionable honestly held opinions," or "were forward-looking statements protected by the PSLRA safe harbor." (Mem. L. Supp. Mot. Final Approval 12, ECF 156-1.)  Overcoming Defendants' claims that they lacked the requisite scienter could prove difficult, as could demonstrating loss causation:  Defendants contend "there is no link between the alleged misconduct and Inovio's stock price declines on the relevant disclosure dates." (*Id.*)  Conflicting expert testimony at trial would introduce further uncertainty into all of these issues.  These risks weigh in favor of approving the settlement.

### 5

The next *Girsh* factor considers the risks of maintaining the class certification through trial.  Plaintiffs filed a motion to certify the class (ECF 99), which Defendants contested (ECF 107), before the settlement was reached.  Even if the Court granted this motion, classes may be decertified or modified at any time if the class becomes unmanageable.  *In re Prudential*, 148 F.3d at 321.  Because there is always a "possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement," this factor merits slight weight.  *In re Prudential*, 148 F.3d at 321 (explaining how "examination of this factor in the standard class action would appear to be perfunctory" due to the inherent risk of decertification); *see also In re Cendant*, 264 F.3d at 239 (acknowledging that "proceeding to trial would always entail the risk, even if slight, of decertification.").

### 6

The seventh *Girsh* factor "is concerned with whether the defendants could

withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. This settlement has a total value of at least $44 million, including $30 million in cash and the greater of either seven million shares or $14 million in Inovio stock. Therefore, the Court must consider whether Inovio could withstand a judgment significantly greater than this amount. *In re Cendant*, 264 F.3d at 241 (noting that "[t]here is inevitably a measure of speculation involved in this determination" of how much a defendant can bear before reaching the possibility of bankruptcy).

After the first quarter of 2022, "Inovio reported a net loss of $79.1 million, and $61.9 million in net cash used to support operating activities." (Mem. L. Supp. Mot. Final Approval of Settlement 13, ECF 156-1.) The second quarter ended with a "reported net loss of $108.5 million, and $112.4 million in net cash used to support operating activities." (*Id.* at 13–14.) Additionally, as of August 9, 2022, Inovio announced it would reduce its workforce by 18 percent. (*Id.* at 14.) At the hearing, Plaintiff's counsel stressed that Inovio's precarious financial situation was a factor during the negotiations and decision to agree to a settlement. Counsel stated that to continue to litigate this case would cause "the insurance proceeds [to] dwindle," as would "the company's wherewithal to kick in additional shares or money." (Hr'g Tr. 11:16–18.) When pressed by the Court on the company's financial health, counsel responded: "I think it's very challenged." (Hr'g Tr. 11:24.) Counsel's statement that this settlement "hit the sweet spot" given Inovio's financial position is certainly credible. (Hr'g Tr. 12:17–20.) Inovio's likely inability to pay a significantly greater judgment than the settlement amount favors the deal.

7

The eighth and ninth *Girsh* factors help determine whether the settlement is reasonable in light of the best possible recovery and the risk of further litigation. They "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. Courts are instructed to compare the damages plaintiffs would likely recover if successful—discounted for the risk of not prevailing—with the amount of the settlement agreement. *In re Prudential*, 148 F.3d at 322. The inability to determine the precise amount of damages Plaintiffs would likely recover if successful at trial does not render the Court unable to conduct this analysis. *See In re N.J. Tax Sales Certificates Antitrust Litig.*, No. 12-1893, 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016). Inovio's financial straits makes at least $44 million a good value for class members given the risk of continued litigation. Considering Defendants' continued challenges to each element of Plaintiffs case, and taking "seriously the litigation risks inherent in pressing forward with the case," this settlement is reasonable. *In re Nat'l Football League*, 821 F.3d at 440.

The settlement is fair, reasonable and adequate.

VI

A class action's distribution plan must be fair, reasonable and adequate as well. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citing *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998)). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan*, 667 F.3d at 328 (quoting *In re Corel Corp. Inc., Sec. Litig.*, 293 F.Supp.2d 484, 493 (E.D. Pa. 2003)).

Here, the net settlement fund will be distributed on a *pro rata* basis. (Stipulation of Settlement 21, ECF 149-1.)  The plan is fair, reasonable, and adequate because each class member's claim is based on his or her individual "Recognized Loss Amount" as determined by when each member purchased and sold his or her stocks. (Notice of Pendency and Proposed Settlement of Class Action ¶ 34, ECF 156-8.)  The net settlement fund will be distributed to each authorized claimant entitled to at least $10.  *See Sullivan*, 667 F.3d at 328 (holding that the district court did not abuse its discretion in approving a minimum claim payment threshold of $10).  Any funds remaining following the initial distribution will be further distributed among the authorized claimants to the extent economically feasible.  (Mem. L. Supp. Mot. Final Approval 18, ECF 156-1.)  Re-distribution of the remaining funds will continue until it becomes economically unfeasible.  At that point, any remining funds will be donated to the Community Legal Services of Philadelphia.  (*Id.*)  This is fair and reasonable.  *See In re Innocoll*, 2022 WL 16533571, at *8 (finding the plan of allocation fair, reasonable, and adequate where the claim for each "class member's recognized loss is based on when the securities were purchased and sold" and where the "Settlement fund is then allocated *pro rata* based on the adjusted recognized loss.").

VII

There was only one objection out of the 576,695 notices the claims administrator sent out.  Objector Justin P. Green, a lawyer in Corpus Christi, Texas, raised three issues with the Notice Form and Plan of Allocation.  First, Green claimed that certain class members with a zero-dollar recognized loss amount would be releasing their claims for no consideration.  Second, Green argued the notice was not fair and adequate

20

because it did not explicitly inform class members that should they succeed at trial, they could potentially recover more than they would in the settlement. And finally, he claimed that the objection procedures were unnecessarily burdensome. *See* (Green Obj. to Proposed Class Action Settlement 1, ECF 157).

First, Green objects to the fact that certain class members—those who bought and sold Inovio stock during certain time periods that resulted in no loss amount— receive no compensation under the Plan. He thus claims the Plan does not treat all class members equitably because some members receive nothing. (*Id.* at 3.) Rule 23(e) states that the settlement must treat "class members equitably relative to each other." Rule 23(e)(2)(D). Relative to each other, this settlement does just that. A class member must have suffered an actual economic loss to be eligible for recovery. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (If "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). A class member would have to show such a loss to be eligible to receive any share of the damages that would be awarded after a trial, and they must demonstrate a loss for settlement purposes as well.

The settlement allows class members to recover in a manner proportional to the losses each member actually incurred. Allowing recovery for those who suffered no losses—or perhaps profited—during the class period would be inequitable relative to those class members who suffered actual losses due to fraud. Because the Plan of Allocation allows recovery for those members who suffered a loss during the class period in relation to his or her actual loss relative to the other class members, the Plan is fair, reasonable, and adequate, and Green's first objection is meritless.

Second, Green argues that the notice only advised members of two possible outcomes at trial: recovering nothing or an amount less than what they will receive under the settlement. (Green Obj. to Proposed Class Action Settlement 4–5, ECF 157.) Green claims that the Notice Form should have stated that a victory at trial could have resulted in a judgment larger than the settlement. (*Id.* at 5.) Green claims that "[w]ithout this critical information, class members cannot make an informed decision about the benefits and risks of accepting the proposed settlement." (*Id.*)

Neither Rule 23 nor the PSLRA requires this disclosure. In compliance with the PSLRA, the notice informed the class that "the parties do not agree on the amount of recoverable damages if Plaintiffs were to prevail on each of the claims. (Notice of Pendency and Proposed Settlement of Class Action ¶ 4, ECF 156-8); *see* 15 U.S.C § 78u–4(a)(7)(B)(ii).

Third, Green claims that the objection procedures were overly burdensome, violating class members' due process rights. He contends the Court may not set objection procedures beyond what is specified in Rule 23; he complains that objectors were required to mail their objections and could not use the PACER electronic filing system; he protests the fact that objectors must have submitted proof of claim documents prior to the claim submission deadline; and he complains that objectors must provide a history of all prior objections made in class action lawsuits. *See* (Green Obj. to Proposed Class Action Settlement 6–10, ECF 157). Each of these objections is frivolous.

First, Green states that the objection procedures outlined in the Court's Order preliminarily approving the settlement agreement (ECF 150) were overly burdensome.

22

But this is belied by Green's ability to successfully lodge an objection. Furthermore, no other would-be objectors contacted the Court claiming the process was too burdensome. As counsel stated at the hearing, these procedures are "consistent among these types of settlements" and easily accessible to "a fairly sophisticated, knowledgeable group of class members." (Hr'g Tr. 24:19–25:3.)  Additionally, Green cites no legal support for his claim that the Court lacks the authority to implement procedures for objectors to follow, and nothing in Rule 23 limits the Court's ability to do so.

As a specific example of an overly burdensome procedure, Green cites the requirement that objectors must mail their objections instead of using PACER. *See* (Green Obj. to Proposed Class Action Settlement 7–9, ECF 157).  Using the postal system does not burden potential objectors.  Moreover, the use of PACER—to which very few class members likely have access—would not provide a less burdensome method of objecting.

Nor is the requirement that objectors file a Proof of Claim form and supporting documentation with his or her objection overly burdensome.  Similar documentation is required for any class member to receive their *pro rata* share of the Net Settlement Fund.  Furthermore, there must be some documentation provided to prove an objector is a member of the class, and the documentation required here is entirely appropriate.

Green argues objectors were somehow punished because they were required to submit their required documentation by November 23, 2022, whereas class members had until December 19 to file their Proof of Claim form.  Because the final hearing on the approval of the settlement was held on December 15, 2020, all objections and each objector's documentation necessarily must have been received prior to that date.  This

was not unnecessarily burdensome.

Finally, Green argues the requirements are too burdensome because objectors were required to submit a list of previous class action settlements to which they objected.  *See* (Green Obj. to Proposed Class Action Settlement 9–10, ECF 157).  Green thinks this deters good-faith objectors.  To the contrary, this requirement discourages bad-faith objectors, while neither discouraging nor burdening those with *bone fide* objections.

VIII

Plaintiffs seek an attorneys' fee award of 27.5 percent of the settlement amount and litigation expenses of $814,374.95, plus interest earned on those amounts at the same rate and for the same period earned by the settlement fund.  "In a certified class action, the court may award reasonable attorney[s'] fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Two calculation methods may be used to determine whether a requested fee award is reasonable:  the lodestar and the percentage-of-recovery methods.  *See In re Gen. Motors*, 55 F.3d at 820-21.  The lodestar method "uses the number of hours reasonably expended" to determine "an adequate fee irrespective of the monetary value of the final relief achieved for the class."  *Id.* at 821.  The percentage of recovery method "calculates the percentage of the total recovery that the proposal would allocate to attorneys' fees by dividing the amount of the requested fee by the total amount paid out by the defendant[.]"  *In re Cendant*, 264 F.3d at 256.  The percentage-of-recovery method is appropriate where, as here, the value of the settlement to the class can be readily calculated.  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  Furthermore, the percentage-of-recovery

method is generally favored in cases with a common fund because courts can award fees from the fund in a way that "rewards counsel for success and penalizes it for failure." *In re Prudential,* 148 F.3d at 333 (internal quotations omitted.)

### A

In the Third Circuit, "thorough judicial review of fee applications is required in all class action settlements." *In re Gen. Motors*, 55 F.3d at 819. Courts apply the *Gunter* factors to determine if the fee produced is reasonable. *See Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000). Those factors include:

> (1) the amount of the value created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases[.]

*In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524, 541 (3d Cir. 2009). These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.*

First, the amount of value created and number of persons benefitted favors approval of this award. The settlement is for at least $44 million dollars, of which counsel requests an award of 27.5 percent. There is substantial value in this settlement considering the risk of further litigation, Inovio's likely inability to pay a greater amount, and the certainty that class members will receive a considerable payout. After all expenses are deducted from the fund, the average payout will be $1,700 per class member. *See* (Hr'g Tr. 23:18–21).

Second, the amount of fees sought was clearly outlined in the Notice for any class member to object and there were no objections to the requested fee award.  This favors approval.

Third, the skill and efficiency of class counsel warrants approval of the award. As discussed above, Plaintiffs' counsel competently litigated this case for roughly three years.  Additionally, Robbins, Geller, Rudman & Dowd LLP's skill and experience in securities class actions has been well noted (ECF 149-3) and favors approval of the requested award.

Fourth, the case's complexity and duration supports approval of the award.  The initial Complaint was filed on March 12, 2020.  (ECF 1.)  Since then, Plaintiffs' counsel filed a Consolidated Complaint (ECF 60), a First Amended Complaint (ECF 68), a Second Amended Complaint (ECF 129), defended against Defendants' motion to dismiss (ECF 72), completed fact discovery, conducted depositions, filed a motion for class certification (ECF 99), and negotiated the settlement, including through two mediations.  With efforts spanning almost three years, Counsel's requested fees are justified.

Fifth, counsel litigated this case on a contingency fee basis, risking nonpayment absent a settlement or favorable judgment at trial.  *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("Any contingency fee [arrangement] includes a risk of no payment.").  Success was not guaranteed in this case, and the risk undertaken by Counsel merits approval of the requested fees.

Sixth, counsel spent more than 7,000 hours on this case, conducting all the work outlined above and incurring litigation expenses of $814,374.95. (Mem. L. Supp. Mot. Final Approval 9, ECF 156-1.) The amount of time worked favors approval.

Seventh, counsel's request is well within the norm for awards in common fund cases. "In common fund cases, fee awards generally range from 19% to 45% of the settlement fund." *See In re Cendant*, 243 F.3d at 736 (citation omitted); *see also Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 498 (E.D. Pa. 2018) ("fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million").

B

The Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method." *Gunter*, 223 F.3d at 195 n.1. But a lodestar cross-check is "not necessarily determinative." *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 179-80 (3d Cir. 2013); *see also Moore v. GMAC Mortg.,* No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) ("The lodestar cross-check is 'suggested,' but not mandatory.").

Courts calculate the lodestar award "by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011) (internal quotation marks omitted). "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual

billing records." *In re Rite Aid*, 396 F.3d at 306-07 (footnote omitted) (citing *In re Prudential*, 148 F.3d at 342).

Here, lead counsel spent 7,042.10 hours on this matter, totaling a lodestar amount of $4,490,113.50.  (Mem. L. Supp. Mot. Final Approval 28, ECF 156-1; Decl. of Tor Gronborg Supp. Application for Award of Attorneys' Fees and Expenses, Ex. A, ECF 156-13.)  This results in a lodestar multiplier of 2.69, well within the range of reasonableness recognized by courts. *See* (*id*.)  The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *In re Prudential*, 148 F.3d at 341.  Given the facts of this case and the absence of objections to the requested fees, a lodestar multiplier of 2.69 is acceptable and does not require the Court to reduce the requested fees.

Reimbursement from the fund for counsel's $814,374.95 in litigation expenses is appropriate. *See Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997) ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of his *reasonable* litigation expenses from that fund.").  Counsel has submitted a Declaration outlining the firm's expenses incurred during this litigation. (Decl. of Tor Gronborg Supp. Application for Award of Attorneys' Fees and Expenses, ECF 156-12.)  The expenses incurred were necessary for the effective handling of this matter, and counsel is entitled to their attorneys' fees and expenses, plus interest at the same rate and for the same period as earned by the Settlement Fund.

IX

Lead Plaintiff Williams and Representative Plaintiff Zenoff seek awards of $77,450.00 and $75,712.50, respectively.  Courts regularly "approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 665 (E.D. Pa. 2015) (citations and internal quotations omitted).  Courts need not employ factors to determine the amount of the class representative awards, as it does when awarding attorneys' fees.  *See In re Innocoll*, 2022 WL 16533571, at *12.

Williams and Zenoff were "highly active" and "highly engaged" throughout this litigation.  (Hr'g Tr. 34:6–7.)  Counsel told the Court that both individuals did a significant amount of work responding to discovery requests, and both prepared extensively for their depositions.  (Hr'g Tr. 34:1–10.)  Both submitted detailed time sheets.  (Decl. of Andrew Zenoff, ECF 156-5, 156-6; Decl. of Manuel Williams, ECF 156-3, 156-5.)  Zenoff spent 168.25 hours working on the case, while Williams logged 221.2 hours.  Plaintiffs' requests are reasonable given the time spent on this case and success obtaining a substantial class settlement.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.